E-DISCOVERY

# Social networking sites and the e-discovery process

The use of electronic means of communication has risen dramatically in the last decade, and now includes a variety of social networking websites. Yet, how much of this social networking data can be disclosed during e-discovery proceedings? As US courts still grapple with the issue, John Woods, Michael A. Oakes and Meghan A. Podolny, from Hunton & Williams LLP, examine the latest developments in this area.

At the beginning of the 21st century, the forms and methods of electronic communication expanded more rapidly than the law anticipated. In the US, the Advisory Committee on Civil Rules recognized that the Federal Rules of Civil Procedure needed to be amended to bring these new electronic information storage and communication methods within the scope of the discovery process. The Committee proposed amending the rules to create a flexible, technology-neutral standard that would make all electronically stored information (ESI) as discoverable as its paper counterpart, while establishing a protocol for requesting relief from burdensome production of relevant data. The amended Rules were approved by the Judicial Conference and the Supreme Court, and became effective on 1 December 2006.

It was only a matter of time before litigants began to consider the data on social networking sites as a valuable source of information for litigation purposes, especially since users share a wealth of personal information on these websites. While US courts continue to grapple with the relevance of such data and the precise mechanisms by which the data must be preserved and produced, the developing case law seems to clearly indicate that courts will consider social networking data discoverable if a party can establish its relevance.

The amended Rules explicitly made electronic information discoverable in a number of ways. Firstly, the amendments introduced the phrase 'electronically stored information' to Rules 26(a)(1), 33 and 34, to acknowledge that ESI is discoverable. This expansive phrase includes any type of information that can be stored electronically.

Secondly, the amendments require litigants to address ESI early on in the discovery process, including through a party's initial disclosures, scheduling orders, the Rule 26(f) meet and confer process, production formats, and claims of privilege or work product protection. The party must identify - by category and location - all ESI that is within its possession, custody or control that it intends to use to support its claims or defenses.

Finally, the amended Rule 26(b)(2) creates a two-tiered approach to determine whether ESI requested for production is reasonably accessible. A responding party need not produce ESI from sources that it identifies as not reasonably accessible because of undue burden or cost. A court may only order discovery for good cause.

In short, there is nothing in the amended Rules to indicate that social networking data - including Facebook profiles or Twitter comments - should be excluded from discovery. The 'restricted access' nature of many of these forms of communication does not conflate rights of privacy outside of litigation with a party's duty to produce requested relevant material. Although users might have a reasonable expectation of privacy in their social network content, once involved in litigation, that content, if relevant, becomes subject to discovery. This means that a litigant will need to preserve, collect, review and produce social network communications, posts and pictures.

### Relevance to litigation

Although ESI is potentially discoverable - in any form - in US litigation, if a party objects to the production of social networking data, the litigant seeking the information will still be required to demonstrate its relevance. This will require a fact-based inquiry conducted by the court on a case-by-case basis, while looking at the particular claims and defenses asserted. While there are no hard and fast rules about when social networking data may be relevant, it may have particular relevance in certain types of cases, such as divorce, personal injury, criminal cases and workers' compensation.

In Bass v Miss Porter's School[1], the court evaluated a discovery request regarding social networking websites. The lawsuit alleged that the school had failed to prevent the plaintiff from being bullied by her classmates in class, around campus, through text messages and on Facebook. The plaintiff objected to a discovery request seeking Facebook content, stating that 'the production of information [is] irrelevant and immaterial, and…is not reasonably calculated to lead to the discovery of admissible evidence'[2]. The court disagreed, holding that 'Facebook usage depicts a snapshot of the user's relationships and state of mind at the time of the content's posting' and that the content's relevance to both liability and damages would be 'more in the eye of the beholder than subject to strict legal demarcations' of what

reprinted with permission of Cecile Park Publishing (c) 2010

data protection law & policy february 2010

one party determines might be 'reasonably calculated to lead to the discovery of admissible evidence'[3].

In the Canadian case of Leduc v Roman[4], a plaintiff claimed that an automobile accident negatively impacted his ability to enjoy life. The defense examined the plaintiff's Facebook profile for evidence that he still enjoyed a fulfilling life and - upon finding that the plaintiff restricted access to his Facebook profile - requested production and preservation of all information relating to the profile, including any restricted information. The court determined that a Facebook profile is a document and, if relevant to an issue in a case, it must be produced. The court relied on a prior decision, Murphy v Perger[5], to allow it to infer that information posted on a social networking profile may be relevant, even if access to the information is restricted.

> The court determined that a Facebook profile is a document and, if relevant to an issue in a case, it must be produced

### Limitations

The fact that a litigant has a personal account on a social networking site does not mean that all doors are open for discovery.

The Philadelphia Bar Association's Professional Guidance Committee issued - in March 2009 - an insightful ethics opinion prohibiting lawyers and their associates from using deception in connection with contacting a deponent through a witness' online profile[6]. In the case, a non-party witness in a civil case revealed, through deposition testimony, that she maintained Facebook and MySpace accounts. Access to her accounts was by permission only, otherwise known as 'restricted access'. The attorney who sought the ethics opinion from the Philadelphia Bar Committee believed that those sites contained information relevant to the case and, in particular, would be valuable for impeachment purposes. In the deposition, however, the attorney did not ask the witness any questions regarding the content of the accounts. The Committee's task was to determine whether it was permissible under the ethical rules for a lawyer to ask someone to 'friend' a witness without disclosing his affiliation or purpose, while all identifying information was truthful.

Noting that lawyers are accountable for the behavior of their investigators, the Committee found that the 'friending' action proposed would amount to misconduct under Rule 8.4 prohibiting 'dishonesty, fraud, deceit or misrepresentation'. Therefore, 'friending' the witness on a social networking site without revealing that the purpose of the contact was to gain access to the restricted section of her profile constituted an act of 'deception' under the ethical rules. After reviewing the conflicting views of other State Bars on covert investigation by the legal profession, the Committee decided to refuse to acknowledge an exception as found in New York and other states ethics opinions and court decisions[7].

Parties can also go too far when searching for 'evidence' on social networking sites. In the District of New Jersey case of Pietrylo v Hillstone Restaurant Group, a restaurant employee formed a by-invitation-only discussion group called Spec-Tator on his MySpace page, intending it to be a space where other restaurant employees could negatively comment about their jobs[4]. One member of Spec-Tator later provided uninvited members of the restaurant management with her access information. The management viewed the discussion group page and fired a number of employees as a result of information posted on Spec-Tator. Two of the terminated employees filed a lawsuit, claiming invasion of privacy. Although the jury found that the plaintiffs did not have a reasonable expectation of privacy in the online group, the defendants were found to be in violation of the federal and state versions of the Stored Communications Act - 18 USC §§2701-11 and N.J.S.A2A: 156A-27 - which make it an offense to access stored communications intentionally without authorization or in excess of authorization. The jury found that the employee who provided access to management had felt coerced, and so the access was not authorized. The jury subsequently awarded the plaintiffs $17,000 in compensatory and punitive damages.

**John W. Woods Jr.** Partner
**Michael A. Oakes** Partner
**Meghan A. Podolny** Associate
Hunton & Williams LLP
jwoods@hunton.com
moakes@hunton.com
mpodolny@hunton.com

1. Bass v Miss Porter's School, Civil No. 3:08-cv-1807 (JBA), 2009 WL 3724968, *1 (D. Conn., 27 October 2009).
2. Id. at 1.
3. Id.
4. Leduc v Roman, 2009 CanLII 6838 (ON S.C.) (20 February 2009).
5. Murphy v Perger, [2007] O.J. No. 5511, 2007 WL 5354848 (Ont. S.C.J.).
6. The Philadelphia Bar Association Professional Guidance Committee, Opinion 2009-02 (March 2009), available at www.philadelphiabar.org/WebObjects/PBAReadOnly.woa/Contents/WebServerResources/CMSResources/Opinion_2009-2.pdf (last visited 31 January 2010).
7. See the New York Lawyers' Association Committee on Professional Ethics, Formal Opinion No. 737 (May 2007), available at www.nycla.org/siteFiles/Publications/Publications519_0.pdf (last visited 31 January 2010).
8. Pietrylo v Hillstone Restaurant Group, 2009 WL 3128420 (D.N.J. September 25, 2009); Pietrylo v Hillstone Restaurant Group, 2008 WL 6085437 (D.N.J. 25 July 2008).

reprinted with permission of Cecile Park Publishing (c) 2010