## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

BRETT KIMBERLIN,            )
                                      )
         Plaintiff,           )
                                        )
     v.                     )
                                        )
HUNTON & WILLIAMS LLP, *et al.*,  )   Civil Action No. 8:15-cv-00723-GJH
                                        )
         Defendants.     )
                                        )
                                        )
                                        )
                                        )

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY PALANTIR TECHNOLOGIES INC., ALEX KARP, MATT LONG, MATTHEW STECKMAN, & SAM KREMIN</u>

Allen M. Gardner
Jonathan C. Su
Alexandra P. Shechtel*
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
* Admitted in California only; all work
 supervised by a member of the D.C. Bar.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     OVERVIEW OF PLAINTIFF'S ALLEGATIONS ............................................ 2

III.    ARGUMENT ......................................................................................................... 6

     A.    Plaintiff's Claims Are Untimely ............................................................... 6

     B.    The Complaint Does Not Allege Cognizable Legal Injury ....................... 10

     C.    None Of The Federal Claims Are Properly Pleaded Or Supported By The Alleged Facts ...................................................................................... 13

          1.    Plaintiff Fails To Plead Facts Supporting A RICO Claim (Claim VI) ................. 14

               a.    Mail and Wire Fraud, 18 U.S.C. §§ 1341, 1343 ....................................... 14

               b.    Obstruction Of Justice, 18 U.S.C. § 1503 ................................................ 15

               c.    Intimidation And Retaliation Against A Witness, 18 U.S.C. §§ 1512(d), 1513(b) & (e) ................................................................... 17

               d.    Money Laundering, 18 U.S.C. § 1957 ...................................................... 18

               e.    Extortion, 18 U.S.C. § 1951, and Written Extortion, Md. Crim. Code § 3-706 .............................................................. 19

          2.    Plaintiff Fails To Plead Facts Supporting A Civil Rights Claim (Claim I) ........... 20

          3.    Plaintiff Fails To Plead Facts Supporting A Claim For Invasion Of Privacy (Claim III) ............................................................................. 21

          4.    Plaintiff Fails To Plead Facts Supporting A Claim For Intentional Interference With Business And Prospective Economic Advantage (Claim VII) ................................................................................................. 23

          5.    Plaintiff Fails To Plead Facts Supporting A Claim For Intentional Infliction Of Emotional Distress (Second Claim VII) ............................... 24

IV.     CONCLUSION .................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adams v. NVR Homes, Inc.*,
 193 F.R.D. 243 (D. Md. 2000)........................................................................................15

*Agency Holding Corp. v. Malley-Duff & Assocs.*,
 483 U.S. 143 (1987).........................................................................................................6

*In re American Honda Motor Co., Inc. Dealerships Relations Litigation*,
 941 F. Supp. 528 (D. Md. 1996).....................................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).....................................................................................................7, 13

*Baron Financial Corp. v. Natanzon*,
 471 F. Supp. 2d 535 (D. Md. 2006).................................................................................23

*Bast v. Cohen, Dunn & Sinclair, PC*,
 59 F.3d 492 (4th Cir. 1995) ............................................................................................14

*Bediako v. American Honda Finance Corp.*,
 850 F. Supp. 2d 574 (D. Md. 2012), *aff'd*, 537 F. App'x 183 (4th Cir. 2013) .................10

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)........................................................................................................14

*Bhari Information Technology System Private Ltd. v. Sriram*,
 984 F. Supp. 2d 498 (D. Md. 2013).................................................................................15

*Burnett v. Grattan*,
 468 U.S. 42 (1984)............................................................................................................9

*California v. Greenwood*,
 486 U.S. 35 (1988)..........................................................................................................22

*Causey v. Balog*,
 162 F.3d 795 (4th Cir. 1998) ............................................................................................7

*Chisolm v. TranSouth Financial Corp.*,
 95 F.3d 331 (4th Cir. 1996) ............................................................................................14

*Clark v. Maryland Department of Public Safety & Correctional Services*,
 247 F. Supp. 2d 773 (D. Md. 2003).............................................................................24, 25

*Cox v. Stanton*,
    529 F.2d 47 (4th Cir. 1975) ......................................................................................9

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...................................................................22

*Glynn v. Impact Science & Technology, Inc.*,
    807 F. Supp. 2d 391 (D. Md. 2011), *aff'd*, 710 F.3d 209 (4th Cir. 2013) .........10

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ....................................................................................8

*Hall v. Asher*,
    355 F. Supp. 808 (D. Md. 1973) ..............................................................................9

*Harrison v. KVAT Foods Management, Inc.*,
    766 F.2d 155 (4th Cir. 1985) ..................................................................................21

*Jones v. Bock*,
    549 U.S. 199 (2007) ..................................................................................................6

*Kaser v. Financial Protection Marketing*,
    831 A.2d 49 (Md. 2003) ..........................................................................................23

*Kashaka v. Baltimore County*,
    450 F. Supp. 2d 610 (D. Md. 2006) ......................................................................7, 9

*Kimberlin v. Anonymous Blogger Unmasked*,
    No. RWT-13-2580, 2014 WL 824142 (D. Md. Feb. 28, 2014).................................1

*Kimberlin v. National Bloggers Club*,
    No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015), *appeal dismissed*,
    604 F. App'x 327 (4th Cir. 2015) ....................................................................*passim*

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................10

*Manikhi v. Mass Transit Administration*,
    758 A.2d 95 (Md. 2000) ......................................................................................24, 25

*Mattison v. Click Corp. of America, Inc.*,
    Civ. A. No. 97-CV-2736, 1998 WL 32597 (E.D. Pa. Jan. 27, 1998) .................20

**Page(s)**

*Melendez v. Board of Education for Montgomery County*,
No. DKC 14-3636, 2015 WL 3540947 (D. Md. June 3, 2015) ...........................................9

*Murphy v. Merzbacher*,
697 A.2d 861 (Md. 1997) ...............................................................................................9

*Noshafagh v. Leggett*,
Civil Action No. DKC 11-3038, 2013 WL 93345 (D. Md. Jan. 7, 2013), *aff'd*, 538 F.
App'x 251 (4th Cir. 2013) .............................................................................................21

*O'Malley v. New York City Transit Authority*,
896 F.2d 704 (2d Cir. 1990)...........................................................................................16

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) ..........................................................................................22

*Pearce v. Whitenack*,
440 S.W.3d 392 (Ky. Ct. App. 2014) .............................................................................22

*Pemberton v. Bethlehem Steel Corp.*,
502 A.2d 1101 (Md. Ct. Spec. App. 1986).....................................................................21

*Richardson v. Selective Insurance Group, Inc.*,
No. RDB 06-2594, 2007 WL 1657423 (D. Md. May 31, 2007) .......................................9

*Rotella v. Wood*,
528 U.S. 549 (2000).........................................................................................................6

*Scheidler v. National Organization for Women, Inc.*,
537 U.S. 393 (2003).......................................................................................................19

*Scott v. Mountain Mission School, Inc.*,
809 F.2d 786 (4th Cir. 1987), 1987 WL 36169 .......................................................20, 21

*Sedima S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985).......................................................................................................10

*Sellner v. Panagoulis*,
565 F. Supp. 238 (D. Md. 1982), *aff'd*, 796 F.2d 474 (4th Cir. 1986) ...........................20

*Smith v. United States*,
133 S. Ct. 714 (2013)......................................................................................................8

Page(s)

*Trundle v. Homeside Lending, Inc.*,
    162 F. Supp. 2d 396 (D. Md. 2001) ................................................................21

*United Black Firefighters of Norfolk v. Hirst*,
    604 F.2d 844 (4th Cir. 1979) .....................................................................2

*United States v. Aguilar*,
    515 U.S. 593 (1995) ...................................................................................16

*United States v. Bode*,
    Criminal Case No. ELH-12-158, 2013 WL 4501303 (D. Md. Aug. 21, 2013) ................23

*United States v. Meregildo*,
    883 F. Supp. 2d. 523 (S.D.N.Y. 2012), *aff'd*, 785 F.3d 832 (2d Cir. 2015) ........22

*United States v. United States Gypsum Co.*,
    438 U.S. 422 (1978) ...................................................................................8

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ...................................................................15

*Worsham v. Account Receivables Management, Inc.*,
    No. Civ. JKB-10-3051, 2011 WL 5873107 (D. Md. Nov. 22, 2011), *aff'd*, 497 F.
    App'x 274 (4th Cir. 2012) .......................................................................21

*Young v. Clinchfield Railroad Co.*,
    288 F.2d 499 (4th Cir. 1961) .....................................................................9

## STATUTES

18 U.S.C. § 1341 ....................................................................................................14

18 U.S.C. § 1343 ....................................................................................................14

18 U.S.C. § 1503 ....................................................................................................15

18 U.S.C. § 1512(d) ...............................................................................................17

18 U.S.C. § 1513(b) ...............................................................................................17

18 U.S.C. § 1513(e) ...............................................................................................17

18 U.S.C. § 1515(a)(1) ..........................................................................................17

18 U.S.C. § 1951(b)(2) ..........................................................................................19

Page(s)

18 U.S.C. § 1957(a) ...................................................................................................18

18 U.S.C. §§ 1961-1968 ...............................................................................................1

42 U.S.C. § 1985(2) ...................................................................................................20

Md. Code. Ann., Crim. Law § 3-706(b) .....................................................................19

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ..................................................................8

## OTHER AUTHORITIES

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004) .....................6

Federal Rule of Civil Procedure 9(b) .........................................................................15

## I.    INTRODUCTION

Plaintiff Brett Kimberlin is "no stranger to … this Court," *Kimberlin v. Anonymous Blogger Unmasked*, No. RWT-13-2580, 2014 WL 824142, at *1 (D. Md. Feb. 28, 2014), and this lawsuit is nothing more than his latest volley in a "wide-ranging war of attrition in which this Court has become caught in the crossfire," *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *1 (D. Md. Mar. 17, 2015) (citations omitted), *appeal dismissed*, 604 F. App'x 327 (4th Cir. 2015). Plaintiff now seeks (belatedly) to drag Palantir Technologies Inc. and various individuals within that organization into his campaign against the United States Chamber of Commerce (the "Chamber"). Just as it did in a related case earlier this year, this Court should reject Plaintiff's invitation because he has failed to plead anywhere close to sufficient or specific facts to support his claims. *Nat'l Bloggers Club*, 2015 WL 1242763, at *4.

In the instant case, Plaintiff filed a complaint on March 16, 2015 alleging that numerous defendants, including Palantir, a data analysis company, conspired to harass and discredit him. Also named in the Complaint are Alex Karp, Palantir's CEO, Matt Long, Palantir's General Counsel, Matthew Steckman, a software engineer at Palantir, and Sam Kremin, who is currently employed as an engineer at Palantir but at the time of much of the activity alleged in the Complaint was employed by Berico, another data company. The Complaint alleges that Palantir and these four individual defendants (hereinafter collectively referred to as "Palantir") violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, federal civil rights law, and state tort law. But all of these claims were brought outside of the applicable statutes of limitations. And even if they were timely, Plaintiff has failed to plead any cognizable legal injury. In addition, all of the claims are

defective under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has provided only vague and conclusory allegations and failed to allege facts demonstrating that any of his claims are plausible.

## II.     OVERVIEW OF PLAINTIFF'S ALLEGATIONS

When considering a motion to dismiss, a court must generally take all allegations in the complaint as true.  A court need not, however, credit bare factual assertions lacking any connection to "particular acts, practices, or policies." *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  While Palantir presents a summary of the allegations contained within the Complaint, this is in no way an admission of their truth or their relevance to this lawsuit.

According to the Complaint, Plaintiff is employed, and has been for the past eleven years, as director of Justice Through Music ("JTM"), a nonprofit.  [Compl. ¶ 1, page[1] 6.]  In 2005, JTM spawned a group called VelvetRevolution, a purported advocacy organization "dedicated to fair and transparent elections, and corporate accountability."  [*Id.*]  VelvetRevolution eventually began a campaign called "Stop the Chamber," aimed at exposing and ending the Chamber of Commerce's alleged "unethical activity."  [*Id.* ¶ 1, page 10.]

The Hunton & Williams law firm had represented the Chamber of Commerce for "years."  [*Id.* ¶ 1, page 12.]  After John Woods, a lawyer at Hunton & Williams [*id.* ¶ 5, page 7], was introduced to HBGary Federal ("HBGary") CEO Aaron Barr [*id.* ¶ 10, page 7], Mr. Barr allegedly formed a team, consisting of individuals from Palantir and Berico, labeled Team Themis, to work on a "Corporate Information Reconnaissance Cell" ("CIRC").  Mr. Barr purportedly planned to sell the CIRC, a package of services and information, to Hunton & Williams.  [*Id.* ¶ 5, page 7; *id.* Ex. E, Proposal for Corporate Information Reconnaissance Cell (Nov. 3, 2010), pages 2–3.]  According to Plaintiff, the CIRC would

---

[1]     Various paragraphs of the Complaint have the same number, so for the Court's convenience page references have also been included.

first collect information about organizations from background checks and internet sources like LinkedIn, LexisNexis, Facebook, and Google; put that information into one place; and finally organize it all on a software platform developed by Palantir. [*Id.* ¶¶ 5–7, pages 16–17.] Using that platform, Plaintiff claims, Team Themis could review and organize the data to gain an understanding of which groups and individuals were working together and how to stop them. [*Id.* ¶ 7.] Team Themis allegedly planned that Hunton & Williams would market the CIRC to its clients, including Bank of America and the Chamber. [*Id.* ¶ 5, page 16.]

The Complaint alleges that while Team Themis was preparing to meet with a senior Hunton & Williams partner, Mr. Barr allegedly attempted to demonstrate the kind of data available on the Internet and his ability to collect it by gathering information about Stop the Chamber. [*Id.* ¶ 12, page 19; *id.* Ex. H, Email (Nov. 9, 2010, 6:09 a.m.).] He spent about twenty minutes gathering "preliminary" information, such as links to the internet home pages and public Facebook profiles for the organization, and sent it to the senior partner. [*Id.* Ex. H, Email (Nov. 9, 2010, 6:30 a.m.).] Later that day, Mr. Barr sent further information to Mr. Woods, identifying the public web site of VelvetRevolution, roughly describing the organization, listing its leaders, and noting that Plaintiff had a "checkered past." [*Id.* ¶ 13, page 19; *id.* Ex. G, Email (Nov. 9, 2010, 3:51 p.m.).] Mr. Barr also identified the publicly available IP address for VelvetRevolution's web site and listed other web sites associated with that same IP address. [*Id.* Ex. G, Email (Nov. 9, 2010, 3:51 p.m.).] Finally, Mr. Barr provided the public Facebook, Twitter, and LinkedIn websites for organizations and personalities believed to be associated with VelvetRevolution. [*Id.*]

The Complaint further alleges Mr. Woods responded by asking Mr. Barr to "stand down for now." [*Id.* Ex. K, Email (Nov. 10, 2010, 6:05 a.m.).] Mr. Barr asked to begin "Phase I" of the CIRC

project, [*id.* ¶¶ 19–20, pages 21–22; *id.* Ex. M, Email (Nov. 15, 2010, 7:43 p.m.); *id.* Ex. L, Email (Nov. 16, 2010, 8:42 p.m.)], but Hunton & Williams refused to authorize the project without more information about what Team Themis would be doing. [*Id.* ¶ 22, pages 22–23; *id.* Ex. N, Email (Nov. 23, 2010, 9:08 a.m.).] To that end, Sam Kremin allegedly emailed Mr. Barr and asked him to put together a "mock report," without putting "a ton of effort into it," demonstrating what sort of materials Mr. Barr would be preparing as part of the pilot. [*Id.* Ex. O, Email (Nov. 29, 2010, 9:54 a.m.); *id.* Ex. O, Email (Nov. 29, 2010, 10:23 a.m.).] An hour later, Mr. Barr sent Mr. Kremin a list of "basic thoughts" for mock reports about proposed tactics to employ against groups including VelvetRevolution. [*Id.* ¶ 24, pages 23–24; *id.* Ex. O, Email (Nov. 29, 2010, 11:50 a.m.).] For VelvetRevolution, Mr. Barr suggested discrediting back-office personnel by associating them with Plaintiff and characterizing VelvetRevolution's tactics as "self-serving and childish." [*Id.*] He recommended other tactics for other organizations. [*Id.*] Mr. Kremin allegedly used Mr. Barr's tactics to create a mock "operations recommendation" *for the other organization*—not for VelvetRevolution or JTM or Plaintiff. [*Id.* Ex. P, Email (Dec. 1, 2010, 2:13 p.m.); *id.* Ex. Q, Information Operations Recommendation (Nov. 29, 2010).] A mock slide show containing basic biographical information about persons opposed to the Chamber provided no information about Plaintiff other than listing him as one of the leaders of VelvetRevolution. [*Id.* Ex. T, Team Themis PIR's Slide Deck.]

The Complaint never states that Hunton & Williams authorized Team Themis to proceed any further with Phase I of the CIRC proposal. On February 3, 2011, certain Defendants allegedly learned that Hunton & Williams would not pay for creating the Phase I presentation. [*Id.* Ex. Z, Email (Feb. 3, 2011, 4:59 p.m.).] But just a few days later, on February 7, 2011, the secret hacker group Anonymous gained access to HBGary Federal's website and copied tens of thousands of its emails which it then

published online. [*Id.* Ex. BB, Anonymous hackers attack US security firm HBGary, BBC News (Feb. 7, 2011); *id.* Ex. CC, Andy Greenberg, *HBGary Execs Run For Cover As Hacking Scandal Escalates*, Forbes.com (Feb. 15, 2011).] Those emails revealed Mr. Barr's suggested tactics against VelvetRevolution and were widely covered in the press. [*See id.* Ex. EE, Glenn Greenwald, *The leaked campaign to attack WikiLeaks and its supporters*, Salon.com (Feb. 11, 2011).]

The Complaint alleges that in the wake of these events, Palantir severed "any and all contacts" with HBGary, [Compl. ¶ 40, page 31], and Berico did the same, [*id.* ¶ 41, page 32]. HBGary allegedly "shuttered its operations." [*Id.* ¶ 49, page 33.]

On February 23, 2011, one of Plaintiff's groups, Stop the Chamber, filed complaints with the District of Columbia Bar against various Hunton & Williams attorneys and on March 11, 2011, it sent a "document hold letter" to "Defendant HB Gary/Federal and most other Defendants" in this case stating "its intent to seek legal remedies in a court of law for the conduct alleged in the instant Complaint." [*Id.* ¶¶ 45–46, page 33.]

The Complaint makes conclusory allegations about activity after this date, but offers *nothing* specific related to any of the Palantir defendants. For instance, in paragraph 44, Plaintiff alleges "[u]pon information and belief," that "one or more of the Defendants, in the spring of 2011, conspired with other actors in an overlapping conspiracy to adopt and implement the central tactics outlined by Team Themis against Plaintiff." [*Id.* ¶ 44, page 32.] Likewise, in paragraph 52, it alleges that "[m]any of the Defendants conspired to cover up their involvement in the Team Themis." [*Id.* ¶ 52, page 34.] These allegations are devoid of any factual content and fail to specify a particular defendant. Separately, in paragraphs 53 through 58, Plaintiff alleges that other, non-Palantir Defendants, "began a covert and then overt campaign to defame, harass and bully" him [*id.* ¶ 53, page 34], purportedly "us[ing] the Team

Themis playbook" [*id.* ¶ 57, page 35], and that one of them "applauded a brutal assault on Plaintiff by his close associate" [*id.* ¶ 58, page 36]. By their own terms, these allegations have nothing to do with Palantir.

## III.  ARGUMENT

### A.  Plaintiff's Claims Are Untimely

If the "governing statute of limitations" on the Plaintiff's claim for relief has run, it "provides a basis for a motion to dismiss." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations [in the complaint], for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim ...."). All of Plaintiff's claims are time-barred.

Although the Racketeer Influenced and Corrupt Organizations Act (RICO) does not expressly contain a statute of limitations, the U.S. Supreme Court has determined that a four-year statute of limitations applies. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 155-56 (1987). The four year period begins to run from when the "plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553-54 (2000). Plaintiff filed his RICO claim on March 16, 2015, so his suit is time-barred if he knew of the alleged injury on or before March 16, 2011. By Plaintiff's own allegations, at the very least, Plaintiff was aware or should have been aware of his injury on February 18, 2011. By February 7, 2011, Anonymous had discovered and posted 70,000 emails from HBGary on the internet. [Compl. ¶ 38, page 28.] By February 18, numerous news outlets had reported on the potential campaign by Team Themis and Hunton & Williams. [*Id.* ¶ 38, pages 28-31.] Included in those news reports was a February 18 post written by Plaintiff's VelvetRevolution co-founder. [*Id.* ¶ 38, page

30.] And on February 23, 2011, Plaintiff's campaign, STC, relied on the leaked emails to file bar complaints against Hunton & Williams attorneys. [*Id.* ¶ 45, page 33.] On or about March 11, 2011, STC sent a document hold letter to HBGary and "most other Defendants" noting its intent to seek legal remedies. [*Id.* ¶ 46, page 33.] From this, it is plain that Plaintiff knew or should have known of his purported injury before March 16, 2011.

Notably, Plaintiff failed to allege *a single act* occurring after February 2011. *See Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) ("Causey alleged he was continually harassed, but we conclude that an allegation of continuous harassment will not save a claim that is otherwise barred by the statute of limitations, absent some showing that an actual violation occurred within the limitations period."). Plaintiff's "naked assertion[]" that he endured continuing harassment after February 2011 is insufficient to save his untimely claims, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), especially without *any* facts that show that defendants "engaged in at least one act of misconduct during the limitations period," *Kashaka v. Baltimore Cty.*, 450 F. Supp. 2d 610, 616–17 & n.14 (D. Md. 2006). Although Plaintiff vaguely alleges that "one or more of the Defendants" and unidentified "other actors" associated with defendants continued the campaign against him through the present, [Compl. ¶ 44, pages 32-33], this is wholly unsupported and in any event insufficient to state a claim against Palantir. *Kashaka*, 450 F. Supp. 2d at 617 & n.14 ("Although Plaintiffs state that officers searched their vehicle and issued them several citations in 2002 and 2004, which is within the limitations period, those officers are unidentified. There is, therefore, no evidence that Officer Kurtz issued any citations or had any conduct whatsoever with Plaintiffs during the limitations period."). Despite filing a 62-page complaint and over 130 pages of exhibits, Plaintiff has offered *no factual support whatsoever* for any action by Palantir after February 2011.

Plaintiff's RICO claims are additionally time-barred as to Palantir because by the Complaint's own terms, Palantir withdrew from the alleged conspiracy by February 11, 2011. [Compl. ¶ 40, page 30.] Not only does Plaintiff include in his Complaint that Palantir publicly severed all ties with HBGary [*id.*], but that same fact is mentioned in several of the news articles cited in the Complaint. [*See id.* Ex. CC, Greenberg, *HBGary Execs Run For Cover As Hacking Scandal Escalates*; *id.* Ex. DD, Andy Greenberg, *HBGary CEO Also Suggested Tracking, Intimidating WikiLeaks' Donors*, Forbes.com (Feb. 14, 2011), *id.* Ex. EE, Greenwald, *The leaked campaign to attack WikiLeaks and its supporters*.] To withdraw from a conspiracy, a defendant must prove "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach [his] co-conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978). Palantir's public statement and severing of all ties with HBGary served precisely this function. Withdrawal, at least in the criminal context, "provides a complete defense when [it] occurs beyond the applicable statute-of-limitations period." *Smith v. United States*, 133 S. Ct. 714, 719 (2013). And because the withdrawal is plain from the face of the Complaint, it is relevant at this stage of the proceedings. *See Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) ("But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).").

Plaintiff's other claims are time-barred as well, because they are all subject to a shorter, three-year statute of limitations. In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Ordinarily, the statute of

limitations begins to run on date of the alleged wrong, assuming that the potential tort plaintiff is aware that he or she has been wronged. *Murphy v. Merzbacher*, 697 A.2d 861, 865 (Md. 1997).

Maryland's three-year period applies to Plaintiff's § 1985 civil rights claim. *See Burnett v. Grattan*, 468 U.S. 42, 49 (1984) ("It is now settled that federal courts will turn to state law for statutes of limitations in actions brought under these civil rights statutes [42 U.S.C. §§ 1981, 1983, 1985].)."; *Kashaka*, 450 F. Supp. 2d at 616 ("Maryland's general three-year statute of limitations applies to Plaintiffs' … § 1985 … claims."); *Hall v. Asher*, 355 F. Supp. 808, 811 (D. Md. 1973) (applying Maryland's general three-year limitations period to claim under § 1985). As with RICO claims, civil rights claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) (citing *Young v. Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961)). And as with the RICO claim, Plaintiff knew or should have known about Palantir's alleged activities in February 2011—more than a year outside of the three-year statute of limitations.

The same three-year statute of limitations applies to Plaintiff's state law claims, and they are barred for the same reason. *See Melendez v. Bd. of Educ. for Montgomery Cty.*, No. DKC 14-3636, 2015 WL 3540947, at *11 (D. Md. June 3, 2015) ("The three-year statute of limitations applies to [invasion of privacy] claims."); *Richardson v. Selective Ins. Grp., Inc.*, No. RDB 06-2594, 2007 WL 1657423, at *6 (D. Md. May 31, 2007) ("Plaintiff's cause of action for tortious interference with prospective economic advantage is governed by the three-year statute of limitations ...."); *Kashaka*, 450 F. Supp. 2d at 616 ("Maryland's general three-year statute of limitations applies to Plaintiffs' … intentional infliction of emotional distress" claims.).

On March 16, 2015, Plaintiff filed this lawsuit— four years, one month, and ten days following initial release of the hacked HBGary emails [Compl. ¶ 38, page 28]; four years, one month, and five days after Palantir publicly severed all ties with HBGary [*id.* ¶ 40, page 31]; four years and twenty-one days after Plaintiff's organization STC filed a bar complaint against Hunton & Williams defendants [*id.* ¶ 45, page 33]; and four years and five days after the date of the "document hold letter" STC sent to HBGary and "most other Defendants" [*id.* ¶ 46, page 33]. There are *no* allegations relating to Palantir that occur within four years of March 16, 2015 and Plaintiff's claims are thus barred by the statutes of limitations. Because this is clear from the face of the Complaint, Plaintiff's claims should be dismissed.

**B.    The Complaint Does Not Allege Cognizable Legal Injury**

Even if his claims were timely, Plaintiff has failed to allege any legal injury, as required by state and federal law. First, Plaintiff has failed to plead an injury to show that he has a "case or controversy" redressable in this court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *id.* at 559–61 (holding that "injury in fact" required for standing under Article III). Moreover, each of Plaintiff's claims require that he plead an injury. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that injury is required element of RICO); *Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 422 (D. Md. 2011) (holding that injury is required element of civil rights claim under § 1985(2)), *aff'd*, 710 F.3d 209 (4th Cir. 2013); *Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 581-82 (D. Md. 2012) (holding that Maryland tort law includes "the principle of *damnum absque injuria*, [under which] a plaintiff cannot recover absent an injury"), *aff'd*, 537 F. App'x 183 (4th Cir. 2013). Under the federal pleading standard, an allegation of injury must be pleaded in terms of specific facts; a court will not "accept unsupported legal allegations, legal conclusions couched as factual allegations, or

conclusory factual allegations devoid of any reference to actual events." *Nat'l Bloggers Club*, 2015 WL 1242763, at *2 (citations omitted).

Plaintiff has failed to plead any particularized facts that show cognizable injury. He pleads no impact on his employment or compensation, and in fact admits that he continues to be employed as "Director of Justice Through Music" and be "involve[d] with" VelvetRevolution. [Compl. ¶ 1, page 6.] He makes only general assertions of "damages and harm, including physical harm" [*id.* ¶ 64, page 42 (Claim I)], "substantial damages" "including physical harm" [*id.* ¶¶ 72–73, page 43 (Claim III)], and "severe emotional distress and mental anguish" [*id.* ¶ 137, page 60 (second Claim VII)]. The claim for conspiracy to interfere with business relations and with prospective economic advantage (first Claim VII) alleges merely that "Plaintiff has been damaged." [*Id.* ¶¶ 128, page 59.] These "conclusory factual allegations devoid of any reference to actual events" are not sufficient to state any of these claims.

Plaintiff provides a slightly longer list of injuries related to his RICO claim, but it is similarly deficient. To bring a civil RICO claim, a plaintiff must allege a "tangible business loss." *In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528, 540 (D. Md. 1996). This Plaintiff has failed to do. The generalized harm he asserts is very similar to what he unsuccessfully alleged in *National Bloggers Club*. Plaintiff alleges that he suffered the following: (1) "having his name falsely smeared"; (2) "having his employer defamed based on those smears"; (3) "having to spend untold hours, days, weeks, months and years defending against the criminal actions of the Defendants"; (4) "having to spend money defending against the Defendants' actions"; (5) "losing employment and funding opportunities"; (6) "having attempted interference with his business relationships and his contract to remain employed by his employer"; (7) "having interference with prospective business advantage"; (8) "having interference with his business as a musician, composer and manager";

(9) "other pecuniary and losses [sic] to real or personal property"; (10) "damages to his body, which constitutes property under RICO, when he was assaulted by an [sic] person not named in this Complaint who adopted the Team Themis racketeering playbook to harm Plaintiff." [Compl. ¶ 139, pages 57–58.]; *cf. Nat'l Bloggers Club*, 2015 WL 1242763, at *11–12 (Plaintiff alleged injuries including "having his name falsely associated with … crimes and false narratives," having "to spend untold hours, days, weeks, months and years defending against the false narratives," "spen[ding] money defending against the false narrative," having "los[t] employment and funding opportunities," and being subjected to "interfere[nce] with prospective business [relations]." (third and fifth alterations in original) (citations omitted)).

As is immediately evident, these threadbare assertions are insufficient to shoehorn his alleged injuries into a viable RICO claim. Indeed, this Court previously chastised Plaintiff for attempting to convert a defamation action into a RICO claim and held that courts "are universally hostile to such attempts." *Nat'l Bloggers Club*, 2015 WL 1242763, at *9. First, several of these allegations are focused on him personally and not on a business, as RICO requires. *See id.* at *11 (holding that Plaintiff's claimed reputational injuries were not actionable under RICO because "RICO is not available for the redress of purely personal injuries" (citation omitted)). Elsewhere in the Complaint, Plaintiff tries to mold reputational injuries into RICO claims by putting the phrase "property interest" in front of his alleged injuries. For instance, Plaintiff claims he had a "'property interest' in continuing his employment," "a 'property interest' in being able to raise funds for [his] business," and "a property interest in pursuing his livelihood and music career without molestation and a harmed reputation." [Compl. ¶ 110, page 51.] Despite the word choice, none of these are actually property.

Second, *none* of these allegations are supported by any facts whatsoever. Plaintiff cites no medical or psychological treatment, no consequences at work in terms of specific business or funding opportunities, and no actual effect on his career. He essentially admits this, because the alleged harm is only that defendants *attempted* to interfere with his business and employment and harm his property. [*Id.* ¶¶ 110, 126, 139, pages 51, 55, 57–58.] But an attempt is not enough, without more, to be a cognizable legal injury. *See Nat'l Bloggers Club*, 2015 WL 1242763, at *12 (Plaintiff "alleges, without any specifics, that he was harmed because he 'los[t] employment and funding opportunities' and because the RICO Defendants' conduct 'interfere[d] with prospective business [relations].' These references to lost 'opportunities' and 'prospective' business relationships are entirely speculative and demonstrate, at most, an '[i]njury to mere expectancy interests' which is 'not sufficient to confer RICO standing.'" (citations omitted)). Moreover, Plaintiff's allegations do not show that any of the tactics purportedly *suggested* by Mr. Barr were actually carried out by Palantir or any other Defendant. [Compl. ¶ 7, page 17; *id.* ¶ 24, pages 23–24; *id.* Ex. O, Email (Nov. 29, 2010, 11:50 a.m.).]

Accordingly, Plaintiff's claims should be dismissed because he has failed to properly allege any redressable harm or injury.

### C. None Of The Federal Claims Are Properly Pleaded Or Supported By The Alleged Facts

Even if the Complaint was not time-barred, and even if Plaintiff had alleged some legally cognizable injury, his Complaint should *still* be dismissed because he has failed to plead any claim on which relief can be granted. The allegations in the Complaint are neither plausible nor particular. Plaintiff cannot plead facts generally but must tie allegations to each element of each cause of action asserted against a defendant. To satisfy that requirement, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court will not

"accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory

factual allegations devoid of any reference to actual events."  *Nat'l Bloggers Club*, 2015 WL 1242763,

at *2; *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s]

devoid of further factual enhancement." (citation and internal quotations marks omitted)).

### 1.    Plaintiff Fails To Plead Facts Supporting A RICO Claim (Claim VI)

The Complaint fails to state a claim to relief because it does not plausibly allege any RICO

predicate act, and thus does not describe a "*pattern* of racketeering" activity.  *See Bast v. Cohen, Dunn

& Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) ("Most fundamentally, Bast makes no allegation of

racketeering activity.  …  Since he fails to specify a single predicate act of racketeering, he certainly

fails to articulate 'a *pattern* of racketeering activity.'" (citation omitted)).  Plaintiff attempts to allege

several RICO predicate acts, but his attempts are unavailing.

### a.    Mail and Wire Fraud, 18 U.S.C. §§ 1341, 1343

In order to show mail or wire fraud as a predicate act, Plaintiff must show "a scheme or artifice

to defraud."  18 U.S.C. §§ 1341, 1343; *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir.

1996) ("The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of

the mails in furtherance of the scheme.").  Plaintiff alleges that the "named Defendants"—he makes no

distinction among them—all committed mail fraud by sending data discs and money through the mail in

furtherance of a "fraudulent conspiracy."  [Compl. ¶¶ 111–12, page 52.]

But even taken as true, this allegation does not identify any intent by a Defendant to *defraud*

Plaintiff.  And the Complaint certainly does not contain any trace of a fraudulent scheme alleged with

particularity, which is required under federal law.  To state a claim for fraud under RICO, a Plaintiff

"must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (To show fraud, a "plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" (citation omitted)); *see also Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 505 (D. Md. 2013) ("When mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply."). A plaintiff may not assert "merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citations omitted). Here, like in *National Bloggers*, Plaintiff "has only provided threadbare allegations about the alleged fraud," and fraud therefore cannot serve as a RICO predicate. 2015 WL 1242763, at *4.

### b.    Obstruction Of Justice, 18 U.S.C. § 1503

Plaintiff alleges that the "named Defendants" obstructed justice by using "false and forged documents in order to discredit [him] so he would not be deemed a credible witness" and by "causing threats of injury and death to be directed at [him] in order to intimidate him from cooperating with law enforcement officials." [Compl. ¶¶ 118–19, page 53–54.] The only specific allegation of an act of obstruction relates to an alleged battery on Plaintiff by some unidentified person who was allegedly a "close associate" of Defendant Hoge, but who is not alleged to be affiliated with Palantir in any way. [*Id.* ¶ 58, page 36; *id.* ¶ 119, pages 53–54.]

The statutory provision Plaintiff cites to support his claims is flatly inapplicable. 18 U.S.C. § 1503 applies to efforts directed at jurors, judges, and officers of the court—Plaintiff is none of the above. In addition, the claim must relate to a proceeding in a federal court, such as a lawsuit or grand

jury proceeding. Section 1503 does not apply to investigations that have not yet become court proceedings. *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."); *see also O'Malley v. N.Y. City Transit Auth.*, 896 F.2d 704, 707–08 (2d Cir. 1990). The *National Bloggers Club* court reached the same conclusion. 2015 WL 1242763, at *6. Thus, Plaintiff's claim that Palantir sought to prevent him from participating in an FBI investigation, besides lacking any factual detail, does not state a claim under § 1503 because an FBI investigation is not a "judicial or grand jury proceeding[]." *See Aguilar*, 515 U.S. at 599.

Plaintiff attempts to get around this requirement by alleging that Defendants tried to deter him from testifying in front of a grand jury, but he does not allege that there actually *was* a grand jury investigation at which he could testify, let alone that he was asked to testify. [*See, e.g.*, Compl. ¶ 2, pages 13–14.] Plaintiff has identified no covered judicial proceeding, nor has he alleged that he knew and could knowledgeably testify to facts relevant to that proceeding, much less that he had been "identified as a prospective witness" in such a proceeding. At most, he makes references to a grand jury indictment of Donald Blankenship—which happened *three years after* the predicate acts of the Complaint. [*Id.* ¶ 62, page 42.]

Finally, as with the rest of Plaintiff's Complaint, this claim is not even close to specific enough regarding Palantir's alleged actions. All of Plaintiff's allegations about the supposed discrediting campaign against him derive from a suggestion by Mr. Barr that was never actually fulfilled and that was never developed nor implemented by Palantir or by anyone else. Plaintiff alleges no actual use of a "false or forged document[]." Nor does he allege that any acts of defamation actually occurred, or that

he knew about the plan to investigate him; without knowledge of the plan he could not be threatened by it.

### c. Intimidation And Retaliation Against A Witness, 18 U.S.C. §§ 1512(d), 1513(b) & (e)

The Complaint does not allege facts sufficient to state a claim under the statutory provisions to which Plaintiff points. Section 1512(d) applies to "[w]hoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—(1) attending or testifying in an official proceeding; (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(d). Section 1513(b) similarly prohibits causing or threatening to cause physical or property damages in order to retaliate against a person for testifying at "an official proceeding." *Id.* § 1513(b). Finally, § 1513(e) applies to anyone who, "with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information." *Id.* § 1513(e)

As with the obstruction of justice claim discussed above, there is no official proceeding alleged here. Plaintiff does not allege that he ever actually participated in an "official proceeding" as defined in 18 U.S.C. § 1515(a)(1), that he was ever invited to do so, or that Palantir prevented him from doing so or retaliated against him because he did. *See Nat'l Bloggers Club*, 2015 WL 1242763, at *6 ("Thus, the plain language of the statute makes clear that it is only a violation of § 1512 when one tampers with or intimidates a witness in an official proceeding."). Therefore, the Complaint fails to state a claim under § 1512(d) or § 1513(b).

Although § 1513(e) does not require an official proceeding, it does require the Complaint to allege some actual harm to Plaintiff or interference with his employment. The Complaint fails to do so.

Plaintiff alleges that the "named Defendants" retaliated against him through "the Team Themis campaign to 'discredit' and fracture his credibility"; by "threats of death and injury" and "actual physical injury"; and by "articles and tweets published or planted by Defendants portraying Plaintiff as untrustworthy and not credible." [Compl. ¶ 121, page 54.] Defendants allegedly did all this "to retaliate against him for providing information to law enforcement officials regarding federal offenses committed by principals of the Chamber of Commerce." [Id.] But Plaintiff does not actually allege publication of any articles, any defamatory statements (other than one incomprehensible tweet having no connection to Palantir [Id. ¶ 54, page 34]), or any other actions that discredited him. Nor does he allege that he *knew* about any such statements, so as to be actually intimidated by them. His allegations are therefore too conclusory to state a claim.

### d.    Money Laundering, 18 U.S.C. § 1957

Plaintiff alleges that the "named Defendants" conspired to launder money "by transferring money from [the Chamber] to [Hunton & Williams] disguised as legal fees for payment of the illegal Team Themis black bag cyber spying campaign." [Compl. ¶ 125, page 55.] A person commits money laundering when he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). The statute requires a monetary transaction in *criminally derived* proceeds. Any money paid to Team Themis was paid *for* allegedly unlawful activity; it was not *derived* from that activity, as would be, for example, cash stolen during a robbery. *See Nat'l Bloggers Club*, 2015 WL 1242763, at *9 ("Thus, § 1957 prohibits one from engaging in a monetary transaction in criminally derived proceeds. Plaintiff's allegations, however, allege only *receipt* of proceeds derived from the alleged money laundering."). Further, the Complaint contains no allegations that any money actually

changed hands. To the contrary, Plaintiff alleges that Team Themis was paid nothing for its work on the planned pitch. [Compl. ¶ 34, pages 26–27; *id.* Ex. Z, Email (Feb. 3, 2011, 4:59 p.m.).]

      **e.**      **Extortion, 18 U.S.C. § 1951, and Written Extortion, Md. Crim. Code § 3-706**

Plaintiff alleges that the "named Defendants" "conspired to engage in extortion by intruding into Plaintiff's legally protected business and First Amendment activities, and personal, family and business relationships, and then conspiring to 'exploit vulnerabilities' to 'pressure' Plaintiff to stop exposing [the Chamber of Commerce], cooperating with the FBI and testifying before any grand jury." [Compl. ¶ 123, pages 54–55.] Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear or under color of official right." 18 U.S.C. § 1951(b)(2). Similar to the federal law, Maryland law applies to intentional attempts to extort "money, property, or anything of value from another." Md. Code Ann., Crim. Law § 3-706(b).

The Complaint lacks any allegation that Palantir, or any other defendant, obtained or attempted to obtain Plaintiff's property without his consent. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404–05 (2003) (upholding dismissal of RICO claim based on extortion where defendants "did not 'obtain' respondents' property" nor receive "'something of value from' respondents that they could exercise, transfer, or sell" (citation omitted). Plaintiff alleges that Defendants acted to take his "livelihood and reputation." [Compl. ¶ 128, page 55.] But those are not things that can be "extorted" from one person and "obtained" by another. A written threat to damage a person's reputation, which is not even actually alleged here against Palantir, is not the same as a threat to damage a person's reputation unless the threatened person pays something of value to the person making the threat. The latter is extortion; the former is not.

### 2. Plaintiff Fails To Plead Facts Supporting A Civil Rights Claim (Claim I)

Plaintiff alleges a violation of section one of 42 U.S.C. § 1985(2). This section prohibits a conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2). As is clear from its text, the statute "requires 'force, intimidation, or threat.'" *Sellner v. Panagoulis*, 565 F. Supp. 238, 246 (D. Md. 1982) (citation omitted), *aff'd*, 796 F.2d 474 (4th Cir. 1986); *Scott v. Mountain Mission Sch., Inc.*, 809 F.2d 786 (4th Cir. 1987), 1987 WL 36169, at, *2 (per curiam) (unpublished table decision) ("use of force, intimidation or threats [are] necessary to state a claim under" § 1985(2)). As shown above in Section B, *supra*, Plaintiff has not alleged any harm to himself beyond vague references to "damages and harm, including physical harm." [*See* Compl. ¶ 64, page 42.] He points to hostile and threatening statements directed at him on the internet, but *none* of these statements are alleged to have come from Palantir or any member of Team Themis.

Moreover, Plaintiff has not alleged that he was a "party" or "witness" as that term is employed in Section 1985. A "witness" under section 1985(2) "does not encompass all persons who may have knowledge of relevant facts," but instead must be someone "who at least has been clearly identified as a prospective witness in a judicial proceeding." *Mattison v. Click Corp. of Am., Inc.*, Civ. A. No. 97-CV-2736, 1998 WL 32597, at *4 (E.D. Pa. Jan. 27, 1998). Plaintiff does not allege any specific judicial proceeding, nor that any party identified him as a potential witness in such a proceeding. Nor has Plaintiff alleged that any grand jury has been empaneled to investigate what he amorphously refers to as "illegal conduct" on the part of the Chamber.

Finally, as required by Section 1985(2), Plaintiff fails to allege that the defendants "were motivated by racial or other class-based, invidiously discriminatory animus." *Sellner*, 565 F. Supp. at

246 ("Further, the 'racial or ... otherwise class-based, invidiously discriminatory animus' requirement …
applies equally to the first part of section 1985(2)."); *Nat'l Bloggers Club*, 2015 WL 1242763, at \*17
(stating that "to state a claim under section 1985(2) a plaintiff must allege that the defendants 'were
motivated by racial or other class-based invidiously discriminatory animus'" (citation omitted)).   There
is no allegation in the Complaint that Plaintiff is a member of a protected class.  All Plaintiff can muster
is that he may be a member of a protected class because of his political views, but the Fourth Circuit has
squarely rejected this interpretation of Section 1985.  *See Harrison v. KVAT Foods Mgmt., Inc.*, 766
F.2d 155, 163 (4th Cir. 1985) (holding Republicans were not members of a protected class); *see also*
*Scott*, 1987 WL 36169, at \*2 (affirming district court's dismissal of § 1985(2) claim for failure to allege
a racial or other class-based animus).

### 3. Plaintiff Fails To Plead Facts Supporting A Claim For Invasion Of Privacy (Claim III)

The Maryland standard for invasion of privacy creates liability for anyone "who intentionally
intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or
concerns, … if the intrusion would be highly offensive to a reasonable person."  *Worsham v. Account*
*Receivables Mgmt., Inc.*, No. Civ. JKB-10-3051, 2011 WL 5873107, at \*6 (D. Md. Nov. 22, 2011)
(citation omitted), *aff'd*, 497 F. App'x 274 (4th Cir. 2012).  Intrusion upon seclusion, a type of invasion
of privacy, is defined as "the intentional intrusion upon the solitude or seclusion of another or his private
affairs or concerns that would be highly offensive to a reasonable person."  *Pemberton v. Bethlehem*
*Steel Corp.*, 502 A.2d 1101, 1116 (Md. Ct. Spec. App. 1986); *Noshafagh v. Leggett,* Civil Action No.
DKC 11-3038, 2013 WL 93345, at \*15 (D. Md. Jan. 7, 2013), *aff'd*, 538 F. App'x 251 (4th Cir. 2013).
To be highly offensive to a reasonable person, the person must have had a "reasonable expectation of
privacy."  *Trundle v. Homeside Lending, Inc.*, 162 F. Supp. 2d 396, 401 (D. Md. 2001).

Plaintiff claims that defendants "conspired to invade Plaintiff's privacy through unreasonable intrusion." [Compl. ¶ 70, page 43.] Yet the only facts supporting this allegation are that Defendants "scraped vast amounts of data from social networking cites." [*Id.* ¶ 59, page 39 (citing *id.* Ex. MM, which lists various people and groups, along with their associated web addresses for Facebook, Twitter, Linkedin, blogs, or other public websites); *id.* ¶ 18, page 21 (alleging that "personal information about principals and staff of STC/VR" was taken from "'scraped Facebook' pages"); *id.* Ex. H, Email (Nov. 9, 2010, 6:30 a.m.) & Ex. G, Email (Nov. 9, 2010, 3:51 p.m.) (showing sources of "personal information" to be public websites and Facebook pages).] It is black letter law that "one's 'reasonable expectation of privacy' cannot encompass anything exposed to the public or third parties." *Ostergren v. Cuccinelli*, 615 F.3d 263, 282 (4th Cir. 2010) (quoting *California v. Greenwood*, 486 U.S. 35, 41 (1988)). Social networking web sites—including Facebook profiles, LinkedIn profiles, Twitter profiles and blogs—are all exposed to some degree to the public. A person does not enjoy a reasonable expectation of privacy on these websites, and therefore a claim for intrusion of privacy predicated on information collected from social media sites must be dismissed. *See, e.g., United States v. Meregildo*, 883 F. Supp. 2d. 523, 525–26 (S.D.N.Y. 2012) (no expectation of privacy when a social media user disseminates his postings and information to the public), *aff'd*, 785 F.3d 832 (2d Cir. 2015); Order at 10–11, *Chaney v. Fayette Cty. Pub. Sch. Dist.*, No. 3:13-cv-00089 (N.D. Ga. Sept. 30, 2013), ECF No. 16 (no reasonable expectation of privacy in Facebook pictures); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144–45 (S.D. Cal. 2005) (dismissing claim for invasion of privacy under California law because plaintiffs photographed themselves and allowed posting of photographs on internet); *Pearce v. Whitenack*, 440 S.W.3d 392, 400–02 (Ky. Ct. App. 2014) (dismissing claim for invasion of privacy under Kentucky law because plaintiff has no expectation of privacy in comment posted on Facebook);

*see also United States v. Bode*, Criminal Case No. ELH-12-158, 2013 WL 4501303, at *16 (D. Md. Aug. 21, 2013) (holding that messages in a public chat room are not private, but that person-to-person email may be). Because Plaintiff did not have a reasonable expectation of privacy in this information, any intrusion cannot be "highly offensive."

> **4.    Plaintiff Fails To Plead Facts Supporting A Claim For Intentional Interference With Business And Prospective Economic Advantage (Claim VII)**

To state a claim for tortious interference with business relations, a plaintiff must allege facts showing each of the following elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the Defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg.*, 831 A.2d 49, 53 (Md. 2003) (citation omitted. For a claim of interference with a prospective economic advantage, a plaintiff must show the same four elements, and also "identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (applying Maryland law).

Plaintiff alleges that unspecified Defendants "attempted" to interfere with his employment at Justice Through Music and VelvetRevolution by "conspiring to fracture, undermine and destroy in order to deprive Plaintiff of his livelihood." [Compl. ¶ 126, page 58.] But "[n]o authority suggests that a cause of action exists to recover for tortious interference with one's occupation and livelihood in general." *Baron*, 471 F. Supp. 2d at 542 (applying Maryland law). Plaintiff's only specific allegation of purported tortious activity under this claim heading concerns an email from Mr. Barr proposing to "Attack [Plaintiff] and after a series of attacks on his person start making ties to the back office folks …

discrediting them by association.  Done in the right way this can cause them to distance themselves and also funders from [Plaintiff]."  [Compl. ¶ 126, pages 58–59 (omission in original) (italicization omitted); *id.* Ex. O, Email (Nov. 29, 2010, 11:50 a.m.).]  But these tactics for "discrediting" Plaintiff were nothing more than a suggestion by Mr. Barr demonstrating the kinds of things he might prepare for Hunton & Williams's clients, if they purchased his services.  Thus, while the Complaint perhaps alleges consideration of potential future *attempts* to interfere, it contains no allegations that these tactics were actually carried out by Palantir or any member of Team Themis.

Further, once again Plaintiff fails to allege any actual damage or loss resulting from Mr. Barr's e-mail, stating only that he "has been damaged by the named Defendants' malicious conspiracy to interfere with his business relations."  [Compl. ¶ 128, page 59.]  To the contrary, Plaintiff's allegations specifically state that he remains employed at both Justice Through Music and VelvetRevolution, with no alleged reduction in his pay or responsibilities.  [*Id.* ¶ 1, page 6.]

### 5. Plaintiff Fails To Plead Facts Supporting A Claim For Intentional Infliction Of Emotional Distress (Second Claim VII)

The elements necessary to impose liability for the independent tort of intentional infliction of emotional distress are: "(1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe."  *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113, (Md. 2000) (citation omitted).  The Maryland Supreme Court had made clear that "each of these elements must be pled and proved with specificity."  *Id.* (citation omitted).  "[C]onclusory allegations" "fail to state a claim."  *Id.* at 114.  Moreover, the plaintiff must allege distress that is severe enough to "disrupt[] his ability to function on a daily basis" and that "no reasonable man could be expected to endure."  *Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 778 (D. Md.

2003) (citations omitted). "Previous cases indicate the high burden imposed by the requirement that a plaintiff's emotional distress be severe." *Manikhi*, 758 A.2d at 114–15 (collecting cases); *Clark*, 247 F. Supp. 2d at 778 (finding no severity for plaintiff who "has suffered anxiety attacks, has had trouble sleeping and eating, has suffered low self-esteem, and has been forced to seek counseling").

Here, Plaintiff makes no allegation that Palantir's conduct was "extreme and outrageous." And even if he had, the Complaint contains no allegations supporting the conclusory claim that Plaintiff suffered severe emotional distress. Instead, Plaintiff vaguely alleges that the conduct of Defendants "as set forth" in the rest of his Complaint "constitutes extreme behavior so far outside the norms of civil society that an ordinary citizen would consider it outrageous conduct." [Compl. ¶ 133, page 59.] He further claims to have suffered unspecified "severe emotional distress and mental anguish" as a result. [*Id.* ¶ 137, page 60.] The Complaint offers no further detail whatsoever showing that Plaintiff actually suffered emotional distress, let alone that any such distress was severe. "Nowhere does the complaint state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*, 758 A.2d at 115. Once again, Plaintiff has failed to state a claim upon which relief can be granted.

## IV. CONCLUSION

Plaintiff's vexatious tactics of bringing every claim imaginable—notwithstanding the absence of any supporting facts—against every conceivable Defendant have gone far enough. For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

September 4, 2015                         Respectfully submitted,

_/s/ Jonathan C. Su_____
Jonathan C. Su (Bar No. 16965)
E-Mail:  jonathan.su@lw.com
Allen M. Gardner (admitted _pro hac vice_)
Bar No. 456723 (DC)
E-Mail:  allen.gardner@lw.com
Alexandra P. Shechtel* (admitted _pro hac vice_)
Bar No. 294639 (CA)
E-Mail:  alexandra.shechtel@lw.com
          * Admitted in California only; all work
          supervised by a member of the D.C. Bar.
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2200
Fax:  (202) 637-2201

_Attorneys for Defendants Palantir Technologies Inc., Alex Karp, Matt Long, Matthew Steckman, & Sam Kremin_