# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MARYLAND

BRETT KIMBERLIN,

      Plaintiff,

v.

HUNTON & WILLIAMS LLP, *et al.*,

      Defendants.

Case No. 8:15-cv-00723-GJH

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY BERICO TECHNOLOGIES AND NICHOLAS HALLAM

September 4, 2015

Attison L. Barnes, III (Bar No. 15198)
Jennifer S. Zucker (*pro hac vice*)
Mark B. Sweet (*pro hac vice*)
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com

*Attorneys for Berico Technologies and Nicholas Hallam*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................. **ERROR! BOOKMARK NOT DEFINED.**

OVERVIEW OF ALLEGATIONS AGAINST BERICO ............................................................1

ARGUMENT…..........................................................................................................................3

I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................4

II.     PLAINTIFF LACKS STANDING ................................................................6

III.    PLAINTIFF FAILS TO STATE A CLAIM ..................................................9

        A.     CLAIM I - Civil Rights Act, 42 U.S.C. § 1985(2) ....................................9

        B.     CLAIM VI - Civil RICO Act,  18 U.S.C. § 1962(c), (d) ......................10

              1.     Plaintiff has not pled existence of RICO enterprise...................................11

              2.     Plaintiff has not pled a pattern of racketeering activity. ...........................12

              3.     Plaintiff has not pled a cognizable RICO injury.......................................19

        C.     State Tort Claims ...................................................................................20

              1.     CLAIM III - Conspiracy to Invade Privacy..............................................20

              2.     CLAIM VII - Conspiracy to Interfere with Business Relations and Conspiracy to Interfere with Prospective Economic Advantage ...............21

              3.     CLAIM VII - Intentional Infliction of Emotional Distress........................23

CONCLUSION…………………………………………………………………………….24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. NVR Homes, Inc.*,
    193 F.R.D. 243 (D. Md. 2000) ............................................................................ 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 9, 20, 23

*Baron Fin. Corp. v. Natanzon*,
    471 F. Supp. 2d 535 (D. Md. 2006) .................................................................. 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 9

*Bhari Info. Tech. Sys. Private Ltd. v. Sriram*,
    984 F. Supp. 2d 498 (D. Md. 2013) .................................................................. 13

*Binion v. O'Neal*,
    No. 14-13454, 2015 WL 3544518 (E.D. Mich. Apr. 2, 2015) ........................... 21

*Bishop v. Bartlett*,
    575 F.3d 419 (4th Cir. 2009) .............................................................................. 7

*Boardley v. Household Fin. Corp., III*,
    39 F.Supp. 3d 689 (D. Md. Aug. 14, 2014) ....................................................... 9

*Boyle v. United States*,
    556 U.S. 938 (2009) .......................................................................................... 11

*Chisolm v. TranSouth Fin. Corp.*,
    95 F.3d 331 (4th Cir. 1996) .............................................................................. 13

*Crest Construction II, Inc. v. Doe*,
    660 F.3d 346 (8th Cir.2011) ............................................................................. 13

*Dehart v. Bonneville Power Admin.*,
    No. CIV 06-369-HA, 2007 WL 2607375 (D. Or. Sept. 4, 2007) ...................... 10

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .............................................................................. 1

*Farasat v. Paulikas*,
    32 F. Supp. 2d 244 (D. Md. 1997) *aff'd,* 166 F.3d 1208 (4th Cir. 1998) ................ 23

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
    180 F. Supp. 2d 678 (D. Md. 2001) ......................................................................18

*Foster v. Wintergreen Real Estate Co.*,
    363 Fed. Appx. 269 (4th Cir. 2010) .....................................................................11

*Fowler v. Wells Fargo Home Mort., Inc.*,
    No. GJH-15-1084, 2015 WL 2342377 (D. Md. May 13, 2015) ...............................4

*Furman v. Sheppard*,
    744 A.2d 583 (Md. Ct. Spec. App. 2000) ..............................................................21

*GE Inv. Private Placement Partners II, v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ................................................................................11

*Graves v. OneWest Bank, FSB*,
    No. PWG-14-1995, 2015 WL 2452418 (D. Md. May 20, 2015) ..............................6

*H.J., Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ..............................................................................................13

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir.1999) .................................................................................13

*Hickman v. Obama*,
    No. CIV JKB-13-1284, 2013 WL 2390869 (D. Md. May 29, 2013) .....................19

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999) ..............................................................................5, 6

*Jones v. Pohanka Auto N., Inc.*,
    43 F. Supp. 3d 554 (D. Md. 2014) ..........................................................................6

*Kimberlin v. Nat'l Bloggers Club*,
    No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015)...................9, 18, 20

*Knickman v. Prince George's Cnty.*,
    187 F. Supp. 2d 559 (D. Md. 2002) ........................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................8

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000) .................................................... 8

*Miller v. Pac. Shore Funding*,
224 F. Supp. 2d 977 (D. Md. 2002) ......................................... 6

*Mitchell v. Baltimore Sun Co.*,
883 A.2d 1008 (Md. Ct. Spec. App. 2005) .............................. 20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ................................................. 10

*O'Malley v. New York City Transit Auth.*,
896 F.2d 704 (2d Cir. 1990) .................................................. 15

*Padilla Rodriguez v. Llorens Quinones*,
813 F.Supp. 924 (D.P.R. 1993) .............................................. 19

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
262 F.3d 260 (4th Cir. 2001) ................................................... 4

*Richardson v. Mayor & City Council of Baltimore*,
No. CIV.A. RDB-13-1924, 2014 WL 60211 (D. Md. Jan. 7, 2014) .......................... 7

*S. Volkswagen, Inc. v. Centrix Fin., LLC*,
357 F. Supp. 2d 837 (D. Md. 2005) ....................................... 22

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003) ............................................................... 17

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985) ......................................................... 10, 11

*Sick, Inc. v. 21st Century Software, Inc.*,
No. CIV. CCB-11-2890, 2012 WL 4076157 (D. Md. Aug. 22, 2012) ...................... 22

*State v. Rendelman*,
947 A.2d 546 (2008) ............................................................. 18

*Sterling v. Ourisman Chevrolet of Bowie Inc.*,
943 F. Supp. 2d 577 (D. Md. 2013) ....................................... 11

*Thacker v. City of Hyattsville,*
762 A.2d 172 (Md. Ct. Spec. App. 2000) ...............................................23

*Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons,*
358 F. Supp. 2d 475 (D. Md. 2005) .......................................................22

*United States v. Aguilar,*
515 U.S. 593 (1995) ................................................................................15

*United States v. Grubb,*
11 F.3d 426 (4th Cir. 1993) ....................................................................14

*United States v. Johnson,*
971 F.2d 562 (10th Cir. 1992) ................................................................18

*United States v. Perez,*
223 F. App'x 336 (5th Cir. 2007) ...........................................................18

*View Point Med. Sys., LLC v. Athena Health, Inc.,*
9 F. Supp. 3d 588 (D. Md. 2014) ...........................................................21

*Wimbush v. Kaiser Found. Health Plan of the Mid Atlantic States, Inc.,*
2015 WL 2090654 (D. Md. May 4, 2015) ................................................6

*Zaycer v. Sturm Foods, Inc.,*
896 F. Supp. 2d 399 (D. Md. 2012) ..........................................................6

**Statutes**

18 U.S.C. §§ 1341, 1343 ................................................................................13

18 U.S.C. § 1503 .............................................................................................14

18 U.S.C. §§ 1512-13 .....................................................................................15

18 U.S.C. §§ 1512(d), (d)(4) ..........................................................................16

18 U.S.C. §§ 1513(b), (b)(2) ..........................................................................16

18 U.S.C. § 1513(e) .........................................................................................16

18 U.S.C. § 1951 .............................................................................................17

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

18 U.S.C. § 1951(b)(2) ...................................................................................17

18 U.S.C. § 1957 ............................................................................................17

18 U.S.C. § 1961(1) ........................................................................................12

18 U.S.C. § 1961(4) ........................................................................................11

18 U.S.C. § 1961(5) ........................................................................................12

18 U.S.C. § 1964(c) ...................................................................................11, 19

42 U.S.C. § 1985(2) ........................................................................................10

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ......................................................5

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ......................................................................................9

Fed. R. Civ. P. 9(b) ...................................................................................11, 13

Fed. R. Civ. P. 12(b)(1) ....................................................................................6

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ..............................................................3

https://en.wikipedia.org/wiki/Brett_Kimberlin ..............................................2

## PRELIMINARY STATEMENT

As is evident from the face of the Complaint, Plaintiff seeks redress for activities that caused no injury and, in any event, never occurred. Plaintiff alleges no plausible theory of a wide-ranging criminal conspiracy involving Defendants Berico Technologies and Nicholas Hallam (collectively, "Berico") and others, because such accusations are not supported by either the cited emails or any other factual allegation in the Complaint. Indeed, Plaintiff alleges nothing more than a potential business venture, and while the Complaint mentions Berico, these allegations are few in number, and none of them involve improper conduct.

Ultimately, all of Plaintiff's claims against Berico are deficient. <u>First</u>, Plaintiff's claims are barred by the applicable statutes of limitations. Plaintiff has known about the purported actions of Berico for several years and has only now filed claims. <u>Second</u>, Plaintiff fails to allege any injury that was purportedly caused by Berico. This is unsurprising as the Complaint primarily relates to activities that never came to fruition. <u>Third</u>, Plaintiff fails to properly plead his claims against Berico. Plaintiff's reliance on conclusory allegations and unsupported assertions is insufficient to state a claim. For these reasons, Plaintiff's claims against Berico should be dismissed.

## OVERVIEW OF ALLEGATIONS AGAINST BERICO

Plaintiff's allegations[1] against Berico are limited to its purported participation in "Team Themis," a group allegedly comprised of Defendants Palantir Technologies, Berico, and HBGary Federal. According to the Complaint, Team Themis was formed in late 2010 in response to Defendant Hunton & Williams' request for certain services in support of its client, Defendant U.S. Chamber of Commerce. Plaintiff's Complaint for Damages, Mar. 16, 2015 ¶ 5, at 16 ("Compl."). Team Themis

---

[1] Berico accepts Plaintiff's allegations as true only for purposes of this Motion to Dismiss. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) ("When ruling on a Rule 12(b)(6) motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

subsequently created a proposal entitled "Corporate Information Reconnaissance Cell" for Hunton & Williams to present to the Chamber of Commerce. *Id.* ¶ 9, at 18. This proposal outlined strategies regarding the collection and analysis of data regarding various individuals and entities. *See generally* Compl. Ex. E, Proposal for Corporate Information Reconnaissance Cell, Nov. 3, 2010.

In preparation for a pitch to Hunton & Williams and the Chamber of Commerce, Defendant Aaron Barr, the CEO of HBGary Federal, reviewed publicly available databases and social media accounts for information on certain persons and entities. *See* Compl. ¶¶ 13, 16, 18, at 19-21. The individuals and entities Barr gathered information on included Plaintiff and two entities he is affiliated with—Stop the Chamber and Velvet Revolution. *See id.* ¶¶ 14, 31. Barr shared some of the information he had collected with Hunton & Williams. *Id.* ¶ 33.[2]

As of January 14, 2011, Barr believed Team Themis had been engaged by Hunton & Williams to conduct a pilot program of its Corporate Information Reconnaissance Cell. *Id.* ¶ 29. However, neither Berico nor Team Themis ever entered into a contract with Hunton & Williams. *See* Compl. ¶ 30. On February 3, 2011, Berico learned that Hunton & Williams would not "commit any funds to this project until we've helped them earn buy-in from their Client (the Chamber)." Compl. Ex Z, Feb. 2011 Emails. Accordingly, Team Themis planned to make a presentation to the Chamber of Commerce sometime around February 14, 2011. *Id.*

Plaintiff alleges that before any such presentation, HBGary Federal was attacked by hackers resulting in a defaced website, the theft of more than 70,000 company emails, and the deletion of company backup files. Compl. ¶ 38. The hackers then posted all of the stolen emails in searchable form on the Internet. *Id.* This hack was widely reported by media outlets. *See id.* Following the release of

---

[2] Among the items Plaintiff alleges Barr shared with Hunton & Williams was the "youthful criminal record" of Plaintiff. Compl. ¶ 33. Plaintiff's many "youthful criminal" convictions, including convictions for felony perjury and a bombing in Speedway, Indiana, are available on public websites. *See, e.g.,* Wikipedia Entry for Brett Kimberlin, *available at* https://en.wikipedia.org/wiki/Brett_Kimberlin.

HBGary Federal's emails by hackers, Berico issued a statement disavowing involvement with Team Themis. *Id.* ¶ 41. The Chamber of Commerce also issued statements to the press asserting that it had no knowledge of Team Themis. *Id.* ¶ 50. The Complaint does not allege that Berico or Team Themis took any actions following the release of the emails.

On March 11, 2011, Stop the Chamber issued document hold letters to Defendant HBGary Federal and "most other Defendants" regarding its intent "to seek legal remedies in a court of law." *Id.* ¶ 46. Stop the Chamber also filed State Bar complaints against some of the named Defendants and sent a letter to the FBI requesting a formal investigation. *Id.* ¶¶ 45, 47. The Complaint does not allege that Stop the Chamber took any additional actions.

Plaintiff subsequently filed this lawsuit on March 16, 2015. The Complaint asserts five claims against Berico: Conspiracy to Violate Civil Rights Act, 42 U.S.C. § 1985 (Claim I); Conspiracy to Invade Privacy (Claim III); Commission of and Conspiracy to Commit Civil RICO, 18 U.S.C. § 1962 (Claim VI); Conspiracy to Interfere with Business Relations and Economic Advantage (Claim VII); and Intentional Infliction of Emotional Distress (Claim VII).[3]

## ARGUMENT

Plaintiff's claims suffer from numerous defects, any one of which requires dismissal of Berico from this action. First, Plaintiff's claims are time-barred. The statutes of limitations have run for each of the claims asserted against Berico. Second, Plaintiff has failed to allege any cognizable injury. Thus, Plaintiff does not have standing to bring his claims against Berico. Finally, each of Plaintiff's claims are improperly pled such that Plaintiff has failed to state any claim against Berico. Accordingly, Plaintiff's claims against Berico must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

---

[3] Plaintiff identifies two different claims as "Claim VII."

# I.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's Complaint concedes that the claims against Berico arise from events occurring more than four years ago.  Not only did these events occur more than four years ago, Plaintiff knew about the alleged actions of Berico shortly after they were alleged to have occurred.  *See* Compl. ¶¶ 45-46.  As none of Plaintiff's claims against Berico have a statute of limitations that is longer than four years, Plaintiff's claims are time-barred.

Courts dismiss claims under Fed. R. Civ. P. 12(b)(6) when it is clear from the face of the complaint that the statute of limitations has expired.  *See Knickman v. Prince George's Cnty.*, 187 F. Supp. 2d 559, 563–64 (D. Md. 2002) (granting 12(b)(6) motion and finding that plaintiff's claim was barred by the applicable statute of limitations).  Civil RICO actions must be filed within four years. *Fowler v. Wells Fargo Home Mort., Inc.*, No. GJH-15-1084, 2015 WL 2342377, at *3 (D. Md. May 13, 2015) (citing *Klehr v. A.O. Smith Carp.*, 521 U.S. 179, 188–89 (1997)); *see also Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001) (stating that plaintiff "may not 'bootstrap' time-barred claims by linking them to later, non-time-barred claims").  "[I]t is the Plaintiff's knowledge of [his] own injury that controls the running of the statute of limitations, and not Plaintiff's knowledge of the underlying RICO pattern." *Id.* at *3 (citing *Rotella v. Wood*, 529 U.S. 549, 556–57 (2000)).

The bulk of Plaintiff's allegations rely on media reports and emails concerning the hacking of Defendant HBGary Federal by the group Anonymous in early February 2011.  *See* Compl. ¶ 38; Exhibits C–NN.  According to the Complaint, the hackers posted roughly 70,000 emails on the Internet in a searchable form on February 6, 2011, which generated substantial media coverage.  *See, e.g.*, Compl. ¶ 38; Ex. CC.  Included in this cache of emails was correspondence among various Defendants,

which Plaintiff liberally cites. In fact, all the allegations involving Berico stem from information in such correspondence.

On the face of the Complaint, Plaintiff was aware of these publicly-released emails and media reports as of February 2011. *See* Compl. ¶ 45. Plaintiff alleges that Stop the Chamber took a number of actions in direct response to these publicly-released emails and media reports. *See id.* ¶¶ 45-46. For instance, Stop the Chamber filed State Bar complaints on February 23, 2011 against Defendants Woods, Wyatt, and Quackenboss. *Id.* ¶ 45. Moreover, Plaintiff concedes that Stop the Chamber issued a document hold notice on March 11, 2011 notifying the Defendants "of its intent to seek legal remedies in a court of law for the conduct alleged in the instant Complaint." *Id.* ¶ 46 (emphasis added).

Plaintiff describes himself as one of Stop the Chamber's "principals," Compl. ¶ 2, at 13, and alleges that he has been involved with Velvet Revolution, the organization running the Stop the Chamber campaign, "for more than eleven years."[4] *Id.* ¶ 1, at 6. As a principal of Stop the Chamber, it is clear that Plaintiff was aware of the released emails and media reports. Despite knowledge of the underlying facts, Plaintiff waited until March 16, 2015 to file his Complaint. This suit comes more than four years and one month after the initial hacking and publication of HBGary Federal's emails. This suit comes more than four years and three weeks after Stop the Chamber filed State Bar complaints against certain Defendants. And this suit comes over four years after Stop the Chamber first threatened litigation. *Id.*

And the statute of limitations for Plaintiff's remaining claims against Berico is even shorter: only three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West) ("Civil actions shall be filed within three years from the date of accrual[.]"); *see also Jersey Heights Neighborhood Ass'n v. Glendening*, 174

---

[4] Plaintiff even devotes several pages of the Complaint to discussing the activities of Stop the Chamber and the actions allegedly taken against it. *See, e.g.,* Compl. at 10-12 (describing past activities of Stop the Chamber and Velvet Revolution).

F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period, which in Maryland is three years.").  These claims accrued when Plaintiff "possess[ed] sufficient facts" such that a "reasonable inquiry" would reveal the cause of action. *Glendening*, 174 F.3d at 187.  Plaintiff also cannot resurrect his claims against Berico by including allegations of more recent, but unrelated, conduct.  *See Wimbush v. Kaiser Found. Health Plan of the Mid Atlantic States, Inc.,* 2015 WL 2090654, at *8 (D. Md. May 4, 2015) (finding that separate alleged torts did not constitute a continuous violation such that the statute of limitations was tolled).  As this suit was filed more than four years after Plaintiff became aware of Defendants' alleged conduct, these claims are time-barred and should be dismissed.

## II.  PLAINTIFF LACKS STANDING

Another fundamental flaw in Plaintiff's claims against Berico is that Plaintiff lacks standing. Most notably, Plaintiff has failed to allege any cognizable injury that can be traced to Berico.  This failure is fatal to every claim Plaintiff asserts against Berico.

"Article III standing is a threshold jurisdictional requirement." *Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 561 (D. Md. 2014).  On a Fed. R. Civ. P. 12(b)(1) motion to dismiss, it is plaintiff's burden to "satisfy the irreducible constitutional minimum of standing[.]"  *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 995 (D. Md. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at *3 (D. Md. May 20, 2015) (stating that "a motion to dismiss for lack of standing is analyzed as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction"); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 408 (D. Md. 2012) ("Individual standing is not merely a pleading requirement, but an 'indispensable part of the plaintiff's case' that 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof'") (quoting  *Lujan*, 504 U.S. at 561).

In order to satisfy the constitutional requirements for standing, Plaintiff must meet three requirements: (1) he has suffered an injury in fact that is concrete and particularized and is actual or imminent; (2) the injury is fairly traceable to the actions of the defendant; and (3) it is likely the injury will be redressed by a decision in favor of the plaintiff. *See Bishop v. Bartlett,* 575 F.3d 419, 423 (4th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Despite Plaintiff's lengthy complaint, he fails to identify actual injuries he has suffered. At best, Plaintiff makes conclusory allegations of injuries, which are insufficient to establish Article III standing. *See Richardson v. Mayor & City Council of Baltimore,* No. CIV.A. RDB-13-1924, 2014 WL 60211, at *4 (D. Md. Jan. 7, 2014) (granting motion to dismiss as plaintiff's complaint contained "only conclusory language pertaining to the elements of standing").

A review of the purported "injuries" suffered by Plaintiff emphasizes Plaintiff's failure to meet his burden regarding Article III standing. Plaintiff claims that (1) as a result of Defendants' conspiracy to violate his civil rights, he has "suffered damages and harm, including physical harm" (Compl. ¶ 64); (2) the Defendants' intrusion into his seclusion has "caused substantial injury to Plaintiff's reputation, business interests, and mental well-being" and caused him "substantial damages" (Compl. ¶¶ 71-72); (3) "Plaintiff has been damaged by the named Defendants' malicious conspiracy to interfere with his business relations" (Compl. ¶ 128, at 59); (4) the Defendants disrupted Plaintiff's business "and deprive[d] Plaintiff of future business" (Compl. ¶ 129, at 59); and (5) "Plaintiff has suffered severe emotional distress and mental anguish." (Compl. ¶ 137, at 60). None of these wild accusations is particularized with any specific facts.

Plaintiff's RICO claim similarly fails to provide anything more than conclusory statements about his purported "injuries."[5]  Plaintiff states that his injuries included: (1) having his name falsely smeared; (2) having to spend time and money defending against the actions of the Defendants; (3) losing employment and funding opportunities; (4) having "attempted interference" with his business relationships; (5) having interference with prospective business advantage and with his business; (6) "other pecuniary and losses to real or personal property;" and (7) "damage to his body" after being "assaulted by an [*sic*] person not named in this Complaint."  Compl. ¶ 139, at 57-58.   In short, Plaintiff fails to allege any "concrete and particularized" injury sufficient to establish standing.

Not only has Plaintiff failed to allege a concrete and particularized injury, he has failed to allege that any of these injuries are traceable to Berico.  *See Lujan,* 504 U.S. at 560 (1992) ("there must be a causal connection between the injury and the conduct complained of").  Plaintiff's standing is undermined by the very nature of his allegations.  In his attempt to plead a wide-ranging conspiracy, Plaintiff has failed to allege any improper actions that were taken by Berico.  Even assuming Berico's involvement with Team Themis, the allegations involving Team Themis merely point to <u>proposed</u> activities.  *See, e.g.,* Compl. ¶¶ 35-36 (discussing Team Themis proposal and personnel that "<u>would</u> conduct and oversee" activities) (emphasis added); Compl. ¶ 38 (quoting articles that describe Team Themis' "proposed services" and "suggested" tactics).  The only actions Plaintiff alleges were actually taken involve Defendant Barr's collection of publicly available information located on social networking websites.  *See, e.g.,* Compl. ¶ 31 (discussing the collection of information from "Facebook and social networking pages").  Nothing in Plaintiff's Complaint suggests any of Plaintiff's alleged injuries were

---

[5] Notwithstanding that the allegations concerning Plaintiff's purported RICO injuries are conclusory, Plaintiff's allegations regarding his injuries also fail to meet the requirements of 18 U.S.C. § 1964(c). *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) ("Apart from the Article III constitutional and prudential standing requirements…plaintiffs seeking recovery under RICO must satisfy additional standing criterion set forth in section 1964(c) of the statute").  The additional deficiencies in Plaintiff's allegations regarding his RICO injuries are detailed below. *See infra* at 9-20.

caused by Berico.[6]  Accordingly, Plaintiff lacks standing to sue Berico because he has failed to allege an injury traceable to Berico.

## III.    PLAINTIFF FAILS TO STATE A CLAIM

To survive a motion to dismiss under Fed. R. P. 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); s*ee also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]") (quotations omitted).  While the Court must generally accept well-pleaded <u>factual</u> allegations as true, it need not accept legal conclusions, *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *3 (D. Md. Mar. 17, 2015), or factual allegations that are contradicted by exhibits attached to the complaint. *Boardley v. Household Fin. Corp., III*, 39 F.Supp. 3d 689, 702 n.4 (D. Md. Aug. 14, 2014).

As noted above, Plaintiff asserts five claims against Berico.  Plaintiff brings statutory claims under the Civil Rights Act and the civil RICO Act.  Plaintiff also brings three tort claims against Berico: invasion of privacy, interferences with business relations and economic advantage, and intentional infliction of emotional distress.  None of these claims are adequately pled.

### A.    CLAIM I - Civil Rights Act, 42 U.S.C. § 1985(2)

Plaintiff alleges that Defendants conspired "to deter and intimidate" Plaintiff from testifying before a grand jury.  Compl. ¶ 62.  Plaintiff's claim fails because, among other things, he does not allege

---

[6] Plaintiff's Complaint includes a number of allegations regarding past activism by Stop the Chamber and Velvet Revolution but these allegations have no apparent connection to Berico.  *See* Compl. ¶¶ 1-4, at 12-16.  Similarly, the Complaint includes allegations involving purported activities occurring in 2014.  *See* Compl. ¶¶ 53-59.  However, these allegations do not involve Berico in any way and the alleged injuries, including the harassment of Plaintiff's daughter and the physical assault of Plaintiff, are of a completely different nature than the injuries allegedly caused by Berico or other purported members of Team Themis. *Id.*

that he was ever called as a witness in federal court, nor does he allege what actions Berico took to deter and intimidate him.

The Civil Rights Act imposes liability on persons who "conspire to deter, by force, intimidation, or threat, <u>any party or witness in any court</u> of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." 42 U.S.C. § 1985(2) (emphasis added). Plaintiff does not identify any court proceeding where he was a party or a witness. Nor does he allege that he was ever asked to testify in any court proceeding. In fact, the allegations suggest just the opposite—that Plaintiff was never called to testify. *See* Compl. ¶ 62 (alleging that his credibility was undermined so that "he would not be called to testify"). As Plaintiff was never a witness in any court, he has failed to state a claim. *See Dehart v. Bonneville Power Admin.*, No. CIV 06-369-HA, 2007 WL 2607375, at *6 (D. Or. Sept. 4, 2007) (holding that plaintiffs' 1985(2) claim fails because they did not make "a showing that plaintiffs had been called as witnesses").

Not only has Plaintiff failed to allege that he was a witness in a court proceeding, he has failed to specify what "tactics" Berico, or any other Defendant for that matter, purportedly used to deter or intimidate him from testifying. Plaintiff's bare assertions of intimidation are insufficient to state a claim. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes").

### B.      CLAIM VI - Civil RICO Act,  18 U.S.C. § 1962(c), (d)

Plaintiff alleges that some, but not all, of the named Defendants (collectively, the "RICO Defendants") engaged in a conspiracy to violate the civil RICO Act. The elements of a RICO claim under 18 U.S.C. § 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). A plaintiff

must also plead injury and causation. *Id.; see also* 18 U.S.C. § 1964(c). Plaintiff's RICO claim fails

because he relies on conclusory allegations. *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp.

2d 577, 588 (D. Md. 2013) (dismissing a § 1962(c) claim supported by "mere conclusory statements")

(citing *Iqbal*, 556 U.S. at 678). Additionally, Plaintiff has failed to satisfy the heightened pleading

standard of the predicate acts involving fraud, as required by Rule 9(b). *See* Fed. R. Civ. P. 9(b).

Plaintiff's RICO claim also fails for numerous other reasons as detailed below.[7]

### 1. Plaintiff has not pled existence of RICO enterprise.

The RICO Act defines an "enterprise" as "any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(4). Plaintiff alleges the existence of an association-in-fact enterprise. *See* Compl. ¶

101 ("All named Defendants and unnamed persons constitute an association-in-fact[.]"). An

association-in-fact enterprise "must have at least three structural features to implicate the RICO statute

[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient

to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946

(2009).

Plaintiff fails to plead a RICO "enterprise" because he does not allege an enterprise of sufficient

longevity to pursue the enterprise's purpose. Plaintiff alleges that the enterprise formed in September

2010 and cites two purposes of the alleged enterprise: (1) to promote the Chamber of Commerce's

business interests and (2) to harm Plaintiff. Compl. ¶¶ 101-02. However, the Complaint indicates that

any association of the RICO Defendants ended shortly after the release of HBGary Federal's hacked

emails in February 2011. *See* Compl. ¶ 38. Plaintiff affirms that after the release of emails, Berico

---

[7] As Plaintiff has failed to state a claim under § 1962(c), his "charge of conspiracy to violate RICO pursuant to § 1962(d) is also without merit." *Foster v. Wintergreen Real Estate Co.*, 363 Fed. Appx. 269, 275 n. 6 (4th Cir. 2010); *see also GE Inv. Private Placement Partners II, v. Parker*, 247 F.3d 543, 551 n. 2 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim [under § 1962(d)] fails as well.").

issued a statement disavowing involvement with Team Themis.  Compl. ¶ 41.  As set forth in the

Complaint, Team Themis was still in the planning stages when it dissolved, s*ee supra* at 2-3, and the

RICO Defendants did not otherwise associate.  Thus, the RICO Defendants never took any improper

actions against Plaintiff.

Nor does Plaintiff allege that the purported enterprise continued past the release of HBGary

Federal's hacked emails.  Plaintiff alleges that the RICO enterprise either went through February 27,

2015 (Compl. ¶ 102) or is continuing its "activities to the present time" (Compl. ¶ 104).  In either case,

none of the allegations addressing conduct following the Spring 2011 email release involve any of the

RICO Defendants.  The allegations addressing more recent conduct solely involve Defendants Pacific

Northwest National Laboratory, Bill Nickless, and William Hoge.  The Complaint alleges that these

other defendants merely used tactics similar to what Team Themis had planned in order to harm

Plaintiff.  *See, e.g.,* Compl. ¶ 57 ("Defendant Hoge has used the Team Themis playbook").  Plaintiff

does not otherwise allege how such defendants are associated with the RICO Defendants.  Tellingly,

Plaintiff does not assert his RICO claim against Defendants Pacific Northwest National Laboratory,

Nickless or Hoge.  Plaintiff therefore fails to allege the existence of a RICO enterprise because he does

not adequately plead that an association had sufficient longevity to pursue the purposes of the alleged

enterprise.

### 2. Plaintiff has not pled a pattern of racketeering activity.

A "pattern of racketeering activity" is defined as "at least two acts" of racketeering activity

within 10 years of each other.  18 U.S.C. § 1961(5).  "Racketeering activity" is further defined under 18

U.S.C. § 1961 to include the commission of several federal statutory and state common law offenses,

known as "predicate acts." *See* 18 U.S.C. § 1961(1).  To establish a pattern of racketeering activity, the

plaintiffs must show that (1) the predicate acts are related, and (2) they pose a threat of continued

criminal activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiff has failed to allege <u>any</u> predicate acts let alone a sufficient number of predicate acts to constitute a "pattern of racketeering activity."

### a.    Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)

Plaintiff alleges that the RICO Defendants committed the predicate acts of mail and wire fraud by sending discs through the mail and trading thousands of emails "in furtherance of their conspiracy to harm Plaintiff." Compl. ¶¶ 111, 114. To plead mail or wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme. *See Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996). Additionally, when pleading claims based in fraud, a "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, "[w]hen mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply." *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 505 (D. Md. 2013).

To meet the requirements of Rule 9(b), a plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999); *see also Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir.2011) ("Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how:  the first paragraph of any newspaper story"). Additionally, a complaint fails to meet the particularity requirements of Rule 9(b) "when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citations omitted).

Plaintiff fails to allege the predicate acts of mail or wire fraud because he fails to allege any scheme by the RICO Defendants to defraud Plaintiff. Plaintiff makes conclusory allegations that the RICO Defendants "utilized mail fraud and wire fraud to conduct their racketeering activities." Compl. ¶ 115. Plaintiff compounds his pleading failures by making blanket allegations against multiple defendants without specifically identifying how Berico committed mail or wire fraud. In short, Plaintiff's allegations regarding mail or wire fraud fall woefully short of the heightened pleading standard set forth in Rule 9(b). Accordingly, Plaintiff has failed to sufficiently allege the predicate acts of mail or wire fraud.

### b. Obstruction of Justice (18 U.S.C. § 1503)

Plaintiff alleges that the RICO Defendants obstructed justice in violation of 18 U.S.C. § 1503 when they prevented him from "cooperating with the FBI" and from testifying in a grand jury proceeding. *See* Compl. ¶ 117. The elements of a claim of obstruction of justice are (1) a pending federal judicial proceeding; (2) where the defendant knew of the proceeding, and (3) the defendant had corrupt intent to interfere with or attempted to interfere with the proceeding. *United States v. Grubb*, 11 F.3d 426, 437 (4th Cir. 1993).

As an initial matter, Plaintiff has failed to allege how any RICO Defendant interfered with any investigation or grand jury. Once again, Plaintiff relies on conclusory statements that the RICO Defendants obstructed justice.[8] *See, e.g.,* Compl. ¶ 117 (Defendants "conspired to influence, obstruct, imped [*sic*], and endeavor to influence, obstruct, or impede, the due administration of justice by conspiring to, intimidating and smearing and physically harming Plaintiff"). Such conclusory statements are insufficient to state a claim.

---

[8] At most, Plaintiff alleges that a person "committed battery against Plaintiff," but Plaintiff does not identify that person or otherwise allege that the person had any connections or affiliations with Berico or any of the other purported members of Team Themis. *See* Compl. ¶ 119.

Notwithstanding his reliance on conclusory statements, Plaintiff's fails to plead this predicate act for another reason: Plaintiff has not adequately pled the existence of a "federal proceeding." "To constitute an offense under th[e] [obstruction of justice] statute, the [offending] act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990). Plaintiff makes oblique references to grand jury proceedings but never alleges that one was actually convened or that the RICO Defendants had knowledge that one was convened.[9] *See, e.g.*, Compl. at 11 ("Plaintiff offered to testify at any grand jury proceedings"). Nor are Plaintiff's allegations regarding a federal investigation sufficient as an investigation is not considered a "federal proceeding." *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."). Thus, Plaintiff has failed to allege the predicate act of obstruction of justice.

### c. Retaliation of a Witness and Victim (18 U.S.C. §§ 1512-13)

Similar to his allegations regarding obstruction of justice, Plaintiff alleges that the RICO Defendants "intimidate[d]" and "retaliate[d]" against Plaintiff in order to prevent him from being a witness or from providing information to law enforcement. *See* Compl. ¶ 121. Specifically, Plaintiff alleges that the RICO Defendants violated Sections 1512(d) and 1513(b) and (e) of Title 18 by tampering with a witness and retaliating against a witness.

Under Section 1512(d), a person engages in witness tampering if he "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from ... causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding ... or attempts to do so." 18 U.S.C. §§ 1512(d), (d)(4). Plaintiff fails to

---

[9] At most, Plaintiff alleges a grand jury proceeding was empaneled to investigate Donald Blankenship in 2014, well after the dissolution of Team Themis. *See* Compl. ¶ 62.

allege witness tampering because he does not allege any instance where he was hindered, delayed, prevented, or dissuaded by any of the RICO Defendants from "causing a criminal prosecution" to be instituted. On the contrary, Plaintiff alleges that he met with "agents of the Washington DC Field Office" in November 2010 and continued to provide information to the FBI "over the next several years" without any incidents. Compl. ¶ 4, at 16.

Under Section 1513(b), a person engages in witness retaliation if he "knowingly…causes bodily injury …or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for…any information relating to the commission or possible commission of a Federal offense." 18 U.S.C. §§ 1513(b), (b)(2). Plaintiff fails to allege witness retaliation under this section because he does not allege that any of the RICO Defendants physically harmed him or his property.[10] Plaintiff simply asserts that he received "threats of death and injury, actual physical injury, and injury caused by articles and tweets." Compl. ¶ 121. These mere assertions of threats and injuries are insufficient.

Under Section 1513(e), a person also engages in witness retaliation if he "knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. § 1513(e). Plaintiff alleges that he was retaliated against through a purported "campaign to 'discredit' and fracture his credibility." Compl. ¶ 121. However, Plaintiff never alleges that this "campaign" ever moved past the planning stages. *See supra* at 2-3. Nor does Plaintiff otherwise allege how he was harmed in his lawful employment or livelihood in retaliation for providing his information to law enforcement. Indeed, Plaintiff is currently the Director of Justice Through Music and has been involved

---

[10] As discussed above, the only physical attack Plaintiff alleges did not involve any of the RICO Defendants. *See supra* n. 8.

with Justice Through Music and Velvet Revolution for more than 11 years. Compl. ¶ 1, at 6. Plaintiff also claims that he works in Maryland and is engaged in the "business of music." *Id.* As Plaintiff alleges that he is currently employed and still in the "business of music," it is unclear from the Complaint how his employment or livelihood was harmed by the RICO Defendants. Thus, Plaintiff does not allege the predicate act of witness retaliation or tampering.

### d.    Extortion, Conspiracy and Attempted Extortion (18 U.S.C. § 1951)

"Extortion" is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." 18 U.S.C. § 1951(b)(2). Plaintiff fails to allege "extortion" by the RICO Defendants because he does not allege that any RICO Defendant obtained any "property" from him. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 394 (2003) (finding that defendants did not engage in extortion as "neither pursued nor received 'something of value from' respondents that they could exercise, transfer, or sell"). Instead, Plaintiff merely alleges that the RICO Defendants were conspiring to "pressure" him to stop cooperating with law enforcement or testifying before a grand jury. Comp. ¶ 123. This is not extortion. Thus, Plaintiff does not properly allege the predicate act of extortion.

### e.    Money Laundering (18 U.S.C. § 1957)

Plaintiff alleges that the RICO Defendants laundered money by "transferring money from the COC [Chamber of Commerce] to H&W disguised as legal fees for the payment of the illegal Team Themis black bag cyber spying campaign." Compl. ¶ 125, at 55. To establish money laundering under § 1957, a plaintiff must plead: (1) the defendant knowingly engaged or attempted to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from

specified unlawful activity. *See United States v. Johnson,* 971 F.2d 562, 567 n. 3 (10th Cir. 1992); *see also United States v. Perez*, 223 F. App'x 336, 344 (5th Cir. 2007).

Plaintiff fails to allege the predicate act of money laundering because he does not allege any transaction involving criminally derived property. Plaintiff makes a bare assertion that money "disguised as legal fees" was transferred between the Chamber of Commerce and Hunton & Williams but Plaintiff does not allege that this money was derived from unlawful activity. To the extent Plaintiff is alleging that § 1957 was violated by purported members of Team Themis's receiving payment for their allegedly illegal activities, this too is insufficient to state a claim.[11] Section 1957 does not prohibit the underline receipt of proceeds from criminal activities but instead prohibits engaging in monetary transactions underline in criminally derived proceeds. *See Kimberlin,* 2015 WL 1242763, at *9 ("[H]e alleges that the RICO Defendants obtained criminally-derived proceeds by perpetrating a fraud. But the SAC contains no allegations whatsoever that the RICO Defendants engaged in any monetary transactions with those proceeds."). Thus, Plaintiff fails to allege the predicate act of money laundering.

### f.  Maryland Extortion  (Md. Crim. Code § 3-706)

The final RICO predicate act Plaintiff alleges is extortion under Maryland state law. "The elements of extortion by writing, under [§ ] 3–706, are that the defendant, 1) with the intent to unlawfully extort property, 2) knowingly send or deliver "a writing threatening to" reveal incriminating or disreputable information about the victim (i.e., blackmail), or to physically, emotionally, or economically injure the victim, or to harm his property." *State v. Rendelman*, 947 A.2d 546, 559 (2008). Plaintiff fails to allege a claim for extortion under Maryland law for the same reason he has failed to

---

[11] To the extent Plaintiff is alleging that any purported member of Team Themis received payment for its activities, this is flatly contradicted by exhibits to the Complaint. *See* Compl. Ex. Z  (email stating that "[Hunton & Williams] won't commit any funds to this project").  "When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail."  *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001).

allege extortion under federal law—Plaintiff does not allege what property is being extorted.[12] *See supra* at 17. Plaintiff also does not allege any threatening "writing" that was drafted by any RICO Defendant. Thus, Plaintiff fails to plead the predicate act of extortion under Maryland law.

### 3. Plaintiff has not pled a cognizable RICO injury.

Finally, Plaintiff has not pled a cognizable injury sufficient to grant him standing to bring a RICO claim. Only a person "injured in his business or property by reason of a violation" of the RICO Act may bring a civil RICO claim. 18 U.S.C. § 1964(c). Plaintiff's allegations regarding his purported RICO injuries suffer from numerous defects.

Plaintiff states that his RICO injuries included:

> having his name falsely smeared; having his employer defamed based on those smears; having to spend untold hours, days, weeks, months and years defending against the criminal actions of the Defendants; having to spend money defending against the Defendants' actions; losing employment and funding opportunities; having attempted interference with his business relationships and his contract to remain employed by his employer; having interference with prospective business advantage; having interference with his business as a musician, composer and manager, and other pecuniary and losses to real or personal property…[and] he was assaulted by an [*sic*] person not named in this Complaint.

Compl. ¶ 139, at 57-58. As an initial matter, these allegations are conclusory and do not provide detail sufficient to ascertain what his actual injuries were. However, there are numerous other problems with Plaintiff's allegations regarding his purported injuries. First, Plaintiff alleges several injuries to his person or reputation; these are not cognizable injuries under RICO. *See Hickman v. Obama*, No. CIV JKB-13-1284, 2013 WL 2390869, at *1 (D. Md. May 29, 2013) ("Plaintiff alleges only personal injuries and RICO is not available for the redress of purely personal injuries."); *Padilla Rodriguez v. Llorens Quinones*, 813 F.Supp. 924, 929 (D.P.R. 1993) ("conclud[ing] that damages relating to injury to reputation are personal injuries not recoverable under RICO"). Second, Plaintiff alleges certain

---

[12] Plaintiff's allegation that his livelihood and reputation are the property or "things of value" being extorted is nonsensical.

pecuniary losses stemming from such personal injuries; these are also not recoverable under RICO. *See Kimberlin,* 2015 WL 1242763, at *12 ("RICO does not permit a plaintiff to recover for pecuniary losses resulting from personal injury."). Third, Plaintiff's remaining allegations regarding personal injuries suffered in his professional capacity are too speculative to state an actual injury. *Id.* ("references to lost 'opportunities' and 'prospective' business relationships are entirely speculative and demonstrate, at most, an injury to mere expectancy interests which is not sufficient to confer RICO standing") (quotation marks and citation omitted). Accordingly, Plaintiff also fails to allege a cognizable injury under the RICO Act.

### C.       State Tort Claims

Plaintiff brings three state tort claims against Berico: invasion of privacy, interference with business relations and prospective economic advantage, and intentional infliction of emotional distress. Just as Plaintiff's RICO Act and Civil Rights Act claims have pleading defects, all three of Plaintiff's tort claims have pleading defects.

### 1.       CLAIM III - Conspiracy to Invade Privacy

Plaintiff does not state how his privacy was invaded. *See* Compl. ¶¶ 69-74. Plaintiff instead flatly states the Defendants "conspired to invade Plaintiff's privacy through unreasonable intrusion upon [his] seclusion" based on the facts he alleges earlier in the Complaint. *Id.* ¶70. Notwithstanding that this is not even a "threadbare recital[] of [the] cause of action's elements[,]" *Iqbal*, 556 U.S. at 663, Plaintiff's claim fails for another reason—his allegations only reference the collection of <u>public</u> information about Plaintiff.

In Maryland, invasion of privacy requires the Plaintiff's "<u>private</u>" affairs actually be invaded. *See Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1022 (Md. Ct. Spec. App. 2005) (recognizing the elements of an invasion of privacy claim are the (1) intentional (2) intrusion upon the solitude or

seclusion of another or his private affairs or concerns that (3) would be highly offensive to a reasonable person) (emphasis added).

Presumably, Plaintiff is alleging that there was intrusion into his private affairs because certain information about him was collected. *See supra* at 2. But the only information collected by any of the Defendants was information Plaintiff made public on social media sites like Facebook. Compl. at ¶¶ 16, 18, at 20-21. Information posted on social media sites is publicly available information. *See Binion v. O'Neal*, No. 14-13454, 2015 WL 3544518, at *2-3 (E.D. Mich. Apr. 2, 2015) (finding plaintiff's invasion of privacy and intrusion upon seclusion claims fail when he posted the information in question on social media). Because this information was made public by Plaintiff in the first instance, there could not possibly be any intrusion upon Plaintiff's solitude. *See Furman v. Sheppard,* 744 A.2d 583, 586 (Md. Ct. Spec. App. 2000) ("There is no liability for observing [plaintiff] in public places since he is not then in seclusion.").

### 2. CLAIM VII - Conspiracy to Interfere with Business Relations and Conspiracy to Interfere with Prospective Economic Advantage

Plaintiff's interference claims fail because he does not identify an act of interference or any damage resulting from it. Instead, Plaintiff offers only the legal conclusion that his business relations were interfered with. Further undermining Plaintiff's claim is that the Complaint includes allegations indicating that Plaintiff remains in the exact same economic position that he was in prior to the actions alleged in the Complaint.

In Maryland, 'tortious interference with prospective advantage and intentional interference with a business relationship are two names for the same tort." *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 614 n. 20 (D. Md. 2014). To state a claim, Plaintiff must allege (1) an intentional and willful act; (2) calculated to cause damage to his lawful business; (3) done with the

unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of defendants (which constitutes malice); and (4) actual damage and loss resulting. *Sick, Inc. v. 21st Century Software, Inc*., No. CIV. CCB-11-2890, 2012 WL 4076157, at *5 (D. Md. Aug. 22, 2012).

As is clear from the face of the Complaint, Plaintiff does not allege any actual acts carried out by Berico, or any other Defendant. As discussed above, Plaintiff's allegations merely recount discussions of <u>proposed</u> acts. *See supra* at 2. The activities discussed in the emails cited in the Complaint were never carried out as Team Themis never moved past the proposal stage. *Cf. Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 482 (D. Md. 2005) ("This inaction on the part of the Defendants cannot be characterized as interference with business relationships by improper means under Maryland law").

Plaintiff also does not allege any actual damages or loss. In fact, the Complaint suggests quite the opposite as Plaintiff is still employed as a principal of Justice Through Music and Velvet Revolution and "has an agreement to continue that work." Compl. ¶ 126, at 58. Simply alleging that "Plaintiff has been damaged[,]" without stating how or why is insufficient. *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 852 (D. Md. 2005) ("As previously stated, the Court need not accept legal conclusions couched as factual allegations. Plaintiffs offer no facts to indicate how they arrived at the conclusion that Defendant's statement [] cause[d] economic injury to the Plaintiffs."). Moreover, it is clear that unsupported allegations about damage to unidentified "future business" are insufficient. *See Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542-46 (D. Md. 2006) ("[A]n individual must allege more than a disruption of a future relationship to a yet to be determined party-a reasonable probability must be shown that a contract will arise from the parties' current dealings.") (quoting RESTATEMENT (SECOND) OF TORTS § 766B) (internal quotations omitted).

### 3.    CLAIM VII - Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress bears many of the same flaws present in his other claims—Plaintiff merely parrots the elements of the claim without including the "how" or "why."

"The tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997) *aff'd,* 166 F.3d 1208 (4th Cir. 1998).  To support such a claim, Plaintiff must allege (1) intentional or reckless conduct; (2) that is also extreme or outrageous; (3) there is a causal connection between the conduct and the emotional distress; and (4) the resulting emotional distress was severe.  *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000).  The distress must be so severe that a plaintiff "suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it."  *Id.* (quotation marks omitted).

Plaintiff never alleges what (if any) "emotional distress" he purportedly suffered.   Instead, Plaintiff merely asserts that he suffered "severe emotional distress and mental anguish."  Compl. ¶ 137, at 60.  Again, this is merely a threadbare recital of the elements of his claim, which is insufficient.  *See Iqbal*, 556 U.S. at 643; *see also Farasat*, 32 F. Supp. 2d at 248 (dismissing claim that contained no allegations that "that plaintiff was ever treated by a physician for his mental anguish, that he was ever hospitalized because of a severely disabling emotional condition, that he lost sleep or weight, or that he was unable subsequently to live a normal life").

Plaintiff also fails to allege the conduct that purportedly caused his "severe emotional distress and mental anguish."  Compl. ¶ 137, at 60.  "To be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Farasat*, 32 F. Supp. 2d at 248.  (quotations omitted).  But nothing in the Complaint describes any

conduct that was "extreme" or "outrageous." Thus, Plaintiff has failed to state a claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all of Plaintiff's claims against Berico Technologies and Nicholas Hallam.


September 4, 2015                    By: /s/ Attison L. Barnes, III
                                         Attison L. Barnes, III (Bar No. 15198)
                                         Jennifer S. Zucker (pro hac vice)
                                         Mark B. Sweet (pro hac vice)
                                         Wiley Rein LLP
                                         1776 K Street NW
                                         Washington, DC 20006
                                         Tel: (202) 719-7000
                                         Fax: (202) 719-7049
                                         abarnes@wileyrein.com

                                         *Attorneys for Berico Technologies and Nicholas Hallam*