## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| Brett Kimberlin, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 8:15-cv-00723-GJH |
| Hunton & Williams LLP, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS HUNTON & WILLIAMS LLP, JOHN WOODS, RICHARD WYATT, AND ROBERT QUACKENBOSS

Dated:  September 4, 2015

John J. Buckley, Jr. (Bar No. 06249)
Barrett J. Anderson (Bar No. 13900)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5051
Facsimile: (202) 434-5058
E-Mail: jbuckley@wc.com

*Counsel for Defendants Hunton & Williams LLP, John Woods, Richard Wyatt, and Robert Quackenboss*

## TABLE OF CONTENTS

I.  Introduction ..................................................................................................................1

II.  Factual Background ......................................................................................................2

    A.  The Parties .............................................................................................................2

    B.  The Anonymous Cyber-Attack ..............................................................................5

    C.  Current Proceedings ..............................................................................................6

III.  Argument ......................................................................................................................6

    A.  The Complaint Is Untimely on All Counts ............................................................6

    B.  The Complaint Fails To Adequately Plead a Claim for Civil RICO ....................11

        1.  Enterprise ........................................................................................................12

        2.  Pattern of Racketeering Activity .....................................................................14

            a.  Racketeering Activity .................................................................................14

                1)  Mail and Wire Fraud .............................................................................15

                2)  Obstruction of Justice, Witness Intimidation, and Witness Tampering ..................................................................................16

                3)  Federal and State Extortion ...................................................................18

                4)  Money Laundering .................................................................................19

            b.  Pattern .........................................................................................................20

        3.  Cognizable RICO Injury .................................................................................21

            a.  Injury to Business or Property .....................................................................21

            b.  Proximate Cause ..........................................................................................22

    C.  The Complaint Fails To Adequately Plead a Claim for Conspiracy Under 42 U.S.C. § 1985(2) ..............................................................................................23

    D.  The Complaint Fails To Adequately Plead State Law Claims ..............................26

        1.  Invasion of Privacy ........................................................................................27

i

2.      Tortious Interference with Business Relations .........................................27

3.      Intentional Infliction of Emotional Distress ..............................................29

4.      Maryland Conspiracy Law........................................................................30

IV.    Conclusion ......................................................................................................................31

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A Soc'y Without a Name v. Virginia*,
   655 F.3d 342 (4th Cir. 2011) ..............................................................8, 10, 24

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987)..............................................................................7

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*,
   155 F.3d 500 (4th Cir. 1998) ..............................................................11

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................9, 13

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
   No. 1:14-cv-00636, --- F. Supp. 3d ----, 2015 WL 402927
   (E.D. Va. Jan. 27, 2015)....................................................................14

*Baron Fin. Corp. v. Natanzon*,
   471 F. Supp. 2d 535 (D. Md. 2006) ..............................................28, 29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................10, 11, 29

*Biggs v. Eaglewood Mortg., LLC*,
   582 F. Supp. 2d 707 (D. Md. 2008) ..............................................11, 12, 30

*Biktasheva v. Red Square Sports, Inc.*,
   366 F. Supp. 2d 289 (D. Md. 2005) ..............................................15

*Boyle v. United States*,
   556 U.S. 938 (2009)............................................................................14

*Brooks v. City of Winston-Salem*,
   85 F.3d 178 (4th Cir. 1996) ..............................................................7, 10

*Bryant v. Better Bus. Bureau of Greater Md., Inc.*,
   923 F. Supp. 720 (D. Md. 1996)........................................................29

*Carson v. Giant Food, Inc.*,
    187 F. Supp. 2d 462 (D. Md. 2002) .............................................................29

*Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*,
    763 F. Supp. 2d 759 (W.D.N.C. 2011) .......................................................23

*Cole v. Anne Arundel County Bd. of Educ.*,
    No. CCB-05-1579, 2006 WL 3626888 (D. Md. Nov. 30, 2006)...........................28

*CoStar Realty Info., Inc. v. Field*,
    612 F. Supp. 2d 660 (D. Md. 2009) .............................................................12

*D'Addario v. Geller*,
    264 F. Supp. 2d 367 (E.D. Va. 2003) .....................................................12, 14

*David v. United States*,
    820 F.2d 1038 (9th Cir. 1987) .....................................................................26

*Durbin v. Haring*,
    No. RWT 07cv2186, 2010 WL 152001 (D. Md. Jan. 7, 2010) ...............................8

*Dutton v. Montgomery County*,
    No. DKC 2008-3504, 2009 WL 2496844 (D. Md. Aug. 11, 2009)....................25, 26

*Facey v. Dae Sung Corp.*,
    992 F. Supp. 2d 536 (D. Md. 2014) .............................................................24

*Fare Deals, Ltd. v. World Choice Travel.com, Inc.*,
    180 F. Supp. 2d 678 (D. Md. 2001) ...............................................................6

*Gamble v. Fradkin & Weber, P.A.*,
    846 F. Supp. 2d 377 (D. Md. 2012) .............................................................27

*GE Inv. Private Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ...........................................................11, 21, 23

*Glynn v. Impact Sci. & Tech., Inc.*,
    807 F. Supp. 2d 391 (D. Md. 2011)...............................................................25

*Grant v. Shapiro & Burson, LLP*,
    871 F. Supp. 2d 462 (D. Md. 2012)......................................................13, 15, 21

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)...................................................................................14

*Halle Dev., Inc. v. Anne Arundel County*,
121 F. App'x 504 (4th Cir. 2005) ....................................................................7, 10

*Hejirika v. Md. Div. of Corr.*,
264 F. Supp. 2d 341 (D. Md. 2003) ..............................................................29, 30

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ..................................................................................................22

*Hogan v. Winder*,
762 F.3d 1096 (10th Cir. 2014) .........................................................24, 25, 26

*Jersey Heights Neighborhood Ass'n v. Glendening*,
174 F.3d 180 (4th Cir. 1999) ..............................................................................7

*Johnson v. Bank of Am., N.A.*,
No. PJM 12-3808, 2013 WL 3989104 (D. Md. Aug. 1, 2013).............................10

*Kimberlin v. Frey*,
No. GJH-13-3059, 2015 WL 1431571 (D. Md. Mar. 26, 2015)...........................23

*Kimberlin v. Nat'l Bloggers Club*,
No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015).................... passim

*Kush v. Rutledge*,
460 U.S. 719 (1983)...............................................................................................23

*Lewin v. Cooke*,
28 F. App'x 186 (4th Cir. 2002) ...........................................................................26

*Massey v. Ojaniit*,
759 F.3d 343 (4th Cir. 2014) ...........................................................................4

*Mayes v. Bd. of Educ. of Prince George's County*,
No. PJM 13-3770, 2014 WL 3973930 (D. Md. Aug. 12, 2014)...........................30

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) ...............................................................14, 20, 21

*Nasim v. Warden, Md. House of Corr.*,
64 F.3d 951 (4th Cir. 1995) (en banc) ............................................................7, 10

*Rockwell v. Mayor & City Council of Balt.*,
No. RDB-13-3049, 2014 WL 949859 (D. Md. Mar. 11, 2014)...........................24

*Rodriguez v. Unite Here Local 25*,
    No. DKC 13-1544, 2014 WL 1464373 (D. Md. Apr. 14, 2014) ............................................10

*Rotella v. Wood*,
    528 U.S. 549 (2000).......................................................................................................7, 10

*Rutledge v. Arizona Bd. of Regents*,
    859 F.2d 732 (9th Cir. 1988) ........................................................................................26

*Salinas v. United States*,
    522 U.S. 52 (1997)........................................................................................................24

*Scott v. Mountain Mission Sch., Inc.*,
    809 F.2d 786, 1987 WL 36169 (4th Cir. 1987) ..............................................25, 26

*Sekhar v. United States*,
    133 S. Ct. 2720 (2013)..................................................................................................18

*Sellner v. Panagoulis*,
    565 F. Supp. 238 (D. Md. 1982) ...................................................................................23

*Simmons v. Poe*,
    47 F.3d 1370 (4th Cir. 1995) ........................................................................................24

*Sirpal v. Fengrong Wang*,
    No. WDQ-12-0365, 2012 WL 2880565 (D. Md. July 12, 2012) .....................................27, 28

*Timmerman v. U.S. Bank, N.A.*,
    483 F.3d 1106 (10th Cir. 2007) ....................................................................................24

*U.S. Airline Pilots Ass'n v. AWAPPA, LLC*,
    615 F.3d 312 (4th Cir. 2010) ...................................................................................11, 21

*United States v. Aguilar*,
    515 U.S. 593 (1995)......................................................................................................17

*United States v. Blair*,
    661 F.3d 755 (4th Cir. 2011) ........................................................................................16

*United States v. Butler*,
    211 F.3d 826 (4th Cir. 2000) ........................................................................................19

*United States v. Cofield*,
    11 F.3d 413 (4th Cir. 1993) ..........................................................................................17

*United States v. Kubrick,*
    444 U.S. 111 (1979)..........................................................................................8

*United States v. Najjar,*
    300 F.3d 466 (4th Cir. 2002) ........................................................................20

*United States v. Perry,*
    335 F.3d 316 (4th Cir. 2003) ........................................................................17

*United States v. Petruk,*
    781 F.3d 438 (8th Cir. 2015) ........................................................................18

*Virginia v. Black,*
    538 U.S. 343 (2003)........................................................................................23

*Vuyyuru v. Jadhav,*
    No. 3:10BCV173, 2011 WL 1483725 (E.D. Va. Apr. 19, 2011) .........................17

*Wallace v. Trost,*
    No. DKC 13-3473, 2014 WL 4388389 (D. Md. Sept. 4, 2014) ...........................10

*Walters v. McMahen,*
    795 F. Supp. 2d 350 (D. Md. 2011)................................................................10

*Wright v. Oliver,*
    99 F.3d 1133, 1996 WL 531299 (4th Cir. 1996) ...............................................10

**STATE CASES**

*Harris v. Jones,*
    380 A.2d 611 (Md. 1977) ..............................................................................30

*Lloyd v. Gen. Motors Corp.,*
    916 A.2d 257 (Md. 2007) ..............................................................................30

*NRT Mid-Atl., Inc. v. Innovative Props., Inc.,*
    797 A.2d 824 (Md. 2002) ..............................................................................30

*Poole v. Coakley & Williams Constr., Inc.,*
    31 A.3d 212 (Md. 2011) ..................................................................................7

*State v. Rendelman,*
    947 A.2d 546 (Md. 2008) ........................................................................18, 19

# OTHER AUTHORITIES

18 U.S.C. § 1341 ...................................................................................................15

18 U.S.C. § 1343 ...................................................................................................15

18 U.S.C. § 1503(a) ..............................................................................................16

18 U.S.C. § 1512 ...................................................................................................17

18 U.S.C. § 1512(d) ..............................................................................................16

18 U.S.C. § 1513(b) ..........................................................................................16, 17

18 U.S.C. § 1513(e) ..........................................................................................16, 17

18 U.S.C. § 1951 ...................................................................................................18

18 U.S.C. § 1951(a) ..............................................................................................19

18 U.S.C. § 1951(b)(2) .........................................................................................18

18 U.S.C. § 1956(c) ..............................................................................................19

18 U.S.C. § 1957(a) ..............................................................................................19

18 U.S.C. § 1961(1) ..........................................................................................14, 19

18 U.S.C. § 1962(c) ...........................................................................6, 7, 11, 12, 23

18 U.S.C. § 1962(d) .......................................................................................6, 7, 23

18 U.S.C. § 1964(c) ..............................................................................................21

42 U.S.C. § 1985(2) .........................................................................................passim

42 U.S.C. § 1985(3) ..............................................................................................26

Federal Rule of Civil Procedure 9(b) ...................................................................15

Federal Rule of Civil Procedure 12(b)(6) ............................................................11

Md. Code Ann., Crim. Law § 3-701(b) ................................................................18

Md. Code Ann., Crim. Law § 3-706 .................................................................18, 19

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................................7

I.    **Introduction**

Plaintiff Brett Kimberlin is no stranger to this Court.  Just a few months ago, the Court

dismissed with prejudice substantially similar claims in his suit in *Kimberlin v. National*

*Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015).  The Complaint

he has filed in this case against, *inter alia*, the law firm of Hunton & Williams LLP ("H&W"), its

current partners Richard Wyatt and Robert Quackenboss, and its former partner John Woods

(collectively "the H&W Defendants") suffers from the same flaws as his complaint in *National*

*Bloggers* and should meet the same fate.

Here, as in *National Bloggers*, Kimberlin alleges a civil RICO conspiracy perpetrated

against him by a bevy of defendants, coupled with a host of other federal and state law claims.

Each of Kimberlin's claims is based on nothing more than conclusory statements and speculative

assertions.  None comes anywhere close to meeting the pleading standards of the Federal Rules

of Civil Procedure.

In addition, the Complaint suffers from an independent—yet equally fatal—defect:  each

of the alleged causes of action is time-barred under the applicable statutes of limitations.  The

staleness of the claims is evident from the face of the Complaint.  Kimberlin acknowledges that

he created and directs a self-described "campaign" called StoptheChamber.com ("STC"), which,

on February 23, 2011—more than four years ago—filed a bar complaint against Messrs. Woods,

Wyatt, and Quackenboss in the District of Columbia based on the same allegations that form the

predicate for the present Complaint.  There can be no dispute that Kimberlin was aware of any

purported claims against the H&W Defendants as of February 2011.  Yet Kimberlin delayed

filing suit until *March 16, 2015*, at which point both the four-year limitations period applicable

to any RICO claim and the three-year limitations period applicable to all of his other purported

claims had expired.  Consequently, his Complaint must be dismissed as time-barred.

## II.      Factual Background

The following factual description is based solely on the allegations in the Complaint and the exhibits appended thereto.  By reciting these allegations, in a light most favorable to Kimberlin, the H&W Defendants in no way indicate any agreement with them.

### A.      The Parties

Kimberlin is a self-proclaimed leading critic of the Chamber of Commerce of the United States ("the Chamber").  He is a co-founder of "VelvetRevolution.us, a 501(c)(4) advocacy organization," Compl. ¶ 1 (page 6), which spawned the Kimberlin-operated STC, a so-called "campaign" that was "launched in September 2009 in order to expose unethical activity, excesses and lack of transparency of the Chamber," *id.* at 10.  VelvetRevolution and STC admit to using harassing tactics against the Chamber, such as "post[ing] a reward of $200,000 for information that leads to the arrest and conviction of [Chamber CEO Tom] Donohue."  Compl., Ex. OO at 1.

On April 29, 2010, STC and VelvetRevolution spokesperson Kevin Zeese issued a press release accusing the Chamber of operating like the mafia and conspiring to break the law. Compl., Ex. C at 1.  In response, H&W—counsel for the Chamber—sent a standard cease-and-desist letter to the public relations firm that issued the press release.  *Id.*  The public relations firm subsequently removed STC's release from its website.  Compl. ¶ 2 (page 13).

During the same period, H&W was advising the Chamber about legal remedies it might pursue against organizations that were harassing the Chamber and making false and defamatory statements about it.  Compl. ¶ 5 (page 16).  In order to evaluate the Chamber's litigation options, the H&W Defendants first needed to identify the persons behind these attacks and any inter-connections.  To do so, they explored the possibility of hiring a group of private vendors—Defendants Palantir Technologies, Inc., Berico Technologies, Inc., and HBGary Federal—that were associating under the name "Team Themis."  On November 3, 2010, the Team Themis

entities pitched their services to H&W with a document entitled "Corporate Information Reconnaissance Cell," which represented that they were "trusted within the Intelligence Community" and had respected organizations such as the United States federal government and law enforcement entities as clients.  Compl., Ex. E at 2–3.  That document further represented that Team Themis specialized in gathering and analyzing *publicly-available* information such as that available on Google, Facebook, Twitter, and LinkedIn to discover previously unknown connections between organizations and the persons who control them.  *Id.* at 2 (describing the challenge posed by "people and/or organizations [that] use the inherent insecurity in Internet communications to conduct criminal or unethical activities" and listing Team Themis's expertise in "Open Source Analysis"); *id.* at 5 (highlighting that "Team Themis consistently uses a combination of *open source tools and data subscriptions*," listing "[p]rimary information resources" including LexisNexis and publicly-accessible social media and internet sites, and referring to "*open source* Intelligence, Surveillance and Reconnaissance" (emphases added)).[1]

Team Themis subsequently prepared and sent additional pitch materials in the form of a number of "example" or mock reports on December 1, 2010 to H&W; Plaintiff attaches these mock reports as exhibits to his Complaint.  Compl., Exs. Q, R, S, T.  Notably, the subject of the mock reports was U.S. Chamber Watch (an entity to which Kimberlin alleges no ties), and not Kimberlin, VelvetRevolution, or STC.  *Id.*, Exs. Q, R, S, T.  In fact, Kimberlin's name appears in only three documents sent to the H&W Defendants:  (1) Exhibit G, an email that contains a short description of VelvetRevolution, STC, and their founders (citing open sources and referring to

---

[1] The Complaint avers that the H&W Defendants were impressed by the "Palantir 'Iranian shipping' presentation."  Compl. ¶¶ 11 (page 19), 34 (pages 26–27).  That video demonstration used only publicly-available, open-source information from Internet news sources, as it prominently announces beginning at the 1:25 minute mark.  *See id.* ¶ 11 (page 19) (citing https://www.youtube.com/watch?v=iqMNzcspEyM (last visited Sept. 4, 2015)).

publicly-available information); (2) Exhibit T, which at page 2 includes a chart listing Kimberlin as connected to VelvetRevolution (a fact he acknowledges in his Complaint); and (3) Exhibit MM, which at page 3 notes that Kimberlin is a founder of VelvetRevolution, had been convicted of a series of bombings and drug trafficking charges, and was believed to have previously changed his name (all of which are factually correct and matters of public record).[2]

The Complaint does not allege that the information contained in Team Themis's pitch materials or other emails was private or was not obtained from public sources.  Significantly, the exhibits do not indicate that Team Themis's proposals were ever approved by the H&W Defendants, much less implemented.  To the contrary, the exhibits show that on November 10, 2010—after receiving four emails containing more publicly-available information from HBGary CEO Aaron Barr over the space of two days (Exhibits F, G, H, and I)—Mr. Woods of H&W directed Team Themis to "stand down."  Compl., Ex. K.[3]

Finally, the Complaint does not allege that the H&W Defendants ultimately hired or paid Team Themis.  In fact, exhibits attached to the Complaint demonstrate precisely the opposite:  as of February 3, 2011, "H&W [was] unable/unwilling to pay any fees/costs to [Team Themis]," and would not "commit any funds to this project until [Team Themis had] helped them earn buy-in from their Client (the Chamber)."  *Id.*, Ex Z.

---

[2] Kimberlin is mentioned in only three other exhibits, but these communications were internal to Team Themis and were not alleged to have been requested by, sent to, or seen by the H&W Defendants.  Compl., Exs. O, W, X.

[3] The Complaint  baselessly alleges that, in an email to Mr. Woods, HBGary CEO Aaron Barr "promis[ed] to exploit 'pressure points'" of Kimberlin and his colleague Brad Friedman.  Compl. ¶ 13 (pages 19–20).  Neither that phrase nor anything like it appears in Exhibit G, which includes only biographical information on both individuals.  *Id.*, Ex. G.  When allegations in a Complaint "contradict matters properly subject to judicial notice or by exhibit," the court need not accept them.  *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (internal quotation marks omitted).

**B.      The Anonymous Cyber-Attack**

In early February 2011, before any decision was made whether to use Team Themis's

services or the scope of those services, and before any presentation was made to the Chamber

regarding Team Themis, HBGary was cyber-attacked by the hacker group Anonymous.  The

attack came after Mr. Barr (also a Defendant in this suit) announced on February 4, 2011 that he

had uncovered and intended to make public the identities of key members of Anonymous.

Compl. ¶ 38 (page 28); *id.*, Ex. AA.  Anonymous retaliated by using flagrantly illegal means to

hack into HBGary's servers and steal more than 70,000 communications and documents, and

subsequently released them to the public.  Compl. ¶ 38 (page 28); *see also id.*, Ex. BB.

Among the stolen documents were the Team Themis pitch materials discussed above,

internal Team Themis discussions relating to its proposals to the H&W Defendants, and

confidential communications between the H&W Defendants and Team Themis.  Kimberlin

primarily bases his allegations on selective and out-of-context quotations and snippets from these

unlawfully obtained documents, many of which are appended to his Complaint as exhibits.

Anonymous's release of the hacked documents sparked a "frenzy of media coverage in

major publications."  Compl. ¶ 38 (page 28).  As of February 7, 2011, the entirety of the stolen

HBGary document collection was posted online "in a searchable form on the Internet."  *Id.*  Mere

days after the hack of HBGary, Kimberlin's VelvetRevolution co-founder Brad Friedman,

Compl. ¶ 1 (page 6), publicly discussed a "potential civil action" and a "civil complaint" against

H&W and others, *id.*, Ex. FF at 4, 6, and other commentators mentioned that the groups and

individuals named in the Team Themis documents were "considering commencing civil

proceedings" against the H&W Defendants, Team Themis, and the Chamber, *id.*, Ex. HH at 3.

As a result of the release of the HBGary documents, the entities comprising Team

Themis stopped cooperating with each other and communicating with the H&W Defendants; in

effect, Team Themis ceased to exist.  Specifically, Palantir "sever[ed] any and all contacts with HB Gary" and Berico "disavowed" its ties to Team Themis. Compl. ¶¶ 40–41 (pages 31–32). For its part, HBGary eventually "shuttered its operations."  *Id.* ¶ 49 (page 33).

On February 23, 2011, based on the confidential documents stolen from HBGary in the Anonymous hack, STC filed a complaint with the District of Columbia Bar against Messrs. Woods, Wyatt, and Quackenboss.  Compl. ¶ 45 (page 33).  STC also sent a document hold request to the H&W Defendants on February 28, 2011, noting "potential litigation" in connection with the HBGary documents and requesting that the H&W Defendants preserve documents accordingly.  Ex. 1, Document Hold Letter; *see also* Compl. ¶ 46 (page 33).[4]

### C.      Current Proceedings

On March 16, 2015—more than four years after Anonymous released HBGary's confidential documents—Kimberlin filed the instant action.  D.I. 1.

The Complaint alleges claims against the H&W Defendants for conspiracy to violate the Civil Rights Act, 42 U.S.C. § 1985(2) (Claim 1); conspiracy to invade privacy and intrusion into seclusion (Claim 3); conspiracy to violate the civil RICO statute, 18 U.S.C. § 1962(c)–(d) (Claim 6); conspiracy to interfere with business relations and prospective economic advantage (Claim 7); and intentional inflection of emotional distress (Claim 8).

## III.    Argument

### A.      The Complaint Is Untimely on All Counts

"[D]ismissal . . . is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," including when the asserted claims are time-

---

[4] The Court can take judicial notice of the Document Hold Letter because, even though it is not attached to the Complaint as an exhibit, it is referenced in the Complaint.  Compl. ¶ 46 (page 33); *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001).

barred under the applicable statute of limitations. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). That is the case here.

The statute of limitations for civil RICO claims under 18 U.S.C. § 1962(c)–(d) is four years from the accrual of the claim. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The remainder of Kimberlin's claims are governed by Maryland's residual three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101.[5] All of the claims here are governed by the "discovery rule," which "start[s] the clock when a plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000). A plaintiff is on notice of his injury if he "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc); *see also Halle Dev., Inc. v. Anne Arundel County*, 121 F. App'x 504, 507 (4th Cir. 2005) ("Halle's cause of action . . . accrued at that time, and is now barred by Maryland's three-year statute of limitations.").[6]

As discussed below, Kimberlin fails to plead a cognizable injury to his business or property for civil RICO purposes, which makes it difficult to ascertain when the alleged injury

---

[5] For civil rights claims under 42 U.S.C. § 1985(2), the applicable statute of limitations is "the state's personal injury limitations period, which in Maryland is three years." *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999).

[6] For the Maryland state law claims, the Court should find the injury accrued on February 7, 2011, because "[i]n Maryland, the general rule is that the running of limitations against a cause of action begins upon the occurrence of the alleged wrong, unless there is a legislative or judicial exception which applies." *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 236 (Md. 2011). Maryland courts only apply the "discovery rule" as an exception to the statute of limitations when the plaintiff is "blamelessly ignorant of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain." *Id.* at 236–37 (internal quotation marks omitted). In this case, Kimberlin is not ignorant—blamelessly or otherwise—because he alleges massive publicity in the media about the HBGary documents, the posting online in searchable form of the entirety of those documents, and STC's well-publicized filing of the bar complaint against the H&W lawyers based on the documents. Therefore, the "discovery rule" exception is irrelevant.

would have accrued.  However, to the extent that the Complaint can be read as pleading any injury at all, it is clear from the allegations in the Complaint that he knew or should have known of that injury more than four years before filing this action.

According to the Complaint, Kimberlin knew the factual predicate for his claims on February 7, 2011, when Anonymous published on the Internet the documents it stole from HBGary.  Specifically, Kimberlin avers in his Complaint that the release of the hacked HBGary documents attracted vast amounts of public attention and generated "a frenzy of media coverage in major publications."  Compl. ¶ 38 (page 28).  The publication of the HBGary documents, which forms the basis for Kimberlin's alleged injury, also put him on inquiry notice on February 7 that he had been injured.  *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (finding under discovery rule that "[a]t the very latest, [plaintiff] knew or should have known of its purported injury stemming from the alleged conspiracy to relocate homeless services . . . when the Conrad Center opened"); *Durbin v. Haring*, No. RWT 07cv2186, 2010 WL 152001, at *2 (D. Md. Jan. 7, 2010) ("[T]he limitations period certainly began to run when the State's Attorney for Montgomery County publicly indicted Defendants Doring and Haring."); *see also United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("There are others who can tell him if he has been wronged, and he need only ask.").  It is thus unsurprising that, almost immediately after the HBGary documents were disseminated via the Internet, commentators (including Brad Friedman, Kimberlin's VelvetRevolution co-founder) publicly remarked on the possible filing of civil litigation and bar complaints against the H&W Defendants.  Compl. ¶ 38 (pages 28–31); *id.*, Exs. FF at 6 (stating that "I can also confirm that such an effort [to file a bar complaint] is moving forward" and noting further the potential for a "civil complaint"), HH at 3 ("Many of the

named targets are actively considering commencing civil proceedings . . . as well as ethical grievances with the relevant Bar associations.").

Not only was Kimberlin on inquiry notice by February 7, the Complaint discloses that he had *actual* knowledge of any alleged injury on February 23, 2011, because STC—the "campaign" that Kimberlin admittedly operates and co-founded, Compl. at 10 & ¶ 1 (page 6)— "filed bar complaints with the District of Columbia Bar Counsel against Defendants Woods, Wyatt and Quackenboss." *Id.* ¶ 45 (page 33). Indeed, large sections of the Complaint in this action are cut and pasted *verbatim* (typographical errors and all) from what STC represents is the bar complaint it filed against the H&W lawyers. Ex. 3, Comparison of Complaints.[7] And further showing that Kimberlin was aware of his alleged injury, STC—Kimberlin's self-described "campaign," Compl. at 10—sent a document hold request to the H&W Defendants dated February 28, 2011. Ex. 1, Document Hold Letter. As the Complaint states, this letter notified the H&W Defendants "of [STC's] intent to seek legal remedies in a court of law for the conduct alleged in the instant Complaint." Compl. ¶ 46 (page 33).[8]

---

[7] As of this filing, a copy of what purports to be STC's February 7, 2011 bar complaint remains posted on STC's website. Ex. 2, Bar Complaint, *available at* http://www.velvetrevolution.us /images/H_W_Bar_complaint.pdf (last visited Sept. 4, 2015). All references to the "bar complaint" contained herein are references to the document that appears on the STC website. The Court can take judicial notice of the bar complaint for the same reasons it may consider the Document Hold Letter: because it is referenced in the Complaint. Compl. ¶ 45 (page 33); *see supra* note 4. The document indicates that it was filed "on behalf of StopTheChamber.com and VelvetRevolution.us." Ex. 2, Bar Complaint, at 1. Because Kimberlin affirmatively acknowledges that he controls both organizations, his knowledge of the bar complaint posted on the website and the alleged conduct described therein (which form the basis for his allegations of injury) cannot be gainsaid.

[8] The Complaint makes a variety of allegations about events that purportedly occurred after the February 7 release of HBGary's confidential documents, such as that in the following years "one or more Defendants . . . implement[ed] the central tactics outlined by Team Themis." Compl. ¶ 44 (pages 32–33). Such allegations are "naked assertions devoid of further factual enhancement" and thus cannot be sustained. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Furthermore, none of these allegations directly implicate the

Regardless of which of these dates is selected, the fact remains that Kimberlin was indisputably on notice of his purported injuries prior to March 16, 2011.  Kimberlin thus filed his Complaint outside of both the four-year window applicable to civil RICO claims and the three-year statute of limitations applicable to his remaining claims.  Accordingly, the Complaint must be dismissed with prejudice as untimely.  *Brooks*, 85 F.3d at 182–83; *Nasim*, 64 F.3d at 956; *A Soc'y Without a Name*, 655 F.3d at 348; *Halle Dev.*, 121 F. App'x at 507–08; *see also Wright v. Oliver*, 99 F.3d 1133, 1996 WL 531299, at *2 (4th Cir. 1996) ("Because these claims accrued almost four years before suit was filed, they are time barred under the applicable three-year statute of limitations."); *Wallace v. Trost*, No. DKC 13-3473, 2014 WL 4388389, at *5 n.13 (D. Md. Sept. 4, 2014) (dismissing civil RICO claims and noting "Plaintiff's own allegations suggest that he became aware of the injury" more than four years before filing the lawsuit); *Rodriguez v. Unite Here Local 25*, No. DKC 13-1544, 2014 WL 1464373, at *2–5 (D. Md. Apr. 14, 2014) (dismissing complaint as time barred under applicable statute of limitations); *Johnson v. Bank of Am., N.A.*, No. PJM 12-3808, 2013 WL 3989104, at *2–3 (D. Md. Aug. 1, 2013) (dismissing complaint as untimely under Maryland statute of limitations).

---

H&W Defendants, except one:  Kimberlin states that "[u]pon information and belief, on or about March 15, 2011, after the Team Themis campaign of illegal dirty tricks was exposed, Defendant Wyatt removed incriminating evidence from the offices of H&W."  Compl. ¶ 39 (page 31).  Plaintiff does not allege that Mr. Wyatt's alleged actions injured him.  Nor does the Complaint specify the basis for the allegation, aver that documents or other evidence were destroyed or otherwise spoiled, or indicate what "incriminating information" was allegedly removed.  Further, an allegation on "information and belief" is insufficient to plead a claim under *Twombly*.  *Walters v. McMahen*, 795 F. Supp. 2d 350, 356 (D. Md. 2011) (rejecting claim "pled on information and belief" as insufficient).  In any event, the allegation is irrelevant, because what matters for statute-of-limitation purposes is when Kimberlin became aware of his purported injuries.  *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000).

**B.     The Complaint Fails To Adequately Plead a Claim for Civil RICO**

Under Rule 12(b)(6), a claim for relief must rise "above the speculative level." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Kimberlin's claim for conspiracy to violate the

civil RICO statute (Claim 6) falls well short of that mark.

Civil RICO under 18 U.S.C. § 1962(c) is a unique law targeted at rooting out "organized,

long-term, habitual criminal activity" and therefore carries with it the specter of "drastic"

remedies.  *U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)

(internal quotation marks omitted).  The Fourth Circuit has recognized that courts "must . . .

exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run

of commercial transactions; that treble damage suits are not brought against isolated offenders

for their harassment and settlement value; and that the multiple state and federal laws bearing on

transactions . . . are not eclipsed or preempted." *Id.* (internal quotation marks omitted).  To that

end, "RICO treatment is reserved for conduct whose scope and persistence pose a special threat

to social well-being," *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th

Cir. 2001) (internal quotation marks omitted), and "was not designed for, and cannot be applied

to, ordinary claims of fraud," *Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 714 (D.

Md. 2008) (internal quotation marks omitted) (finding civil RICO "is not a cause of action to be

pled lightly"); *see also Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155

F.3d 500, 506 (4th Cir. 1998) (vacating district court's civil RICO ruling because there was "not

enough to distinguish Anderson's claim from an ordinary fraud claim better prosecuted under

state law").  The present Complaint does not satisfy these stringent pleading requirements.  *See*

*Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *2 (D. Md. Mar. 17,

2015) (noting seriousness of civil RICO actions and holding Kimberlin's civil RICO claim "is not such a case").

To allege a claim for a civil RICO violation, a plaintiff must demonstrate:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Biggs*, 582 F. Supp. 2d at 712, and that "(5) he was injured in his business or property (6) by reason of the RICO violation," *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003).  In *National Bloggers*, this Court dismissed Kimberlin's civil RICO claims because he had not sufficiently pled the elements of enterprise, pattern, racketeering activity, cognizable injury, or causation. 2015 WL 1242763, at *2–14.  His RICO allegations here suffer from many of the same, and several additional, defects.

### 1.       Enterprise

A well-pleaded allegation of a RICO enterprise must show "'(1) an ongoing organization . . . , (2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity.'"  *Nat'l Bloggers*, 2015 WL 1242763, at *3 (quoting *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 676–77 (D. Md. 2009)).  The Complaint here fails to meet that standard and lacks adequate factual allegations to support the existence of a RICO enterprise.

First, as in *National Bloggers*, Kimberlin has made only "[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure," and thus has not adequately alleged an ongoing organization.  2015 WL 1242763, at *3 (internal quotation marks omitted).  His formulaic assertion that "H&W and its attorneys, John Woods, Richard Wyatt and Robert Quackenboss" served as "primary leaders of the association in fact," Compl. ¶ 105 (page 49), is entirely devoid of any supporting factual allegations.  *Nat'l Bloggers*, 2015 WL 1242763, at *3 ("Put simply, Kimberlin has failed to allege any material facts about the enterprise's structure.");

*see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (rejecting claims failing to "infer more than the mere possibility of misconduct"). At most, the communications between the H&W Defendants and Team Themis reveal preliminary discussions about a possible engagement of Team Themis to conduct Internet research using publicly-available sources. There are no facts alleged to support a plausible inference that the H&W Defendants hired, retained, directed, or controlled any conduct of other Defendants, let alone that any such conduct was illegal.[9]

Second, to the extent there was an "ongoing organization," Kimberlin does not adequately allege facts to show that the H&W Defendants were a part of it. *Nat'l Bloggers*, 2015 WL 1242763, at *3 (internal quotation marks omitted). At most, the Complaint alleges a one-off scenario in which the Team Themis entities sought to pitch their services *to* the H&W Defendants. A blanket allegation that unnamed defendants "functioned as a continuing unit"— as Kimberlin has done here—is inadequate: "Such a naked assertion devoid of further factual enhancement need not be credited when evaluating the sufficiency of enterprise allegations on a motion to dismiss." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (internal quotation marks omitted).

Beyond Kimberlin's failure to satisfy even the ordinary factors for RICO enterprises, "association-in-fact" enterprises of the type alleged by Kimberlin require a plaintiff to allege "at least three structural features: a purpose, relationships among those associated with the

---

[9] The Complaint is utterly devoid of factual allegations connecting the H&W Defendants in any way to Defendants ManTech International ("ManTech"), Pacific Northwest National Laboratory ("PNNL"), Bill Nickless, or William Hoge. Kimberlin concedes this factual disconnect when he alleges that these parties acted independently of the H&W Defendants. Compl. ¶¶ 49 (page 33) (alleging no connection to ManTech except that it bought assets from HBGary), 53 (page 34) (alleging PNNL and Mr. Nickless "*began* a covert and then overt campaign" against Kimberlin in 2014, well after the last alleged involvement of the H&W Defendants (emphasis added)), 57 (pages 35–36) (alleging not that Mr. Hoge received direction from the H&W Defendants but rather simply "used the Team Themis playbook").

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

*Boyle v. United States*, 556 U.S. 938, 946 (2009).  The Complaint alleges that the enterprise had

two purposes:  (1) to harm and otherwise deter Kimberlin from cooperating with law

enforcement, Compl. ¶¶ 101 (page 48), 106 (page 49), 135 (page 56); and (2) to profit from this

same activity, *id.* ¶¶ 108 (pages 50–51), 137 (page 57).  But the Complaint does not include facts

sufficient to support either of those purposes.  *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,

No. 1:14-cv-00636, --- F. Supp. 3d ----, 2015 WL 402927, at *4 (E.D. Va. Jan. 27, 2015)

("While Plaintiff has stated a purpose for the associated-in-fact enterprise, that purpose lacks

factual support to make the theory more than speculative.").  And the Complaint fails to

demonstrate sufficient longevity because it accepts on its face that any purported "organization"

ended by February 7, 2011, when the Team Themis entities ceased cooperating with and

disavowed each other, and never again communicated or interacted with the H&W Defendants.

Compl. ¶¶ 40–41 (pages 31–32), 49 (page 33).

## 2.      Pattern of Racketeering Activity

In order to plead a pattern of racketeering activity, Kimberlin must allege facts sufficient

to show at least two predicate acts of racketeering that are both "'related, *and* . . . amount to or

pose a threat of continued criminal activity.'"  *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683

(4th Cir. 1989) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  The

Complaint is deficient on all counts.

### a.      Racketeering Activity

Under RICO, racketeering activity may only include predicate acts listed under 18 U.S.C.

§ 1961(1), and must include "at least two acts" to be considered a pattern.  *D'Addario*, 264 F.

Supp. 2d at 397 (internal quotation marks omitted).  Kimberlin relies on several predicate acts,

including mail and wire fraud, obstruction of justice, retaliation against a witness, extortion,

money laundering, and state law extortion.  Compl. ¶¶ 111–129 (pages 52–56).  None of these is
pleaded adequately.

### 1)        Mail and Wire Fraud

Kimberlin first attempts, and fails, to plead mail and wire fraud under 18 U.S.C. §§ 1341
and 1343, which require him to allege facts sufficient to show "(1) a scheme disclosing intent to
defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the
scheme."  *Nat'l Bloggers*, 2015 WL 1242763, at *4.  Both of these elements must be pleaded
with specificity under Federal Rule of Civil Procedure 9(b), which requires Kimberlin to plead
the "time, place, and contents of the false representations, as well as the identity of the person
making the misrepresentation and what he obtained thereby."  *Biktasheva v. Red Square Sports,
Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (internal quotation marks omitted).

Here, the Complaint ignores those requirements and contains no specific allegations
about (1) the content of alleged misrepresentations made during the course of the supposed fraud
scheme; (2) the dates, times, or places in which such statements were made; and (3) the identity
of the persons who supposedly made false statements or committed fraudulent acts.  Lumping all
of the Defendants together, Kimberlin baldly asserts that, at an undisclosed time, they sent
unspecified amounts of money and/or documents in the mails or over the wires in furtherance of
the purported scheme.  Compl. ¶¶ 111 (page 52), 114 (page 52).  The only specific allegation
involving a mailing is a data disc sent purportedly sent by H&W to Team Themis, Compl. ¶ 15
(page 20); *id.*, Ex. V; however, there is no allegation about what specific information the disc
included, that any information it did include was about Kimberlin, or that it was ever used in a
scheme to defraud.  Consequently, these allegations are beneath "threadbare" and are wholly
insufficient to support a cause of action.  *Nat'l Bloggers*, 2015 WL 1242763, at *4; *see also
Grant*, 871 F. Supp. 2d at 474.

With regard to the H&W Defendants, there is no allegation that the firm or its attorneys made (or planned to make) any false statements.  Compl. ¶¶ 111–116 (pages 52–53).  The closest Kimberlin comes to making an allegation involving a false statement is to assert that the Team Themis members internally *discussed* releasing a false document.  Compl. ¶ 24 (pages 23–24).  But there is no allegation that the H&W Defendants were involved in this discussion, no indication that this discussion ever evolved into an actual plan, and no material facts pleaded that show any such plan was ever implemented by any Defendant.  Indeed, the Complaint shows that no plan was ever carried out because Team Themis dissolved in the wake of the public release of the stolen HBGary documents.  Compl. ¶¶ 40–41 (pages 31–32), 49 (page 33).

### 2) Obstruction of Justice, Witness Intimidation, and Witness Tampering

The Complaint next vaguely and inadequately alleges predicate acts for obstruction of justice under 18 U.S.C. § 1503(a), witness intimidation under 18 U.S.C. § 1512(d), and witness tampering under 18 U.S.C. § 1513(b) and (e).  None of these allegations is pleaded sufficiently to support a cause of action.

Three elements are required to make out a claim for obstruction of justice:  (1) the "act must relate to a proceeding in a federal court of the United States," *Nat'l Bloggers*, 2015 WL 1242763, at *5 (internal quotation marks omitted); (2) the defendant must have had knowledge of the judicial proceeding; and (3) the defendant must have "acted with the intent to influence, obstruct, or impede that proceeding in its due administration of justice," *United States v. Blair*, 661 F.3d 755, 766 (4th Cir. 2011) (internal quotation marks omitted).

There is no allegation in the Complaint that the H&W Defendants knew Kimberlin had any involvement in a federal proceeding.  The source of the majority of Kimberlin's factual allegations—the hacked HBGary documents—do not support an inference of knowledge or

16

intent because nowhere do they mention an ongoing judicial proceeding.  For that reason alone, the obstruction of justice predicate will not suffice to support a RICO claim.  *United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.")

Furthermore, Kimberlin has not alleged that he was subpoenaed or otherwise asked to testify at a federal proceeding.  He states that he "offered to testify" at a grand jury proceeding. Compl. at 11.  There is no indication that he did in fact testify or even that his "offer" was taken seriously or acted on by any law enforcement authorities.  Accordingly, nothing the Defendants allegedly did could have had the "'natural and probable effect' of interfering with the due administration of justice."  *Aguilar,* 515 U.S. at 601 (internal quotation marks omitted).

To prove tampering under 18 U.S.C. § 1512 and witness retaliation under 18 U.S.C. § 1513(b) and (e), Kimberlin must allege that the H&W Defendants committed an act intended to intimidate or retaliate against him.[10]  Kimberlin makes no such allegation with regard to the H&W Defendants; rather, Kimberlin alleges merely that he met with FBI agents to discuss the Chamber.  Compl. at 11.  There is no indication that the H&W Defendants knew of any such meeting, let alone that they took action to tamper with it or retaliate against Kimberlin for attending.  *Vuyyuru v. Jadhav*, No. 3:10BCVB173, 2011 WL 1483725, at *20 (E.D. Va. Apr. 19,

---

[10] The elements of a tampering claim under 18 U.S.C. § 1512 are:  (1) knowingly engaging in misleading conduct toward another person, and (2) intending to "hinder, delay, or prevent the communication to a [federal] law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense."  *United States v. Perry*, 335 F.3d 316, 320–21 (4th Cir. 2003) (internal quotation marks omitted).

The elements of a witness retaliation claim under 18 U.S.C. § 1513(b) and (e) are:  (1) the defendant knowingly engaged in conduct that (2) either caused or threatened to cause bodily injury to another person (3) with the intent to retaliate for, *inter alia*, "attendance or testimony of a witness at an official proceeding" or providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense.  *See United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993).

2011) (dismissing §§ 1512 and 1513 claims because plaintiffs failed to provide "specific factual basis for believing that Defendants . . . acted in retaliation" or "interfered with . . . advertisers," or that "a few comments . . . rose to the level of intimidation, threats, or corrupt persuasion"); *see also United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015) (finding "§ 1512(c)(2) requires proof beyond a reasonable doubt that the defendant contemplated a particular, foreseeable proceeding" when the defendant acted).

### 3)      Federal and State Extortion

Kimberlin further identifies federal extortion under 18 U.S.C. § 1951 and state extortion under Maryland Criminal Law section 3-706 as predicate acts.  Federal extortion is defined as "obtaining . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2). Maryland likewise defines extortion under as "obtain[ing], attempt[ing] to obtain, or conspir[ing] to obtain money, property, labor, services, or anything of value from another person with the person's consent, if the consent is induced by wrongful use of actual or threatened" (as relevant here) "force or violence" or "economic injury."  Md. Code Ann., Crim. Law § 3-701(b).

Kimberlin makes no allegation that the H&W Defendants ever directly or indirectly asserted force or made threats of force against him.   Nor does he allege that the H&W Defendants ever sought or obtained any property from him as a result of such acts.  The allegation that Defendants pressured him "to stop exposing" the Chamber or "cooperating with the FBI and testifying before any grand jury" does not amount to an allegation that he was forced to part with "property" or any "thing of value."  Compl. ¶ 123 (pages 54–55); *see also Sekhar v. United States*, 133 S. Ct. 2720, 2725 (2013) ("The property extorted must . . . be *transferable*."); *State v. Rendelman*, 947 A.2d 546, 555 (Md. 2008) ("[The Maryland extortion statute] explicitly

prohibits an individual from obtaining or attempting to obtain anything of value (including money and property) from another individual.").

Moreover, both of the relevant state and federal extortion laws also require a showing of intent. *See* 18 U.S.C. § 1951(a); Md. Code Ann., Crim. Law § 3-706.  The Complaint contains no non-conclusory factual assertions to support any such claim against the H&W Defendants.[11]

### 4)      Money Laundering

The final alleged predicate act presented in the Complaint is money laundering, which requires allegations of fact enough to show that the H&W Defendants "knowingly engage[d] or attempt[ed] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."  18 U.S.C. § 1957(a).  To adequately allege money laundering, the Complaint must demonstrate that Defendants knew "that the property [was] derived from unlawful activity" and "the property is, in fact, derived from specified unlawful activity."  *Nat'l Bloggers*, 2015 WL 1242763, at *9.  The specified unlawful activity must be one listed in 18 U.S.C. § 1956(c), which includes the predicate acts under 18 U.S.C. § 1961(1).

The only funds referenced in the Complaint are those used by the Chamber to pay the H&W Defendants' legal fees.  Compl. ¶ 125 (page 55).  There is no allegation that these funds were *derived* from unlawful activity, or that the H&W Defendants knew that to be the case. *United States v. Butler*, 211 F.3d 826, 829–30 (4th Cir. 2000) ("Funds are 'criminally derived' if they are 'derived from an already completed offense, or a completed phase of an ongoing offense'" and "the laundering of funds cannot occur in the same transaction through which those

---

[11] Maryland Criminal Law section 3-706 also requires that a defendant have "knowingly sen[t] or deliver[ed] a [threatening] writing."  *Rendelman*, 947 A.2d at 559 (internal quotation marks omitted).  No such writing is alleged to have been sent or delivered to Kimberlin by any Defendant, rendering this predicate act insufficiently pleaded.

funds first become tainted by crime."); *United States v. Najjar*, 300 F.3d 466, 481 (4th Cir. 2002)

("In order to support a conviction for money laundering, there must be proof beyond a

reasonable doubt that the defendant knowingly participated in a monetary transaction involving

criminally derived proceeds.").

### b.    Pattern

Because Kimberlin has failed to sufficiently allege two or more predicate acts, his entire

civil RICO claim must fail.  Even if that defect were to be disregarded, Claim 6 would still have

to be dismissed because the Complaint does not allege that the required "continuity plus

relationship" *pattern* of the acts—i.e., it does not show that the "predicates are related, *and* that

they amount to or pose a threat of continued criminal activity."  *Menasco*, 886 F.2d at 683–84

(internal quotation marks omitted).  These are commonly termed the "relatedness" and

"continuity" prongs, respectively, of the pattern element.

First, to the extent the Complaint alleges that common purpose of the RICO enterprise

was to profit, Kimberlin's allegations fail under the "relatedness" prong for the same reasons this

Court cited in *National Bloggers*:  the predicate acts quite clearly "were not undertaken for that

purpose."  2015 WL 1242763, at *10.  None of the threadbare predicate acts alleged by

Kimberlin contain any details or context suggesting they were undertaken to "allow the RICO

Defendants to profit."  *Id.*  Insofar as the Complaint alleges the purpose was to harm or deter

Kimberlin by defamation or physical injury, these are not cognizable claims for injury under

RICO as discussed below and thus cannot support the "relatedness" prong here.

Second, to the extent Kimberlin pleads the purpose was to "destroy" him, Claim 6 also

fails under the "continuity" prong.  The Complaint pleads an "open-ended" pattern, because it

alleges the racketeering activities are "continuing until the present time."  Compl. ¶ 130 (page

56).  To show an open-ended RICO pattern, the Complaint must plead predicate acts that

"demonstrate a threat of continuity." *U.S. Airline Pilots*, 615 F.3d at 318 (internal quotation

marks omitted).  But when the alleged "racketeering activity has a built-in ending point . . . the

case does not present the necessary threat of long-term, continued criminal activity." *Id.*

(internal quotation marks omitted).  Targeting a party to "achieve a single goal" inherently

"creates a foreseeable built-in ending point." *Id.* at 319 (internal quotation marks omitted).  As

alleged here, once Kimberlin was "destroy[ed]," Compl. ¶ 137 (page 57)—whatever that

means—the scheme would necessarily end.  The Complaint thus fails to allege "long-term,

continued criminal activity" and must be dismissed. *GE Investment*, 247 F.3d at 549; *see also*

*Menasco*, 886 F.2d at 684 (rejecting open-ended pattern because predicates "involved a limited

purpose," "but one perpetrator," "but one set of victims," and "took place over approximately

one year"); *Grant*, 871 F. Supp. 2d at 474 ("[A]n allegation of mail and wire fraud against one

victim, without more, does not satisfy the continuity element as interpreted by the Fourth

Circuit." (internal quotation marks omitted)).

### 3.      Cognizable RICO Injury

To state a civil RICO claim, a plaintiff must allege that he was "injured in his business or

property by reason of [the alleged] violation of section 1962." 18 U.S.C. § 1964(c).  This

requires the plaintiff to allege "(1) that he or she has suffered injury to his business or property;

and (2) that this injury was caused by the predicate acts of racketeering activity that make up the

violation of § 1962." *Nat'l Bloggers*, 2015 WL 1242763, at *11.  Kimberlin does not satisfy

either requirement, and his failure substantially mimics his similar failure in *National Bloggers*.

*Id.* at *11–14.

### a.      Injury to Business or Property

Kimberlin has not alleged an injury to his business or property sufficient to state a civil

RICO claim.  Showing injury to business or property necessitates that Kimberlin show "tangible

business loss." *Nat'l Bloggers*, 2015 WL 1242763, at *11 (internal quotation marks omitted).  In this case, Kimberlin alleges personal injury, damage to his reputation, and the loss of supposed economic opportunities.  Compl. ¶ 139 (pages 57–58).  Injuries to reputation or physical harm "relate to personal harm," and thus are not cognizable in a civil RICO action.  *Nat'l Bloggers*, 2015 WL 1242763, at *11–12.  Kimberlin's allegations of lost economic opportunities "are far too vague to survive" a motion to dismiss because they are "entirely speculative and demonstrate, at most, an injury to mere expectancy interests which is not sufficient to confer RICO standing."  *Id.* at *12 (internal quotation marks omitted).

### b.        Proximate Cause

In addition to alleging injury, Kimberlin must show that there is "some direct relation between the injury asserted and the injurious conduct alleged."  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (internal quotation marks omitted).  Links that are "too remote, purely contingent, or indirect" are inadequate.  *Nat'l Bloggers*, 2015 WL 1242763, at *13 (internal quotation marks omitted).  As in *National Bloggers*, "there is nothing [in the Complaint] to suggest that the . . . predicate acts led directly to Kimberlin's injuries."  *Id.*

The Complaint pleads no direct connection between, on the one hand, the wire fraud, mail fraud, and money laundering predicates and, on the other, his purported injury; accordingly, these injuries "are far too attenuated to support his RICO claim."  *Id.*

The same goes for the obstruction of justice, witness intimidation, witness tampering, and extortion predicates.  Although Kimberlin alleges that these offenses were directed at him, as discussed above, he fails to state a claim for these predicates with respect to the H&W Defendants.  In any case, the Complaint fails to connect how being intimidated, deterred, or otherwise pressured from cooperating with federal authorities possibly could cause injury to his reputation or professional opportunities. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461

(2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.  In the instant case, the answer is no."); *Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*, 763 F. Supp. 2d 759, 767 (W.D.N.C. 2011) ("The link between the fraud alleged and the injury suffered is too attenuated to support a RICO claim because the cause of Plaintiff's harm was a set of actions . . . entirely distinct from the alleged RICO violations.").[12]

### C.   The Complaint Fails To Adequately Plead a Claim for Conspiracy Under 42 U.S.C. § 1985(2)

Kimberlin also fails to allege sufficient facts to show that the H&W Defendants violated his civil rights under 42 U.S.C. § 1985(2) (Claim 1).  This statute—part of a law known as the "Ku Klux Klan Act," *Virginia v. Black*, 538 U.S. 343, 353 (2003)—was adopted by Congress to outlaw conspiratorial activity directed at undermining court proceedings.  *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983).  Section 1985(2) contains two parts:  the first is directed at "institutions and processes of the federal government" and the second is directed at activities "usually of primary state concern," *id.*, but Kimberlin appears to plead only a violation of part one, Compl. ¶ 62 (pages 41–42).[13]  Kimberlin is consequently required to show (as is relevant here) that the H&W Defendants conspired to deter him from testifying in a federal court.  *Sellner v. Panagoulis*, 565 F. Supp. 238, 245–46 (D. Md. 1982).[14]  To adequately plead a deterrence claim,

---

[12] Because the Complaint fails to plead a claim under 18 U.S.C. § 1962(c), Kimberlin's claim of conspiracy under 18 U.S.C. § 1962(d) must fail as well.  *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *Nat'l Bloggers*, 2015 WL 1242763, at *3 n.2.

[13] Even if the Complaint were read to plead a claim under part two of § 1985(2), Kimberlin has not alleged that he is a member of a protected class or that any state proceedings were obstructed, and therefore he fails to state a claim.  *Nat'l Bloggers*, 2015 WL 1242763, at *16–17; *Kimberlin v. Frey*, No. GJH-13-3059, 2015 WL 1431571, at *2–3 (D. Md. Mar. 26, 2015).

[14] Two other clauses under § 1985(2) prohibit retaliation against witnesses and tampering with a federal jury.  *Sellner*, 565 F. Supp. at 246.  These clauses are clearly inapplicable to this action,

the language of § 1985(2) requires that the Complaint show (1) a conspiracy; (2) that used "force, intimidation, or threat" to deter the plaintiff from testifying in a federal court; and (3) caused injury to the plaintiff. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1124 (10th Cir. 2007) (internal quotation marks omitted).

As to the first element, a claim for conspiracy under § 1985(2) "must sufficiently allege 'an agreement or a meeting of the minds by [the] defendants'" to deter the plaintiff from testifying. *Rockwell v. Mayor & City Council of Balt.*, No. RDB-13-3049, 2014 WL 949859, at *10 (D. Md. Mar. 11, 2014) (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). This is a "relatively stringent standard" that is "rarely, if ever" satisfied. *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995). It is not met here because the Complaint is entirely devoid of facts showing that the H&W Defendants reached an agreement with another Defendant to deter Kimberlin from testifying before a federal court. *See Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014) (rejecting § 1985(2) claim because "nowhere does the complaint allege . . . intent" by defendants to conspire or deter witness testimony).[15] Indeed, the exhibits to the Complaint directly contradict Kimberlin's allegations of conspiracy because they show that "H&W [was] unable/unwilling to pay any fees/costs to [Team Themis]" and refused to "commit any funds to [the] project." Compl., Ex Z.[16]

---

as Kimberlin nowhere alleges that he actually testified before a federal court or that he was a juror in a grand or petit jury.

[15] Under the "intracorporate conspiracy doctrine," Kimberlin is not permitted to base his § 1985 claim on allegations that H&W conspired with its corporate agents Messrs. Woods, Wyatt, and Quackenboss. *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 542 (D. Md. 2014).

[16] Further, no agreement is alleged because the Complaint references only one specific federal proceeding—a grand jury investigation involving Donald Blankenship, Compl. ¶ 62 (pages 41–42)—and does not allege that the H&W Defendants had knowledge of that investigation, *see Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal

As to the second element, the Complaint must plead that the H&W Defendants used "force, intimidation, or threat[]" to accomplish the alleged deterrence. *Scott v. Mountain Mission Sch., Inc.*, 809 F.2d 786, 1987 WL 36169, at \*2 (4th Cir. 1987) (internal quotation marks omitted). The Complaint does not plausibly allege that physical force or threats were directed against Kimberlin, let alone with the purpose of deterring him from testifying before a federal proceeding. Kimberlin alleges that the May 4, 2010 cease-and-desist letter sent by H&W to STC's public relations firm was intended to "intimidate and deter him from testifying." Compl. ¶ 2 (pages 13–14). But a standard cease-and-desist letter does not "evince the use of force, intimidation or threats necessary to state a claim" and thus is "not within the proscription of § 1985(2)." *Scott*, 1987 WL 36169, at \*2; *see also Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 422 (D. Md. 2011) (finding "[l]egal claims possessing a reasonable basis in law and fact simply do not constitute the 'force or intimidation' necessary to satisfy § 1985(2)" (internal quotation marks omitted)). Besides the cease-and-desist letter, Kimberlin alleges that Team Themis discussed internally—but never implemented—plans to discredit him in the political sphere. But there is no allegation that the H&W Defendants took part in these discussions or that the plans to discredit him were ever carried out; in any event, political speech cannot constitute "force, intimidation or threats" for purposes of § 1985(2). *Scott*, 1987 WL

---

offense."). The most the Complaint offers is that a grand jury indicted Mr. Blankenship in November 2014, *over three and a half years after* February 2011, when the HBGary documents were released. There is no allegation that the grand jury investigation had been initiated at the time the H&W Defendants were communicating with Team Themis, and such a lengthy gap between the events underlying the alleged conspiracy and the indictment cannot sustain the claim. *See Dutton v. Montgomery County*, No. DKC 2008-3504, 2009 WL 2496844, at \*8 (D. Md. Aug. 11, 2009) (rejecting § 1985(2) claim when alleged conspiracy to deter occurred years apart from court proceeding); *Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014) ("[T]he sequence of events alleged [must be] sufficient to allow a jury to infer from the circumstances that the conspirators had a meeting of the minds.") (internal quotation marks omitted)).

36169, at *2; *Dutton v. Montgomery County*, No. DKC 2008-3504, 2009 WL 2496844, at *8 (D.

Md. Aug. 11, 2009).

Third, Kimberlin is required to plead that the alleged conspiracy caused him an injury by

preventing him from presenting an effective case in court.  42 U.S.C. § 1985(3) ("[T]he party so

injured or deprived may have an action for the recovery of damages occasioned by such injury or

deprivation."); *Lewin v. Cooke*, 28 F. App'x 186, 195 (4th Cir. 2002); *see also Rutledge v.

Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) ("[A] claimant must show that the

conspiracy hampered the claimant's ability to present an effective case in federal court.").  But

Kimberlin does not allege that he was a litigant before any court, let alone that his ability to

pursue litigation was hampered by Defendants' alleged conduct.  *See David v. United States*, 820

F.2d 1038, 1040 (9th Cir. 1987) ("Allegations of witness intimidation under § 1985(2) will not

suffice for a cause of action unless it can be shown the *litigant* was hampered in being able to

present an effective case.").  He has not done so.  The Complaint alleges that Defendants sought

to deter Kimberlin from testifying before "any grand jury proceedings."  Compl. at 11.  Setting

aside that Kimberlin himself does not allege that he was a witness before any grand jury

proceedings, there is no allegation that Kimberlin was ever asked to testify before a grand jury.

*See Hogan*, 762 F.3d at 1114 (dismissing § 1985(2) claim because facts failed to "suggest the

defendants agreed specifically to deter [defendant's] attendance in court").

### D.      The Complaint Fails To Adequately Plead State Law Claims

The Complaint alleges a number of Maryland causes of action, but only three against the

H&W Defendants:  conspiracy to invade privacy and intrusion into seclusion (Claim 3);

conspiracy to interfere with business relations and prospective economic advantage (Claim 7);

and intentional inflection of emotional distress (Claim 8).  None of these state law claims is

pleaded adequately.

### 1.    Invasion of Privacy

First, Kimberlin alleges that the H&W Defendants conspired with other Defendants to invade his privacy by intruding into his seclusion.  Compl. ¶¶ 69–74 (page 43).  To show this tort under Maryland law, Kimberlin must plead "an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person."  *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012).  But Kimberlin does not identify what private information, if any, was released or compromised by the H&W Defendants.  The Complaint also fails to allege that the H&W Defendants even had possession of any of his private information or that they released it to the public.  The HBGary documents on which Kimberlin relies contain only publicly-available information from the Internet about Kimberlin—information as to which he obviously had no expectation of privacy.

### 2.    Tortious Interference with Business Relations

Second, the Complaint includes a claim that the H&W Defendants conspired with other Defendants to interfere with Kimberlin's existing and prospective business relations.  Compl. ¶¶ 125–131 (pages 58–59).  Two types of tortious interference claims exist in Maryland: inducing breach of an existing contract and interference with non-contractual economic relationships.  *Sirpal v. Fengrong Wang*, No. WDQ-12-0365, 2012 WL 2880565, at *3 (D. Md. July 12, 2012).

To show interference with an existing contract, Kimberlin must allege that (1) a contract existed; (2) the H&W Defendants knew of the contract; (3) the H&W Defendants acted intentionally to induce a breach; (4) the interference was without justification; (5) the contract was breached; and (6) Kimberlin suffered damages.  *Id.*  The only specific existing contract that Kimberlin identifies is his "employment relationship" with "Justice Through Music."  Compl. ¶ 126 (page 58).  But he alleges no breach of any contract with his employer.  He does not allege

that he was fired; only that the H&W Defendants "attempted to interfere" with his job. *Id.* Further, Kimberlin utterly fails to identify any alleged act by the H&W Defendants that interfered with his employment, to allege that such an act was intentional or without justification, or that he sustained any damages.  He thus has failed to state a claim for interference with an existing contract. *See Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540–41 (D. Md. 2006).

Kimberlin also alleges tortious interference with non-contractual relations because purported damage to his personal reputation allegedly caused harm to *his employer's* business relationships.  Compl. ¶¶ 126–127 (pages 58–59).  Kimberlin has no standing to make such a claim. *See Baron*, 471 F. Supp. 2d at 538–39 ("Both parties agree that [the owner of a non-profit] does not have standing to address claims which belong solely to [the non-profit].").

Even if Kimberlin could bring suit, he fails to state a claim for non-contractual tortious interference, which requires:  (1) intent (2) to cause damage to plaintiff's business (3) with malice (4) that causes "actual damage and loss." *Cole v. Anne Arundel County Bd. of Educ.*, No. CCB-05-1579, 2006 WL 3626888, at *4 (D. Md. Nov. 30, 2006).  Kimberlin must also show "the destruction of the business relationship which was the target of the interference." *Sirpal*, 2012 WL 2880565, at *3 (internal quotation marks omitted).  The Complaint includes the bare assertion that "Defendants . . . conspired to harass companies associated with [his] non-profit employer," Compl. ¶ 127 (page 59), but that is far too vague and conclusory to state a claim.  It is also unaccompanied by necessary allegations showing an act of interference, intent, malice, damages, or that any relationship was destroyed by the alleged interference. *Sirpal*, 2012 WL 2880565, at *3.

28

Furthermore, Kimberlin fails to allege interference with prospective economic relations because such a claim must—in addition to the elements above—"identify a possible future relationship which is likely to occur, absent the interference, with specificity," *Baron*, 471 F. Supp. 2d at 546 (dismissing as "vague and unformed" claims that merely "hint at some damage to [plaintiff's] relationship with some unidentified [organizations] at some future time in some future business he might have").  Kimberlin identifies no such relationship.

### 3.      Intentional Infliction of Emotional Distress

Third, the Complaint claims that the H&W Defendants intentionally inflicted emotional distress on Kimberlin.  Compl. ¶¶ 132–137 (pages 59–60).  To survive a motion to dismiss, Kimberlin must show:  "(1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe." *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 481 (D. Md. 2002).  Kimberlin avers no facts that the H&W Defendants acted intentionally or recklessly, or that he is suffering severe emotional distress caused by any act allegedly done by the H&W Defendants.  *Id.* at 482 ("'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'") (quoting *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 748–49 (D. Md. 1996))).  He alleges H&W contacted Fox News to write an article that resulted in a "coordinated campaign of more than 100 threats of violence" against STC.  Compl. ¶ 2 (pages 13–14).  But this allegation is unsupported by any particular factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (dismissing complaint when factual allegations did not rise "above the speculative level").  Kimberlin also fails to show that any conduct allegedly committed by the H&W Defendants was extreme or outrageous in that it went "'beyond all possible bounds of decency'" and was "'utterly intolerable in a civilized community.'" *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d

341, 348 n.10 (D. Md. 2003) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).  At most

he alleges "'mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities'" that are insufficient to support a claim for intentional infliction of emotional distress.

*Id.* (quoting *Harris*, 380 A.2d at 614).

### 4.        Maryland Conspiracy Law

Kimberlin appears to allege several of the above torts as conspiracies.  Compl. ¶¶ 70

(page 43) (invasion of privacy), 127–129 (page 59) (interference with business relations and

prospective economic advantage).  Civil conspiracy is not a stand-alone tort in Maryland, and

because the underlying torts are inadequately pleaded (as discussed above), the conspiracy

claims also cannot be sustained.  *Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 717 (D.

Md. 2008) (citing *NRT Mid-Atl., Inc. v. Innovative Props., Inc.*, 797 A.2d 824, 838 (Md. 2002)).

But even if the Court sustains one or more of the relevant state torts, the Complaint does not

sufficiently allege a conspiracy, which requires (1) an agreement (2) to commit a tort in

furtherance of the conspiracy (3) that causes damage to the plaintiff.  *Mayes v. Bd. of Educ. of

Prince George's County*, No. PJM 13-3770, 2014 WL 3973930, at *5 n.8 (D. Md. Aug. 12,

2014) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007)).  Kimberlin does not

allege enough factual support to show either an agreement between the H&W Defendants and

any other Defendant, or actual injury caused by any agreement.  His claims of civil conspiracy

must consequently fail.

IV.     **Conclusion**

For the reasons set forth above, the H&W Defendants request that the Complaint be

dismissed with prejudice as time-barred under the relevant statutes of limitations and for failure

to state a claim.[17]


Dated:  September 4, 2015                          Respectfully submitted,

                                                   /s/ John J. Buckley, Jr.
                                                   John J. Buckley, Jr. (Bar No. 06249)
                                                   Barrett J. Anderson (Bar No. 13900)
                                                   WILLIAMS & CONNOLLY LLP
                                                   725 Twelfth Street, N.W.
                                                   Washington, DC 20005
                                                   Telephone: (202) 434-5051
                                                   Facsimile: (202) 434-5058
                                                   E-Mail: jbuckley@wc.com

                                                   *Counsel for Defendants Hunton & Williams*
                                                   *LLP, John Woods, Richard Wyatt, and Robert*
                                                   *Quackenboss*

---

[17] In *National Bloggers*, this Court dismissed Kimberlin's claims with prejudice and, like in that case, there is no reason to believe he could cure the instant Complaint of its serious inadequacies. 2015 WL 1242763, at *20.