IN THE RECORDS OF THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, STATE OF MARYLAND,
AMONG OTHER PROCEEDINGS
IS THE FOLLOWING, TO WIT:

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY MARYLAND

**BRETT KIMBERLIN,**
8100 Beech Tree Rd, Bethesda, MD 20817
    Plaintiff,

    v.                   No.

**NATIONAL BLOGGERS CLUB,**
8116 Heritage Place, Ft. Worth, TX 76137
**ALI AKBAR,**
8116 Heritage Place, Ft. Worth, TX 76137
**PATRICK FREY,**
3547 Seaglen Drive, Rancho Palos Verdes, California 90275
**ERICK ERICKSON,**
736 Waverly Pt,, Macon, Georgia 31210
**MICHELLE MALKIN,**
445C E. Cheyenne Mountain Blvd. #104, Colorado Springs, Colorado 80906
**GLENN BECK,**
1270 Avenue of the Americas, 9th Floor New York, New York 10020
**AARON WALKER,**
7537 Remington, Rd, Manassas, Virginia. 20109
**WILLIAM HOGE,**
20 Ridge Road, Westminster, Maryland 21157
**LEE STRANAHAN,**
13824 Methuen Green Street, Dallas, Texas 75240
**MANDY NAGY,** by her representative **GINNY NAGY,**
10 Sussex Ct, Bedminster, New Jersey 07921
**BREITBART.COM** aka **BREITBART HOLDINGS,**
149 South Barrington #735, Los Angeles, California 90049
**DB CAPITOL STRATEGIES,**
717 King Street, Suite 300 Alexandria, Virginia 22314
**DAN BACKER,**
717 King Street, Suite 300 Alexandria, Virginia 22314
**MERCURY RADIO ARTS,**
1270 Avenue of the Americas, 9th Floor New York, New York 10020
**THE BLAZE,**
1133 Avenue of the Americas, 34th Floor, New York, New York 10036
**ACE OF SPADES, THE BLOG,**
3131 Homestead Road, #3E Santa Clara, California 95051
**ACE OF SPADES, THE BLOGGER,**
3131 Homestead Road, #3E Santa Clara, California 95051
**REDSTATE,**
4880 Santa Rosa Road Camarillo, CA 93012
**TWITCHY,**
4880 Santa Rosa Road Camarillo, CA 93012

2015 APR 15 PM 2: 23
FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD

1

Defendants.

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1. Plaintiff Brett Kimberlin ("Kimberlin") hereby brings this Complaint to recover damages inflicted by Defendants, defined below, for engaging in a multitude of tortious acts, including a campaign that engaged in widespread defamation, false light, intimidation, assault, extortion, attempted extortion, obstruction of justice, and gang activity for the purpose of harming Plaintiff, his reputation and his business interests. Specifically, the Defendants (1) created false and defamatory narratives stating that Plaintiff engaged in, ordered, directed and/or facilitated the criminal swatting of individuals, (2) created other false narratives about Plaintiff in order to bolster the false swatting narrative; (3) provided false information to media outlets, politicians and law enforcement officials accusing Plaintiff of involvement in said swattings, (3) repeatedly published defamatory statements that Plaintiff committed swattings, (4)  constantly bullied Plaintiff with criminal convictions more than three decades old in order to demonize him, and then (5) enriched themselves by using Plaintiff's name to fraudulently raise hundreds of thousands of dollars and increase traffic on their websites based on those false narratives.  Some of the Defendants conspired to and/or did assault Plaintiff and then used gang activity to threaten him against exercising his right to redress through access to the courts.  The Defendants used online and offline gang activity to threaten, harass and intimidate others who rejected their false narratives about Plaintiff, including journalists, judges and Maryland State's Attorneys.  These threats of harm and death were meant to and did

intimidate Plaintiff from seeking redress for more than three years. These torts were intentional and caused Plaintiff physical harm and emotional distress.

2. Swatting is the calling of the police using a falsified phone number and telling the police that a major crime occurred at the address associated with that address in order to cause a large police response.

3. Defendants repeatedly made the false, slanderous and defamatory statements about Plaintiff's involvement in swatting month after month for more than a year, causing the publication of thousands of articles, blog posts, Twitter tweets and radio and television broadcasts attributing the swattings to Plaintiff.

4. None of the Defendants ever contacted Plaintiff for comment or response to these false, slanderous and libelous statements prior to or after their publication.

5. Plaintiff asserts claims against Defendants arising from violations of (1) defamation, (2) false light invasion of privacy, (3) trading on Plaintiff name, (9) interference with business relationships, (10) interference with prospective advantage, (11) conspiracy, (12) battery, and (13) intentional infliction of emotional distress.

### JURISDICTION AND VENUE

6. This Court has jurisdiction over this action because the claims herein are all Maryland state law torts and the Defendants directed their conduct at Maryland.

7. Venue is proper in that Plaintiff resides in Maryland, many of the actions of Defendants took place in Maryland, the injury occurred in Maryland, and a substantial portion of the communications, transactions, events or omissions occurred in Maryland.

## PARTIES

8. Plaintiff Kimberlin is the Director of Justice Through Music, a Maryland based 501(c)(3) non-profit that uses music to inspire and educate young people to get involved with civic participation. Plaintiff has held that position for eleven years and resides and works in Montgomery County Maryland. Plaintiff is also a musician, manager, music producer, and composer engaged in the business of music.

9. Defendant Aaron Walker is an unemployed attorney who resides at 7537 Remington, Rd, Manassas, Virginia. 20109.

10.    Defendant Lee Stranahan is a blogger who resides at 13824 Methuen Green Street, Dallas, Texas 75240.

11.    Defendant Mandy Nagy is a blogger who resides at 10 Sussex Ct, Bedminster, New Jersey 07921. She is currently legally incompetent and her legal representative is her mother, Ginny Nagy.

12.    Both Defendants Stranahan and Nagy write or wrote for Defendant Breitbart.com, a media group located at 149 South Barrington #735, Los Angeles, California 90049, also known as Breitbart Holdings.

13.    Defendant Ali Akbar resides at 8116 Heritage Place, Ft. Worth, TX 76137, and is the self proclaimed head of the Defendant National Bloggers Club, which is also located at 8116 Heritage Place Drive, Ft. Worth, Texas 76137.

14.    Defendant Glenn Beck is a radio and television personality whose corporate address is 1270 Avenue of the Americas, 9th Floor New York, New York 10020.

15.      Michelle Malkin is a blogger and FOX News commentator whose corporate address is 445C E. Cheyenne Mountain Blvd. #104, Colorado Springs, Colorado 80906.

16.      Defendant Erick Erickson is a blogger and television commentator who resides at 736 Waverly Pt,, Macon, Georgia 31210.

17.      Defendant Ace Of Spades is an anonymous blogger who writes for Defendant Ace of Spades blog, which is registered by Michelle Kerr and is located at 3131 Homestead Road, #3E Santa Clara, California 95051.

18.      Defendant Patrick Frey is a blogger who resides at 3547 Seaglen Drive, Rancho Palos Verdes, California 90275.  He is employed as an Assistant State's Attorney for Los Angeles.

19.      Defendant Twitchy is a blogging platform owned or operated by Defendant Michelle Malkin through Twitchy LLC to promote stories created by her and other members of Twitchy. It was recently purchased by Salem Communications located 4880 Santa Rosa Road Camarillo, CA 93012.

20.      Defendant The Glenn Beck Program/Mercury Radio Arts, is a media company created to promote Defendant Glenn Beck and is located 1270 Avenue of the Americas, 9th Floor New York, New York 10020.

21.      Defendant The Blaze Inc, Is a media company owned by Defendant Glenn Beck and created to promote Defendant Glenn Beck and his worldview, and is located at 1133 Avenue of the Americas, 34th Floor, New York, New York 10036.

22.     Defendant RedState is a media company directed by Defendant Erick

Erickson-and was recently purchased by Salem Communications which is located at

4880 Santa Rosa Road Camarillo, CA 93012.

23.     Defendant DB Capitol Strategies is a law firm located at 717 King

Street, Suite 300 Alexandria, Virginia 22314, and is headed by Attorney and

Defendant Dan Backer, located at the same address.


## STATEMENT OF FACTS

24.     In 2009, three military intelligence contractors, HB Gary, Berico

Technologies and Palantir created a secret group called "Team Themis" to destroy

progressive organizations and their staff on behalf of corporate clients and federal

agencies, including the United States Chamber of Commerce and FBI. These activists

and organizations were targeted for exercising their constitutional rights to free

expression and freedom of assembly. Some of the groups and people targeted were

Wikileaks, Anonymous, ThinkProgress, Glenn Greenwald, Chamber Watch, Change

to Win, AFL-CIO, MoveOn.org, Plaintiff Brett Kimberlin, Brad Friedman, Justice

Through Music, Stop The Chamber and Velvet Revolution. Palantir employee

Matthew Steckman in a February 8, 2009 email to HB Gary employee Aaron Barr

describes the methodology of Team Themis this way:

> From - Tue Feb 08 09:06:48 2011 From: Matthew Steckman
> <msteckman@palantir.com> To: HBGARY-Aaron.Barr
> <aaron@hbgary.com> Date: Fri, 3 Dec 2010 05:15:59 -0800 Subject: RE:
> first cut Feed the fuel between the feuding groups. Disinformation. Create
> messages around actions to sabotage or discredit the opposing
> organization. Submit fake documents and then call out the error. • Create
> concern over the security of the infrastructure. Create exposure stories. If
> the process is believed to not be secure they are done. • Cyber attacks

against the infrastructure to get data on document submitters. This would kill the project. Since the servers are now in Sweden and France putting a team together to get access is more straightforward. • Media campaign to push the radical and reckless nature of wikileaks activities. Sustained pressure. Does nothing for the fanatics, but creates concern and doubt amongst moderates. • Search for leaks. Use social media to profile and identify risky behavior of employees. "It is this level of support we need to attack. These are established professionals that have a liberal bent, but ultimately most of them if pushed will choose professional preservation over cause"

25.     When Aaron Barr in February 2010 bragged to the *Financial Times* that he had penetrated Anonymous and was going to take down their leaders, Anonymous responded by publishing more than 50,000 of HB Gary emails that exposed the existence of Team Themis.  Several of the documents and emails showed a multi-million dollar operation to destroy Plaintiff, his employer and other organizations and activists.   The Chamber of Commerce ordered this operation, and its Washington, DC law firm Hunton & Williams was the conduit between the Chamber and Team Themis.  Team Themis gathered massive amounts of data about Plaintiff, which was shared with lawyers at Hunton & Williams and vice versa.  Team Themis illegally scraped social media sites associated with Plaintiff such as Facebook, and prepared dossiers on Plaintiff and his Facebook friends and others.  It proposed to secretly install illegal malware on computers, to create a disinformation campaign, to create false documents, and to destroy the funding of Plaintiff's employer. Mr. Barr's dossier quoted from an October 11, 2010 article by Defendant Mandy Nagy published by Defendant Breitbart.com defaming Plaintiff.

26.     After Team Themis illegal campaign was exposed, congressional investigations were launched and the media extensively covered the story.

27.     According to NSA documents released by Edward Snowden in
February 2014 and reported on by Glenn Greenwald, the tactics outlined by the
Team Themis campaign were not relegated to the three rogue intelligence
contractors. Instead, they are part of an NSA program to disrupt and destroy
activists worldwide. This "dirty tricks" group known as JTRIG -- the Joint Threat
Research Intelligence Group would seek to infiltrate different groups online and
destroy people's reputations -- going far beyond just targeting terrorist groups and
threats to national security.

> *Among the core self-identified purposes of JTRIG are two tactics: (1) to inject*
> *all sorts of false material onto the internet in order to destroy the reputation*
> *of its targets; and (2) to use social sciences and other techniques to*
> *manipulate online discourse and activism to generate outcomes it considers*
> *desirable. To see how extremist these programs are, just consider the tactics*
> *they boast of using to achieve those ends: "false flag operations" (posting*
> *material to the internet and falsely attributing it to someone else), fake victim*
> *blog posts (pretending to be a victim of the individual whose reputation they*
> *want to destroy), and posting "negative information" on various forums.*
> {http://cannonfire.blogspot.com/2014/02/mind-blowing.html}

28.   On or about September 2010, Andrew Breitbart, the now deceased
owner of Defendant Breitbart.com, a media company owned by Defendant Breitbart
Holdings, decided to take up a parallel campaign started by Team Themis to destroy
Plaintiff and his livelihood. On October 7, 2010, Mr. Breitbart sent out a tweet
saying that he was going to make Plaintiff's associate Brad Friedman's "life a lot
more difficult." On October 11, 2010, he sent another tweet telling his legion of
followers that Plaintiff and two associates "need exposure." This was a code phrase
for his followers to engage in the type of destruction Breitbart used against ACORN

and Shirley Sherrod—false narratives, edited videos, online gang activity. {ACORN staffers and Shirley Sherrod sued Brietbart over that tortious conduct in separate suits. One of the ACORN suits was recently settled in the employee's favor and the Sherrod suit is currently pending in Washington DC federal court}. Mr. Breitbart contacted Defendants Patrick Frey, Lee Stranahan and Mandy Nagy and others, and conspired with them to target Plaintiff for a smear campaign of personal and professional destruction. Mr. Breitbart was closely associated with Defendant Frey and chose him because of his position as a Los Angeles Assistant District Attorney and as the owner of the conservative blog, Patterico's Pontifications.

29.     On October 11, 2010, Defendant Nagy, under the direction of and in conspiracy with Mr. Breitbart, wrote an article smearing and portraying Plaintiff in a false light that appeared on Breitbart.com. http://www.breitbart.com/Big-Journalism/2010/10/11/Progressives-Embrace-Convicted-Terrorist. On the same day, Defendant Frey followed that article with a similar smear article on his Patterico's Pontification's blog. HTTP://PATTERICO.COM/2010/10/11/BRAD-FRIEDMANS-PARTNER-AND-BUDDY-A-CONVICTED-BOMBER-PERJURER-AND-DRUG-SMUGGLER-SUSPECTED-MURDERER-AND-ELECTION-INTEGRITY-HERO/.

30.     On October 13, 2010, Plaintiff sued a blogger named Seth Allen for defamation in the Circuit Court for Montgomery County Maryland.  On November 16, 2011, the Circuit Court entered judgment in Plaintiff's favor, and issued an injunction against Mr. Allen. In that case, Mr. Allen filed a motion for the court to find that Plaintiff was a "public figure," but Judge Quirk found otherwise and denied his motion.

31.      In 2011, Defendant Walker was co-hosting Defendant Frey's Patterico blog using the name, Aaron Worthing, a supposed attorney from Manassas, Virginia. Defendant Frey supervised Defendant Walker in that capacity.

32.      On or about August 17, 2011, Seth Allen sent an email to Andrew Breitbart, and Defendants Walker, Frey and Nagy telling them that he was planning to come to Maryland and "murder" Plaintiff. Defendant Frey, an Assistant District Attorney, did not contact Plaintiff or law enforcement officials to report the murder threat. Defendant Nagy did contact the authorities and Mr. Allen was arrested in Montgomery County Maryland.

33.      In December 2011, Defendant Walker, using his pseudonym Aaron Worthing, contacted Seth Allen and offered pro bono to file post-judgment motions in Maryland to overturn the judgment entered against Mr. Allen. Defendant Walker, still using the pseudonym, then prepared and filed numerous pleadings for Mr. Allen attacking Plaintiff and Judge Jordan, who issued the judgment. He did this even though the time for appeal and for reconsideration had expired.

34.      Throughout the month of December 2011, Defendants Walker, Frey and Nagy communicated with each other on how they could destroy Plaintiff by getting him arrested on false charges. Defendant Frey used his position as Deputy District Attorney for Los Angeles to give credibility to the false narratives and accusations he and others made against Plaintiff. Defendant Frey used his position to launch investigations of Plaintiff by his supervisors at the Los Angeles County District Attorney's Office and with the FBI. In fact, Defendant Frey met with both of

those law enforcement agencies and falsely told them that Plaintiff was involved with swatting.

35.     On January 6, 2012, Defendant Frey counseled Defendant Walker on how to file and prepare legal filings against Plaintiff to make him appear odious: "No, You have to start with ten seconds of labeling him a convicted bomber and convicted perjurer, and say this is established by major media stories and by published court decisions.  Then say he obtained the injunction by repeatedly perjuring himself and that you can prove it. ... Ethos first. Then logos. Then pathos."

36.     In an email from Defendant Frey to Defendant Walker on December 22, 2011, Defendant Frey complimented Walker on a pleading and then said, "This kicks ass. They are going to go apeshit.  When you blog it, *I'll send it to Glenn Reynolds and tell him that I think this is the guy who swatted me*...." (emphasis added). Mr. Reynolds is a well-known conservative author, professor and blogger. Defendant Frey was conspiring with Defendant Walker to create a situation that Defendant Frey could use to falsely accuse Plaintiff of swatting.

37.     In another email exchange with Defendant Walker, Walker tells Frey, "Now he [Kimberlin] is going to learn not to fuck with me either."  To which Frey replied: "Yeah, but he is 'fucking' with me.  Just not in court.  He sends bullshit interrogatories that he has to know will never get answered.  But mostly he is trying to make me miserable, publishing my address, *hiring people to swat me,* Google bombing me, defaming me, mocking me and so on. .... I just want you to understand that Kimberlin is behind all the things that have happened to me, and that he is truly dangerous and a psychopath." (emphasis added). Plaintiff never hired anyone to

swat Defendant Frey, and never even published online a single word or tweet about Defendant Frey.

38. In other emails to Defendant Walker and some of the other Defendants, Defendant Frey states that his office at the LA County District Attorney is "investigating" Plaintiff and had asked Defendant Walker to keep quiet while the investigation proceeded.

39.     In another email dated December 19, 2011, he states: "Don't volunteer where you got this stuff.  Just because of the investigation.  But for that, I would be shouting all this from the hilltops, *but I still think we can put these guys in prison*, so I have to stay quiet." (emphasis added).

40.     In an email dated January 25, 2012, Defendant Frey told Defendant Walker while waiting for a jury in a case he was trying. "I'm having fun. This is what I do: prove things. I have a jury out so I have a little time tonight [to review the pleading Walker prepared regarding Plaintiff]. "

41.     In several emails on December 21, 2011, Defendant Frey discussed his planned meeting with the FBI the following day and setting up a sting operation with law enforcement to arrest Plaintiff.  "I don't suggest lying unless it's done under supervision of law enforcement as part of a sting. ... But it only makes sense as part of a monitored sting."

42. On January 5, 2012, Defendant Frey asked Defendant Walker to send him a letter about Plaintiff to share with his supervisors at the LA County Prosecutors Office and other law enforcement officials.

43.     On or about December 31, 2011, Plaintiff discovered that "Aaron Worthing" was not a real attorney but that Aaron Worthing was actually Defendant Aaron Walker, an attorney licensed in Virginia.

44.     Plaintiff also discovered that Aaron Worthing was the publisher of a blog dedicated to attacking, smearing, mocking and insulting the Muslim faith and the Prophet Mohammed.  That blog was called "Everyone Draw Mohammed," and it solicited vile, pornographic and insulting depictions of the Prophet from people all over the world.  In December 2011, Defendant Walker had published more than 800 insulting depictions of the Prophet.

45.     On or about January 5, 2012, Plaintiff, by motion, advised the Montgomery County Maryland Circuit Court Judge in the Seth Allen case that the attorney assisting Mr. Allen was not Aaron Worthing but rather was Aaron Walker.

46.     On January 9, 2012, at a hearing on a Motion for Contempt against Mr. Allen, Defendant Walker appeared uninvited and interrupted the proceedings from the viewing area.  He demanded that the Judge seal the proceedings because Plaintiff had identified him as Aaron Walker, and everyone would know that he was the publisher of the Muslim hate blog.

47.     After the hearing was concluded, Defendant Walker followed Plaintiff out of the courtroom in Montgomery County Maryland, assaulted and battered him by physically striking him in the face, and wrestled his iPad from him.  Courthouse security responded, retrieved the iPad and urged Plaintiff to seek medical assistance.  Petitioner first went to a nearby medical clinic, which ordered him to immediately go to the Emergency Room at Suburban Hospital in Bethesda,

Maryland. There, he was evaluated, treated and given medicines for his physical injuries, including contusion to the eye, possible concussion, and back pain. He was laid off from work for several days thereafter. The assault and battery was in retaliation for Plaintiff exercising his right to redress and access to the courts, and it was meant to intimidate him.

48.     On January 12, 2013, Defendant Walker was terminated from his employment as an attorney for Professional Health Care Resources after Defendant Walker told it in writing that he was the publisher of the Muslim hate blog. Outside counsel for the company notified Defendant Walker in writing that he was terminated for writing the hate blog placing his co-workers at risk, for writing the hate blog at work and for being incompetent:

> *As for the reasons for your termination, while PHRI would have been justified in terminating you for your grossly irresponsible actions related to your blogging, especially on company time (many of your posts bear time stamps during normal working hours) the actual reason for your termination is the incredibly irresponsible way that you performed legal services for PHRI (or failed to) over the past four years, both as an outside attorney and, since July of 2011, as an employee of PHRI. As I mentioned to you on Friday, the state of you office is almost beyond description. Most of the legal documents in your office are piled haphazardly in no less than five legal sixe paper boxes, without regard to any kind of organization, filing, chronology, etc. The few files that were actually stored in your file cabinet are not filed alphabetically or subject matter. Even those appear to be incomplete and provide no basis for determining what actions were taken or remain to be taken to conclude the matter. It is also obvious that most of the work that you did in that office, as revealed by the stacks of documents in the top of your desk, relate to personal business, including your various blog activities. In fact, it is difficult to determine what you were working on for PHRI over the last few weeks, if anything. (Your characterization of your office as "messy" is belied by the photographs that we took to document the actual conduction of that room). The few documents that did relate to PHRI business do not indicate the current status of the matters to which they related and PHRI is now in the position of retracing steps and contacting numerous third parties to determine where things stand. Obviously, those efforts will cost PHRI significant sums, including the cost for outside counsel to communicate with*

14

*third party counsel and continue representation of PHRI, as necessary. Given those circumstances, it seems clear that you failed to perform your duties as counsel to PHRI, in favor of pursuing your personal interests, while being paid by PHRI. Thus, PHRI is entirely justified to terminate your employment for cause related to your failure to perform in accordance with the expectations and with your obligations as a member of the Virginia State Bar. Obviously, even if PHRI had a severance policy, which it does not, you would not be entitled to receive any such compensation under the circumstances. Rather, PHRI would be justified if it sought reimbursement from you for amounts paid for services that you did not perform during periods during which you did not perform services.*

*In light of all the above, and in the context of your actions outside the scope of your employment, if you must consider yourself to be a victim, it is only of your own irresponsible actions. PHRI does not have a responsibility to provide you with a "soft landing" from those actions in the form of unearned compensation. ....*

*.... You chose to poke at a group that is known for violent reprisals, apparently in the name of asserting first amendment rights (even though the U.S. Government is not involved in suppressing cartoons of Mohammed). And you were fearful enough of your adversaries to alert the police in two counties. So it would be unreasonable for you to condemn common sense efforts to protect those who have nothing to do with your activities as "beyond all rationality. In hindsight, do you still consider you "Everyone Draw Mohammed" blog to be rational? If so, I would not consider you to be a credible appraiser of rationality.*
http://www.scribd.com/doc/176869717/Letters-concerning-Aaron-

Walker-s-real-reasons-for-being-terminated

49.     In January 2012, Defendants Walker, Frey, and Nagy, in concert,

concocted a false narrative that Plaintiff (1) caused Defendant Walker's job

termination, (2) was not assaulted, and (3) falsified his hospital records.

50.     In February 2012, Andrew Breibart told Defendant Stranahan and

other Defendants that they should target Plaintiff. Defendant Stranahan stated that

he took this as an order from Andrew Breitbart to put all available resources into a

declaration of war against Plaintiff. Defendant Stranahan wrote: "This would have

been a big deal: putting real journalistic resources and a huge platform into the

Kimberlin story. It's what Andrew wanted."

https://twitter.com/Stranahan/statuses/381955531889704960

51.     In the spring of 2012, Defendants Walker, Frey, Nagy, Akbar and Stranahan, in concert, planned ways to push their false narrative into the media in order to (1) demonize Plaintiff, (2) create a witch hunt, (3) cause maximum harm to Plaintiff, (4) portray Defendant Walker as a victim, and (5) raise significant funds from people who believed the false narrative.  Defendant Walker made many trips to Maryland in furtherance of that conspiracy.

52.     In January 2012, Defendant Akbar in conspiracy with Defendants Walker, Frey, Nagy, Stranahan, and others launched a new entity called the National Bloggers Club to bring together far right bloggers to collectively coordinate their messaging about specific issues, and target specific individuals.  Defendant Akbar registered The National Bloggers Club as a Texas non-profit corporation. When these Defendants agreed to and did publish the false narratives of the National Bloggers Club regarding Plaintiff and the Club's fraudulent 501(c)(3) status, they joined the RICO Enterprise. Defendant Akbar later stated that he can order bloggers in the National Bloggers Club to target people or not target people.  Defendant Akbar has stated that he is in a supervisory position over the other bloggers in the Club. Defendant Akbar has been to Maryland several times in furtherance of the conspiracy.

53.     The National Bloggers Club is a criminal enterprise engaged in illegal activity for more than two years.  It has defrauded citizens out of hundreds of thousands of dollars by creating false narratives, mostly using Plaintiff's name, and

16

by falsely stating that it is a 501(c)(3) non-profit.  In fact, it has never filed any
required business filings since its initial registration.

54.     The fraud committed by The National Bloggers Club is extraordinary
in its scope because it lasted over a period of years, scammed hundreds of donors,
conned major names in the conservative community, and was conceived by a
convicted felon from the State of Texas who was on probation for fraud.  Clearly, this
fraud was extended, widespread and particularly dangerous.

55.     Defendant Michelle Malkin joined The National Bloggers Club on its
board of directors and used her position and reputation to give the Club credibility.
She joined the RICO Enterprise and conspiracy when she agreed to and did publish
the false narratives of The National Bloggers Club regarding Plaintiff.

56.     Defendants Akbar, Walker, Frey, Stranahan, Nagy and others decided
that Plaintiff would be the first smear target of The National Bloggers Club.  They
decided to have an "Everyone Blog About Brett Kimberlin Day" on May 25, 2012
where scores of bloggers would write smear stories about Plaintiff, post them
online, and tweet about them on Twitter.  Several of those bloggers are from
Maryland, and all the blog posts about Plaintiff were viewed on the Internet in
Maryland.  In fact, Plaintiff is the only person targeted by The National Bloggers
Club for a smear campaign based on false narratives, and he is the only person the
Club used to raise funds for its fraudulent non-profit.  The National Bloggers Club
engaged in cyber bullying of Plaintiff on a grand scale.

57.     In May and June 2012, the National Bloggers Club bloggers generated
hundreds of posts and tens of thousands of tweets smearing Plaintiff.  During that

time and continuing until the present, Defendant Akbar solicited donations on his

and other websites for the Defendant National Bloggers Club, and falsely told donors

that their donations were tax deductible and that National Bloggers Club was a

legitimate 501(c)(3) organization. https://www.lsnewsgroup.com/wp-

content/uploads/2013/01/NBC-Feb-9-2012-Letter.pdf Defendant National

Bloggers Club and the other Defendants raised more than a hundred thousand

dollars based on those fraudulent representations. Even after people asked for proof

that Defendant National Bloggers Club was granted 501(c)(3) status, and Defendant

Akbar failed to provide that proof, Defendants continued to solicit donations for

Defendant National Bloggers Club.  As of March 7, 2014, The National Bloggers Club

continues to raise money on a donate page stating falsely: "National Bloggers Club,

Inc. is a 501(c)(3) -- status pending"

https://secure.piryx.com/donate/c97AfwVc/Remembering-Breitbart/

It is still raising funds to target Plaintiff on its www.BomberSuesBloggers page

through a Rally,org fundraising page. That money is being raised online in interstate

commerce, and placed into a federally insured bank.

    58.    During the time alleged in the Complaint, Defendant National Bloggers

Club not only never filed for 501(c)(3) status with the IRS, it never filed any IRS 990

yearly return, and never even filed any of the mandatory business filings or tax

returns with the State of Texas.  On October 18, 2013, the Comptroller of State of

Texas forfeited the right of The National Bloggers Club to transact business because

of these failures to file.  And on February 21, 2014, the State of Texas revoked the

charter of The National Bloggers Club to act as a corporation.

59. The Defendants who are members of The National Bloggers Club created it as a shell company to defraud more than one hundred thousand dollars from gullible citizens by making up false narratives about Plaintiff. They never intended to and never did run that organization in any legitimate manner. They never conducted any similar campaigns against any other person. In fact, the Club has not provided any formal or informal accountability or transparency as required for 501(c)(3) non-profits.

60.     The Defendants National Bloggers Club and Ali Akbar solicited and received donations from citizens of Maryland and throughout the United States based on their fraudulent representations.

61.     Defendant Dan Backer joined The National Bloggers Club when Ali Akkbar was exposed in articles as a convicted felon and fraudster from the State of Texas and The National Bloggers Club was exposed as a fraudulent 501(c)(3) non-profit. Dan Backer has a reputation as a lawyer who creates Political Action Committees or other entities, raises lots money in donations, and then uses the money as he sees fit without without dispersing the funds as he represented. For example, he and Todd Ceffarati scammed hundreds of thousands from Tea Party activists by falsely portraying TeaParty.net as an organization that would help promote Tea Party candidates. http://conservative-outlooks.com/2011/04/05/evidence-mounts-arizona-tea-party-is-a-fake/ Defendant Backer has raised millions of dollars through dozens of entities that do not fund the activities advertised. According to FEC expenditure filings, Defendants Backer and DB Capitol Strategies had been connected to Defendant Akbar for several

years, and had been paying Defendant Akbar's Vice & Victory Agency for various things.

62.    As a result of these smear blogs and articles, Plaintiff, while in Maryland, received many threats of injury and death by people who read and believed the false narratives.  These were received by email, phone and blog posts. Several readers called and/or contacted online Plaintiff, his family, his neighbors and his children threatening, intimidating and smearing Plaintiff.  Several other readers came to Plaintiff's home in Maryland and took photographs of the home and of him and his child.  This caused Plaintiff and his family extreme emotional distress.

63. Examples of these threats are:

- I'll be bringing the straw for you. It's now not a matter of if.
  Brett Kimberlin, neck broken by 110lbs Female Marine.
- Brett Kimberlin is done....... the hunter is the hunted
- We know who you are. We're coming for you. You will pay.
- I don't get intimidated & get on my bad side & you'll get
  the full wrath. Not just from but. (sic) I have my own. The extreme
  wing of the TP has arrived. This message is for Mr. K. It would not suit
  the best interests of all people involved in your movement to shut the
  F&*K up & that includes you. ...

64.    Several of the threats that Plaintiff received stated that he would be harmed or killed if he appeared in court in Maryland or cooperated with the police there.  For example,

- If Brett does not start to act like a grown up and quit calling the police on
  people like a little punk. There will be hell to pay.
- Army Of Davids sent a message.... Don't show up in court Tuesday or you
  are dead. This is your only warning.

65.    Plaintiff has been under siege by the Defendants for more than three years.  They have been engaged in constant cyber bullying and cyber stalking of him

and his family by using information and communication technologies to support

deliberate, repeated, and hostile behavior to harm Plaintiff. He lives in constant fear

for himself and his family because of the bullying and threats against him.  Virtually

every time Plaintiff appears in Court, Defendants Walker and Hoge have stalked him,

and Plaintiff fears that Defendant Walker will again assault him.  Both Defendants

Walker and Hoge constantly write blog posts, some with photos of their shots at the

shooting range, stating how they are armed and dangerous and will not hesitate to

use their weapons against Plaintiff. Plaintiff has witnessed Defendants Walker,

Akbar, Frey and Hoge attack anyone online who questions their conduct, and at least

one reporter has received many death threats after writing about the Defendants.

66.     Defendants Akbar, Frey, Hoge, and Walker, have continued to defame

and publicly attack Plaintiff after the filing of this Complaint with thousands of

tweets and blog posts falsely calling Plaintiff a swatter and stating that he caused

Defendant Walker's termination.  In virtually every post and tweet, these

Defendants use Plaintiff's name along with a criminal accusation to have that title

listed on Internet search engines in order to cause the maximum damage to Plaintiff,

his reputation, his family, his businesses and his livelihood.

67.     Defendant Akbar wrote on the front page of The National Bloggers

Club website, which was still there on April 8, 2015, the following false narrative:

> Kimberlin wants more than the $1 MILLION he is seeking in his frivolous
> lawsuit -- he wants silence. Kimberlin's 2 year campaign of harassment has
> led to bloggers losing jobs, threats of violence, police "SWATTings" and one
> journalist even had to move homes with his family. Frankly, this all costs
> money and Kimberlin knows it. Your help is necessary.
> www.BomberSuesBloggers.com

68.    As part of Defendant Walker's fraudulent campaign to portray himself

as a victim of Plaintiff, Defendant Walker filed numerous false criminal charges,

Peace Orders and civil suits against Plaintiff in 2012 and 2013 in Maryland. Each of

these filings made false claims and allegations against Plaintiff, and the judges

and/or the State's Attorney in Montgomery County Maryland, Prince William

County Virginia, and the United States District Court in Greenbelt, Maryland rejected

each. Despite these rejections, Defendants continued to repeat their false narratives

as concocted by Defendants Walker, Frey, Nagy, Stranahan and others. Mr. Walker

and other Defendants have continued to repeat these false narratives even to this

day.

69.    Several of the Defendants conspired to intimidate State Attorneys in

Montgomery and Howard County Maryland, and Judge Richard Jordan and Judge

Cornelius Vaughey in Montgomery County after they rejected Defendants' false

narratives. Specifically, Defendant Walker defended Seth Allen's online attacks of

Judge Jordan, and then Defendant Walker, using the pseudonym Aaron Worthing,

filed pleadings for Mr. Allen defending those attacks. He did this after Seth Allen

sent him an email saying that he might come to Maryland to murder Plaintiff.

Defendants Walker, Hoge, Frey and Stranahan condemned Judge Vaughey online

which resulted in the judge being targeted by having his home phone number and

address posted online, causing the head of courthouse security to provide special

security for him. Defendants Walker and Hoge called on their followers to contact

Montgomery County States Attorney John McCarthy and demand that he arrest and

prosecute Plaintiff based on their false narratives. In March 2013, Defendants Hoge,

Walker, and Stranahan launched "Everyone Blog About Howard County (Maryland) State's Attorney Day," which resulted in threats by phone and email to the State's Attorney over a period of several weeks.

http://allergic2bull.blogspot.com/2013/03/everyone-blog-about-howard-county-md.html

http://hogewash.com/2013/03/25/everyone-blog-about-the-howard-county-states-attorney-day/

70.     At some point between December 2011 and May 2012, Defendants Walker, Frey and others concluded that they had to create a more sinister false narrative against Plaintiff that would result in criminal and Congressional investigations.  Therefore, they decided to very publicly falsely accuse Plaintiff of "swatting conservative bloggers in order to silence them."

71.     Defendant Frey was allegedly swatted on June 30, 2011 at his home in California.  At the time, he told the police that he thought it was because he was writing about Congressman Anthony Weiner.  However, starting in December 2011, Defendant Frey, in concert with others, including Defendants Walker, Nagy and Stranahan, began publicly implying and stating that Plaintiff had him swatted.  Some of these statements were in writing and others were oral.  For example, http://allergic2bull.blogspot.com/2012/05/breaking-another-critic-of-convicted.html.  In fact, in an email to Defendant Walker on December 11, 2011, Defendant Frey said that he would call blogger Glenn Reynolds and tell him that Plaintiff swatted him.

72.     Defendants quickly realized that their allegations of swatting against Frey one year earlier were not getting enough traction so they concocted a plan to get the swatting smear into the mainstream media, and they did that by recruiting Defendant Erick Erickson, who blogged at the highly trafficked RedState and was a paid commentator at CNN. On or about May 15, 2012, Defendant Erickson joined the RICO Enterprise by contacting his local police and told them that he was going to write about Plaintiff on Defendant RedState and might be swatted. And, as predicted, on May 27, 2012, Erickson was swatted and the police he had earlier told to expect the swatting came to his home in Georgia. Defendant Nagy wrote about the swatting incident for Breitbart.com and posted the video from the CNN broadcast, which were viewed in Maryland. This contained the defamatory implication that Plaintiff was involved with the swattings.

http://www.breitbart.com/Big-Government/2012/06/08/Erickson-CNN-SWATting

73.     Defendant Erickson and many other Defendants and members of the National Bloggers Club wrote extensively about Defendant Erickson's swatting and falsely blamed Plaintiff for doing it, both directly and by implication. For example, http://www.examiner.com/article/bloggers-observe-day-of-silence-to-urge-congressional-action-over-swatting
Defendant RedState published two articles imputing that Plaintiff was involved with "political terrorism" through swatting.
http://www.redstate.com/erick/2012/05/29/one-metric-on-impact-swatting/
http://www.redstate.com/erick/2012/05/25/daily-koss-neal-rauhauser-bomber-brett-kimberlin-and-political-terrorism/

74.     Defendant Erickson appeared on CNN Television on June 8, 2012 and imputed that Plaintiff was responsible for the swatting through "his fan club." Defendant Erickson even pushed back against the reporter's protests that there was no evidence of Plaintiff's involvement, saying that "the same fact pattern" applied where the bloggers wrote about Plaintiff and within weeks they are swatted. A video of this appearance was posted widely on the Internet and on YouTube. http://www.youtube.com/watch?v=T150f46AwIM

75.     On June 25, 2012, Defendant Walker was allegedly swatted at his home in Virginia. He and other Defendants stated publicly in print and on radio that Plaintiff was responsible for the swatting. Defendant Walker appeared on Huff Post Live, imputing that Plaintiff swatted him. http://live.huffingtonpost.com/r/segment/swatting-lapd/5166cb75fe34442d70000390. And he posted on his Twitter account. "As for TSG and stack, they were at least the tools of Kimberlin and Rauhauser, who had a hand in SWATting him, too." https://twitter.com/AaronWorthing/status/342499727444688896

76.     On or about May 25, 2012, Defendant Glenn Beck joined the campaign to smear Plaintiff and provided a platform on his Glenn Beck/Mercury Radio Arts Programs radio/television broadcast for Defendants Walker and Frey to accuse Plaintiff of swatting. Specifically, Defendant Beck allowed Defendants Walker and Frey to appear via audio on his radio/television program and impute, imply and state that Plaintiff targeted Defendant Frey with swatting and caused Defendant Walker to be fired. Defendant Frey stated on the program that he is a "Deputy

District Attorney." These programs were viewed in Maryland and across the globe.

Defendant Frey specifically stated that the swatting "happened to another guy

writing about the same story," and Defendant Frey stated that Plaintiff "could have

gotten me killed." http://www.youtube.com/watch?v=o8F0gXl8bUE

77.     On May 25, 2012, Defendant The Blaze published an article entitled,

"Do You Know What 'Swatting' Is? Victims Tell Beck How They Were Targeted By

Terrorist Brett Kimberlin," and said title and article imputed that Plaintiff swatted

conservative bloggers. This was viewed in Maryland and published on the Internet.

http://www.theblaze.com/stories/2012/05/25/do-you-know-what-swatting-is-
victims-tell-beck-how-they-were-targeted-by-terrorist-brett-kimberlin/

78.     On May 25, 2012, Defendant The Blaze published an article titled

"Meet Soros-Funded Domestic Terrorist Brett Kimberlin, Whose 'Job' Is Terrorizing

Bloggers Into Silence," which falsely and maliciously states that Plaintiff has filed

over 100 frivolous lawsuits and is viciously attacking bloggers.

http://www.theblaze.com/stories/2012/05/25/readymeet-soros-funded-
domestic-terrorist-brett-kimberlin-whose-job-is-terrorizing-bloggers-into-silence/

79.     Later that day, GlennBeck.com, GlennBeckTV, TheBlazeTV under the

banner of Defendant Mercury Radio Arts, published another article titled "Glenn

Talks To Bloggers About Brett Kimberlin Terrorism," which falsely and maliciously

imputes that Plaintiff swatted Defendant Frey and Defendant Walker.  That article

has two videos of Defendant Beck interviewing Defendants Frey and Walker in

which they imply and impute that Plaintiff swatted them.  Defendant Beck states

that The Blaze article about Plaintiff is "one of the most important exposes that they

have ever done." He falsely stated that Plaintiff was being paid to "put conservative

bloggers out of business." http://www.glennbeck.com/2012/05/25/glenn-talks-to-

bloggers-about-brett-kimberlin-terrorism/ This was viewed globally on the

Internet.

80.     At about the same time, Defendant Beck also published a defamatory

graphic which he hand wrote which has Plaintiff in the center of a host of criminal

activity including swatting, tax evasion and stalking. This and the other defamatory

statements by Defendant Beck and the companies he controls were done

maliciously to cause maximum harm to Plaintiff. Defendant Beck knew of should

have known they were false, and he did not conduct any due diligence or ask

Plaintiff for comment before making the malicious statements. These statements

placed Plaintiff before the public in false light in a highly offensive manner, and

Defendant Beck acted with a reckless disregard for the truth because he did not

follow journalistic standards that require that the subject of a story be given the

opportunity to respond to an allegation of wrongdoing.

81.     On June 4, 2012, Defendant Ace of Spades joined the smear campaign

and published "National Day of Blogger Silence" on Defendant Ace of Spades' blog to

focus attention on the false narrative that Plaintiff was responsible for swattings. In

the article, Defendant Ace of Spades imputed that Plaintiff was involved with the

"crime" of swatting: "They are literally going to *get someone killed.* That is their

endgame here." "...Brett Kimberlin and his stalker crew...." This was viewed in

Maryland. http://ace.mu.nu/archives/329849.php  He published four other

defamatory articles.

- In the first, article, http://minx.cc/?post=329569 he republished a post from Patterico which accuses Plaintiff of swatting and then he says: "It's as long as an Ace of Spades movie review, but it is a shocking exposition of just how nefarious Kimberlin and his henchmen are alleged to be."

- In the second article, http://ace.mu.nu/archives/329494.php he targeted Plaintiff's employer, saying that the non profit gets donations to subsidize Plaintiff's "harassment and abuse...." And then he falsely accuses Plaintiff of harassment, and then he calls him a "thug." And then: "You can be a thug if you like. *But you can do it on your own goddamned dime.* One last thing we can do: We can urge/request/*demand* our representatives *read Brett Kimberlin's criminal history into        the United States Congressional Record.* Why? Not for punitive reasons. Rather, to answer the question I posed in the headline. Did the US Congress strip American citizens of their right to state demonstrably true facts without unending harassments? Did we lose that right simply because Brett Kimberlin has decided, as a Congress of One, that we should no longer have it?"

- In the third article, http://ace.mu.nu/archives/329977.php, he engages in widespread defamation.
- "Two people have already been silenced. One man has been *arrested* -- arrested, for blogging about the criminal history of Brett Kimberlin, and for describing his ongoing ordeal at Kimberlin's hands. Unless Congress acts -- and acts swiftly -- there will be still further innocent citizens subjected to Brett Kimberlin's lawless vigilantism."
- He then republishes an article accusing Plaintiff of running a new criminal "scam."
- Then he imputes that Plaintiff was involved with swattings, and in terrorism. "While I, and Kimberlin's other targets, are heartened by Congress' letter to Eric Holder to look into the SWATting matter, what a reading of Citizen K demonstrates is that Congress itself needs to act in order to finally put an end to Brett Kimberlin's ongoing digital (and real-life) terrorism."
- "Prison did not stop his crimes. Prison only taught him new skills."
- "And the avalanche of frivolous, vexatious, and outright malicious lawsuits begins anew, as well as more alarming harassments."
- "I am writing to you, Members of Congress, to alert you of the full menace that Brett Kimberlin still poses to society. He should never have been let out of prison; having lived nearly the entirety of his life since high school as one-man crime wave, it can hardly have been believed that he had truly reformed by 2000."
- "It is a burden to live with a criminal conviction for a terrifying domestic-terrorism bombing spree, as Brett Kimberlin well knows. However, Brett

Kimberlin has decided that burden shall no longer fall upon his shoulders, but upon the shoulders of anyone who mentions his extensive, remorseless, relentless criminal history. Brett Kimberlin has personally decided that it is society at large, rather than himself, who shall bear the burden of his crimes."

- "Will Congress consider enacting positive legislation to limit Brett Kimberlin's relentless determination to sue over any negative mention of his past?"
- "At some point, the ongoing case of Brett Kimberlin v. The World At Large must finally, *finally* end."
- "A crime is in progress. It is ongoing. Will Congress please act to stop it?"
- "If you are reading this, please contact Congress to ask them to not only take an interest in this matter, but to seriously consider enacting positive statutory law to limit Brett Kimberlin's ongoing abuse of the legal system and corruption of justice."
- "Congress also doesn't appreciate the urgency of the situation. If there's one theme of Brett Kimberlin's life, it's escalating risk-taking when already in a risky situation."
- "The Speedway Bombings, of which he was convicted, were conducted even as he was under investigation for the murder-by-hire of an innocent grandmother. The theory was that Brett Kimberlin set the bombs to cause chaos and prevent a proper investigation of the execution-style murder of Julia Scyphers."
- "*Escalation. .... Escalation.* And this leads to the last point that I don't know if Congress is aware of: Brett Kimberlin is a dangerous man. That is not my opinion; that is the finding of the United States federal courts. This is not some blogwar bullshit. This is not a case of he called me a dirty name on the internet and I'm angry. This is digital terrorism, straight up. With consequences that go far beyond what someone said about you on Twitter. Some people are heartened that this malicious ongoing to threat to society is finally getting some media coverage, and some United States government officials are now paying close attention. I'm not. Because I know what happened last time Brett Kimberlin began getting some serious scrutiny: Bombs began going off. *Escalation.*"

- And in the fourth article, http://ace.mu.nu/archives/330355.php, he falsely states that Plaintiff has been engaged in "his endless campaign of harassment, intimidation, and lawfare." He then quotes verbatium from Defendant Dan Backer and DB Capitol Strategies' defamatory post accusing Plaintiff of swatting.

    82.    On June 25, 2012, Defendant Stranahan wrote an article on

Breitbart.com, implying that Plaintiff was responsible for the swatting of Aaron

Walker. This was available to citizens of Maryland. http://www.breitbart.com/Big-Government/2012/06/25/Blogger-Aaron-Walker-Swatted

83.    On June 25, 2012, Defendant Frey wrote an article on Patterico's Pontifications implying that Plaintiff was responsible for the swatting of Defendant Walker, and even told other bloggers to call the police if they planned to write about Plaintiff because they could be swatted.  All of Defendant Frey's blog posts are viewable in Maryland. http://patterico.com/2012/06/25/aaron-walker-swatted/

84.    On May 27, 2012, Defendant Erick Erickson joined the smear campaign Enterprise and published an article on Defendant RedState, which was viewed in Maryland, implying that Plaintiff was somehow involved with swatting him:

> Last week we spent a lot of time writing about Brett Kimberlin and the incident involving blogger Patterico where someone spoofed his phone number and told 911 he had shot his wife.
> Tonight, my family was sitting around the kitchen table eating dinner when sheriffs deputies pulled up in the driveway.
> Someone called 911 from my address claiming there had been an accidental shooting.
> It wasn't nearly the trauma that Patterico suffered, but I guess the Erickson household is on somebody's radar.
> Luckily it was two sheriffs deputies who knew me and I had already, last week, advised the Sheriff's Department to be on the look out for something like this. http://www.redstate.com/erick/2012/05/27/swatting-the-ericksons/

85.    On June 25, 2012, Defendant Twitchy joined the smear campaign and published an article titled, "Aaron Walker Swatted," which compiled dozens of tweets that together impute that Plaintiff committed the swatting.  Twitchy posts are viewable in Maryland. http://twitchy.com/2012/06/25/aaron-walker-swatted/

86.     Defendants Erickson, Walker, Frey and others contacted Members of the House and Senate, telling them that Plaintiff was responsible for the swatting and urging them to demand a criminal investigation by the Department of Justice. As a result Senator Saxby Chambliss and 87 House Members signed letters urging the Department of Justice to investigate and prosecute the person who swatted "conservative bloggers." These letters in conjunction with the false statements by Defendants imputed that Plaintiff was involved in the swattings.

87.     Two FBI agents came to Plaintiff's home in Maryland on or about July 1, 2012, and interviewed Plaintiff about the swattings. On or about August 20, 2013, another FBI agent interviewed Plaintiff's wife after Defendant Walker contacted the agent and told him to surprise her at a location in Maryland known to Defendant Walker.

88.     In 2012 and 2013, Defendant Walker repeatedly contacted state and federal law enforcement officials and falsely told them that Plaintiff committed the swattings and demanded that they arrest him. In 2011 and 2012, Defendant Frey repeatedly contacted state and federal officials and told them that Plaintiff was involved with the swattings. These Defendants made these false statements without any evidence that Plaintiff was involved with the swattings and they did so in order to portray Plaintiff in a false light and have Plaintiff arrested or harassed by law enforcement agents.

89.     Defendant Walker through Defendants Dan Backer and DB Capitol Strategies attempted to use discovery in his frivolous Virginia civil lawsuit to demand documents from Plaintiff to bolster his false swatting allegations. The judge

in the case denied those discovery requests.  Prince William Virginia Circuit Court Judge Potter found that that case was without merit, both legally and factually, and was brought for an improper purpose. Plaintiff was required to travel from Maryland to Virginia to defend against that malicious suit.

90.     Defendant Walker through Defendants Dan Backer and DB Capitol Strategies filed a federal lawsuit in the District of Maryland asking the federal court to prohibit Plaintiff from seeking redress in State of Maryland courts based on the false narrative that Plaintiff engaged in criminal and unethical conduct.  Defendant Walker came to Maryland from Virginia to prosecute that malicious suit.

91.     Defendants Walker and DB Capitol Strategies attempted to use Defendant Walker's frivolous federal lawsuit to extort a settlement that would require the termination of Plaintiff's employment at the non-profit, and the disclosure of protected information from his employer.  Attorney and Defendant Dan Backer wrote an email to that effect and it was received in Maryland. He included Plaintiff's employer in the suit in bad faith and did not even allege that the employer did anything except employ Plaintiff.

92.     When Plaintiff refused Defendant Backer's extortionate demand and filed a Motion to Dismiss, Mr. Backer responded by sending a defamatory document hold letter to the non-profits' largest institutional funder, and falsely told that funder that Plaintiff and the non-profits were engaged in criminal activity on a grand scope. The letter states in part:

> This letter is to inform you of the current above-styled lawsuit pending against Mr. Brett Kimberlin, Justice Through Music Project, and Velvet Revolution US ("the Organizations"), in which I represent Plaintiff Aaron Walker.  Your organization has come up during the development of this

litigation as a donor to one or both of these organizations, and as such potentially enabling the tortious and potentially unlawful conduct of Mr. Kimberlin and the Organizations. For your benefit, I have enclosed the Complaint and a Rule 11 motion Mr. Kimberlin filed against me in a desperate attempt to intimidate me from pursuing this case and litigating it through trial. I have also included my response and I give you my assurance that I will be preceding (sic) in strict accordance with the Federal Rules of Civil Procedure and, in short order, with discovery which will seek information on every aspect of the Organizations' including donor and fundraising apparatuses. Because of your organization's involvement with Mr. Kimberlin and the Organizations, and because of their potentially tortuous and perhaps even illegal activity, I am sending you this letter as a request to preserve potential evidence in this matter. ....

Two days after Defendant Backer sent the defamatory letter, Judge Motz dismissed the federal case against Plaintiff and the non-profits.

93.     Defendant DB Capitol Strategies posted on its website that it was suing Plaintiff in federal court to defend bloggers from "swatting," imputing that Plaintiff was responsible for those swattings. http://bloggersdefenseteam.com/?about Defendants Dan Backer and DB Capitol Strategies wrote on its blog that Plaintiff's "victims" were "swatted," implying that Plaintiff was involved with the swattings. "Kimberlin 'associates' are suspected in far more sinister forms of harassment - including the 'SWATting' of an Assistant DA in California." http://bloggersdefenseteam.com/?narrative  These are now only viewable via password in Maryland but were viewable for more than one year.

94.     Defendant DB Capitol Strategies raised tens of thousands of dollars based on this false narrative and continued to raise funds even though Judge Motz dismissed its frivolous suit against Plaintiff on November 26, 2012.

95.     Defendant Walker's attorney in the state and federal lawsuits, Defendant Dan Backer, who is the director of DB Capitol Strategies, refused

Plaintiff's repeated requests to remove the false and defamatory information from the DB Capitol website.  Finally, in February 2014, those posts were placed under password protection.

96.     Defendant Michelle Malkin used her blog and Twitter compiler, Defendant Twitchy, to repeatedly state that Plaintiff committed the swattings.  For example, on May 30, 2012, she wrote a blog post titled "Breakthrough: Fox News Covers Brett Kimberlin/Patterico Swattings." http://michellemalkin.com/2012/05/30/breakthrough-fox-covers-brett-kimberlin-patterico-swatting-bloggers-continue-pressing-the-story/

97.     On April 8, 2013, Defendant Michelle Malkin published an article on her blog titled, "More Celebrities Swatted, Meanwhile Anti-Brett Kimberlin Bloggers Still Under Fire." http://michellemalkin.com/2013/04/08/more-celebrities-swat-ted-meanwhile-anti-brett-kimberlin-bloggers-still-under-fire/ Defendant Malkin imputed that Plaintiff was responsible for the swatting of Defendants Frey and Walker. The first commenter to the article said: "Brett Kimberlin needs to wake up with a horse's head in his bed."

98.     Defendant Frey is an Assistant District Attorney in Los Angeles, California by day, and by night he blogs as Patterico.  Defendant Frey has repeatedly stated, directly and by implication, that Plaintiff swatted him.  For example, on May 25, 2012, Defendant Frey headlined an article about swatting with Plaintiff's name prominently displayed said in the article stating that he could have been killed, and imputed that Plaintiff was responsible for the swatting.

http://patterico.com/2012/05/25/convicted-bomber-brett-kimberlin-neal-
rauhauser-ron-brynaert-and-their-campaign-of-political-terrorism/

99.    Defendants Frey, Walker, Stranahan, Nagy, and others have used
Defendant Frey's job description – "Assistant District Attorney" – to give credibility
to their statements smearing Plaintiff as a swatter.  This job description has been
published in articles, in tweets, in emails, and in letters.  For example,

- Defendant Frey wrote "I am that L.A. County Prosecutor."
  http://patterico.com/2012/05/25/convicted-bomber-brett-
  kimberlin-neal-rauhauser-ron-brynaert-and-their-campaign-of-
  political-terrorism/

- "Los Angeles County Deputy District Attorney Patrick Frey has an
  unusual night job."
  http://www.laweekly.com/2012-11-08/news/patrick-frey-
  swatting-patterico-deadly-game/full/

- "It's a phone call that could have gotten me killed," Patrick Frey,
  a deputy district attorney at Los Angeles County District Attorney's
  Office...."
  http://www.foxnews.com/politics/2012/05/31/conservative-
  bloggers-say-theyre-being-harassed-for-postings/

- "LA Weekly recounts the story of Deputy District Attorney Patrick
  Frey, the well-known conservative blogger Patterico, being
  SWATted last summer" http://www.breitbart.com/Big-

Government/2012/11/08/LA-Weekly-Interviews-Patterico-About-
His-SWATting

- "Another blogger who was SWAT-ted, Patrick Frey, a Los Angeles
  assistant district attorney, went through the terrifying experience in
  July of 2011"
  http://www.washingtontimes.com/blog/watercooler/2012/jun/10
  /picket-fla-congresswoman-leads-effort-demanding-sw/

- "In October of 2010, I was contacted by J. Patrick Frey, a.k.a.
  "Patterico" of Patterico's Pontifications.  Patrick is a Deputy District
  Attorney in Los Angeles in the hard core gang unit."
  http://allergic2bull.blogspot.com/2012/05/how-brett-kimberlin-
  tried-to-frame-me_17.html

100.    Defendant Frey relies on his job as Assistant District Attorney to
maintain a leadership and supervisory position in the conservative blogging
hierarchy and in the instant conspiracy. His orders are followed, his directives are
heeded, his legal analysis is unquestioned, and his statements are believed.

101.    Defendant Frey routinely refers to himself on his blog as "Patterico," a
"prosecutor in Los Angeles County...." http://patterico.com/aboutpatterico.
Readers, commenters and reporters all believe that Frey's well-known online alter
ego "Patterico" is a digital extension of John Patrick Frey, the Los Angeles County
Deputy District Attorney. In fact, Defendant Frey identifies himself as "Patterico"
and describes "Patterico" as a prosecutor in Los Angeles County who prosecutes
criminals. In his blog posts, Defendant Frey has made clear that "Patterico's

Pontifications" is the product of a Deputy District Attorney. Frey has indicated that

"Patterico's Pontifications" is linked to his position as a prosecutor. In a September

9, 2009 blog post entitled  "Patterico Banned at the L.A. Times???," Frey wrote "[a]re

they banning all Deputy District Attorneys? Or just the ones that make them look

like fools on a daily basis?" Id. Frey's post shows that he perceives any purported

ban on "Patterico" to be related to Frey's position as Deputy District Attorney. Id.

Due to Frey's repeated references to his position as a prosecutor, other media

outlets have viewed "Patterico's Pontifications" as inextricably linked to his position

as a deputy district attorney. Moreover, Frey frequently invokes his position as a

prosecutor to lend substance and weight to his opinions, including claiming that "we

Deputy DA's are suspicious by nature;" disparaging a commenter's critique on his

blog post by stating "[i]n your world, every prosecution is of an innocent person . . .

your world has nothing to do with the world I know, and you are clearly 100%

ignorant of the nature of the process you are discussing" asserting that "[b]eing a

prosecutor is about presenting the truth" (Id.); and discussing inside information

from the DA's Office.  "Patterico's" invocation of his authority as a prosecutor is

subtle and Frey has intentionally crafted "Patterico" to give the impression that

"Patterico" speaks casual, offhand, and is almost always followed by a "disclaimer."

But when "Patterico" continuously and extensively identifies himself as a

prosecutor, when he uses his public position to exert influence and lend credibility

to his opinions, and when he threatens criminal prosecution, Frey has transformed

"Patterico" into the virtual, online personification of the Deputy District Attorney

John Patrick Frey. Thus, when "Patterico" speaks, he speaks with the authority and

37

prestige of the Office of the District Attorney. By cloaking himself with the power of

his government position, "Patterico" placed readers and Internet observers on

notice that his expressions carried the weight and gravitas of a prosecutorial office

of the state government. Like the off-duty police officer who flashes his badge and

uses a department issued handgun, "Patterico" openly displays his credentials as a

prosecutor. When "Patterico" issued his threat to investigate and imprison Plaintiff

for swattings, the statement was uttered with the force of authority conferred on

Frey by virtue of his position as a prosecutor on a matter in which Frey was

uniquely endowed to act.

102.   Many of the Defendants and other non-defendant bloggers and

reporters believed that Plaintiff was involved with the swattings because of

Defendant Frey's position as Deputy District Attorney.  The accusations and

implications by Defendant Frey were so credible because of his position as a

prosecutor, and he capitalized on that position to make sure that no one questioned

that Plaintiff committed the swattings.  He and other Defendants also used that

position to maximize the publicity about the swattings, and to mislead the FBI and

Congress about the swattings.

103.   On May 23, 2012, Plaintiff received a threat on his non-profit website

contact page saying: "LEAVE HIM ALONE. DON'T GO THERE."  Plaintiff interpreted

this as a threat to leave Mr. Frey alone and not to contact his supervisors.  When

Plaintiff checked the contact logs on for that time and that website, he discovered

that the email came from the "Los Angeles County Sheriff's Department," at IP

Address 146.233.0.202 in Whittier, California. Only a person acting under color of

law could convince an employee of the LA County Sheriff's Office to write a threat like that. The person who wrote it would have to feel that he would be "protected" by Defendant and Deputy District Attorney Frey against any blowback.

104. Defendant Frey, as an official of the State of California, has used his position to intimidate, harass, stalk, threaten and harm Plaintiff, directly and through others. Defendant Frey masquerades as a law abiding state official by day, and then by night he calls on his readers to harass his targets, including Plaintiff. All the while, Defendant Frey and his employer maintain official plausible deniability by asserting that he is acting alone and off duty, yet he wears the title of Assistant District Attorney by day and by night and uses it on his blog, in talking to media, and to bolster his stature, credibility and standing.

105. Defendant Frey has stated that Plaintiff should be arrested and jailed for various reasons. Because these statements come from an Assistant District Attorney, they carry much greater weight than would such calls coming from a regular citizen. These statements have been viewed in Maryland.

106. Defendant Walker has written many letters to people and officials using Defendant Frey's job position in order to enhance the credibility of his false statements against Plaintiff. Defendant Walker has used Defendant Frey –"Assistant District Attorney"—as a reference, and urged people to contact Assistant District Attorney Frey to verify Defendant Walker's false statements about Plaintiff. http://allergic2bull.blogspot.com/2011/12/i-respond-to-brett-kimberlins-motion.html

107.    As noted in the emails from Defendant Frey above, Defendant Frey
uses the legal training, legal contacts, and legal resources he has developed as an
Assistant District Attorney to target Plaintiff with smears, false narratives and legal
analysis.

108.    Defendants have repeatedly stated that their goal is to have Plaintiff
arrested and jailed, and destroy his ability to raise funds for his non-profit
employer.

109.    Defendants' business model is to create false narratives about Plaintiff
in order to raise funds for themselves while driving their blogs to higher rankings of
Internet search engines such as Google.

110.    On June 26, 2012, The Franklin Center published a press release that
was viewed in Maryland, which stated:

> Convicted domestic terrorist Brett Kimberlin and his associates have
> repeatedly terrorized bloggers and others who highlight his story with over
> 100 frivolous lawsuits and 4 SWATting attacks. SWATting is a dangerous
> tactic that involves calling a police department to report a false crime to get
> a SWAT team dispatched to the victim's house. The attacks have included
> bloggers Patterico, Erick Erickson, and as recently as last night, Aaron
> Worthing.
> http://franklincenterhq.org/5833/franklin-center-joins-lee-stranahan-
> popehat-aaron-walker-mandy-nagy-and-others-to-discuss-protection-of-
> the-free-press/  (This blog post was voluntarily removed by the Franklin
> Center on or about February 1, 2014)

111.    The Franklin Center held a webinar, which included Defendants
Walker, Nagy and Stranahan which stated and/or imputed that Plaintiff was
involved with swatting and had gotten Defendant Walker terminated from his
employment –"Aaron Worthing was swatted last night and is a very high profile

victim of Brett Kimberlin." That webinar was posted by The Franklin Center on

YouTube where it received widespread viewership from across the

Globe.

112.    On May 25, 2012, Tabitha Hale wrote an article on The Franklin

Center website titled, "Holding Political Terrorist Brett Kimberlin Accountable"

which falsely stated that Plaintiff is a child molester, assassin, who has filed over

100 frivolous lawsuits, and attacked "any blogger who dared mention his name...."

The article urges readers to target the State Department for working with Plaintiff's

employer. http://franklincenterhq.org/5546/holding-political-terrorist-brett-

kimberlin-accountable/ She got the information in the article from Defendants,

Frey, Walker and Hoge.

113.    More than 15,000 results come up on Google when pairing "Brett

Kimberlin with Swatting."

114.    On April 8, 2013, Defendant Michelle Malkin, who was on the board of

The National Bloggers Club, wrote an article for her blog implying that Plaintiff was

responsible for swatting conservative bloggers:

> "Conservative bloggers and activists rallied behind the victims of left-wing
> convicted domestic terrorist Brett Kimberlin and his cabal. A year later, the
> survivors of those SWATting attacks are still fighting for their security and
> free speech rights." http://michellemalkin.com/2013/04/08/more-
> celebrities-swat-ted-meanwhile-anti-brett-kimberlin-bloggers-still-under-
> fire/

That blog post was viewable in Maryland.

115.    On June 8, 2012, Defendant Hoge, who lives in Maryland, wrote a

letter to a Congressman in Maryland and imputed that Plaintiff was involved with

swattings, that he should be investigated by the FBI and sent to prison.  Defendant

Hoge published that letter along with a blog post.

http://hogewash.com/2012/06/08/national-day-of-blogger-silence/

116.    Since the filing of the original complaint in this case, Defendant Hoge has published hundreds of blog posts and tweets defaming Plaintiff and accusing him of crime after crime.  In fact, the majority of his Hogewash.com blog is dedicated to attacking, cyber stalking and harassing Plaintiff, his family and anyone who supports Plaintiff, including reporters, judges and prosecutors.

117.    On June 7, 2012, Defendant Akbar gave an interview to The Examiner in which he imputed that Plaintiff was responsible for swattings and harassing conservative bloggers. http://www.examiner.com/article/aclj-to-defend-conservative-bloggers-targeted-over-brett-kimberlin-coverage

118.    On October 14, 2013, Defendant Akbar launched a new fundraising campaign based on the false narratives that Plaintiff swatted and caused Defendant Walker to lose his job. www.bombersuesbloggers.com. When a person clicks the DONATE button, it redirects to the same National Bloggers Club donate site that Defendant Akbar previously used to raise money based on his false claim that Plaintiff is a swatter.  "Kimberlin's 2 year campaign of harassment, has led to bloggers losing jobs, threats of violence, and police 'SWATTings'...."  At the bottom of the site's home page, it states, "National Bloggers Club, Inc. copyright 2013." On the same day, Defendant Ali sent tweets to many of the Defendants in this suit to garner their help in raising more money based on false narratives about Plaintiff.

119.    Members of Defendant National Bloggers Club read articles written by Defendants Frey, Walker, Ace Of Spades, Stranahan, Erickson, and others, and then

published their own articles linking to those articles specifically stating that Plaintiff

swatted conservative bloggers.  For example,

- http://www.bob-owens.com/2012/06/another-conservative-blogger-swatted-by-leftist-domestic-terrorists/
- http://www.youtube.com/watch?v=T150f46AwIM "CNN Discusses Brett Kimberlin Swatting Cases With Erick Erickson"
- http://newsbusters.org/blogs/tom-blumer/2012/05/28/brett-kimberlin-and-swatting-where-establishment-media-0
- http://neosecularist.com/tag/brett-kimberlin-swatting/
- http://legalinsurrection.com/2012/05/a-brett-kimberlin-situation-could-happen-to-you/
- http://americanpowerblog.blogspot.com/2012/05/brett-kimberlin-and-swatting-where-is.html
- http://granitegrok.com/blog/2012/05/the-kimberlin-files-continue-swatting-the-ericksons
- http://www.usmessageboard.com/politics/225838-brett-kimberlin-strikes-again-another-swatting-attack-against-conservatives.html
- http://patdollard.com/2012/05/swatting-patterico-alleges-campaign-of-terror-attempted-murder-by-neal-rauhauser-ron-brynaert-and-brett-kimberlin/

120.    Defendants Walker, Frey, Stranahan, Hoge, DB Capitol Strategies, and

Akbar raised and continue to raise money on their websites based on their false

narrative about the swattings and the use of Plaintiff's name and reputation.

121.    On March 7, 2013, Defendant Akbar tweeted the following: "#Brett

Kimberlin picked a fight with Andrew Breibart that we're going to finish. He'll go to

jail this time #BlogBash." This demonstrates that The National Bloggers Club and its

leadership were intent on depriving Plaintiff of his liberty based on false criminal

charges.

122.    The Defendants engaged in a concerted campaign of online

defamation, false light, false narratives, battery, intimidation, threats, fraud, the

filing of groundless civil suits and criminal charges, cyber bullying and acting

unlawfully, in order to interfere with Plaintiff's business relationships and his prospective advantage both as an employee of Justice Through Music and as a musician.

123.    The conduct of the Defendants was extended, widespread and particularly dangerous because it occurred over a period of years and involved so many victims of the fraud who were conned by the Defendants. One would be hard pressed to find another instance in recent history where an online mob engaged in a multi-year defamation campaign which falsely accused a person of a horrible crime combined with massive fraud from thousands of victims.

124. Defendant Malkin has over 660,000 Twitter followers and she used her Twitter account and her Twitter compiler, Defendant Twitchy to amplify her defamatory statements about Plaintiff being involved with swatting.  According to a February 8, 2014 article in *Politico* about Defendant Malkin, "Twitter is Malkin's weapon of choice. Battles with her almost always devolve into wars...Taunting quips from foes bring out the full force of her Twitter arsenal, with snappy replies, catchy hashtags and the mobilization of a legion of energized followers."
http://www.politico.com/story/2014/02/michelle-malkin-2014-elections-republicans-103284.html

125.    The Defendants, under the leadership of The National Bloggers Club, on whose Board Defendant Malkin sits, have generated literally tens of thousands of blog posts, tweets and other articles falsely accusing Plaintiff of swattings and other crimes. They have used this false narrative to pillory, harass, stalk, defame and ostracize Plaintiff in a multi-year cyberstalking campaign. Defendant Malkin has

used her credibility and gravitas as a board member to sign off on the fraud by The

Club, thereby defrauding a multitude of unsuspecting victims. Defendant Malkin and

other Defendants knew of the fraud, false narratives, and money laundering and

agreed with other Defendants, including Defendant Akbar to participate in the

affairs of the conspiracy. In this case, there were not merely two predicate acts but

rather thousands since each money transaction with or by The National Bloggers

Club constituted a separate act of mail fraud, wire fraud or money laundering.

126.    The Defendants false narratives have harmed Plaintiff's business

relationship as an educator who for three years prior to 2012 worked with the State

Department's *International Leadership Program* to teach activists from around the

world how to use social media and the arts to effectuate change in their respective

countries. Plaintiff, as Director of Justice Through Music, hosted activists from Iran,

Turkey, Kazakhstan, Egypt, Yemen, Libya, Saudi Arabia, Tunisia, Bahrain, Jordan and

elsewhere to learn about social media. When the Defendants learned about this

work, some of them contacted the State Department and wrote defamatory articles

about the work complaining about it and calling Plaintiff a criminal and terrorist

who was educating activists. For example, Defendant The Blaze, controlled by

Defendants Glenn Beck and Mercury Radio Arts, published an article titled, "Why is

the State Department Partnering with Speedway Bomber Brett Kimberlin."

http://www.theblaze.com/stories/2012/05/25/why-is-the-state-dept-partnering-

with-speedway-bomber-brett-kimberlin/ Defendants Malkin and Twitchy then

magnified that attack. http://twitchy.com/2012/05/25/state-department-

partnering-with-political-terrorist-and-bomber-brett-kimberlin/ And Defendant

Erickson tweeted to Congressman Darryl Issa to investigate the State Department

over it. Id.  And as a result, the State Department no longer brings these activists to

Justice Through Music, and the activists no longer know that they have an advocate

for their cause of freedom and democracy, and they do not know that they can rely

on Plaintiff and Justice Through Music to post their videos when their own

governments target them.

127.    Plaintiff had a property interest in continuing his work for Justice

Through Music, which included yearly training of foreign activists. The Defendants

caused injury to Plaintiff's business reputation and customer goodwill by engaging

in their tortious activity.

128.    Defendant Frey told Defendant Walker in an email dated December

22, 2011, that he would call journalist "Glenn Reynolds" to tell him that Plaintiff was

"the guy who swatted me."  And Glenn Reynolds is on the Board of National Bloggers

Club, and is also the person who posted a threatening photo of himself with a

shotgun addressed to "Dear Brett Kimberlin." This demonstrates that the

Defendants engaged in conspiracy, intimidation, threats, obstruction of justice, and

vigilante action to harm Plaintiff.

129.    Most of the Defendants who have their own blogs and who falsely

accused Plaintiff of swatting, have comment sections where they engage with their

commenters and they have Twitter accounts that engage with their followers.

These Defendants, including Malkin, Ace, Akbar and Frey, egg on their commenters

and ask them to get involved, post comments and tweets, demand that Plaintiff be

investigated and incite their readers to engage in vigilante action directed at
Plaintiff in Maryland.

### FIRST CLAIM FOR RELIEF
### DEFAMATION
### (Akbar, National Bloggers Club)

130.   Plaintiff re-alleges and incorporates every paragraph above.

131.   Defendants National Bloggers Club and is president, Ali Akbar, have
intentionally, knowingly and/or recklessly published, republished and disseminated
the false and defamatory statements identified above regarding swattings and other
matters on the Internet, where they have been easily accessible, and were accessed
my many people, including Plaintiff's family, children, friends, business associates
and actual and prospective partners, clients and others.

132.   The named Defendants' defamatory statements regarding Plaintiff's
involvement in swattings and other matters have caused and continue to cause
substantial injury to Plaintiff, his business and personal well-being.

133.   The statements have caused and continue to cause deep
embarrassment, humiliation, opprobrium, emotional distress and mental suffering
to Plaintiff.

134.   The named Defendants' false and defamatory statements and the
implications drawn from them concerning Plaintiff are defamatory *per se* because
they allege crimes and make Plaintiff appear odious, infamous, and/or frightening.

135.   Defendants published these false and defamatory statements to third
parties who reasonably understood the published statements to be defamatory.

136.    The named Defendants were aware of the defamatory implication of their statements about Plaintiff, and intended and endorsed the defamatory implication.

137.    The named Defendants published these false and defamatory statements about Plaintiff even though they knew that they were not based on fact or truth.

138.    The named Defendants published the defamatory statements without conducting any due diligence or contacting Plaintiff to determine if they were in fact true.

139.    The named Defendants published these false and defamatory statements about Plaintiff with knowledge of their falsity and/or reckless disregard for their truth.

140.    Alternatively, the named Defendants published these false and defamatory statements about Plaintiff negligently as the truth or falsity of what they were saying.

141.    Each of the named Defendants was directly involved and responsible for the false and defamatory statements that were published about Plaintiff.

142.    The named Defendants published these false and defamatory statements with both common law and actual malice, and with the intent of harming Plaintiff.

143.    Many of the named Defendants published these false and defamatory statements day after day, week after week, month after month and year after year

with the attacks being coordinated, aggressive and sustained to cause maximum harm to Plaintiff.

144.    The named Defendants' defamatory statements were repeated and republished by other media and bloggers, thereby compounding the harm to Plaintiff.

145.    The named Defendants also published these defamatory and false statements in order to increase traffic to their blogs and to raise money from unsuspecting readers who believed their statements.

146.    The named Defendants' false and defamatory statements have caused Plaintiff to sustain damages.

147.    The named Defendants' actions against Plaintiff were willful, wanton and malicious, were intended to deliberately harm Plaintiff, and were made with a callous indifference to Plaintiff.

148.    Thus, in publishing the numerous false and defamatory statements about Plaintiff, the named Defendants acted with an improper and outrageous motive or callous indifference to Plaintiff's rights and interests. As a result of the named Defendants' outrageous and repeated conduct, Defendants should be ordered to pay substantial compensatory and punitive damages.

**SECOND CLAIM FOR RELIEF**
**FALSE LIGHT INVASION OF PRIVACY**
**(National Bloggers Club, Walker, Akbar, Hoge, Erickson, Malkin, Twitchy, Redstate, Beck, The Blaze, Ace of Spades (blog and person), Mercury Radio Arts, Frey, Stranahan, Nagy, Breitbart.com, Backer, DB Capitol Strategies,)**

149.    Plaintiff re-alleges and incorporates every paragraph above.

150.    The named Defendants' statements, blog posts, tweets, and articles above contained false statements, representations or imputations about Plaintiff that place him before the public in a false light.

151.    As stated above, the named Defendants portrayed Plaintiff as being involved with swatting, a serious crime, and causing Defendant Walker's termination.

152.    The false light in which the named Defendants placed Plaintiff would be considered highly offensive to a reasonable person.

153.    The named Defendants were each complicit in and responsible for casting Plaintiff in a false light and violating his privacy.

154.    The named Defendants disseminated their articles on the Internet, television, radio and in print where they were widely available to and accessible by members of the general public across the globe.

155.    The Defendants engaged in outrageous and extreme conduct by falsely publishing the false statements accusing him of crimes and nefarious conduct, demanding that he be investigated, arrested and imprisoned for swattings, publishing tens of thousands of tweets and blog posts smearing Plaintiff and accusing him of crimes, filing three frivolous and malicious lawsuits against him, sending a false letter to an institutional funder falsely accusing him of crimes, attempting to extort his employer into firing him, rallying extremists with false narratives to attack him, filing for sanctions in the amount of tens of thousands of dollars and imprisonment, and asking a federal court to deny him access to the courts. This abhorrent conduct has kept Plaintiff under siege for years, and caused

extremists to come to his home, take pictures of him and his daughter, and make
threatening calls to him, his family and his neighbors. No person in a civilized
society should be made to endure such conduct.

156.    Moreover, Defendants conspired with the other Defendants to
imprison Plaintiff based on their false narratives that Plaintiff was involved with
swattings.  This constitutes extremely outrageous conduct that intentionally
inflicted emotional distress on Plaintiff. There are not many things in this country
worse than being falsely accused of crimes and then having those false accusations
incite a lynch mob to attack relentlessly and daily with tens of thousands of tweets
and posts and articles, and stalkers over a period of years.  This is atrocious and has
absolutely no place in a civilized society.

157.    Not a day goes by where Plaintiff is not attacked, online or in person,
by one or more of the Defendants. Defendant Walker came to a court hearing in
Montgomery County Circuit Court and, after the proceeding to which he was not a
party, followed Plaintiff out of the courtroom and battered him so severely he ended
up in the Emergency Room at Suburban Hospital. This resulted in days off of work
and a fear that Defendants will again assault Plaintiff or his family.  Defendants
Walker, Hoge, and Akbar have stalked Plaintiff in public places.  Defendants Walker,
Hoge and DB Capitol Strategies have filed numerous false criminal and civil actions
against Plaintiff over a two-year period, all which have been dismissed or denied.
Defendants Hoge, Walker and some of the other Defendants publish daily taunts
against Plaintiff and mock this suit with daily posts on their blogs, and continually
assert that they are going to get Plaintiff imprisoned.  They have attacked Plaintiff's

51

employer and those who donate to that non-profit. The Defendants have tried to get

Plaintiff fired. They have attacked Plaintiff's wife and teenage daughter and even

reporters who have written favorably about Plaintiff. They have even attacked

prosecutors who have refused their frivolous charges, Defendant Walker has even

imputed in a recent blog post that Plaintiff's teenage daughter is fair game for

destruction because of "corruption of blood."

158. All of this has been intended to inflict maximum emotional distress on

Plaintiff. Plaintiff has had to install robust security devices and video cameras at his

home and office, and take precautions for his family that no young child should have

to be subjected to, all because the Defendants have created a lynch mob based on

false narratives to terrorize Plaintiff and his family on a continuous multi-year basis.

This clearly demonstrates that the Defendants, intentionally casted Plaintiff in false

light.

159. The named Defendants knew that their actions and statements had

the effect of casting Plaintiff in a false light but nevertheless continued to do so week

after week, article after article and tweet after tweet. They had knowledge of or

acted with reckless disregard as to the falsity of the publicized matter and the false

light in which it placed Plaintiff.

160. The named Defendants published the defamatory statements without

conducting any due diligence or contacting Plaintiff to determine if they were in fact

true.

161.    Alternatively, the named Defendants were negligent in the publication of their statements about Plaintiff, the effect of which was to portray Plaintiff in a false light.

162.    The named Defendants' portrayal of Plaintiff in a false light, as stated above, caused substantial injury to Plaintiff's reputation, business interests, and mental well-being.

163.    The named Defendants' placing Plaintiff in a false light has caused Plaintiff to sustain substantial damages.

164.    The named Defendants' actions against Plaintiff were willful, wanton and malicious, and were intended to deliberately harm Plaintiff.

165.    Thus, the named Defendants acted with an improper and outrageous motive or careless indifference to Plaintiff's rights and interests.  Defendants' outrageous conduct warrants the imposition of significant compensatory and punitive damages.

### THIRD CLAIM FOR RELIEF
### Invasion of Privacy
### Appropriation of Name, Intrusion into Seclusion, and Unreasonable Publicity
### (WALKER, AKBAR, FREY, DB CAPITOL STRATEGIES, BACKER)

42.    Plaintiff adopts the foregoing including paragraphs 1-44.

43.    From July 1, 2014 through the present time, Defendants Walker, Hoge, Frey, DB Capitol Strategies, and Backer have appropriated and traded on Plaintiff's first and last names for commercial purposes, including raising funds, selling merchandise and creating fraudulent financial scams.  They have placed Plaintiff's name in the titles of blog posts and in keywords attached to those posts.  They then

promoted those blog posts through their Twitter accounts, again using Plaintiff's name in those regular tweets. They did and do this to raise their Search Engine results and drive traffic to his site.  Once on their sites, they ask for money.

44.     During the same time period, these Defendants gave unreasonable publicity to Plaintiff's private life by daily publishing blog posts and tweets about Plaintiff that are intended to and do smear Plaintiff in order to cause him maximum harm.

45.     During that same time period, Defendants intruded on Plaintiff's seclusion by investigating and probing every aspect of Plaintiff's life, his family, his business, his associates, his social connections, and his music in order to harass and harm him and deprive him of business opportunities.  They then published their intrusions in the most unfavorable light with constant statements and warnings that Plaintiff will be arrested, exposed, humiliated, and embarrassed by the results of his investigations.  Defendants created conspiracy theories tying Plaintiff to bizarre and nefarious activity by a host of people, and then labeled them under blog posts which always include Plaintiff's name.

46.     Plaintiff has never given Defendants permission to use his name in any manner and has repeatedly asked Defendants in various venues to leave him alone.

47.     The actions of Defendants are reckless, intentional and knowing, and done in order to cause substantial injury to Plaintiff's reputation, business interests, and mental well-being.  He has caused Plaintiff to sustain substantial damage and to go to great lengths to protect his family that are far beyond those done by average

American civilians.

48.     Defendants' actions are willful, wanton and malicious, and done with an improper and outrageous motive and careless indifference to Plaintiff's rights and interests. This warrants the imposition of significant compensatory and punitive damages.

### FOURTH CLAIM FOR RELIEF
### INTERFERENCE WITH BUSINESS RELATIONS
### (DB Capitol Strategies, Backer, Walker, National Bloggers Club)

166.     Plaintiff re-alleges and incorporates every paragraph above.

167.     Defendants DB Capitol, Backer, Walker and National Bloggers Club maliciously and wrongfully interfering with Plaintiff's economic, or prospective, relationships. Specifically, Plaintiff has worked as director of Justice Through Music for ten years and has an agreement to continue that work. The named Defendants know of the existence of that employment relationship and they intentionally attempted to interfere with it by making false claims against Plaintiff accusing him of crimes, sending a defamatory letter to a major funder, filing and/or promoting a malicious lawsuit against Plaintiff and his employer in order to use that lawsuit to force Plaintiff's employment termination.

168.     Defendants further contacted a major institutional funder of Plaintiff's non-profit employer and falsely said that Plaintiff was involved with crimes, which caused that funder to stop funding Plaintiff's employer. The named Defendants and other unnamed Defendants have stated that their goal was to force organizations and others to stop funding Plaintiff's non-profit employer. They have bragged that they have succeeded in stopping that funding.

169.    Plaintiff has been damaged by the named Defendants' malicious actions. A cause of action for tortious interference with an existing contract is based on Maryland law.

170.    The named Defendants' actions against Plaintiff were willful, wanton and malicious, and were intended to deliberately harm Plaintiff.

171.    Thus, the named Defendants acted with an improper and outrageous motive or careless indifference to Plaintiff's rights and interests.  The named Defendants' outrageous conduct warrants the imposition of significant compensatory and punitive damages.

**FIFTH CLAIM FOR RELIEF**
**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(All Defendants)**

172.    Plaintiff re-alleges and incorporates every paragraph above.

173.    Defendants, intentionally and willfully engaged in a concerted campaign of online defamation, false light, false narratives, battery, intimidation, threats, fraud, the filing of groundless civil suits and criminal charges, cyber bullying and acting unlawfully, in order to cause damage to Plaintiff in his lawful businesses, both as an employee of Justice Trough Music and as a musician.

174.    Defendants knew that Plaintiff was engaged in business and engaged in conduct to disrupt that business and deprive Plaintiff of future business and they did.

175.    These actions by Defendants were done with malice in order to cause actual damages and loss to Plaintiff.

176.    Plaintiff has suffered actual damage and loss.

177.    Thus, the Defendants acted with an improper and outrageous motive or careless indifference to Plaintiff's rights and interests. Defendants' outrageous conduct warrants the imposition of significant compensatory and punitive damages.

### SIXTH CLAIM FOR RELIEF
### BATTERY
### (Defendant Walker)

178.    Plaintiff re-alleges and incorporates every paragraph above.

179.    On January 6, 2012, Defendant Walker unlawfully used force against Plaintiff that resulted in the offensive touching of Plaintiff to such a degree that Plaintiff was referred to the Emergency Room at Suburban Hospital for evaluation and treatment for concussion, contusion of the eye, back pain. Plaintiff was evaluated there and prescribed medicine and ordered to rest for several days.

180.    This battery of Plaintiff by Defendant Walker was intentional and malicious, and done in order to harm Plaintiff, intimidate him and retaliate against him for exercising his right to redress and access to the court.

181.    Plaintiff has suffered actual damage and loss.

182.    Thus, Defendant Walker acted with an improper and outrageous motive or careless indifference to Plaintiff's rights and interests. His outrageous conduct warrants the imposition of significant compensatory and punitive damages.

### SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

183.    Plaintiff re-alleges and incorporates every paragraph above.

184.    Defendants' defamatory and false statements, intentional misrepresentations, false light, violation of privacy, interference with his

employment, and wide publication of false statements about Plaintiff's involvement in swatting and other crimes constitute extreme and outrageous conduct.

185.     Defendants' causal and in concert relationship to the assault of Plaintiff by Defendant Walker, the many threats of death and injury to Plaintiff and his family, and the demands for Plaintiff's arrest and imprisonment on the basis of false statements about swattings and other crimes demonstrates malice with an intent to cause maximum harm to Plaintiff.

186.     Defendants' actions were done intentionally and/or recklessly in conscious disregard of the high probability that Plaintiff's mental distress would follow.

187.     There was a causal connection between the tortious acts of Defendants and the emotional distress suffered by Plaintiff.  It is intolerable in a civilized society to wrongfully accuse someone of a horrible crime as did the Defendants. It is intolerable to harass Plaintiff with false allegations of criminal activity for years on end. It is intolerable to cyber bully Plaintiff for crimes that occurred more than 30 years ago.

188.     As a result of Defendants' actions, Plaintiff has suffered severe emotional distress and mental anguish.

### EIGHTH CLAIM FOR RELIEF
### CONSPIRACY TO COMMIT STATE LAW TORTS
### (All Defendants)

189.     Plaintiff re-alleges and incorporates every paragraph above.

190.     The Defendants conspired with each other to commit the state law tortious acts alleged above.

191.    As a result of Defendants' actions, Plaintiff has suffered harm and damage.

## PUNITIVE DAMAGES

192.    The actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious conduct, insult, and a perverse gratification from harm caused to Plaintiff.  Such actions or omissions by Defendants were undertaken with either (1) maliciousness, spite, ill will, vengeance or deliberate intent to harm Plaintiff, or (2) reckless disregard of the profound wrongfulness of their actions or omissions, and their harmful effects on Plaintiff.  Accordingly, Plaintiff requests an award of punitive damages beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

- Compensatory damages and consequential damages in an amount exceeding $75,000;

- Punitive damages as applicable to punish Defendants' reprehensible conduct and to deter future occurrence;

- Declaratory relief in the form of an Order finding that Plaintiff had no involvement in any swattings;

- An order enjoining Defendants from engaging in future tortious conduct against Plaintiff;

- An order requiring Defendants to remove any defamatory statements about swatting and other uncharged crimes by Plaintiff from blogs, book or media over which they have control;

- For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants from retaliating against Plaintiff in any way for bringing this action;

- Forfeiture of all funds raised by the Defendants based on their false narratives, fraud and tortious conduct;

- Costs and fees incurred in the prosecution of this action, and

- Further relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Kimberlin hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully submitted

Brett Kimberlin-pro se
301 320 5921

April 15, 2015

FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.
2015 APR 15  PM 2: 23

60

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
COMPLAINT FILED ON 04/15/2015 IN

No. 403868-V, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.

NOTE: A raised seal authenticates each document herein.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this  9th day of September, A.D. 2015.

Barbara H. Meiklejohn
*Clerk of the Circuit Court for Montgomery County*

CIV00002 20091208

Barbara H. Meiklejohn
Clerk of the Circuit Court
Rockville, Maryland

MCC 2 12/06