# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| **BRETT KIMBERLIN**,  Plaintiff,  *v.*  **HUNTON & WILLIAMS LLP**, *et al.*,  Defendants. | Civil Action No. 8:15-cv-00723-GJH |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY THE CHAMBER OF COMMERCE OF THE UNITED STATES

September 25, 2015

Bobby Burchfield, Esq.
Johnny Walker, Esq.
**KING & SPALDING** LLP
1700 Pennsylvania Avenue, NW
Washington, District of Columbia 20006

**CONTENTS**

I.  THE STATUTES OF LIMITATIONS BAR ALL CLAIMS. .................................................... 1

II. THE INJURIES ALLEGED IN THE COMPLAINT ARE LEGALLY INSUFFICIENT. ...... 4

III. EACH CLAIM AGAINST THE CHAMBER SUFFERS MULTIPLE DEFECTS .................. 4

    A.  The Civil RICO Claim (Claim VI) Is Incurably Deficient. ................................................ 4

        1.  The Allegation That the Chamber Participated in an "Enterprise"
           Is Insufficient. ........................................................................................................ 5

        2.  The Allegations of Racketeering Activity Are Insufficient ........................................... 7

        3.  The Allegations of Injury to Business or Property Are Insufficient. ............................. 9

    B.  The Civil Rights Act Claim (Claim I) Is Legally Insufficient. ........................................... 9

    C.  The State Law Claims (Claim III, First Claim VII, & Second Claim VII)
       Are Insufficient. ................................................................................................................ 10

IV. MR. KIMBERLIN'S AIDING AND ABETTING THEORY CANNOT
    SUPPORT ANY OF HIS CLAIMS ...................................................................................... 10

    A.  There is No Aiding and Abetting Liability for RICO and the Civil Rights Act.
       (Claim VI & Claim I) ........................................................................................................ 11

    B.  Mr. Kimberlin Has Not Pled Facts Supporting Aiding and Abetting Liability for
       His State-Law Claims. (Claim III, First Claim VII, & Second Claim VII). ..................... 12

    CONCLUSION ........................................................................................................................ 15

# AUTHORITIES

Page(s)

**Cases**

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  665 A.2d 1038 (Md. 1995) .................................................................................................. 14

*Central Bank of Denver v. First Interstate Bank*,
  511 U.S. 164 ....................................................................................................................... 11

*Cobbs v. Sheahan*,
  385 F. Supp. 2d 731 (N.D. Ill. 2005) ................................................................................... 11

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ................................................................................ 11

*Crosby v. City of Gastonia*,
  635 F.3d 634 (4th Cir. 2011) ............................................................................................... 12

*Harris v. Hutchinson*,
  209 F.3d 325 (4th Cir. 2000) ................................................................................................. 2

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
  955 F. Supp. 248 (S.D.N.Y. 1997) ...................................................................................... 11

*Rice v. Paladin Enterprises, Inc.*,
  128 F.3d 233 (4th Cir. 1997) ......................................................................................... 12, 13

*Rolo v. City Investing Co.*,
  155 F.3d 644 (3d Cir. 1998) ................................................................................................ 11

*Saadeh v. Saadeh, Inc.*,
  819 A.2d 1158 (Md. App. Ct. 2003) .................................................................................... 14

*United States v. Cofield*,
  11 F.3d 413 (4th Cir. 1993) ................................................................................................... 8

*W. Daniels Land Ass'n, Inc. v. Wasatch Cnty.*,
  No. 2:10-cv-558, 2011 WL 1584822 (D. Utah Apr. 26, 2011) ............................................ 12

**Statutes**

18 U.S.C. § 1503(a) ..................................................................................................................... 7

18 U.S.C. § 1512(b) ..................................................................................................................... 7

18 U.S.C. § 1513(b) ..................................................................................................................... 7

In its Motion To Dismiss, the U.S. Chamber of Commerce demonstrated that Mr. Kimberlin's Complaint is legally deficient in incurable ways. First, the allegations in and attachments to the Complaint show that Mr. Kimberlin was in possession of information sufficient to file his claim more than four years before he filed, and thus each claim is time-barred. Second, the Complaint does not plead facts showing legally cognizable injury caused by the Chamber for any of the claims. Finally, each individual claim is legally deficient in numerous respects.

In his response, Mr. Kimberlin ignores most of these points and effectively rebuts none of them. Instead, he attempts to shift the focus from his allegations in the Complaint to an unpled but deeply flawed "aiding and abetting" theory. By doing so, he now implicitly admits that the Chamber, Team Themis, and Hunton & Williams did not injure him directly. Instead, he claims that they "aided and abetted" defendants William Hoge and Bill Nickless, who allegedly used the hacked HB Gary emails as a "blueprint" to begin a campaign of dirty tricks against him beginning in May 2012. This new theory also fails for a number of reasons. First, the purported injuries he attributes to this alleged "aiding and abetting" are no more specific or legally cognizable than the purported injuries alleged in his Complaint. Second, there is no such thing as "aiding and abetting" liability under RICO or the Civil Rights Act. Third, the Complaint does not plead facts sufficient for aiding and abetting liability for the state law claims, nor could Mr. Kimberlin do so. Accordingly, the Chamber respectfully urges the Court to dismiss the Complaint against it with prejudice.

**ARGUMENT**

**I.    THE STATUTES OF LIMITATIONS BAR ALL CLAIMS.**

As shown [Chamber's Br. at 9–11], the Complaint makes clear that Mr. Kimberlin had sufficient information to know of his claims when HB Gary's hacked emails were published in early February

2011. His campaign "Stop the Chamber" ("STC") filed a bar complaint based on that information on February 23, 2011, and STC sent document hold letters to most defendants on March 11, 2011—all more than four years before he filed this case. In his response, Mr. Kimberlin tries to evade the statutes of limitations based on equitable tolling [Pl.'s Br. at 9–11] and based on his novel "aiding and abetting" theory pursuant to which he claims injury in 2012. [Pl.'s Br. at 6–9, 11–12] (The "aiding and abetting" claim is addressed in Part IV below.) Equitable tolling is a discretionary doctrine that applies in two distinct situations not present here: (1) where a plaintiff was "prevented from asserting [his] claim[] by some kind of wrongful conduct on the part of the defendant" or (2) where "extraordinary circumstances beyond plaintiff['s] control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quotations and citations omitted).

Neither of the two circumstances alleged by Mr. Kimberlin is sufficient to trigger equitable tolling. First, Mr. Kimberlin argues that the limitations period should be tolled because in November 2014 he was contacted by an unnamed "whistleblower" who told him that Hunton & Williams was "hiding" information about the "Wikileaks/USCOC/BofA dirty tricks campaign." [Pl.'s Br. at 10 & Ex. C ¶ 1.] Even if that allegation is true, it does not amount to "extraordinary circumstances" that would have rendered it "impossible" for Mr. Kimberlin to file his claims on time. Mr. Kimberlin does not explain how he was "prevented" from filing before hearing from this "whistleblower" in November 2014, nor does he identify any new facts revealed by this "whistleblower" that are alleged in, much less essential to, his Complaint. Rather, the alleged "whistleblower" merely hinted ominously about hidden information and urged Mr. Kimberlin to seek discovery to uncover it.

Because his claims against the Chamber rely exclusively on the emails released in February 2011, Mr. Kimberlin knew every fact alleged in his complaint before purportedly hearing from this

"whistleblower" in late 2014. Moreover, if Mr. Kimberlin had acted diligently, he still had at least four months after November 2014 to file a timely RICO claim. This vignette provides no justification for tolling the statute of limitations.

Second, Mr. Kimberlin asserts—without written confirmation—that the general counsel of Hunton & Williams, Robert Rolf, told him that "if the case was resolved, H&W would waive any SOL." [Pl.'s Br. at 10 & Ex. C ¶ 2.] This statement is quite odd, but in any event the case was not resolved, and the explicit condition for "waiv[ing] any SOL" was not met. More fundamentally, even accepting this unpled allegation as true, the offered waiver was expressly on behalf of and related only to Hunton & Williams, not the Chamber. Although Mr. Kimberlin's brief asserts that "the COC Defendants . . . were represented by H&W counsel" [Pl.'s Br. at 11], the only basis for that allegation is Mr. Kimberlin's illogical inference that because Hunton & Williams represented the Chamber in some matters, Hunton & Williams must have represented the Chamber in this dispute as well. To the contrary, the emails attached to the Complaint confirm that the Chamber did not retain Hunton & Williams or Team Themis for the purported project. [*See, e.g.,* Compl. Ex. Z, Email (Feb. 3, 2011, 4:59 p.m.) (Hunton & Williams "won't commit any funds to this project until we've helped them earn buy-in from their Client (the Chamber).").][1] Even accepting the alleged statements by Mr. Rolf as true, it cannot toll the statute of limitations on claims against the Chamber.

Accordingly, equitable tolling does not apply, and the Complaint is time-barred.

---

[1] As a seasoned litigant, Mr. Kimberlin knows that it would have been highly irregular for Hunton & Williams, itself a defendant, to represent the Chamber in this matter. Indeed, Mr. Kimberlin's campaign STC sent a document hold letter directly to the Chamber. [Compl. ¶ 46; Chamber Br. Ex. 1.] Moreover, while negotiating with Hunton & Williams before filing suit, he himself contacted the Chamber directly to suggest settlement negotiations. [Exhibit 1, Email (Mar. 9, 2015, 1:26 p.m.).]

## II. THE INJURIES ALLEGED IN THE COMPLAINT ARE LEGALLY INSUFFICIENT.

The Chamber demonstrated [Chamber's Br. at 11–14] that the allegations of injury in the Complaint are too vague and imprecise to support the claims asserted, and also have no relationship to the Chamber. Mr. Kimberlin tries to cure this deficiency by submitting a declaration that does nothing more than reiterate those vague, imprecise, and insufficient allegations. [Pl.'s Br. Ex. C ¶ 1.] The defects in the injury allegations are that they contain no factual detail whatsoever—How was he injured? Did he seek medical or psychiatric attention for the purported emotional distress? What specific business opportunities did he lose? What publication by the Chamber defamed him? How much, if any, money did he lose?—and the declaration does nothing to cure these defects.

In addition, the Chamber showed [Chamber's Br. at 13–14] that the allegations do not constitute damage to business or property cognizable under RICO. Mr. Kimberlin's declaration makes vague and imprecise assertions that he was unable to raise funds for his "business" and/or to pursue unspecified business opportunities, and that his "ability to manage my daughter's music career" was "harmed" in some unspecified way. [Pl.'s Br. Ex. C ¶ 1.] Neither the Complaint nor the declaration alleges non-conclusory, plausible facts about actual injury to his business or property.

## III. EACH CLAIM AGAINST THE CHAMBER SUFFERS MULTIPLE DEFECTS.

The Chamber's brief addressed each of Mr. Kimberlin's five claims against the Chamber and demonstrated that each is legally insufficient for multiple reasons. Mr. Kimberlin simply ignores, and thereby concedes, most of these arguments. Even his limited responses are unpersuasive.

### A. The Civil RICO Claim (Claim VI) Is Incurably Deficient.

The Chamber's opening brief argued that Mr. Kimberlin failed to plead facts establishing the Chamber's participation in an enterprise [Chamber's Br. at 18–19], a pattern of racketeering activity [*id.*

at 19–29], or a compensable injury to his business or property [*id.* at 13]. Mr. Kimberlin cannot rebut those arguments.

### 1. The Allegation That the Chamber Participated in an "Enterprise" Is Insufficient.

The Complaint itself shows that the planned Team Themis pitch imploded in February 2011 when HB Gary's emails were hacked and the members of Team Themis publicly disbanded. [*See* Compl. ¶¶ 40–41, 49–50.] For this reason, the Complaint fails to allege an enterprise with "longevity sufficient to permit [the] association to pursue the enterprise's purpose." [Chamber's Br. at 19.] The Complaint and exhibits also fail to allege any involvement by the Chamber in the alleged "enterprise"— a pitch that Team Themis and Hunton & Williams hoped to but did not present to the Chamber. [Chamber's Br. at 18–19.] Of the 70,000 emails publicly released, Mr. Kimberlin tacitly concedes that he cannot cite a single one sent by or to the Chamber.[2]

Unable to deny these two points, Mr. Kimberlin offers two responses. First, he asserts that anything Hunton & Williams did as part of the alleged enterprise should be automatically imputed to the Chamber under agency law. [Pl.'s Br. at 14.] As shown [Chamber's Br. at 16–17], however, the emails attached to the Complaint confirm that the Chamber never retained Hunton & Williams or Team Themis for the project described in the Complaint. [*See, e.g.,* Compl. Ex. Z, (Email (Feb. 3, 2011, 4:59 p.m.).].

Second, unable to point to a single email or document to or from the Chamber, Mr. Kimberlin instead attaches to his brief a blog post by Scott Keyes of *Think Progress*, and claims that the article

---

[2] In an effort to blur the record, the Opposition Brief repeatedly refers to emails "written by or about the COC." [Pl.'s Br. at 3; *see also id.* at 7 ("the Defendants, including the COC, created various documents"); *id.* at 8 ("documents . . . .were circulated amongst the Defendants").] In fact, neither the Complaint nor the Opposition specifies a single document among the 70,000 hacked emails created by, sent from, or delivered to the Chamber.

shows complicity by the Chamber in the Team Themis project. [Pl.'s Br. at 15 & Ex. B.] That post egregiously misreads the emails.  Mr. Keyes principally relies on a November 16, 2010, 11:57 a.m. email suggesting that a draft contract be amended to allow subcontractors to have direct communications with the "client" and noting that such communications had already happened.  But, in context, the word "client" in that email clearly refers to Hunton & Williams (with whom Team Themis had, in fact, been in contact), not the Chamber.  This is evident from the teaming agreement signed that very same day by Berico and HB Gary (the participants on the email cited by Mr. Keyes) which identifies Hunton & Williams as the "customer" for Team Themis's work on the pitch.  [Compl. Ex. RR, Teaming Agreement (Nov. 16, 2010).]

Of the other emails cited by Mr. Keyes—those dated October 25, November 16, November 23, November 29, December 1, and February 3—not one of them was to or from the Chamber, or refers to a completed presentation to the Chamber about the services being developed by Team Themis.  Instead, each of these emails refers to a planned future presentation.  [Pl.'s Br. Ex. B.]  As subsequent emails show, however, that presentation fell through when HB Gary's emails were hacked and published on the internet on February 7, 2011.  [Chamber's Br. at 6–7.]  Thus, the emails upon which the Complaint is based confirm that no presentation to the Chamber ever occurred.

Mr. Kimberlin also asserts that Hunton & Williams delivered a data disc to Team Themis containing information that "the COC had compiled over a long period."  [Pl.'s Br. at 15.]  Contrary to Mr. Kimberlin's representation, that is not what the email says.  The email, from John Woods at Hunton & Williams, refers to a "team *at HW* who has gathered the underlying data."  [Compl. Ex. J, Email (Nov. 7, 2010, 3:21 p.m.) (emphasis added).]

### 2.     The Allegations of Racketeering Activity Are Insufficient

The Chamber identified defects in each of the Complaint's alleged predicate acts. For the most part, Mr. Kimberlin chooses to ignore the Chamber's arguments, including:

- The allegation of mail fraud fails under Rule 9(b) because the Complaint does not identify the participants in the alleged fraud and points only to the sending of a single data disk by Hunton & Williams, not the Chamber. [Chamber's Br. at 20–21.]

- The allegation of wire fraud fails under Rule 9(b) because the Complaint does not identify a single email sent or received by the Chamber. [Chamber's Br. at 21–22.]

- The allegation of federal extortion fails because the Complaint does not identify any property that any defendant obtained from Mr. Kimberlin. [Chamber's Br. at 26–27.]

- The money laundering claim fails because the Complaint does not allege that money allegedly used by the Chamber to pay Hunton & Williams was derived from illegal activity. [Chamber's Br. at 27–28.]

- The allegation of extortion by writing under Maryland law fails because the Complaint does not identify any such "writing," and Mr. Kimberlin's livelihood and reputation are not things that can be extorted and "obtained." [Chamber's Br. at 28–29.]

The only predicate act allegations that Mr. Kimberlin tries to rehabilitate are his allegations of obstruction (18 U.S.C. § 1503(a)), intimidation (18 U.S.C. § 1512(b)), and retaliation (18 U.S.C. § 1513(b)) against him due to his purported involvement in a criminal case against Donald Blankenship, the former CEO of Massey Energy Company. Inconsistently, Mr. Kimberlin claims both that the Chamber "deter[red] him from cooperating with a federal grand jury" and then "retaliated against him for cooperating with a federal grand jury and investigation." [Pl.'s Br. at 3].

-7-

The Chamber has shown that Sections 1503 and 1512 apply only to judicial proceedings and official proceedings. They do not apply to mere criminal investigations, which is all that the Complaint alleges Mr. Kimberlin was involved with. [Chamber's Br. at 22–26.] Now, Mr. Kimberlin asserts in his declaration that some unspecified person "advised" him that "the grand jury would be interested in hearing testimony or receiving evidence from me." [Pl.'s Br. Ex. C ¶ 3.] Critically, he does not claim that he received a subpoena or even an informal request from prosecutors to testify. Moreover, neither the complaint nor the brief specifies any information Mr. Kimberlin knew as a percipient witness that qualified him to testify in that case, and the prosecutors plainly saw none when they did not call him. Further, the Complaint does not allege that any member of Team Themis working on the project even knew of a grand jury investigating Mr. Blankenship before the emails were hacked, and the project ended, in February 2011. Finally, Mr. Kimberlin does not allege that the Chamber knew about his alleged possible participation in a grand jury proceeding, did anything specific to deter him from testifying, or had any role in the decision not to call him.

With respect to his retaliation claim under § 1513, Mr. Kimberlin must allege that someone caused or threatened him "bodily injury' or damage to his "tangible property" with the intent to retaliate for acting as a witness or giving information to law enforcement. *See United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993) (listing elements of § 1513 claim). But the only bodily harm Mr. Kimberlin alleges to have suffered is an attack by some unidentified person with no alleged connection to the Chamber and no alleged retaliatory motive. [Compl. ¶ 58, page 36.] Mr. Kimberlin also alleges that Mr. Hoge "fantasized" about killing him [*id*.], but he does not allege that Mr. Hoge acted at the direction or with knowledge of the Chamber, that Mr. Hoge had any retaliatory motive based on Mr. Kimberlin's

alleged communications with the FBI about the Blankenship case, or that Mr. Hoge actually made a threat.

### 3. The Allegations of Injury to Business or Property Are Insufficient.

As shown above (page 4), the allegations of injury to business or property are deficient, and Mr. Kimberlin's reiteration of them in his declaration does not save them.

### B. The Civil Rights Act Claim (Claim I) Is Legally Insufficient.

As shown [Chamber's Br. at 29–31], the Complaint fails to allege any action by the Chamber in violation of the Civil Rights Act, does not allege Mr. Kimberlin was ever "clearly identified as a prospective witness in a judicial proceeding," and does not allege any cognizable threat or injury that precluded him from testifying.

Rather than respond to these arguments, each of which is sufficient to defeat his Civil Rights Act claim, Mr. Kimberlin asserts that he provided information about Donald Blankenship to the FBI in April and May of 2010, only "a few months" before Hunton & Williams began discussions with Team Themis. This closeness in time, he implies, indicates that the Team Themis plan was undertaken to intimidate and retaliate against him for his alleged involvement in the Blankenship investigation. The emails do not, however, refer to any discussion among Team Themis about Mr. Kimberlin's efforts to gather information about Mr. Blankenship. Instead, the emails show that the planned pitch mentioned Mr. Kimberlin only tangentially, and never in connection with Mr. Blankenship. Further, Mr. Kimberlin also says that he suffered no injuries from Team Themis's work until May 2012—two full years after he allegedly provided information to the FBI and allegedly as a result of alleged action by Messrs. Hoge and Nickless. [Pl.'s Br. Ex. C ¶ 1.] Thus, Mr. Kimberlin's attempted inference based on timing cannot save his Civil Rights Act claim.

### C. The State Law Claims (Claim III, First Claim VII, & Second Claim VII) Are Insufficient.

Mr. Kimberlin provides no rebuttal to the defects that the Chamber identified in his state law claims, including the following:

- The invasion-of-privacy claim (Claim III) relies entirely on Mr. Barr accessing public, user-generated information collected from Mr. Kimberlin's and his employer's own websites and social-media profiles. Neither the Complaint nor the brief identifies any information in which he had a reasonable expectation of privacy. [Chamber's Br. at 31–32.]

- The claims of intentional interference with business and with prospective economic advantage (first Claim VII) assert only that the named defendants "attempted" to interfere, and identify no particular business or economic harm. Indeed, Mr. Kimberlin's complaint itself rebuts any injury by alleging that he remains employed as a principal by both Justice Through Music and VelvetRevolution. [Chamber's Br. at 33–34.]

- The claim for intentional infliction of emotional distress (second Claim VII) does not identify any extreme or outrageous conduct on the part of the Chamber or explain how he suffered from any such conduct. [Chamber's Br. at 34–35.]

## IV. MR. KIMBERLIN'S AIDING AND ABETTING THEORY CANNOT SUPPORT ANY OF HIS CLAIMS.

The bulk of the Opposition attempts to salvage the Complaint by asserting a new theory of liability. Mr. Kimberlin argues that the Chamber, Team Themis, and Hunton & Williams are liable as "aiders and abettors" of wrongful actions committed by defendants William Hoge and Bill Nickless in 2014 and 2015. [Pl.'s Br. at 8, 11–12.] These wrongful actions include allegedly defamatory tweets and

blog posts by Mr. Nickless in the fall of 2014 [Compl. ¶¶ 53–54, page 34], alleged monitoring of Mr. Kimberlin's and his daughter's social-media accounts by Mr. Hoge [*id.* ¶¶ 55–55, pages 35–36], Mr. Hoge's alleged "applauding" of a physical assault on Mr. Kimberlin [*id.* ¶ 58, page 36], and Mr. Hoge's alleged "fantasizing" (in the guise of an alter ego) about killing Mr. Kimberlin with various weapons [*id.*]. According to Mr. Kimberlin's new and unpled theory, Messers. Hoge and Nickless referred to the Team Themis emails that were leaked in 2011 as "blueprint instructions" for these recent acts of defamation and harassment. [Pl.'s Br. at 8.]

### A. There is No Aiding and Abetting Liability for RICO and the Civil Rights Act. (Claim VI & Claim I).

As a matter of law, Mr. Kimberlin's "aiding and abetting" theory cannot support his claims under RICO (Claim VI) or the Civil Rights Act (Claim I). The Supreme Court of the United States has held that federal statutes providing private rights of action do not extend liability to aiders and abettors unless the statutes explicitly say so. *See Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 183 ("[R]espondents might be saying that aiding and abetting should attach to all federal civil statutes, even laws that do not contain an explicit aiding and abetting provision. . . . We decline to recognize such a comprehensive rule with no expression of congressional direction to do so."). Applying *Central Bank*, courts have held that neither the civil RICO statute[3] nor the Civil Rights Act[4] extends liability to aiders

---

[3] *See Rolo v. City Investing Co.,* 155 F.3d 644, 656 (3d Cir. 1998) ("[W]e are convinced that a private cause of action for aiding and abetting a RICO violation cannot survive the Supreme Court's decision in *Central Bank*."); *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1219 (S.D. Cal. 2009) ("There is no private right of action for aiding and abetting a RICO violation."); *Cobbs v. Sheahan*, 385 F. Supp. 2d 731, 739 (N.D. Ill. 2005) ("Under *Central Bank*, we turn to the language of § 1962(c) and find no evidence that Congress intended to permit aiding and abetting liability."); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 256 (S.D.N.Y. 1997) ("Following the reasoning in *Central Bank*, this Court declines to create a private right of action for aiding and abetting a RICO violation. Nowhere in the text of

(*Continued on next page.*)

and abettors. Accordingly, as a matter of law, Mr. Kimberlin may not salvage, or amend, his civil RICO and Civil Rights Act claims based on an aiding and abetting theory.

> **B. Mr. Kimberlin Has Not Pled Facts Supporting Aiding and Abetting Liability for His State-Law Claims. (Claim III, First Claim VII, & Second Claim VII).**

Even though Mr. Kimberlin's federal claims are all subject to dismissal, the Chamber respectfully requests that the Court exercise its discretionary jurisdiction over his remaining state law claims and also dismiss them with prejudice. *See Crosby v. City of Gastonia*, 635 F.3d 634, 644 n.11 (4th Cir. 2011) (noting that the court "enjoys wide latitude in determining whether or not to retain supplemental jurisdiction over the [remaining] state claims."). The reasons for dismissing the state claims have been thoroughly presented by the Chamber and Mr. Kimberlin has briefed his opposition. By dismissing them now, the Court would save the litigants and courts of Maryland the time and resources that they would otherwise spend rearguing those claims in a subsequent state court action by Mr. Kimberlin. There is little doubt that Mr. Kimberlin would bring such a follow-up action, as he has proven himself to be an indefatigable litigant. After the Court declined to exercise jurisdiction over his state law claims in *National Bloggers Club*, he subsequently brought them in a state action that is pending to this day. [*See* Hoge's Supp. Mot. Dismiss Ex. A, ECF No. 69-1, Complaint, *Kimberlin v. Nat'l Bloggers Club*, No. 403868V (Md. Cir. Ct. Apr. 15, 2015).]

---

Section 1962 is there any indication that Congress intended to impose aiding and abetting liability for a violation of the RICO statute.").

4  *See W. Daniels Land Ass'n, Inc. v. Wasatch Cnty.*, No. No. 2:10-cv-558, 2011 WL 1584822, at *2 (D. Utah Apr. 26, 2011) ("The parties have not found or cited a single case in any jurisdiction imposing civil aiding and abetting liability for a civil rights claim. Plaintiffs have not presented any argument why such liability should be imposed. Given the U.S. Supreme Court precedent [in *Central Bank*], they could not.").

As with his federal claims, Mr. Kimberlin's aiding and abetting theory also fails to save his state law tort claims because it is unsupported by the case law he cites or by plausibly pleaded facts. In *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 251 (4th Cir. 1997), the only support the Mr. Kimberlin cites for his aiding and abetting theory, the Fourth Circuit on a stipulated record held that the First Amendment did not protect the defendant publisher from a wrongful death lawsuit by the family of victims murdered by a man who followed the instructions in a book published by the defendant. Importantly, all facts before that court were stipulated, including that the defendant "'intended *and* had knowledge' that [the book] actually 'would be used, *upon receipt*, by criminals and would-be criminals to plan and execute the crime of murder for hire," and "through publishing and selling [the book, the defendant] assisted [the murderer] in particular in the perpetration of the very murders for which the victims' families now attempt to hold [defendant] liable." *Id.* at 241 (emphasis in original). Indeed, the court noted that the defendant "has *stipulated* that it specifically targeted the market of murderers, would-be murderers, and other criminals for sale of its murder manual. [Defendant] has *stipulated* both that it had knowledge and that it intended that [the book] would immediately be used by criminals and would-be criminals in the solicitation, planning, and commission of murder and murder for hire. And [defendant] has *stipulated* that, through publishing and selling [the book], it 'assisted' [the murderer] in particular in the perpetration of the brutal triple murder for which plaintiffs now seek to hold the publisher liable." *Id.* at 266–76 (emphasis in original). Based on these "astonishing" stipulations, *id.*, the court's limited holding was that the First Amendment provided no absolute defense to the civil aiding and abetting claims.

In this case, of course, Mr. Kimberlin cannot plausibly plead such "astonishing" facts. Unlike the book in *Rice,* the emails on which he relies were released by a hacker, not published by HB Gary or

any other defendant with the intent that anyone else use them.  Further, whereas *Rice* involved a blueprint for murders that actually happened, Mr. Kimberlin does not and cannot allege any direct causation between the hacked emails and the vague and imprecise injuries he claims.

In Maryland, a defendant may be civilly liable as an aider and abettor if (1) [there is] a violation of the law (tort) by the 'principal,' (2) defendant knew about the violation, and (3) defendant gave substantial assistance or encouragement to [the principal] to engage in the tortious conduct." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1043 (Md. 1995).  The plaintiff must also allege that the defendant "engaged in assistive conduct that [it] would know would contribute to the happening of [the alleged wrongful acts]." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. App. Ct. 2003) (emphasis added).

Mr. Kimberlin's allegations fail to meet these requirements.  First, as shown, he has not pled and the hacked emails would not support an allegation that the Chamber even knew about the Team Themis project before it was leaked, much less intended others to rely upon those emails for any purpose.

Moreover, he has pled no plausible relationship between the alleged recent internet activities of Messers. Hoge and Nickless and the Team Themis emails leaked in early 2011.  In fact, his allegations belie such a relationship.  He describes the emails as prepared by "highly specialized cyber warfare experts" and as containing terrorist-fighting techniques so specialized that the "average person would [not] engage in or even [have] the knowledge base to imagine." [Pl.'s Br. at 8.]  Yet Mr. Kimberlin does not claim that Messrs. Hoge or Nickles had such sophisticated knowledge.  Indeed, the only specific activities he alleges by Mr. Nickless were posting nasty tweets and blog entries.  [Compl. ¶¶ 53–54, page 34].  As for Mr. Hoge, he alleges only that he posted about Mr. Kimberlin on his blog, monitored Mr. Kimberlin's and his daughter's social media websites, "fantasized" about murdering Mr. Kimberlin,

and "applauded" a physical attack on Mr. Kimberlin by someone else.  [*Id.* ¶¶ 55–58, pages 35–36.] These activities all involve simply posting on and reading public websites.  One does not need a "blueprint," much less specialized counterterrorist cyber-warfare instructions, to do that. Any connection between the hacked emails and the alleged activities of Messrs. Hoge or Nickles is simply implausible.

Finally, none of the defendants could have "known" that private emails between Team Themis and Hunton & Williams would later be hacked by Anonymous and posted on the internet where they would allegedly inspire Messers. Hoge and Nickless.  This is especially so for the Chamber, which was not even aware of the emails until they were released.

Accordingly, the new "aiding and abetting" claim is legally insufficient and factually implausible.  It cannot salvage the Complaint or serve as basis for an amended complaint.

## CONCLUSION

For the foregoing reasons and the reasons given in the Chamber's opening Memorandum of Law, the Chamber respectfully urges the Court to dismiss with prejudice all of Mr. Kimberlin's claims against it.

September 25, 2015                                              Respectfully submitted,

                                                                                                                   /s/ Bobby R. Burchfield
Bobby Burchfield, Esq. (Bar No. 02325)
bburchfield@kslaw.com
Johnny Walker, Esq. (*pro hac vice*)
jhwalker@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, District of Columbia 20006
Telephone: 202 626 5524
Facsimile: 202 626 3737
*Attorneys for the Chamber of Commerce
of the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015, I caused a copy of the foregoing **Reply Memorandum of Law in Support of the Motion to Dismiss by the Chamber of Commerce of the United States** to be filed via the Court's CM/ECF system, which will automatically serve a copy on all registered participants.

I also caused a copy to be sent via first-class mail and electronic mail to the following:

> Brett Kimberlin
> 8100 Beech Tree Road
> Bethesda, Maryland 20817
> justicejtmp@comcast.net
> *Pro Se Plaintiff*
>
> William Hoge
> 20 Ridge Road
> Westminster, Maryland 21157
> himself@wjjhoge.com
> *Pro Se Defendant*

                                                /s/ Johnny Walker
                                                Johnny Walker
                                                KING & SPALDING LLP