## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

BRETT KIMBERLIN,

     Plaintiff,

v.

HUNTON & WILLIAMS LLP, *et al.*,

     Defendants.

Case No. 8:15-cv-00723-GJH

## REPLY IN SUPPORT OF MOTION TO DISMISS BY
## BERICO TECHNOLOGIES AND NICHOLAS HALLAM

     Plaintiff Brett Kimberlin's Response does not cure the three fatal deficiencies in his claims against Defendants Berico Technologies and Nicholas Hallam (collectively "Berico") as follows: (1) all claims alleged against Berico are time-barred because, more than four years before he filed suit, Plaintiff knew or should have known of the injury he now alleges; (2) Plaintiff has no standing because, even assuming the allegations are true, he suffered no particular injury by actions of Berico; and (3) Plaintiff otherwise alleges no factual or legal basis for each of the claims against Berico.

     Plaintiff has never alleged any conduct by Berico within the limitations period, nor has he been able to provide any rationale for why he did not or could not discover any injuries from that conduct when he learned of the conduct in February 2011.  In addition, Mr. Kimberlin has never alleged any concrete or particular injury caused by Berico.  Despite 49 pages of argument—on top of 62 pages of allegations in his Complaint—Plaintiff fails to overcome these problems in his Response to Berico's Motion to Dismiss.  *See* Plaintiff's Response to Motions to Dismiss, Oct. 14, 2015 (ECF No. 74) ("Response").  In the absence of any conduct or injury from which a

cognizable claim could arise, Mr. Kimberlin has attempted to bootstrap his allegations against Berico with the later unrelated actions of Defendant Hoge and his unidentified associates. However, Plaintiff has not, and cannot, provide anything more than speculation that Berico has any connection with these other parties, and as a result, his claims against Berico fail. For these reasons, Berico respectfully requests the Court dismiss Plaintiff's claims against Berico with prejudice.

## I.      THE TIME FOR FILING A CLAIM AGAINST BERICO HAS EXPIRED.

In its Motion to Dismiss, Berico explained that the time for bringing these claims against Berico expired before this lawsuit was filed, because the limitations period could not extend beyond February 2015 for his RICO claim and February 2014 for all of his other claims against Berico. *See* Berico Memo. in Support of Mot. to Dismiss at 4-6. Plaintiff's Response now confirms this to be true.

Trying to salvage his RICO claim, Plaintiff admits in his Response that he "knew in February 2011 that the RICO Defendants [which includes Berico] engaged in illegal, unethical and nefarious conduct." Resp. at 8. He argues, however, that "it was only in May 2012 that he discovered *the harm* caused by that conduct." *Id.* (emphasis in original). This argument misapplies the statute of limitations in RICO cases. "Private RICO suits are governed by a four-year statute of limitations, which runs from the date when the plaintiff ***discovered, or should have discovered,*** the injury." *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001) (emphasis added). Courts have made clear that private plaintiffs in RICO cases have a duty to diligently investigate their claims when relevant information comes to light. "[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Fowler v. Wells Fargo Home Mort., Inc.*, No. GJH-15-1084, 2015 WL 2342377, at *3 (D. Md. May 13, 2015) (rejecting argument to extend RICO statute of limitations beyond four years

where "Plaintiff has provided no rationale for why she was unable to discover her injury through due diligence"). Indeed, the Supreme Court has held that "civil RICO's further purpose— encouraging potential private plaintiffs diligently to investigate—suggests the contrary" of extending the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997); *see also Rotella v. Wood*, 528 U.S. 549 (2000) ("A person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice. We see no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff.").

In this case, Mr. Kimberlin had all the critical information to discover any injury caused by Berico's actions no later than February 2011. Mr. Kimberlin admits that:

- All of the Berico communications that form the basis of his complaint were made public on February 6, 2011. *See* Mot. to Dismiss at 4-5; Compl. at 28.

- "The released emails created a frenzy of media coverage in major publications such as the *New York Times*, *Washington Post*, *LA Times*, *Forbes*, and *NPR*, in tech publications such as *Ars Technica*, *Wired*, *Tech News*, *The Tech Herald* and *The Hacker News*, in legal publications such as *Law Tech News*, *Corporate Counsel*, *Legal Times* and *National Law Journal*, and in independent media such as *Think Progress*, *The Brad Blog*,[1] *Salon* and *FireDogLake*." Compl. at 28.

- The release of the emails prompted StopTheChamber.com and VelvetRevolution.us to send a document hold notice to Berico and other defendants "for the conduct alleged in the instant Complaint," Compl. at 33, and to file a bar complaint against three of the defendants in this case making nearly identical allegations as the Complaint. *See* Def. Hunton & Williams Mot. to Dismiss Ex. 3, Sept. 14, 2015 (ECF No. 58-5).

- The Plaintiff, StopTheChamber.com, and VelvetRevolution.us "are intertwined and interrelated." Resp. at 23. Mr. Kimberlin is a "principal" of StopTheChamber, *id.* at 13, which is a campaign of VelvetRevolution.us. *Id.* at 10. Mr. Kimberlin "was receiving the email and mail being sent to StopTheChamber." Resp. at 2. Mr. Kimberlin is also the Director of Justice

---

[1] *The Brad Blog* is written by Brad Friedman, one of the co-founders of VelvetRevolution.us. Compl. at 6. The other co-founder of VelvetRevolution.us is Justice Through Music. *Id.* Mr. Kimberlin is the Director of Justice Through Music. *Id.* StopTheChamber.com. is a campaign of VelvetRevolution.us. Compl. at 10.

Through Music, which co-founded VelvetRevloution.us in 2005, and he has been active with VelvetRevolution.us "for more than eleven years."  Compl. at 6.

Therefore, to the extent there was any injury from Berico's conduct, Mr. Kimberlin acknowledges that he had the critical information to conduct due diligence in February 2011, starting the clock for any case he believed he had against Berico.

Mr. Kimberlin also argues that the limitations period should not begin "until the end of the series of events" when there is a "continuation of events."[2]  Resp. at 5.  Federal courts, including the Supreme Court, have rejected this argument.  The "commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."  *Klehr*, 521 U.S. at 189.  This concept of a "last predicate act rule creates a limitations period that is longer than Congress could have contemplated."  *Id.*  As a result, a RICO plaintiff "may not 'bootstrap' time-barred claims by linking them to later, non-time-barred claims."  *Potomac Elec. Power*, 262 F.3d at 266.  In this case, the alleged "continuation of events" is even more flawed, as Mr. Kimberlin attempts to bootstrap the time-barred claims against Berico with later events involving parties other than Berico.

For the federal civil rights and state common law claims, the failure to state a timely claim is also clear.  In his newly-filed declaration, Mr. Kimberlin now admits that he suffered the alleged harm of the civil rights claim at the time he became aware of the conduct by defendants.  Mr. Kimberlin states that he was intimidated and deterred from cooperating with the FBI "***when [he] learned*** that the Chamber, Hunton & Williams, and Team Themis were targeting [him]."

---

[2] Plaintiff mischaracterizes the lone case he cites for his "continuation of events" theory.  In *Hecht v. Resolution Trust Corp.*, 333 Md. 324 (1994), the Court of Appeals of Maryland held that the "continuation of events" theory only applies "in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future," such as when an employee has an agreement to share profits over time with his employer.  *Hecht*, 333 Md. at 337.  Nothing like that occurred in this case, where Berico had no relationship with Mr. Kimberlin, and all of its alleged actions concluded more than four years before this lawsuit was filed.

Resp. Ex. 1 at 1.  As discussed above, all of the conduct by these entities occurred and was made public no later than February 2011.  As a result, the time for bringing a suit under 42 U.S.C. § 1985(2) expired in February 2014.  *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (granting motion to dismiss because federal civil rights claims "borrow the state's general personal injury limitations period, which in Maryland is three years").

Similarly, the common law claims in this case fall under the general statute of limitations in Maryland, where the plaintiff must bring his claim within three years after he or she "knows or reasonably should know of the wrong."  *Id.* at 335.  The statute of limitations begins to run not when the last offensive act occurs, but as soon as the Plaintiff has "notice of a claim."  *Hecht*, 333 Md. at 336.  "Notice of a claim" means "express cognition or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry thus charging the individual with notice of all facts which such investigation would in all probability have disclosed if it had been properly pursued."  *Id.*

Finally, for all of his claims, Plaintiff argues that the Court cannot look past his declaration regarding the date when he knew about his injury.  Resp. at 6.  Obviously, this argument overlooks that the statute of limitations considers more than when a plaintiff knows about his injury; for all of his claims, the limitations begins to run when the plaintiff should have known about his claim.  Moreover, when examining the plausibility of a claim, courts are free to consider all facts pled by the plaintiff.  "If the plaintiff chooses to provide additional facts . . . the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief. . . . In other words, if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court."  *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th

Cir. 2006); *accord* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1215 (3d ed.) ("If a plaintiff

does plead particulars, and they show he has no claim, then the plaintiff has pleaded himself out

of court."). Here, between his admissions in his Response and those in the Complaint, the

plaintiff has pled himself out of court.

## II.     PLAINTIFF HAS NOT STATED A PARTICULAR INJURY THAT IS TRACEABLE TO BERICO.

The second fundamental deficiency in the Complaint is the absence of facts that, even if

assumed to be true, would demonstrate standing to sue Berico. *See* Mot. to Dismiss at 6-9.

Plaintiff's response does nothing to overcome this problem; in fact, it underscores it.

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Vague allegations and conclusory

language regarding standing are insufficient. *See Richardson v. Baltimore*, No. RDB-13-1924,

2014 WL 60211, *4 (Jan. 7, 2014 D. Md). Among other elements, the plaintiff must show an

"injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Id.* The plaintiff must also show the injury is "fairly traceable to the challenged

action of the defendant, and not resulting from the independent action of some third party not

before the court." *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009). "[E]ven at the pleading

stage," the plaintiff must show an "adequate causal connection between the harm and the

challenged conduct." *Id.* Courts dismiss complaints where the "line of causation" is

"attenuated" or the relationship between the harm and the defendant's conduct is "entirely

speculative." *Id.*

Mr. Kimberlin alleges no specific injury caused by Berico. As he did in the Complaint,

Plaintiff only makes vague statements about his RICO injury. He claims that "organizations and

people" have "cease[d] funding and doing business with [his] employer, which caused a loss in

earnings."  Resp. at 21.  He offers nothing concrete or particular about the "organizations and people," or the timing, amount, or personal impact of any injury.

More importantly, Mr. Kimberlin admits that his alleged RICO injuries were caused by entities other than Berico.  He states in his brief that his RICO injuries were the result of conduct by "Defendants Hoge and his associates."  *Id.*  In his declaration, Plaintiff is even more explicit that his alleged RICO injuries were caused not by Berico, but by "Defendant Hoge and his associates" who merely "implemented the Team Themis blueprint."  Resp. at 6.  He admits that his RICO "injury first occurred in May 2012," Resp. at 6, long after Berico allegedly disavowed any involvement.  Compl. at 32.  Indeed, Mr. Hoge is not even a defendant to the RICO claim.  Not surprisingly, no mention of Berico appears in the discussion of RICO injuries.[3]

Ultimately, Plaintiff lacks standing to sue Berico because the injuries from the RICO and common law claims—to the extent any have been alleged concretely and particularly—were caused by other defendants, and Plaintiff provides no facts to show a relationship between those defendants and Berico.  In the Complaint, Mr. Kimberlin speculates:  "Upon information and belief, one or more of the Defendants, in the spring of 2011, conspired with other actors in an overlapping conspiracy to adopt and implement the central tactics outlined by Team Themis against Plaintiff."  Compl. at 32.  Plaintiff doubles down on this theory in the Response, claiming that Mr. Hoge's actions "closely mirror" those of Team Themis and therefore must be "continuations of the Team Themis playbook."  Resp. at 32-33.  Plaintiff insists that "this Court must accept as true" the alleged connection.  Resp. at 34.  Nothing in this argument, however, actually links Mr. Hoge to Berico—no specific facts are pled to show any discussion or

---

[3] Mr. Kimberlin makes one reference to the "RICO Defendants" in this section on his RICO injury, but proceeds to identify conduct by only the Chamber of Commerce.  Resp. at 21.  And in making this reference, he does not even allege a personal injury.  Rather, he claims that the Chamber of Commerce "wrote letters" to PR Newswire that resulted in PR Newswire deciding not to issue press releases from StopTheChamber, which had a contract with PR Newswire.  *Id.*

relationship between them, much less an agreement to take some illegal action against Mr.

Kimberlin that caused him harm.[4]  In short, the line of causation is attenuated at best, and the

Complaint alleges no relationship between the alleged harm and the conduct of Berico—a

requirement for any injury to be "traceable" to Berico.

### III.   PLAINTIFF FAILS TO ADDRESS THE OTHER MISSING ELEMENTS OF HIS COMPLAINT.

Beyond the issues of timeliness and standing, Berico's Motion to Dismiss identified

elemental deficiencies in each of Plaintiff's claims.  Mr. Kimberlin's Response does not address

any of the following deficiencies:

- *Claim I – Conspiracy to Violate Federal Civil Rights Act:*  Berico's Motion to Dismiss noted that Mr. Kimberlin had not identified any case in which he was a party or witness and had been deterred from attending or testifying.  Mr. Kimberlin now admits that he was never called to testify in any case, but merely "told that [he] was considered a potential witness for a grand jury that was or would be investigating."  Resp. Ex. 1, at 1.  Additionally, Plaintiff has never identified any specific actions taken by Berico to deter or intimidate him from being a witness.  Indeed, in the dozens of pages of exhibits Mr. Kimberlin has attached to his Complaint, his name appears almost nowhere, except for a reference to his criminal record on his Wikipedia page.[5]  He has also failed to show that Berico knew anything about the grand jury investigation he references.  Grand juries are by law secret, and there is nothing in any of the documents to suggest that Berico had an awareness of the proceedings, much less an agreement to deter Mr. Kimberlin from testifying as a witness.  In short, these assertions

---

[4] In addition to the lack of standing, this speculative link between Berico and Mr. Hoge is insufficient to allege a conspiracy to commit RICO violations.  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (granting motion to dismiss RICO complaint where plaintiff had made conclusory allegation that one group of defendants "acted in concert" with another group of defendants in conducting their illegal activities).   Furthermore, the generalized reference to "one or more of the Defendants" who "conspired with other actors" is insufficient to plead the overt predicate acts involving fraud, which must be pled under the higher standard of Rule 9(b).  *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (granting motion to dismiss complaint that fails to meet the particularity requirements of Rule 9(b) "when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud").

[5] Without more factual support, Mr. Kimberlin's speculation that he might be a witness to a grand jury is implausible.  Mr. Kimberlin has a long history of criminal convictions, including domestic terrorism, perjury, and drug trafficking, as well as arrests for other offenses that would undermine his credibility as a witness, including possession and illegal use of Department of Defense insignia, illegal use of the Seal of the President of the United States, and impersonation of a federal officer.  *See* Wikipedia Entry for Brett Kimberlin, *available at* https://en.wikipedia.org/wiki/Brett_Kimberlin.

remain too speculative to state a claim against Berico for witness deterrence and intimidation.

- ***Claim VI – RICO:***  Berico's Motion to Dismiss exposed the numerous holes in Plaintiff's RICO claim, including the failure to plead the existence of a RICO enterprise, the predicate acts necessary to show a pattern of racketeering activity, or a RICO injury.  Plaintiff essentially acknowledges the shortcomings of his claim, requesting an opportunity to take discovery.  Resp. at 10.[6]  Nonetheless, Mr. Kimberlin offers no argument on how his discovery requests could fill in the gaps of his claim or plead the missing elements of mail and wire fraud, obstruction of justice, tampering with and retaliating against a witness, extortion, and money laundering.

- ***Claims III, VII, and VII[7] – Common law torts:***  As discussed in Berico's Motion to Dismiss, Mr. Kimberlin's three common law claims were the classic threadbare recitals that should not survive a motion to dismiss.  Once again, Plaintiff has failed to provide any facts that show how Berico invaded his private affairs, interfered with his business relations, or intentionally inflicted emotional distress.  Rather, the only concrete actions that Mr. Kimberlin alleges were by "Mr. Hoge and his associates," who he asserts in conclusory fashion conspired with the other defendants.  *See, e.g.*, Resp. at 24 (Mr. Hoge contacted people and foundations that funded Plaintiff and his employer, resulting in stopped funding); 25 (Mr. Hoge came to his home and took photos and stalked his family); 27 (Mr. Hoge created false narratives about him, called his neighbors and supporters, and investigated his life and business).

Accordingly, each of these claims should be dismissed against Berico.

---

[6] As explained in Berico's Motion to Stay Discovery, such a fishing expedition would impose significant additional burdens on Berico while doing nothing to change the staleness of Plaintiff's claims or his lack of standing.  *See* Berico's Mot. to Stay Discovery and Opp. to Mot. to Allow Discovery, Oct. 16, 2015 (ECF No. 78).

[7] The Complaint contains two claims numbered as "Claim VII":  conspiracy to interfere with business relations and prospective economic advantage and intentional infliction of emotional distress.  Compl. at 58-59.

## IV.     CONCLUSION

For these reasons, and those stated in Berico's Motion to Dismiss, this Court should

dismiss all of Plaintiff's claims against Defendants Berico Technologies and Nicholas Hallam

with prejudice, and grant such further relief as this Court deems proper.

October 28, 2015                                    Respectfully submitted,

By: <u>*/s/  Attison L. Barnes*</u>
     Attison L. Barnes, III (Bar No. 15198)
     Jennifer S. Zucker (*pro hac vice*)
     Mark B. Sweet (*pro hac vice*)
     Wiley Rein LLP
     1776 K Street NW
     Washington, DC 20006
     Tel: (202) 719-7000
     Fax: (202) 719-7049
     abarnes@wileyrein.com

     *Attorneys for Berico Technologies and*
     *Nicholas Hallam*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2015, I caused the foregoing to be filed via the

Court's CM/ECF system, which will automatically serve a copy on all registered participants.  I

also caused a copy to be sent via first-class mail and electronic email to the following:

Brett Kimberlin
8100 Beech Tree Road
Bethesda, Maryland 20817
justicejtmp@comcast.net
*Pro Se Plaintiff*

William Hoge
20 Ridge Road
Westminster, Maryland 21157
himself@wjjhoge.com
*Pro Se Defendant*

*/s/ Attison L. Barnes*
Attison L. Barnes, III
Wiley Rein LLP
