# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| Brett Kimberlin, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )    Case No. 8:15-cv-00723-GJH |
|  | ) |
| Hunton & Williams LLP, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS BY DEFENDANTS HUNTON & WILLIAMS LLP,
## JOHN WOODS, RICHARD WYATT, AND ROBERT QUACKENBOSS

Dated:  October 29, 2015

John J. Buckley, Jr. (Bar No. 06249)
Barrett J. Anderson (Bar No. 13900)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5051
Facsimile: (202) 434-5058
Email: jbuckley@wc.com

*Counsel for Defendants Hunton & Williams LLP, John Woods, Richard Wyatt, and Robert Quackenboss*

## TABLE OF CONTENTS

I.     The Complaint Is Untimely on All Counts ...................................................1

       A.     Kimberlin's Claims Accrued More Than Four Years Before He Filed His
              Complaint..........................................................................................1

       B.     Kimberlin's Attempt to Evade the Statutes of Limitations Must Fail ...................2

       C.     Equitable Tolling Is Not Warranted.......................................................6

II.    The Complaint Does Not Adequately Plead a Claim for Aiding and Abetting.................9

III.   The Complaint Fails to Adequately Plead a Claim for Civil RICO .................................11

       A.     Enterprise ...................................................................................12

       B.     Pattern of Racketeering Activity.........................................................12

              1.     Racketeering Activity .............................................................12

                     a.     Mail and Wire Fraud.......................................................13

                     b.     Obstruction of Justice, Witness Intimidation, and Witness
                            Tampering ................................................................13

                     c.     Federal and State Extortion............................................15

                     d.     Money Laundering.........................................................15

              2.     Pattern ...............................................................................16

       C.     Cognizable RICO Injury ...................................................................17

              1.     Injury to Business or Property .................................................17

              2.     Proximate Cause ................................................................17

       D.     Conspiracy ...................................................................................17

IV.    The Complaint Fails to Adequately Plead a Claim for Conspiracy Under 42
       U.S.C. § 1985(2) ...............................................................................18

V.     The Complaint Fails to Adequately Plead State Law Claims...........................................18

       A.     Invasion of Privacy .........................................................................19

       B.     Tortious Interference with Business Relations .......................................19

C.      Intentional Infliction of Emotional Distress ...........................................................19

VI.    The Complaint Should Be Dismissed with Prejudice......................................................19

VII.   Conclusion ....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*A Soc'y Without a Name v. Virginia*,
   655 F.3d 342 (4th Cir. 2011) ..................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................6, 12

*Biktasheva v. Red Square Sports, Inc.*,
   366 F. Supp. 2d 289 (D. Md. 2005) .....................................................................13

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)..............................................................................................10

*CVLR Performance Horses, Inc. v. Wynne*,
   792 F.3d 469 (4th Cir. 2015) ..............................................................................6, 9

*Fowler v. Wells Fargo Home Mortg.*,
   No. GJH-15-1084, 2015 WL 2342377 (D. Md. May 13, 2015).......................2, 6, 9

*GE Inv. Private Placement Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ...............................................................................16

*Harris v. Hutchinson*,
   209 F.3d 325 (4th Cir. 2000) .................................................................................6

*Hejirika v. Md. Div. of Corr.*,
   264 F. Supp. 2d 341 (D. Md. 2003) .....................................................................19

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990)...........................................................................................6, 8, 9

*Kimberlin v. Nat'l Bloggers Club*,
   No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015).................... passim

*Rice v. Paladin Enterprises*,
   128 F.3d 233 (4th Cir. 1997) ...............................................................................10

*Rotella v. Wood*,
   528 U.S. 549 (2000)................................................................................................2

*Timmerman v. U.S. Bank, N.A.*,
   483 F.3d 1106 (10th Cir. 2007) ...........................................................................18

*United States v. Aguilar,*
    515 U.S. 593 (1995) ...................................................................................................14

*Walters v. McMahen,*
    795 F. Supp. 2d 350 (D. Md. 2011) .....................................................................19, 20

*Zachair, Ltd. v. Driggs,*
    965 F. Supp. 741 (D. Md. 1997) ...............................................................................4

## STATE CASES

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,*
    665 A.2d 1038 (Md. 1995) .......................................................................................11

*Saadeh v. Saadeh, Inc.,*
    819 A.2d 1158 (Md. App. Ct. 2003) .......................................................................11

## OTHER AUTHORITIES

18 U.S.C. § 1503(a) ........................................................................................................13, 14

18 U.S.C. § 1512(b) ........................................................................................................13, 14

18 U.S.C. § 1513(b) ........................................................................................................13, 14

18 U.S.C. § 1513(e) ........................................................................................................13, 14

18 U.S.C. § 1515(a)(1) .........................................................................................................14

18 U.S.C. § 1956(a)(3) .........................................................................................................16

18 U.S.C. § 1962(c) ........................................................................................................ passim

18 U.S.C. § 1962(d) .............................................................................................................17

42 U.S.C. § 1985(2) ........................................................................................................ passim

Federal Rule of Civil Procedure 9(b) ....................................................................................13

Every claim alleged by Plaintiff Brett Kimberlin against Defendants Hunton & Williams LLP ("H&W"), John Woods, Richard Wyatt, and Robert Quackenboss (collectively "the H&W Defendants") is time-barred by the applicable statutes of limitations and, moreover, is supported by nothing more than speculative and conclusory statements.  Kimberlin's opposition cannot overcome these fatal defects and does not rebut—or even address the majority of—the arguments that the H&W Defendants presented in their opening brief.  Moreover, his request for leave to engage in discovery against the H&W Defendants is based on nothing more than a series of hyperbolic accusations—ranging from merely implausible to fantastical—that are not supported by any well-pleaded factual allegations in his Complaint.  The requested discovery venture would, at best, amount to an improper fishing expedition designed to allow Kimberlin to attempt to "find" a claim against the H&W Defendants where he has none and, at worst, be a tool for him to harass those he sees as his political adversaries.  His Complaint therefore must be dismissed, with prejudice.

## I.     The Complaint Is Untimely on All Counts

### A.     Kimberlin's Claims Accrued More Than Four Years Before He Filed His Complaint

The death knell for Kimberlin's Complaint comes on page 8 of his opposition, in which he concedes the central argument in the H&W Defendant's Motion to Dismiss:  "Plaintiff knew in February 2011 that the RICO Defendants engaged in [the alleged] illegal, unethical, and nefarious conduct."  Kimberlin gained actual knowledge of the alleged facts that underlay each of his claims against the H&W Defendants beginning on February 7, 2011, when Anonymous published on the Internet in searchable form the emails and files it illegally obtained from

Defendant HBGary.  Pl.'s Br. 8.[1]  Kimberlin concedes that these hacked emails and files created

"a frenzy of media coverage" when they were published on the Internet on February 7, 2011.

Compl. ¶ 38 (page 28).  Moreover, later in February 2011, his organization "Stop the Chamber"

used the same hacked emails and files as the basis both for a bar complaint against H&W

lawyers Woods, Wyatt, and Quackenboss and for a document hold letter sent to H&W

threatening litigation against it.  *Id.* ¶¶ 45, 46 (page 33); Dfs.' Br. 6, 9; *id.*, Ex. 1, Document Hold

Letter *id.*, Ex. 2, Bar Complaint.

The limitations clock starts for allegations of civil RICO when the plaintiff's claim

accrues, which is "when a plaintiff knew or should have known of his injury."  *Rotella v. Wood*,

528 U.S. 549, 553 (2000).  And the limitations clocks for Kimberlin's Civil Rights Act and

Maryland state law claims began when the alleged wrong occurred.  Dfs.' Br. 7 nn. 5–6.

Kimberlin's concession that he had actual knowledge of the conduct underlying his claims

against the H&W Defendants in February 2011—more than four years before he filed his

Complaint in March 2015—means that each of his claims against the H&W Defendants is time-

barred.  *Rotella*, 528 U.S. at 553–54; *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th

Cir. 2011); *Fowler v. Wells Fargo Home Mortg., Inc.*, No. GJH-15-1084, 2015 WL 2342377, at

*3 (D. Md. May 13, 2015); Dfs.' Br. 6–10.

**B.     Kimberlin's Attempt to Evade the Statutes of Limitations Must Fail**

Despite conceding that he had actual knowledge of the hacked HBGary emails and files

underlying his claims in February 2011, Kimberlin attempts to sidestep the applicable statutes of

limitations by asserting that the limitations period did not begin to run until May 2012—more

---

[1] Citations to "Pl.'s Br." are to Kimberlin's opposition brief, D.I. 74, filed on October 14, 2015. Citations to "Pl.'s Chamber Br." are to the brief Kimberlin filed on September 9, 2015, in opposition to Defendant U.S. Chamber of Commerce's Motion to Dismiss, D.I. 67.

than 14 months after Anonymous's hack and publication of the HBGary emails and files—when "Defendant Hoge and his associates implemented the Team Themis blueprint" (which is apparently a reference to the hacked HBGary emails and files).  Pl.'s Br. 6–8.  In his Declaration, Kimberlin states:  "I began suffering harm from the Team Themis blueprint during May 2012, when Defendants Hoge and his associates launched their online bullying campaign, 'Everybody Blog About Brett Kimberlin.'"  *Id.*, Ex. 1, Kimberlin Decl. ¶ 4.  Kimberlin's self-serving assertion only further dooms his Complaint.

*First*, to the extent Kimberlin still contends that he suffered any injury under the Civil Rights Act as a result of the alleged conduct of the H&W Defendants, this injury occurred in February 2011, and he had knowledge of it at that time.  Thus, he declares that he felt "intimidated and deterred from cooperating with the FBI" and felt "retaliated against" in relation to the grand jury investigation of Donald Blankenship when he first learned in February 2011 that he had allegedly been targeted by the H&W Defendants.  *Id*. ¶ 2.  The foundation for Kimberlin's allegations that he was "targeted" are the hacked HBGary emails and files, *see, e.g.*, Compl. ¶¶ 9 (pages 17–18), 13 (pages 19–20), 16 (pages 20–21), 22 (pages 22–23), 25 (page 24), and Kimberlin concedes he knew about these hacked materials when they were published on the Internet by Anonymous on February 7, 2011, Pl.'s Br. 8.  Accordingly, his alleged injury accrued on that date, which is more than three years before he filed his Complaint and he had knowledge of it on this date.

*Second*, Kimberlin also misses the mark with his contention that his civil RICO and Maryland state law claims did not accrue until Defendant Hoge and his associates began their alleged campaign against him in May 2012.  At the threshold, Kimberlin's attempt to inject Defendant Hoge and his associates into the civil RICO claim must be rejected because Kimberlin

specifically excluded Defendants Hoge and Nickless from that claim in his Complaint.  Compl. at 47.  It is well-settled that a plaintiff may not amend his complaint simply by making assertions in an opposition to a motion to dismiss.  *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *7 n.3 (D. Md. Mar. 17, 2015); *see also Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

In any case, Kimberlin's Complaint is utterly devoid of factual allegations connecting the H&W Defendants to Defendant Hoge, Nickless, or their associates, and his three assertions for why the H&W Defendants should be held responsible for the alleged conduct of Defendants Hoge, Nickless, and their associates are unavailing.

1.  Going outside the Complaint, Kimberlin contends that there is "circumstantial evidence" of coordination between the H&W Defendants, on the one hand, and Defendants Hoge, Nickless, or their associates, on the other.  Pl.'s Br. 30–31.  Kimberlin urges the Court to draw this inference because the hacked HBGary emails and files show that Team Themis discussed Kimberlin in late 2010 and that around the same time Breitbart.com published several articles about him.  *Id.*  Further, he argues that in May 2012—nearly two years later— Breitbart.com again published articles about Kimberlin around the same time that Defendant Hoge also published articles about him.  *Id.* at 31.  These allegations support no conclusion other than that the H&W Defendants and Defendants Hoge, et al., discussed Kimberlin—who actively promotes himself as a public figure on the Internet—at two different points in time that happened to coincide with the publication of articles about Kimberlin by a non-party website.   That is far too thin a reed to support the inference that the H&W Defendants actually coordinated either with Breitbart.com or with any of the other named Defendants.  Kimberlin's "circumstantial evidence" is mere conjecture.

2.   Again going outside the Complaint, Kimberlin argues that on October 5, 2015 he received an email from Aaron Walker, "one of Defendant Hoge's close associates," demanding that he drop the "case involving Hunton and Williams." *Id.* at 31–32.  But the Complaint contains no such factual allegations and Kimberlin does not explain how an email from Mr. Walker initiating a court-ordered settlement negotiation in his action against Kimberlin demonstrates that he is working with the H&W Defendants.  *Id.*, Ex. 10, Email from Aaron Walker to Brett Kimberlin.  And even if the allegation were true and could be considered by the Court, no inference of coordination between Mr. Walker and the H&W Defendants can be drawn from Mr. Walker having described this lawsuit—in which H&W merely is the first named of multiple defendants—as the "case involving Hunton & Williams." *Id.*  Once more, Kimberlin's argument is entirely speculative and improper.

3.   Kimberlin asserts that the alleged conduct of Defendant Hoge and his associates "closely mirror[s] the plans of Team Themis," Pl.'s Br. 32–34, and, on the basis of that allegation, urges the Court to draw the inference that Defendant Hoge adopted and used the "Team Themis blueprint" to harm him, *id.*, Ex. 1, Kimberlin Decl. ¶ 4; *see also* Pl.'s Chamber Br., Ex. C, Kimberlin Decl. ¶ 1.  As explained by the U.S. Chamber of Commerce ("the Chamber") in its reply brief, however, the alleged conduct of Defendant Hoge is in fact different in kind from the proposals in the Team Themis materials.  D.I. 71, Chamber Reply Mem. at 14–15.  Moreover, the Complaint contains no factual allegations showing that the H&W Defendants provided assistance to Defendant Hoge or his associates.  Acknowledging that there is no evidence to support this claim, Kimberlin argues that only "[w]ith discovery" could he hope to show that the alleged "RICO Enterprise . . . contract[ed] out the attacks on Plaintiff to proxies such as Defendant Hoge and his associates."  Pl.'s Br. 14.  This, of course, is putting the cart

before the horse; a Complaint cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Kimberlin clearly knew of his purported injury from the H&W Defendants' alleged conduct in February 2011, as he forthrightly concedes. Pl.'s Br. 8. The Court should thus find that his claims are untimely. *See, e.g.*, *Fowler*, 2015 WL 2342377, at *2–3 (holding limitations period started when plaintiff knew of "action giving rise to her [civil] RICO claim" despite her allegation that she did not know of her injury until after the statute of limitations had expired).

## C.    Equitable Tolling Is Not Warranted

Kimberlin wrongly contends that the civil RICO statute of limitations should be equitably tolled for two reasons:  (1) an unnamed whistleblower purportedly told him in November 2014 that the H&W Defendants were "hiding information," and (2) he was having settlement discussions with H&W when the limitations period expired. Pl.'s Chamber Br. 10–11.[2] Equitable tolling is a discretionary doctrine applicable only when either "***extraordinary*** circumstances beyond plaintiff['s] control made it ***impossible*** to file the claims on time," or where he was "***prevented*** from asserting [his] claims by some kind of ***wrongful conduct*** on the part of the defendant." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted and emphases added); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable [tolling] relief only sparingly."). The allegations in Kimberlin's opposition come nowhere close to meeting his heavy burden. *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015)

---

[2] Even if equitable tolling applied to Kimberlin's civil RICO count, it would not save his other claims against the H&W Defendants under the Civil Rights Act and Maryland state law because the three-year statute of limitations applicable to those claims expired in February 2014 and Kimberlin concedes both that the purported whistleblower did not contact him until November 2014 and that he did not contact H&W about a possible settlement until December 17, 2014. Pl.'s Chamber Br. 10.

("Equitable tolling has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies.").

As to the tale of the anonymous whistleblower, the fact that these allegations were not pleaded in his Complaint again means that the Court should ignore them.  *Nat'l Bloggers*, 2015 WL 1242763, at *7 n.3.  But even the Court were to consider these allegations, they are insufficient as a matter of law to render Kimberlin's Complaint timely.  Kimberlin alleges that the whistleblower contacted him in November 2014 to advise him that the H&W Defendants were "hiding information," Pl.'s Chamber Br. 10, but he does not describe what that information was, why it was "impossible" for him to file his Complaint without it, or how the information relates to his claims against the H&W Defendants.  Nor does he indicate whether he ever, in fact, obtained it.  In short, the unspecified "hid[den] information" in no way explains or excuses his delay.  Further, Kimberlin does not explain how the "hid[den] information" tipped the scale and allowed him to bring claims that it was impossible for him to bring on the basis of the hacked Team Themis emails and pitch materials, which he concedes were fully available and known to him in February 2011.  Pl.'s Br. 8.

Kimberlin comes no closer to meeting the demanding standard for equitable tolling with his assertion that settlement discussions with H&W somehow prevented him from filing a timely Complaint.  Pl.'s Chamber Br. 10–11.  Specifically, he asserts—again, for the very first time in his opposition, in a wholly conclusory fashion, and without any documentary or testimonial evidence—that H&W general counsel Robert Rolfe met with him on February 19, 2015 and later told him (on some unspecified date) that "if the case was resolved, H&W would waive any

[statute of limitations]." *Id.* at 10.  On its face, the statement attributed to Mr. Rolfe (which the H&W Defendants deny was said) makes no sense.[3]

Notably, Kimberlin does not explain why the possibility of entering into a tolling agreement "if the case was resolved" would constitute "extraordinary circumstances" that made it "impossible" to file his Complaint, or "wrongful conduct" that prevented him from filing his Complaint.[4]  Even taking Kimberlin's allegations at face value, there was no tolling agreement. Mr. Rolfe allegedly told Kimberlin that H&W would waive the statute of limitations "if the case was resolved."  *Id.*  Because the case was never "resolved," the necessary condition precedent for the alleged waiver never occurred.  And Kimberlin does not allege that Mr. Rolfe "induced or tricked" him into believing otherwise.  *Irwin*, 498 U.S. at 96.

Even if H&W had agreed to toll the statute of limitations on February 19, 2015—and it bears emphasizing that H&W made no such agreement and Kimberlin does not allege otherwise—it would not save Kimberlin's Complaint.  The limitations period for Kimberlin's civil RICO claim expired on February 7, 2015—four years after he became aware of the information on which his Complaint is based as a result of the Anonymous hack and publication on the Internet of the HBGary emails and files.  And the limitations period for Kimberlin's Civil Rights Act and Maryland state law claims had expired a year earlier, on February 7, 2014—three years after the Anonymous hack and Internet publication.

---

[3] Mr. Rolfe did not make any statement to Kimberlin waiving or offering to waive the statute of limitations.  In the event it becomes necessary, the H&W Defendants are prepared to offer evidence to show that no waiver was offered or accepted.

[4] Any allegations related to Kimberlin's discussions with Mr. Rolfe do not, by their terms, apply to Defendants Woods, Wyatt, or Quackenboss; therefore, even if equitable tolling applies, it would not toll the limitations period with respect to them.

In any case, Kimberlin did not act diligently in pursuing his claims when, as he concedes, he was aware of the H&W Defendants' alleged illegal activities on February 7, 2011, yet did nothing for over four years. *See Irwin*, 498 U.S. at 96 ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *CVLR Performance Horses*, 792 F.3d at 477 (finding plaintiffs did not diligently pursue their rights when they waited years after their claim accrued to file civil RICO action); *Fowler*, 2015 WL 2342377, at *3 (finding plaintiff not reasonably diligent when she knew about "action giving rise to her RICO claim" at the time it occurred but waited more than four years to file her complaint). The H&W Defendants did not cause, and cannot be blamed for, Kimberlin's failure to timely file his Complaint. Equitable tolling is unwarranted.

## II.     The Complaint Does Not Adequately Plead a Claim for Aiding and Abetting

Kimberlin asserts an unpleaded and unsupported theory that the H&W Defendants are liable for aiding and abetting others in their unlawful conduct. As discussed above, Kimberlin wrongly argues that he was injured by the entirely separate conduct of "Defendant Hoge and his associates" when they "implemented the Team Themis blueprint." Pl.'s Br. 6. His theory appears to be grounded in a tortured chain of causation: because the Team Themis Defendants created confidential pitch materials for a proposal to gather publicly-available information to H&W in late 2010 and early 2011, *and* because Anonymous later hacked HBGary and published these materials, *and* because Defendants Hoge, Nickless, and their associates later defamed and harassed Kimberlin in May 2012 by "adopting" the "Team Themis blueprint," it must follow that H&W is liable for the actions of Defendant Hoge and his associates. Pl.'s Br. 6–8; Pl.'s Chamber Br. 8, 11–12. The Court should reject this convoluted argument for several reasons.

*First*, Kimberlin did not allege aiding-and-abetting liability in his Complaint and, in fact, did not include either Defendants Hoge or Nickless in his civil RICO and Civil Rights Act

claims.  Compl. at 41, 47.  As indicated, "[i]t is well-established . . . that a plaintiff cannot amend

his or her complaint through the use of opposition briefs." *Kimberlin v. Nat'l Bloggers Club*,

No. GJH-13-3059, 2015 WL 1242763, at *7 n.3 (D. Md. Mar. 17, 2015).  Therefore, Kimberlin

may not now argue on the basis of an unpleaded aiding-and-abetting theory or include

Defendants Hoge, Nickless, and their associates in his civil RICO and Civil Rights Act claims.

*Second*, Kimberlin cannot allege aiding-and-abetting liability for his civil RICO and Civil

Rights Act claims because, to allege such a theory under a federal statute, the statute must

contain "an explicit aiding and abetting provision." *Cent. Bank of Denver, N.A. v. First

Interstate Bank of Denver, N.A.*, 511 U.S. 164, 183 (1994).  As explained by the Chamber in its

reply brief, courts have repeatedly held under *Central Bank* that neither civil RICO nor the Civil

Rights Act provide for private rights of action for aiding-and-abetting liability.  D.I. 71, Chamber

Reply Mem. at 11–12 & nn. 3–4 (collecting cases).

*Third*, Kimberlin's argument that the H&W Defendants aided and abetted the Maryland

state torts likewise fail as a matter of law.  At the threshold, Kimberlin's citation to *Rice v.

Paladin Enterprises, Inc.*, 128 F.3d 233 (4th Cir. 1997), is inapposite.  In *Rice*, the court

considered whether the First Amendment precluded a wrongful death claim against a book

publisher that had published a book containing instructions on how to commit a murder and

these instructions were actually used by a murderer.  The publisher stipulated to facts

establishing as a matter of law that it was guilty of aiding and abetting, arguing only the

proposition that the "First Amendment absolutely bars the imposition of liability."  *Id.* at 241.

Accordingly, the court did not have the opportunity to consider a statute of limitations defense,

nor did it hold that an aiding-and-abetting theory would defeat such a defense.  Furthermore,

unlike the book publisher in *Rice*, the H&W Defendants have not stipulated that they created,

published, or distributed the Team Themis pitch materials; rather, as Kimberlin admits, those materials were created by Team Themis and then hacked and released by Anonymous.  Nor have the H&W Defendants stipulated—as did the publisher in *Rice*—that they intended or had knowledge that the Team Themis pitch materials would be used to target Kimberlin, or that the pitch materials actually did assist Defendants Hoge, Nickless, and their associates in their alleged conduct and that the H&W Defendants intended that result.  *Rice* is thus wholly irrelevant.

*Fourth*, even if Kimberlin had properly pleaded a legally-cognizable aiding-and-abetting claim under Maryland state law, he also does not allege sufficient facts to support it.  The Complaint must allege facts showing that (1) Defendants Hoge and his associates violated state law; (2) the H&W Defendants knew about the violation; and (3) the H&W Defendants gave "substantial assistance or encouragement" to Defendant Hoge and his associates.  *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1043 (Md. 1995) (internal quotation marks omitted).  Additionally, the Complaint must plead facts showing that the H&W Defendants "engaged in assistive conduct" that they knew would contribute to the wrongful acts of Defendants Hoge and his associates.  *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003).  As discussed in detail above, Kimberlin's assertion that the H&W Defendants are connected to Defendant Hoge and his associates is wholly unsupported by the allegations in his Complaint and therefore falls far short of the required elements.  *See* Section I.B, *supra*.  Any allegation of aiding-and-abetting is simply implausible.

## III.    The Complaint Fails to Adequately Plead a Claim for Civil RICO

Kimberlin effectively concedes that—despite having access to the "50,000 plus" hacked HBGary emails and files—he does not have enough to sufficiently allege a civil RICO claim under 18 U.S.C. § 1962(c).  Pl.'s Br. 8–12.  Instead, he asks the Court to "allow[] Plaintiff to conduct discovery" to get "other emails and documents [to] show that Defendants engaged in the

conduct alleged in the Complaint, including the RICO conduct." *Id.* at 10.  The discovery provisions of the Federal Rules do not work in this manner.  Discovery exists to allow the plaintiffs the means of supporting well-pleaded allegations, not to cure pleading defects.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The Court therefore should reject Kimberlin's request to conduct a fishing expedition, and instead dismiss his civil RICO allegation, with prejudice, for failure to state a claim.

### A.      Enterprise

Kimberlin fails to demonstrate that his Complaint alleges sufficient facts to show the elements of a RICO enterprise:  (1) an "ongoing organization" that (2) "function[s] as a continuing unit" and (3) "exists separate and apart from the pattern of racketeering activity." *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *3 (D. Md. Mar. 17, 2015) (internal quotation marks omitted).  Instead, he resorts to hyperbole.  The few facts alleged in the Complaint demonstrate, at most, that:  (1) Team Themis pitched their services to the H&W Defendants; (2) those services involved only research using publicly-available sources; (3) the H&W Defendants never hired or otherwise retained Team Themis, Compl., Ex. Z, Email from Matthew Steckman to Aaron Barr; and (4) Team Themis ceased to exist after February 7, 2011, Compl. ¶¶ 40–41 (pages 31–32), 49 (page 33).  In other words, Kimberlin has "failed to allege any material facts about the enterprise's structure." *Nat'l Bloggers*, 2015 WL 1242763, at *3; *see also* Dfs.' Br. 12–14.

### B.      Pattern of Racketeering Activity

#### 1.      Racketeering Activity

Kimberlin fails to demonstrate that his Complaint alleges facts sufficient to establish any predicate act.

12

### a.     Mail and Wire Fraud

Kimberlin has not alleged either mail or wire fraud with the specificity required by

Federal Rule of Civil Procedure 9(b).  He relies solely on conclusory allegations in the

Complaint that the H&W Defendants made or planned to make any false or fraudulent

statements.  Compl. ¶¶ 111, 114 (page 52).  And Kimberlin's claim that H&W allegedly

committed mail fraud by sending a data disk to Team Themis is totally deficient because the

Complaint fails to allege what information was on the disk, whether any of the information on

the disk concerned Kimberlin, or that any information on the disk was used in a scheme to

defraud.  *Id.* ¶¶ 29 (page 25), 111 (page 52); *id.* Ex. V, Email from Ted Vera to Aaron Barr; *see*

*also* Pl.'s Br. 14.[5]  Instead of grappling with the deficiencies in his Complaint, Kimberlin again

demands discovery and thereby effectively admits that he cannot plead the "time, place, and

contents" of any alleged "false representations," nor can he allege "the identity of the person

making the misrepresentation and what he obtained thereby."  *Biktasheva v. Red Square Sports,*

*Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (internal quotation marks omitted).  Kimberlin thus

has failed to adequately plead RICO fraud predicates.  Dfs.' Br. 15–16.

### b.     Obstruction of Justice, Witness Intimidation, and Witness Tampering

Kimberlin attempts unsuccessfully to resuscitate his allegations of obstruction (18 U.S.C.

§ 1503(a)), intimidation (18 U.S.C. § 1512(b)), and retaliation (18 U.S.C. § 1513(b) and (e)) in

---

[5] Kimberlin incorrectly argues that the alleged data on the disk included information about him.
Pl.'s Chamber Br. 15.  But the email on which he bases that argument—Exhibit J—references
data gathered by Team Themis, not the H&W Defendants, and thus cannot be information from
the alleged data disk.  In any case, no data disk from H&W was mentioned in the hacked
HBGary emails until several months after the email in Exhibit J was even sent.  *Compare*
Compl., Ex. J, Email from Aaron Barr to Patrick Ryan sent Nov. 9, 2010 (discussing data
gathered by Team Themis) *with id.*, Ex. V, Email from Ted Vera to Aaron Barr sent Jan. 14,
2011 (noting data disk from H&W was not received until Jan. 13, 2011).

relation to his alleged involvement with the grand jury investigation of Donald Blankenship. Pl.'s Br. 15–16.  At the threshold, Kimberlin's allegations for these predicates are entirely inconsistent; he simultaneously declares that, upon discovering he was being "targeted" by the H&W Defendants, he felt "intimidated and deterred from cooperating with the FBI," *id.*, Ex. 1, Kimberlin Decl. ¶ 2; *see also* Compl. ¶ 117 (page 53), but nonetheless insists that he "continued to provide information to the FBI over several years," Pl.'s Chamber Br., Ex. C, Kimberlin Decl. ¶ 3; *see also* Compl. ¶ 121 (page 54).  Furthermore, Kimberlin does not explain how— notwithstanding the fact that he was never asked to testify and did not testify before the grand jury—he could have been "deter[red]" and "intimidate[d]" from testifying before the grand jury but also "retaliate[d] against" for "being a witness."  Pl.'s Br. 15.

In any case, Kimberlin fails to properly allege obstruction, intimidation, or retaliation because he does not assert that he took part in or was invited to take part in a proceeding as defined by the relevant statutes.  Section 1503 requires that the accused have the "intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."  *United States v. Aguilar*, 515 U.S. 593, 599 (1995).  Sections 1512 and 1513 likewise require the accused to have targeted a person's participation in, as is relevant here, "a proceeding before a judge or court of the United States, . . . or a Federal grand jury."  18 U.S.C. § 1515(a)(1).  Kimberlin concedes that he never testified, was never subpoenaed to testify, and was never—officially or unofficially—requested to testify at a judicial or official proceeding; rather, he alleges merely that he "could [have been] called to testify," Pl.'s Br. 3, and that he was "considered a potential witness," *id.*, Ex. 1, Kimberlin Decl. ¶ 1.  At most, Kimberlin alleges that

he provided unsolicited information to the FBI.  *Id.*  That is plainly insufficient to state a claim for obstruction, intimidation, or retaliation.  Dfs.' Br. 16–17.

More fundamentally, the Complaint does not allege that the H&W Defendants knew that Kimberlin was possibly involved with a grand jury investigation, let alone the one involving Donald Blankenship.  The HBGary emails and files hacked and published by Anonymous—on which Kimberlin relies to make his claims—make no mention of any investigations, nor do any of the hacked emails or files reveal him as a possible witness in any judicial proceedings.  Dfs.' Br. 3–4.  As such, there is no plausible allegation that the H&W Defendants intended to deter, intimidate, or retaliate against him.  *Id.* at 16–18.

Finally, Kimberlin's allegations of intimidation and retaliation must fail because he alleges no act committed by the H&W Defendants.  He alleges only that he met with and provided information to the FBI, Pl.'s Br., Ex. 1, Kimberlin Decl. ¶ 1, and avers no plausible facts showing that the H&W Defendants knew of that meeting or took any action to prevent it or retaliate against him for it, *see also* Dfs.' Br. 17–18.

### c.    Federal and State Extortion

To allege extortion, Kimberlin is required to show that the H&W Defendants used real or threatened force against him to obtain property.  But Kimberlin alleges no acts or threats, and identifies no property sought, by the H&W Defendants.  His suggestion that the alleged "threats of death and injury" he received were caused by the Chamber is completely unsupported by factual allegations in his Complaint.  Pl.'s Br. 17.  His extortion predicates cannot stand.  Dfs.' Br. 18–19.

### d.    Money Laundering

Finally, Kimberlin admits that he cannot show, "*without discovery*," that any funds exchanged between any defendant in this case were derived from criminal activity.  Pl.'s Br. 17–

18.  Nor does Kimberlin make anything more than a conclusory allegation that the H&W

Defendants knew any funds were derived from unlawful activity.  Each of these deficiencies is

independently fatal to his money laundering predicate.  Dfs.' Br. 19–20.

Kimberlin also tries to allege a new money laundering predicate act under 18 U.S.C. §

1956(a)(3), Pl.'s Br. 18, but, again, he cannot amend his Complaint in his opposing brief, *Nat'l*

*Bloggers*, 2015 WL 1242763, at *7 n.3.  In any case, Kimberlin does not plausibly allege that

any funds were "the proceeds of specified unlawful activity, or property used to conduct or

facilitate specified unlawful activity," or that the H&W Defendants "believed" them to be so.  18

U.S.C. § 1956(a)(3).

## 2.    Pattern

Kimberlin does not even attempt to argue that his alleged predicate acts satisfy the

"relatedness" and "continuity" prongs necessary to a civil RICO claim.  He does not identify

how the predicates are related.  *Nat'l Bloggers*, 2015 WL 1242763, at *10.  And, while he

attempts to show continuity by arguing that the enterprise was "intended to continue for at least

six months based on the contract" and that the contract contained an exclusivity clause, Pl.'s Br.

18–19, his Complaint alleges that the "contract" was only between the members of Team Themis

and did not include the H&W Defendants, Compl. ¶ 22 (page 22); *id.*, Ex. RR, Team Themis

Teaming Agreements, which wholly undermines his argument that the alleged contract

demonstrates a continuous enterprise involving the H&W Defendants.  Moreover, even if the

contract did include the H&W Defendants, it would not support his Complaint because it was

designed to achieve a "single goal"—i.e., to "destroy" him, Compl. ¶ 137 (page 57)—and

therefore it does not admit of "long-term, continued criminal activity" and is insufficient to show

an "open-ended" pattern.  *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549

(4th Cir. 2001); *see also* Dfs.' Br. 20–21.

### C.      Cognizable RICO Injury

#### 1.      Injury to Business or Property

Kimberlin has failed to allege a cognizable civil RICO injury.  By arguing that he

suffered no injury whatsoever until Defendant Hoge "launched [an] online bullying campaign" in

May 2012, Pl.'s Br., Ex. 1, Kimberlin Decl. ¶ 4; *see also* Pl.'s Br. 21, Kimberlin concedes that he

was not directly injured by any alleged conduct of the H&W Defendants.  He vaguely contends

that "Defendant Hoge and his associates" have "caused organizations and people to cease

funding and doing business" with his employer and causing him a "loss in his earnings."  *Id.*

But, as discussed above, even if those alleged injuries are cognizable, they cannot be attributed to

the H&W Defendants.  *See* Sections I.B & II, *supra*.  And, although he had two opposition briefs

in which to identify his injury, Kimberlin failed to show any "tangible business loss."  *Nat'l*

*Bloggers*, 2015 WL 1242763, at *11.  Consequently, his alleged injuries are "entirely speculative

and demonstrate, at most, an injury to mere expectancy interests."  *Id.*; *see also* Dfs.' Br. 21–22.

#### 2.      Proximate Cause

Entirely ignored in Kimberlin's opposition brief is the lack of causation linking his

alleged predicates to his alleged injury.  Without some connection "to suggest that the . . .

predicate acts led directly to Kimberlin's injuries," any injury he alleged is "far too attenuated to

support his RICO claim."  *Nat'l Bloggers*, 2015 WL 1242763, at *13; *see also* Dfs.' Br. 22–23.

### D.      Conspiracy

Kimberlin argues that the H&W Defendants ignored his claim of conspiracy to violate

civil RICO under 18 U.S.C. § 1962(d).  Pl.'s Br. 19–20.  However, as the H&W Defendants

argued in their opening brief, because Kimberlin does not adequately plead a claim for civil

RICO, his claim for conspiracy to violate civil RICO must fail as well.  *Nat'l Bloggers*, 2015 WL

1242763, at *3 n.2; Dfs.' Br. 23 n.12.

IV.     **The Complaint Fails to Adequately Plead a Claim for Conspiracy Under 42 U.S.C. § 1985(2)**

As the H&W Defendants demonstrated in their opening brief, a Civil Rights Act claim under 42 U.S.C. § 1985(2) requires three elements:  (1) a conspiracy that (2) used "force, intimidation, or threat" to deter a plaintiff from testifying in federal court, and (3) injury. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1124 (10th Cir. 2007) (internal quotation marks omitted).  Kimberlin's Complaint satisfies none of these requirements.

*First*, the Complaint fails to allege facts showing that there was an agreement between the H&W Defendants and any other party to deter him from testifying at the grand jury proceeding involving Donald Blankenship, or that the H&W Defendants even knew that a grand jury had been empanelled.  He points to no document and identifies no statement by the H&W Defendants agreeing to a course of conduct; rather, his Complaint clearly reveals that H&W refused to move forward with the project, Compl., Ex. Z, Email from Matthew Steckman to Aaron Barr, and that Team Themis dissolved not long after, Compl. ¶¶ 40–41 (pages 31–32), 49 (page 33); *see also* Dfs.' Br. 24 & n.16.

*Second*, Kimberlin identifies no force, intimidation, or threat by the H&W Defendants directed at him.  Dfs.' Br. 25–26.

*Third*, Kimberlin alleges no facts indicating that he was asked to or did testify before the grand jury; thus, he could not have been—as a matter of law—injured.  Dfs.' Br. 26.

V.     **The Complaint Fails to Adequately Plead State Law Claims**

For each of his Maryland state law claims, Kimberlin primarily argues that the H&W Defendants acted through Defendant Hoge and are therefore liable for his alleged conduct.  As discussed above, Kimberlin alleges no facts showing that the H&W Defendants ever communicated with, much less came to an agreement with, Defendant Hoge.  *See* Sections

18

I.B & II, *supra*.  Accordingly, none of Defendant Hoge's alleged conduct can be imputed to the
H&W Defendants.  Dfs.' Br. 30.

### A.      Invasion of Privacy

The Complaint contains no allegations that the H&W Defendants had access to any of
Kimberlin's confidential information or that they published such information to the public.
Moreover, Kimberlin identifies no information possessed by the H&W Defendants in which he
had a reasonable expectation of privacy.  Dfs.' Br. 27.

### B.      Tortious Interference with Business Relations

Kimberlin merely alleges that the H&W Defendants "attempted" to interfere with his
business relations, and he can point to no specific existing or prospective business relationship
that was harmed by the alleged conduct of the H&W Defendants.  Because he concedes that he
remains employed, he has shown no injury whatsoever.  Dfs.' Br. 27–29.

### C.      Intentional Infliction of Emotional Distress

The Complaint contains no plausible allegations that the H&W Defendants acted
intentionally or recklessly, or anything that they allegedly did went "beyond all possible bounds
of decency" and was "utterly intolerable in a civilized community."  *Hejirika v. Md. Div. of
Corr.*, 264 F. Supp. 2d 341, 348 n.10 (D. Md. 2003) (internal quotation marks omitted); *see also*
Dfs.' Br. 29–30.

## VI.     The Complaint Should Be Dismissed with Prejudice

"[D]ismissal with prejudice [is] warranted where amendment would be futile in light of
the complaint's fundamental deficiencies."  *Walters v. McMahen*, 795 F. Supp. 2d 350, 359–60
(D. Md. 2011) (internal quotations and alterations omitted) (dismissing civil RICO claim with
prejudice).  In neither of Kimberlin's opposition briefs has he provided any reason to believe that
he could cure his Complaint of its grave inadequacies.  Instead, he repeatedly asks the Court to

allow discovery, and thus concedes that "amendment of this complaint would be futile." *Id.* at 360; *see also Nat'l Bloggers*, 2015 WL 1242763, at *20; Dfs.' Br. 31 n.17.

## VII.    Conclusion

For the reasons set forth above, the H&W Defendants request that the Complaint be dismissed with prejudice as time-barred under the relevant statutes of limitations and for failure to state a claim.


Dated:  October 29, 2015                          Respectfully submitted,

/s/ John J. Buckley, Jr.
John J. Buckley, Jr. (Bar No. 06249)
Barrett J. Anderson (Bar No. 13900)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5051
Facsimile: (202) 434-5058
Email: jbuckley@wc.com

*Counsel for Defendants Hunton & Williams LLP, John Woods, Richard Wyatt, and Robert Quackenboss*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of October, 2015, a copy of the foregoing

Reply Memorandum of Law in Support of Motion to Dismiss by Defendants Hunton & Williams

LLP, John Woods, Richard Wyatt, and Robert Quackenboss was filed electronically with the

Court's electronic filing system, which provided electronic notice to all counsel of record in this

matter.  In addition, a copy of the foregoing objection was sent to Plaintiff Brett Kimberlin by

Federal Express at 8100 Beech Tree Road, Bethesda, MD 20817.


 /s/
Barrett J. Anderson (Bar No. 13900)