FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

2016 MAR 29  P 4: 46

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

**BRETT KIMBERLIN,**                              *

                                                  *

        **Plaintiff,**                            *

                                                          **Case No.: GJH-15-723**
**v.**                                            *

**HUNTON & WILLIAMS LLP, et al.,**               *

                                                  *

        **Defendants.**                           *

                                                  *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Brett Kimberlin brought this action against numerous Defendants—Hunton &

Williams, LLP ("H&W"), United States Chamber of Commerce ("COC"), Palantir Technologies

("Palantir"), Berico Technologies ("Berico"), Mantech International ("Mantech"), Stratio

Information Technology, LLC[1] ("Stratio"), John Woods, Richard Wyatt, Robert Quackenboss,

Greg Hoglund, Aaron Barr, Alex Karp, Matt Long, Nicholas Hallam, Matthew Steckman, Pat

Ryan, Sam Kremin, "John Doe Chamber of Commerce Employees," Pacific Northwest National

Laboratory ("PNNL"), Bill Nickless, and William Hoge—for their alleged involvement in a

criminal enterprise, the purpose of which was to spread false and defamatory stories about

Kimberlin through the media and internet and to prevent Kimberlin from exposing the criminal

enterprise. This Memorandum Opinion and accompanying Order address Defendants' Motions

---

[1] HB Gary Federal, LLC changed its name to Stratio Information Technology, LLC on May 27, 2011. ECF No. 43 ¶ 2. The Court GRANTS Stratio's filed a Motion to Substitute Party and Substitute Appearance of Counsel to Correct Misnomer. ECF No. 43.

to Dismiss, ECF Nos. 2, 40, 49, 50, 53, 57, 58, and 64, as well as a variety of other pending motions and requests, ECF Nos. 43, 68, 75, 77, 78, 83, 94, 99, 100, 106, 107, 108, 109, 124, 126, and 129. A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2014). For the reasons stated below, Defendants' Motions to Dismiss are GRANTED.

## I.    BACKGROUND[2]

Brett Kimberlin has been involved with both Justice Through Music ("JTM") and VelvetRevolution.us ("Velvet"), which is a "501c(4) public charity since 2005 dedicated to corporate and government accountability," for more than eleven years. ECF No. 1 at 6, 10. StopTheChamber.com ("STC"), a campaign of Velvet, "was launched in September 2009 in order to expose unethical activity, excesses and lack of transparency of the Chamber of Commerce." ECF No. 1 at 10.[3] The COC wanted to stop criminal investigations being assisted by Plaintiff and conspired with H&W to intimidate and deter Plaintiff from cooperating with the FBI's investigations and to undermine Kimberlin's credibility. ECF No. 1 at 12.

In 2009, the COC directed Defendants Woods, Wyatt and Quackenboss, lawyers at H&W, to target Plaintiff and others "through any means possible, including using illicit and secret black operations in order to stop them from exposing criminal activity and cooperating with federal officials and investigations." ECF No. 12–13. When STC contacted the FBI to request a criminal investigation of the COC in December 2009, COC and H&W "responded by contacting FOX News, which wrote an article defaming Plaintiff and his employer that resulted in STC being attacked with a coordinated campaign of more than 100 threats of violence, including death threats, which STC reported to the FBI." ECF No. 1 at 13. "H&W also hired

---

[2] For the motion to dismiss, the well-pleaded allegations in Kimberlin's Complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

investigators to dig into the personal lives of STC and its principals, including Plaintiff, and provided defamatory information to reporters at FOX News, which FOX then published in various articles." *Id.*

In October 2010, H&W asked Palantir to help COC, resulting in Steckman, a Palantir employee, telling H&W "that he would like to bring in two other private security companies, [Stratio] and Berico Technologies to help with the project," just a week after the STC letter to the FBI. ECF No. 1 at 16. The three companies formed a team called "Themis" and "Palantir General Counsel Matt Long, HB Gary CEO Aaron Barr, and Berico COO Nicholas Hallam signed 'Teaming Agreements' on November 16, 2010." ECF No. 1 at 18. The H&W attorneys asked Team Themis to use "Themis techniques and cyber technology against people and organizations opposed to the COC," resulting in Team Themis "preparing a massive $12 million plot to undermine STC, Plaintiff, reporters Glenn Greenwald and Brad Friedman and others." ECF No. 1 at 19.

In a January 2011 PowerPoint presentation that Team Themis prepared for H&W, Team Themis "promised to 'mitigate effect of adversarial groups' and discussed the youthful criminal record of Plaintiff, and said that its goal was to 'discredit, confuse, shame, combat, infiltrate and fracture' COC opponents." ECF No. 1 at 26. After a group of hackers leaked Stratio's emails and several news outlets covered the story, *see* ECF No. 28–31, STC filed complaints with the District of Columbia Bar against Woods, Wyatt, and Quackenboss on February 23, 2011, ECF No. 1 at 33. On March 11, 2011, STC "notified Defendant [Stratio] and most other Defendants of its intent to seek legal remedies in a court of law for the conduct alleged in the instant Complaint." ECF No. 1 at 33.

In the fall of 2014, PNNL and Nickless "began a covert and then overt campaign to defame, harass and bully Plaintiff with disinformation and defamatory blog posts/tweets meant to harm him." ECF No. 1 at 34.

Kimberlin filed his Complaint to recover damages against Defendants for allegedly engaging in a multitude of tortious acts, including a criminal racketeering enterprise that engaged in mail fraud, wire fraud, obstruction of justice, tampering with a witness or victim, money laundering, and extortion, for the purpose of destroying "Kimberlin and his ability to earn a living in retaliation for his work as the director of a non-profit organization that used legal means to expose unethical and/or criminal activities of the United States Chamber of Commerce ("COC") and its senior principals." ECF No. 1 at 1–2, 52–55.

Kimberlin raises the following claims: (1) violation of the Civil Rights Act, 42 U.S.C. § 1985(2); (2) fraudulent conveyance; (3) conspiracy to invade privacy—intrusion into seclusion; (4) invasion of Privacy, appropriation of name, intrusion into seclusion, and unreasonable publicity; (5) defamation and false light; (6) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d); (7) conspiracy to interfere with business relations and conspiracy to interfere with prospective economic advantage; and (8)[4] intentional infliction of emotional distress. ECF No. 41–60.

## II.   DEFENDANTS' MOTIONS TO DISMISS

### A.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[4] In Kimberlin's Complaint, he listed two claims as "VII." ECF No. 1 at 58–59. For the purposes of this Memorandum Opinion, the Court will consider the last claim to be Claim VIII.

accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S. Ct. 1937 (2009); *see also Conn. Gen. Life Ins. Co. v. Advanced Surgery*

*Ctr. of Bethesda, LLC*, No. DKC 14-2376, 2015 U.S. Dist. LEXIS 91689, at \*13 (D. Md. July

15, 2015) ("At this stage, all well-pled allegations in a complaint must be considered as true and

all factual allegations must be construed in the light most favorable to the plaintiff."). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.

When assessing a motion to dismiss, courts refer to the pleading requirements of Rule

8(a)(2) to determine if the complaint adequately states a claim for relief. *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 554–55, 127 S. Ct. 1955 (2007). Rule 8(a)(2) requires a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

well-pleaded complaint may proceed even if the "actual proof of those facts is improbable and

recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks

omitted). For a motion to dismiss, courts are required to assess "the sufficiency of the complaint

and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of

entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. That showing must consist of more than

"labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. "In evaluating the

complaint, unsupported legal allegations need not be accepted." *Revene v. Charles Cty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Similarly, "[l]egal conclusions couched as factual

allegations are insufficient as are conclusory factual allegations devoid of any reference to actual events." *Conn. Gen. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 91689 at \*13–14 (internal citations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Courts are generally not allowed "to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). "However, there are limited circumstances in which the court may consider extrinsic documents in the context of a motion to dismiss," including "documents 'attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Philips v. Pitt. Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### B. Plaintiff's Claims are Time-barred

Courts dismiss claims under Rule 12(b)(6) when it is clear from the complaint that the statute of limitations has expired. *See Knickman v. Prince George's Cty.*, 187 F. Supp. 2d 559, 563–64 (D. Md. 2002) (granting defendant's Rule 12(b)(6) motion to dismiss because plaintiff's claim was barred by the applicable statute of limitations). Civil RICO actions must be filed within four years. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156, 107 S. Ct. 2759 (1987); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001) ("[Plaintiff] may not 'bootstrap' time-barred claims by linking them to later, non-time-barred claims."); *Fowler v. Wells Fargo Home Mortg., Inc.*, No. GJH-15-1084, 2015 U.S. Dist. LEXIS 63076, at \*8 (D. Md. May 13, 2015) (citing *Klehr v. A.O. Smith Carp.*, 521 U.S. 179, 188–89, 117 S. Ct. 1984 (1997)). The four year period begins to run from when the

6

"plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 554, 120 S.

Ct. 1075 (2000). If the allegations in a complaint "show that relief is barred by the applicable

statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v.

Bock*, 549 U.S. 199, 215, 127 S. Ct. 910 (2007).

Kimberlin filed his RICO claim on March 16, 2015, ECF No. 1, making his suit time-

barred if he knew of the alleged injury on or before March 16, 2011, *Fowler v. Wells Fargo

Home Mort., Inc.*, 2015 U.S. Dist. LEXIS 63076, at *9 ("[I]t is the Plaintiff's knowledge of [his]

own injury that controls the running of the statute of limitations, and not Plaintiff's knowledge of

the underlying RICO pattern." (citing *Rotella v. Wood*, 529 U.S. at 556–57)). Plaintiff was or

should have been aware of his injury by March 11, 2011. *See* ECF No. 1 at 33. Prior to that date,

70,000 emails from Stratio discussing the alleged conspiracy were leaked on the internet on

February 7, 2011. ECF No. 1 at 28. By February 18, various news outlets, including a post

written by Velvet's co-founder, Brad Friedman, reported the potential campaign by Team

Themis and H&W to discredit Velvet and other COC opponents. ECF No. 1 at 28–31. On

February 23, 2011, STC relied on the leaked emails to file complaints with the District of

Columbia Bar Counsel against H&W attorneys. ECF No. 1 at 33. Finally, on March 11, 2011,

STC sent a letter to Stratio "and most other Defendants of its intent to seek legal remedies in a

court of law for the conduct alleged in the instant Complaint." *Id.* Plaintiff asserts that this Court

has no choice but to accept his claim that his "knowledge of his injury first came in May 2012,"

and any disagreement must be left to a jury. ECF No. 74 at 6. However, this Court need not

accept a declaration as fact when it is contradicted both by the Complaint and by common sense.

*United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) (rejecting "conclusory

allegations" not supported "by any reference to particular acts, practices, or policies"). Plaintiff

describes himself as one of STC's "principals," ECF No. 1 at 13, and alleges that he has been involved with Velvet "for more than eleven years," ECF No. 1 at 6. It is clear that Plaintiff knew or should have known of his purported injury before March 16, 2011. Thus, his RICO claim is time-barred.

Plaintiff's § 1985(2) claim, which has a three-year statute of limitations, is time-barred as well. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period, which in Maryland is three years."). The statute of limitations begins to run on the date of the alleged wrong if the potential plaintiff is aware, or should be aware, that he or she has been wronged. *Murphy v. Merzbacher*, 697 A.2d 861, 865 (Md. 1997); *see also Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) ("Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action").

Although Plaintiff vaguely alleges that the Defendants and unidentified "other actors" associated with Defendants continued the conspiracy against him through the present, ECF No. 1 at 32–33, this is unsupported and insufficient to save his claim from being time-barred, *see Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) ("Causey alleged he was continually harassed, but we conclude that an allegation of continuous harassment will not save a claim that is otherwise barred by the statute of limitations, absent some showing that an actual violation occurred within the limitations period."). This is particularly true given the lack of any facts that show that Defendants "engaged in at least one act of misconduct during the limitations period." *Olukayode v. Balt. Cty.*, 450 F. Supp. 2d 610, 617 (D. Md. 2006).[5]

---

[5] Plaintiff attempts to salvage his time-barred Complaint by alleging new facts in subsequent filings and briefs, *see, e.g.*, ECF No. 125, but Plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint," *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141

### C. Claim I – 18 U.S.C. § 1985(2)

Even if Plaintiff's claims were not barred by the statute of limitations, Plaintiff has

insufficiently pleaded facts for Claim I. There are two possible bases for claims under § 1985(2).

The first clause of § 1985(2) applies if two or more persons:

> [C]onspire to deter, by force, intimidation, or threat, any party or witness in any
> court of the United States from attending such court, or from testifying to any
> matter pending therein, freely, fully, and truthfully, or to injure such party or
> witness in his person or property on account of his having so attended or testified,
> or to influence the verdict, presentment, or indictment of any grand or petit juror
> in any such court, or to injure such juror in his person or property on account of
> any verdict, presentment, or indictment lawfully assented to by him, or of his
> being or having been such juror . . . .

18 U.S.C. § 1985(2) (2012). The second clause of § 1985(2) applies when two or more persons:

> [C]onspire for the purpose of impeding, hindering, obstructing, or defeating, in
> any manner, the due course of justice in any State or Territory, with intent to deny
> to any citizen the equal protection of the laws, or to injure him or his property for
> lawfully enforcing, or attempting to enforce, the right of any person, or class of
> persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).

There are significant differences in the conduct covered by the two clauses. In the first

clause of 1985(2), the "court of the United States" refers only to federal courts, as defined in 28

U.S.C. § 451, and does not include state courts. *Kimberlin v. Frey*, No. GJH-13-3059, 2015 U.S.

Dist. LEXIS 38193, at *7 (D. Md. Mar. 26, 2015) (citing *McCord v. Bailey*, 636 F.2d 606, 614

(D.C. Cir. 1980)). The first clause of 42 U.S.C. § 1985(2) does not require that a conspiracy be

motivated by a racial, or otherwise class-based, invidiously discriminatory animus. *Kush v.*

*Rutledge*, 460 U.S. 719, 720, 103 S. Ct. 1483 (1983). On the other hand, the second part of §

1985(2) applies to state courts, *id.* at 725, and requires an allegation of class-based animus,

*Kimberlin v. Frey*, 2015 U.S. Dist. LEXIS 38193, at *8 (quoting *Chavis v. Clayton Cty. Sch.*

---

F.3d 1162 (4th Cir. 1998) (unpublished table opinion). The Court gave Plaintiff an opportunity to amend his
Complaint, ECF No. 111, 119, and Plaintiff chose not to amend his Complaint, ECF No. 125.

*Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002)). Kimberlin appears to rely on the first clause of § 1985(2).

In analyzing the first clause under § 1985(2), which has been referred to as a "deterrence claim," courts have required a showing of the following three elements: "(1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff." *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1124 (10th Cir. 2007) (quoting *Brewer v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994)).

Here, Kimberlin alleges that he and Mr. Zeese "personally met with the FBI and had many communications with the FBI about the COC's criminal activities and Plaintiff offered to testify at any grand jury proceedings regarding these matters." ECF 1 at 11. He further alleges that "COC lawyers responded by threatening STC and Mr. Zeese with legal action and unleashing a coordinated campaign of death threats against VR/STC." *Id.* He then states that "Mr. Blankenship was formally arrested and charged on November 14, 2014 in a 43-page criminal indictment, which alleged most of the illegal conduct first exposed by STC." *Id.* Later in the Complaint, Kimberlin summarizes his § 1985(2) claim by alleging that he "met and repeatedly provided information to the FBI about Defendant Chamber of Commerce's illegal conduct and of COC board member Donald Blankenship and COC President Tom Donohue and the illegal conduct of COC member NewsCorp, and that there were grand juries empaneled to investigate this criminal activity." ECF No. 1 at 41–42. It is a close question as to whether Plaintiff has sufficiently alleged, as he must, that he was a designated witness in a federal judicial proceeding. It is clear, however, that he has not alleged that he was deterred from doing so and therefore has not sufficiently alleged injury.

10

A Plaintiff does not have to allege that he actually appeared as a witness or had been subpoenaed to establish a claim under § 1985(2). *See Heffernan v. Hunter*, 189 F.3d 405, 410–11 (3d Cir. 1999) ("The fact that [plaintiff], at the time of the alleged conspiracy, had neither appeared as a witness, nor been subpoenaed, does not affect his standing. It is enough that he was a potential and obviously important witness."). But a "witness" under section 1985(2) "does not encompass all persons who may have knowledge of relevant facts," rather, he must be someone "who at least has been clearly identified as a prospective witness in a judicial proceeding." *Mattison v. Click Corp. of Am.*, No. 97-CV-2736, 1998 U.S. Dist. LEXIS 720, at *15 (E.D. Pa. Jan. 27, 1998). While Kimberlin never explicitly alleges that there was a specific on-going grand jury proceeding, he does allege generally "that there were grand juries empaneled to investigate this criminal activity."[6] Similarly, he alleges that he "offered" to be a witness but does not allege that he was ever designated as such by the appropriate officials.

Ultimately, it is not necessary to resolve whether these allegations are sufficient because, even if they are, Kimberlin has not properly alleged injury under Section 1985(2). "In considering a claim by a witness under § 1985(2), the focus is on how the intimidation actually affected the witness' ability to testify." *Mattison*, 1998 U.S. Dist. LEXIS 720, at *16. Nowhere does Kimberlin allege that he was actually hindered from providing truthful testimony or that the intimidation had any impact at all on his potential testimony or the federal proceeding. To the contrary, Plaintiff alleges that Mr. Blankenship was eventually arrested and charged by an indictment, which "alleged most of the illegal conduct first exposed by STC." ECF No. 1 at 11. Thus his § 1985(2) claim fails. *Mattison*, 1998 U.S. Dist. LEXIS 720, at *16 ("There is no suggestion in plaintiff's pleadings that she was hindered in providing pre-trial testimony or that

---

[6] An on-going grand jury proceeding would qualify as a "judicial proceeding" for the purpose of § 1985(2). *Northrup v. Conseco Fin. Corp.*, 141 F. Supp. 2d 1372, 1375 (M.D. Ga. 2001).

she was prevented from providing truthful pretrial or trial testimony in the Goodwin litigation. Count XII of plaintiff's Complaint will be dismissed."); *see. cf.*, *Rutlege v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) (reasoning that there is no cognizable injury under Section 1985(2) where claimant cannot demonstrate that ability to present case was affected).

Alternatively, if Plaintiff intends to rely on the second clause of § 1985(2), Plaintiff fails to allege that the Defendants "were motivated by racial or other class-based, invidiously discriminatory animus." *Sellner v. Panagoulis*, 565 F. Supp. 238, 246 (D. Md 1982). There is no allegation in the Complaint that Plaintiff is a member of a protected class, and the Fourth Circuit has rejected the idea that one's political affiliation is a protected class. *See Harrison v. KVAT Foods Mgmt., Inc.*, 766 F.2d 155, 163 (4th Cir. 1985) (holding Republicans were not members of a protected class). Accordingly, Plaintiff's claim under 18 U.S.C. § 1985(2) is DISMISSED.

### D. Claim VI – 18 U.S.C. § 1962(c)-(d)

Kimberlin alleges that Defendants H&W, COC, Palantir, Berico, Stratio, Woods, Wyatt, Quackenboss, Hoglund, Barr, Karp, Long, Hallam, Steckman, Ryan, Kremin, and "John Doe Chamber of Commerce Employees" (collectively, "the RICO Defendants") violated 18 U.S.C. § 1962(c) and 1962(d) of RICO by establishing a criminal enterprise to destroy "Kimberlin and his ability to earn a living in retaliation for his work as the director of a non-profit organization that used legal means to expose unethical and/or criminal activities" of the United States Chamber of Commerce ("COC") and its senior principals. ECF No. 1 at 1–2, 52–55. RICO "is not a cause of action to be pled lightly," and "is reserved for conduct whose scope and persistence pose a special threat to social well-being." *Biggs v. Eaglewood Mortg., LLC*, 582 F.Supp.2d 707, 714 (D. Md. 2008) (citation and internal quotation marks omitted), *aff'd*, 353 F. App'x 864 (4th Cir. 2009). Courts must "exercise caution 'to ensure that RICO's extraordinary remedy does not

12

threaten the ordinary run of commercial transactions . . . .'" *US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted).

Pursuant to § 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Claims under § 1962(c) must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275 (1985) (footnote omitted). For the reasons discussed below, the Court finds that Kimberlin has not demonstrated racketeering activity nor a cognizable injury, and the Court will therefore grant the RICO Defendants' respective motions to dismiss as to Kimberlin's RICO claim under § 1962(c).[7]

### 1. Racketeering Activity

A RICO claim requires a showing of racketeering activity. "Racketeering activity" is broadly defined under 18 U.S.C. § 1961(1) to include the commission of several federal statutory and state common law offenses, known as "predicate acts." *See* 18 U.S.C. § 1961(1). To support his § 1962(c) RICO claim, Kimberlin relies on the following predicate acts listed in § 1961(1): mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); obstruction of justice (18 U.S.C. § 1503); witness intimidation (18 U.S.C. § 1512); witness retaliation (18 U.S.C. § 1513); extortion (18 U.S.C. § 1951); and, money laundering (18 U.S.C. § 1957). *See* ECF No. 1 at 52–55. In

---

[7] Because Kimberlin has failed to state a claim under § 1962(c), his "charge of conspiracy to violate RICO pursuant to § 1962(d) is also without merit." *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 275 (4th Cir. 2010); *see also GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim [under § 1962(d)] fails as well."). The Court will therefore dismiss Kimberlin's § 1962(d) claim.

order to establish the existence of racketeering activity, Kimberlin must adequately plead the elements of these predicate acts. He has failed to do so.

a. Mail and Wire Fraud - 18 U.S.C. §§ 1341, 1343

First, Kimberlin alleges the predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. These statutes prohibit the use of the mails or interstate wires in furtherance of schemes to defraud. *See* 18 U.S.C. §§ 1341, 1343. In order to show mail or wire fraud as a predicate act, Plaintiff must show "a scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343; *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996) ("The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme.").

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When mail or wire fraud are asserted as the predicate act for a civil RICO claim, the standards of Rule 9(b) apply. *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 505 (D. Md. 2013). The Complaint must allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). The "requirement of 'particularity' does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Frison v. Ryan Homes*, No. AW-04-350, 2004 U.S. Dist. LEXIS 31719, at *10 (D. Md. Oct. 29, 2004). A "complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud," *Adams v. NVR Homes, Inc.*, 193

14

F.R.D. 243, 250 (D. Md. 2000) (citations omitted). Here, Kimberlin has only provided
threadbare allegations about the alleged fraud.

Kimberlin alleges that the RICO Defendants committed mail fraud by sending data discs
and money through the mail in furtherance of their fraudulent conspiracy. ECF No. 1 at 52.
However, Kimberlin does not allege the time, place, and contents of the false representations
sent by the Defendants. Furthermore, "multiple defendants are involved, but the complaint does
not clearly identify which Defendant played which role." *Grant v. Shapiro & Burson. LLP*, 871
F. Supp. 2d 462, 474 (D. Md. 2012) (quotation omitted). Kimberlin has therefore failed to allege
the predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

> b.  Obstruction of Justice - 18 U.S.C. § 1503

Kimberlin also alleges the predicate act of obstruction of justice pursuant to 18 U.S.C. §
1503. According to Kimberlin, the RICO Defendants, with threats and communication,
conspired to "influence, obstruct, or impede, the due administration of justice by conspiring to,
intimidating and smearing and physically harming Plaintiff in order to deter him from
cooperating with the FBI and testifying in a grand jury proceeding about criminal activity by
senior members of the Chamber of Commerce." ECF No. 1 at 53. Kimberlin alleges that the
RICO Defendants conspired "to create and provide false and forged documents" to discredit
Kimberlin. *Id.* He also alleges that "a person who had targeted Plaintiff committed battery
against Plaintiff, causing him to be treated for physical injuries at Suburban Hospital." ECF No.
1 at 53–54. Kimberlin maintains that this conduct violated § 1503(a) of the federal obstruction
statute. Section 1503(a) states:

> Whoever corruptly, or by threats or force, or by any threatening
> letter or communication, endeavors to influence, intimidate, or
> impede any grand or petit juror, or officer in or of any court of the
> United States, or officer who may be serving at any examination or

> other proceeding before any United States magistrate judge or
> other committing magistrate, in the discharge of his duty, or injures
> any such grand or petit juror in his person or property on account
> of any verdict or indictment assented to by him, or on account of
> his being or having been such juror, or injures any such officer,
> magistrate judge, or other committing magistrate in his person or
> property on account of the performance of his official duties, or
> corruptly or by threats or force, or by any threatening letter or
> communication, influences, obstructs, or impedes, or endeavors to
> influence, obstruct, or impede, the due administration of justice,
> shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a). "To constitute an offense under this statute, the act must relate to a

proceeding in a federal court of the United States." *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d

704, 707 (2d Cir. 1990) (rejecting argument that obstruction of justice as a predicate act under

RICO includes state proceedings).

Plaintiff fails to allege specific facts that establish force or threat used by Defendants to

deter Plaintiff from testifying. Plaintiff lists examples of threats made by unidentified

"supporters" of COC, ECF No. 1 at 14,[8] and a "brutal assault" that was "applauded" by

Defendant Hoge, *id.* at 36, but Plaintiff does not allege that any of the RICO Defendants made

the threats listed or committed the assault. Thus, Plaintiff does not allege facts to support his

conclusion that Defendants used force or intimidation against Plaintiff to deter him from

testifying before a grand jury. *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces

does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,

Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[L]egal conclusions, elements of a cause of action, and

bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule

---

[8] Although the title of the letter to the FBI names COC's CEO, Tom Donohue, it is never alleged who specifically made the alleged threats.

12(b)(6) purposes."). Kimberlin has therefore failed to plead obstruction of justice as a predicate act.

c.  Intimidation of a Witness and Retaliation of a Victim – 18 U.S.C. §§ 1512(d), 1513(b)-(c)

Kimberlin next alleges the predicate act of retaliation against a witness and victim, pursuant to 18 U.S.C. § 1512(d) and 18 U.S.C. § 1513(b) and (e). Kimberlin alleges that the RICO Defendants "engaged in a multi-year campaign of retaliation against Plaintiff in order to intimidate him from being a witness, and to retaliate against him for providing information to law enforcement officials regarding federal offenses committed by principals of the Chamber of Commerce." ECF No. 1 at 54. Specifically, the RICO Defendants retaliated with "the Team Themis campaign to 'discredit' and fracture his credibility, threats of death and injury, actual physical injury, and injury caused by articles and tweets published or planted by Defendants portraying Plaintiff as untrustworthy and not credible." *Id.*

Section 1512(d) states:

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from--
> (1) attending or testifying in an official proceeding;
> (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;
> (3) arresting or seeking the arrest of another person in connection with a Federal offense; or
> (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

18 U.S.C. § 1512(d). An "official proceeding" is defined as "a proceeding before a judge or court of the United States," "a proceeding before the Congress," "a proceeding before a Federal

17

Government," or "a proceeding involving the business of insurance." 18 U.S.C. § 1515.

However, §1512(d) "'explicitly covers 'potential' witnesses and those witnesses whose

testimony might not be admissible at trial.'" *United States v. Risken*, 788 F.2d 1361, 1368 (8th

Cir. 1986) (citation omitted). Section 1513(b) prohibits causing or threatening to cause physical

or property damage in order to retaliate against a person for testifying at "an official proceeding."

18 U.S.C. § 1513(b). Finally, § 1513(e) applies to anyone who, "with the intent to retaliate, takes

any action harmful to any person, including interference with the lawful employment or

livelihood of any person, for providing to a law enforcement officer any truthful information."

*Id.* § 1513(e)

Kimberlin fails to identify any specific facts intended to intimidate him from being a

witness or retaliate against him for doing so. Other than one online statement by Nickless in

2015 that Plaintiff does not allege connects to the RICO Defendants, ECF No. 1 at 34, Plaintiff

fails to allege the publication of any articles, defamatory statements, or other actions that

discredited him, *see Rock v. Bae Sys.*, No. 6:12-cv-1092-Orl-37GJK, 2013 U.S. Dist. LEXIS

36173, at *7 (M.D. Fla. Mar. 15, 2013) (dismissing plaintiff's § 1512(d) RICO claim because

plaintiff failed to adequately allege that the individuals who engaged in the proffered acts were

agents of the defendants). Nor does he allege that he knew about any such statements, so as to be

actually intimidated by them. Thus, Plaintiff fails to state a claim under § 1512(d), § 1513(b),

and § 1513(e).

### d.   Money Laundering – 18 U.S.C. § 1957

Kimberlin also alleges money laundering under 18 U.S.C. § 1957. Specifically,

Kimberlin alleges that the RICO Defendants transferred "money from the COC to H&W

disguised as legal fees for payment of the illegal Team Themis black bag cyber spying

campaign." ECF No. 1 at 55. Section 1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). "Specified unlawful activity" is defined in § 1956(c)(7), which includes a number of different criminal activities. *See* 18 U.S.C. § 1956(c)(7).

Kimberlin's allegations concerning the RICO Defendants' alleged money laundering are insufficient because Kimberlin does not allege that the money came from one of the specified unlawful acts. To establish money laundering under § 1957, a plaintiff must plead that "(1) the defendant engage[d] or attempt[ed] to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from 'specified unlawful activity.' *See United States v. Johnson*, 971 F.2d 562, 567 n.3 (10th Cir. 1992) (citation omitted); *see also United States v. Perez*, 223 F. App'x 336, 344 (5th Cir. 2007). While § 1957 prohibits one from engaging in a monetary transaction in criminally derived proceeds, Kimberlin only alleges that money was transferred to *fund* illegal activity. Because Kimberlin has not alleged that the RICO Defendants engaged in any monetary transactions *with* criminally-derived monies, he has failed to establish money laundering under § 1957.

e. Extortion – 18 U.S.C. § 1951 & Maryland Criminal Code 3-706

The final predicate act that Kimberlin alleges is extortion and/or attempted extortion under 18 U.S.C. § 1951 and Maryland Criminal Code 3-706. Kimberlin maintains that the RICO Defendants have extorted him in violation of § 1951 by "intruding into Plaintiff's legally protected business and First Amendment activities, and personal, family and business relationships." ECF No. 1 at 54. For his Maryland extortion claim, Plaintiff asserts that the RICO

Defendants made "written communications under real and fictitious names with the intent to extort things of value, including Plaintiff's livelihood and reputation, by falsely accusing Plaintiff of crimes in order to cause him contempt and disrepute." ECF No. 1 at 55. Plaintiff's pleadings do not establish a cause of action for extortion under 18 U.S.C. § 1951 nor Maryland Criminal Code 3-706.

Section 1951(a) states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). Section 1951(b)(2) defines "extortion" as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Similar to the federal law, Maryland law applies to intentional attempts to extort "money, property, or anything of value from another." Md. Code Ann., Crim. Law § 3-706(b).

The Complaint lacks any allegation that the RICO Defendants obtained or attempted to obtain Plaintiff's property without his consent. *See Scheidler v. NOW, Inc.*, 537 U.S. 393, 404–05, 123 S. Ct. 1057 (2003) (upholding dismissal of RICO claim based on extortion where defendants "did not 'obtain' respondents' property" nor receive "'something of value from' respondents that they could exercise, transfer, or sell") (citation omitted). Plaintiff alleges that the RICO Defendants intruded into his business and activities and acted to take his "livelihood and reputation," ECF No. 1 at 54–55, but those are not items that can be "extorted" from one person and "obtained" by another, *see Sekhar v. United States*, 133 S. Ct. 2720, 2725 (2013) ("The property extorted must therefore be transferable—that is, capable of passing from one

20

person to another.") (emphasis in original). Kimberlin has therefore failed to plead the predicate

act of extortion and/or attempted extortion. Furthermore, Kimberlin does not assert that the

alleged activities by the RICO Defendants affected commerce or the movement of any article or

commodity in commerce. Accordingly, Kimberlin has failed to establish extortion as a predicate

act.

        2.  Cognizable Injury

Kimberlin's RICO claim also fails because of lack of standing. In order to satisfy the

constitutional requirements for standing, Plaintiff must demonstrate that: (1) he has suffered an

injury in fact that is concrete and particularized and is actual or imminent; (2) the injury is fairly

traceable to the actions of the RICO Defendants; and, (3) it is likely the injury will be redressed

by a decision in favor of the Plaintiff. *See Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009)

(quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81

(2000)). To make out a civil action for damages under the RICO statute, a private plaintiff must

demonstrate not only that the defendants have violated § 1962, but also that he has been "injured

in his business or property by reason of [the alleged] violation of section 1962." 18 U.S.C. §

1964(c). Kimberlin has failed to satisfy both showings.

        a.  Injury to Business or Property

To plead an injury to one's business or property, Plaintiff must allege that he suffered a

"tangible business loss." *In re Am. Honda Motor Co.*, 941 F. Supp. 528, 540 (D. Md. 1996).

RICO is "not available for the redress of purely personal injuries." *Hickman v. Obama*, No. JKB-

13-1284, 2013 U.S. Dist. LEXIS 77216, at *3 (D. Md. May 29, 2013) (citation omitted). Under

the federal pleading standard, an allegation of injury must be pleaded in terms of specific facts; a

court will not "accept unsupported legal allegations, legal conclusions couched as factual

allegations, or conclusory factual allegations devoid of any reference to actual events."

*Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 U.S. Dist. LEXIS 32528, at *6

(citations omitted).

Plaintiff alleges that he has suffered injury to his name, property, and businesses,

including:

> [H]aving his name falsely smeared; having his employer defamed based on those
> smears; having to spend untold hours, days, weeks, months and years defending
> against the criminal actions of the Defendants; having to spend money defending
> against the Defendants' actions; losing employment and funding opportunities;
> having attempted interference with his business relationships and his contract to
> remain employed by his employer, having interference with prospective business
> advantage, having interference with his business as a musician, composer and
> manager, and other pecuniary and losses to real or personal property. Plaintiff has
> also suffered damage to his body, which constitutes property under RICO, when
> he was assaulted by an [sic] person not named in this Complaint who adopted the
> Team Themis racketeering playbook to harm Plaintiff.

ECF No. 1 at 57–58. Plaintiff argues that he had a property interest "in continuing his

employment as the director of a non-profit that he has worked for 11 years" and "in being able to

raise funds for that business to pay his salary and the other salaries and expenses of the business

without secret[] illegal espionage activities to undermine that funding." ECF No. 1 at 51.

However, aside from "having his employer defamed based on those smears" and "having

interference with his business as a musician, composer and manager," all of these allegations are

focused on him personally and not on a business or property, as RICO requires. *Hamm v. Rhone-*

*Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is

generally considered personal injury and thus is not an injury to 'business or property' within the

meaning of 18 U.S.C. § 1964(c)."); *see, e.g.*, *City of Chicago Heights v. Lobue*, 914 F. Supp.

279, 285 (N.D. Ill. 1996) ("Personal injury, such as injury to reputation, generally is not an injury

to 'business or property' that is compensable under § 1964(c)."). The allegations of harm relating

to Kimberlin personally are insufficient to establish an injury to Kimberlin's business or property.

With regard to any claims that may be related to business or property, Plaintiff has failed to plead any particularized facts that show cognizable injury. The allegations involving Team Themis points to proposed activities, *see, e.g.*, ECF No. 1 at 27–28, and the only action actually taken involved Barr's collection of publicly available information located on social networking websites, *see* ECF No. 1 at 25–26. Plaintiff's allegations do not show that any of the tactics suggested by Barr were carried out by any RICO Defendant. Additionally, Kimberlin pleads no impact on his employment or compensation, instead, at the commencement of this suit, Kimberlin was still the Director of JTM and was still involved with Velvet. ECF No. 1 at 6. Plaintiff's conclusory factual allegations that he and his property have been harmed without any reference to actual events or injury are insufficient to state a RICO claim. *See Richardson v. Mayor of Baltimore*, No. RDB-13-1924, 2014 U.S. Dist. LEXIS 1277, at *12 (D. Md. Jan. 7, 2014) (granting motion to dismiss as plaintiff's complaint contained "only conclusory language pertaining to the elements of standing").

Kimberlin argues that he is entitled to discovery to establish particular ways in which he was harmed. *See, e.g.*, ECF No. 67 at 4, 16; ECF No. 74 at 1. But a plaintiff may not summon a defendant into court and exact burdensome discovery simply by claiming discovery will give him proof of injury. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 551–52 (1986) (explaining that a plaintiff must allege the elements of standing, which include injury, "on the face of the complaint"). Because Kimberlin has not pleaded facts to establish that he suffered injury to his property, his RICO claims must be dismissed. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that injury is required element of RICO); *Glynn v. Impact Sci.*

*& Tech., Inc.*, 807 F. Supp. 2d 391, 422 (D. Md. 2011) (holding that injury is required element of civil rights claim under § 1985(2)), *aff'd*, 710 F.3d 209 (4th Cir. 2013).

> b. Proximate Cause

Finally, Kimberlin has failed to allege that any injuries were proximately caused by the predicate acts of racketeering activity that make up the violation of § 1962(c). To state a civil RICO claim, Plaintiff is required to show that a RICO predicate act "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311 (1992). Proximate cause for civil RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged." Id. A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Id.* at 271. As the Supreme Court has made clear, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12, 130 S. Ct. 983 (2010); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). Here, there is nothing to suggest that the RICO Defendants' predicate acts led directly to Kimberlin's injuries.

### E.  State Law Claims (Counts IV, V, VI, VII, VIII, IX, X)

Having dismissed both of Kimberlin's federal claims, the Court elects not to exercise supplemental jurisdiction over the remaining state claims, which account for the remaining claims in the Complaint. Under 28 U.S.C. § 1367(a),

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction

24

that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 18 U.S.C. § 1367(c)(3). The Court "enjoys wide latitude in determining whether or not to retain supplemental jurisdiction over state claims." *Crosby v. City of Gastonia*, 635 F.3d 634, 644 n.11 (4th Cir. 2011).

Here, Kimberlin argues that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), and 18 U.S.C. § 1964(c) (RICO). ECF No. 1 at 5. Having dismissed all claims related to 29 U.S.C. § 1331 and 18 U.S.C. § 1964, the Court will decline to exercise supplemental jurisdiction over Kimberlin's state law claims and will dismiss those claims (Claims II, III, IV, V, VII, VIII) without prejudice to Kimberlin's right to re-file in state court, should he so choose and should those claims not be barred under principles of res judicata and/or collateral estoppel. [9]

## F. Remaining Motions and Requests

Finally, the Court must address the other motions and requests that are currently pending on the docket, most of which are now moot as a result of the dismissal of the majority of Kimberlin's claims.

---

[9] The Court notes that although Kimberlin has purportedly invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 in his Complaint, there is no diversity jurisdiction. Courts have consistently interpreted § 1332 to require complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396 (1978); *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Because diversity jurisdiction depends on the citizenship status of the parties at the time an action commences, the Court must focus its jurisdictional inquiry solely on that time. *See Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858 (1991). At the time this action was filed, multiple Defendants, including Defendants Barr, Hoglund, and Hoge, shared the same state of citizenship as Kimberlin. *See* ECF No. 1 at 6–8. Kimberlin therefore could not rely on § 1332 to invoke this Court's jurisdiction.

First the Court must rule on Kimberlin's Motion to Amend/Correct his Complaint. ECF No. 108. Kimberlin argues that "significant factual and procedural developments have occurred that warrant amending the complaint" and asserts that the "discovery counters defendants' arguments regarding the statute of limitations and it shows various connections between the H&W defendants and Defendant Hoge and his associates." ECF No. 108 ¶ 2. Plaintiff has since acknowledged that he is unable to amend the Complaint without using discovery subject to a Protective Order in a separate case. ECF No. 119. Because the Court has already stated that the Protective Order will not be lifted for that purpose, the Motion to Amend is DENIED.

Pursuant to Rule 25, Stratio Information Technology requests that the Court "substitute Stratio as a party-defendant for 'HB Gary Federal, Inc.' and substitute the appearance of Patricia Weaver, Esq. for Stratio in place of the prior appearance of Ms. Weaver as counsel for 'HB Gary Federal, Inc.'" ECF No. 43. The motion is GRANTED.

Kimberlin asks that the Court find that Bill Nickless "has been served due to his filing an affidavit in this case attached to the Motion to Dismiss by his employer, Defendant PNNL." ECF No. 68. As noted by this Court, "the real purpose of process is to give notice to the defendant that he is answerable to the claim of the plaintiff." *Karlsson v. Rabinowitz*, 318 F.2d 666, 669 (4th Cir. 1963). Nickless's affidavit (ECF No. 49-2) indicates that he is on notice of the suit against him. Kimberlin's Motion to Find Nickless Served is GRANTED.

The following motions regarding discovery, sanctions, and procedural matters will be DENIED, as moot: Kimberlin's Motion to Allow Discovery (ECF No. 75); Defendants' Motions to Stay Discovery (ECF Nos. 77, 78, and 83); Kimberlin's Motion for Alternative Service (ECF No. 94); Hoge's Motion for Sanctions (ECF No. 99); Hoge's Motion for a Hearing (ECF No. 100); Kimberlin's Motion to File Discovery Documents (ECF No. 106); Hoge's Motion to Strike

(ECF No. 107); Walker's Motion to Withdraw as Attorney (ECF No. 109); Walker's Motion for

Leave to File (ECF No. 124); Kimberlin's Motion for a Hearing (ECF No. 126); Defendants'

Motion to Strike ECF No. 125 (ECF No. 129).

## IV.   CONCLUSION

For the reasons stated above, the Court will GRANT all of Defendants' motions to

dismiss. Thus, Count I (§ 1985) and Count VI (RICO) are DISMISSED, with prejudice,[10] as to

all Defendants. The remaining state law claims (Counts II, III, IV, V, VII, and VIII) are also

DISMISSED as to all Defendants, without prejudice to Kimberlin's right to re-file in state court,

should he so choose.

Dated: __March 29_, 2016 ___

GEORGE J. HAZEL
United States District Judge

---

[10] Because Plaintiff's federal claims are time-barred, an amended complaint would be futile. *Forquer v. Schlee*, No.
RDB-12-969, 2012 U.S. Dist. LEXIS 172330, at *12–13 (D. Md. Dec. 4, 2012) (denying leave to amend because
her claims are time-barred and the amended complaint "does not cure the fact that her claims are time-barred").