U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 APR 19  PM 12: 43

CLERK'S OFFICE
AT GREENBELT

BY _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

BRETT KIMBERLIN,
    Plaintiff,

v.

                                       No. 8:15-cv-00723 GJH

HUNTON & WILLIAMS,
    Defendants.

## PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Now comes Plaintiff Brett Kimberlin and moves this Court, pursuant to Federal Rule of Civil Procedure 60(b) for relief from this Court's March 29, 2016 judgment. In support of this motion, Plaintiff notes that this Court misapplied several key facts and failed to follow well-established legal precedent. In doing so, this Court has granted immunity to horribly bad actors who have used their money, power and rarified attorneys to subvert the rule of law and cherished democratic principles. The Court has sided with the powerful over the powerless by leaning on the scales of justice in this "close case" to favor the victimizers over the victim.

### The Section 1985(2) Claim

1. As a matter of errata, the Court repeatedly refers to the Section 1985 claim as "18 U.S.C. 1985(2)." See e.g., Op. at 9. In fact, however, the statute is located under *42* U.S.C. 1985(2).

2. In *Dotson v. Mountain Mission School*, 590 F. Supp. 583 (D. Va. 1984), a civil rights case under Section 1985(2), the Fourth Circuit reversed and remanded with the following directions to the district court:

> The factual allegations in the complaint do *not* implicate § 198[5](1) and *do* implicate the second half of § 1985(2) and § 1985(3)....

> Given that pro se pleadings must be read liberally, we think that the plaintiffs
> must be afforded the opportunity to develop a claim under both halves of §
> 1985(2) and under § 1985(3) on remand in the district court if the other
> prerequisites for a suit under these provisions are present.

Following that remand, the plaintiff engaged in "extensive discovery ... replete with affidavits and counter affidavits." The same should occur in the instant case.

   3.   Plaintiff brought his claim under the first part of Section 1985(2), which prohibits persons from *conspiring* "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully...." Plaintiff has *not* alleged that he was injured for having testified, or that the Defendants acted against him for some racial animus.

   The operative word in the statute is "conspire." In this case, Plaintiff has plainly alleged that the named Defendants "conspired" to deter Plaintiff, by intimidation and threat, from attending or testifying in any federal proceeding against Blankenship. The statute *does not* require the actual harm to have occurred. If it did, the statute would only require the completed act, not conspiracy. See *Adickes v. SH Kress & Co*, 398 U.S. 144 (1970) (conspiracy to violate civil rights statute requires a meeting of the minds to commit the violation). Therefore, the unpublished District Court decision in *Mattison v. Click Corp. of Am*, on which this Court relies at 11, is not good law, and in fact is contrary to the holdings of the Supreme Court and other courts.

   Moreover, a witness under Section 1985(2) does not have to testify, but could simply be a potential witness or someone who, like Plaintiff, provided discovery in a

federal case. In *Kush v. Rutledge*, 460 U.S. 719 (1983), the plaintiff was a "potential

witness" in a federal proceeding, and both the Ninth Circuit and Supreme Court found

that Rutledge stated a claim. In *Chahal v. Paine Webber Inc.*, 725 F. 2d 20 (2nd Cir.

1984), the court reversed a 1985(2) dismissal finding that the plaintiff was a potential

witness who did not testify.

 In *Malley-Duff v. Crown Life Ins*, 792 F.2d 341, 355 (l986), the Third Circuit

interpreted the phrase "in any court" in section 1985(2) to mean any person asked

to *provide discovery*, regardless of where or what form, even though no actual

proceedings occurred.

> "Similarly, we think that a person asked to provide discovery in such a case,
> regardless of where or in what form, is for these purposes a witness 'in' the
> court. Indeed, the statute distinguishes between being deterred from 'attending
> such court' and from 'testifying to any matter pending therein.' As a result,
> individuals involved in pre-trial proceedings satisfied the requirement under
> section 1985(2) for intimidation of witnesses testifying 'in court.'" Id.

See also *Hoopes v. Nacrelli*, 512 F. Supp. 363 (ED Pa. 1981) (plaintiff satisfied

1985(2) by alleging that he was threatened and intimidated to deter him from

cooperating with federal investigation and federal officials, and from testifying at

trial). In *Hoopes*, the court noted that "intimidation can take many forms, and the

council members can be liable under § 1985 simply by virtue of having conspired to

intimidate Hoopes, without regard to whether they had legal authority to replace

him."

    1. In Plaintiff's case, as he alleged in his Complaint, he was a potential witness in

the Blankenship case because Plaintiff's employer/organization (a) had posted a

reward for information about Blankenship, received information from tipsters, and

packaged that information for the FBI, and (b) led the public relations campaign for

the indictment of Blankenship.  Plaintiff received all the whistleblower tips and met with the FBI on several occasions to provide discovery information about Blankenship's crimes.  Clearly, Plaintiff was a potential witness who had provided discovery to federal officials for use in a federal criminal case. Plaintiff was available as a witness to provide a foundation for presenting that evidence or to identify the source of it.

2.  Moreover, on March 29, 2016, eight days before the sentencing of Donald Blankenship for the very crimes about which Plaintiff cooperated with the FBI, the United States Attorneys Office in West Virginia contacted Plaintiff about providing testimony/evidence in support of the maximum sentence requested by the Government.  Plaintiff agreed to testify if Judge Irene Berger allowed victim testimony.

After discussions with the US Attorneys Office's Victims Coordinator, Plaintiff provided a three-page letter to Judge Berger outlining his testimony and his evidence. See Exhibit A, attached.  Plaintiff asked Judge Berger to consider that letter in lieu of testimony if she limited victim impact testimony at the sentencing hearing.  Such letters are routinely accepted as testimony in federal sentencing hearings.  The contacts with the United States Attorneys Office and the letter to Judge Berger more than meet the "witness in any court" requirement of Section 1985(2).

3.  Plaintiff has alleged, and the documents attached to his complaint show, that the named Defendants conspired to engage in a campaign of intimidation against Plaintiff to deter him from cooperating with federal authorities regarding the

federal case against Blankenship. The complaint connects the dots of this

conspiracy by showing that the Defendants, after exhausting their media smears

that resulted in hundreds of threats of death and injury against Plaintiff, and their

legal threats to stop Plaintiff from exposing Blankenship, went rogue by conspiring

with military intelligence contractors to destroy Plaintiff and his employer, and

when that didn't work, they farmed out their playbook to a bevy of other gangsters

and criminals. The Defendants conspired to retaliate against Plaintiff for his seeking

redress from the Government on behalf of all the victims of Blankenship's criminal

activity. They conspired to retaliate with a $12 million campaign of threats and

intimidation carried out by military intelligence contractors and directed by the

Chamber and its lawyers at Hunton & Williams. As this Court noted in *Kimberlin v.*

*Frey*, No. 13-3059, retaliation can take many forms, and when it is done to punish a

person for seeking redress from the Government, it rises to the level of a civil rights

violation.

4.  Plaintiff has alleged that he was harmed by the Defendants' campaign of

deterrence and intimidation. He has suffered extreme emotional distress, his

reputation has been sullied, his business activities have been smeared, and his

businesses have suffered financially. After Plaintiff learned that he was a "Tier I"

target of Team Themis, he was deterred and intimidated from even taking legal

action against the Defendants until the attacks became unbearable once his wife and

child were targeted. Clearly, this Court's finding that Plaintiff has not alleged harm

is incorrect.

## The Statute Of Limitations

The Court found that both the RICO and the 1985(2) claims were barred by their respective statutes of limitations. This constitutes error for the following reasons:

5. The Section 1985(2) claim is a continuing offense simply by virtue of the fact that the criminal trial of Donald Blankenship has been ongoing for years and culminated on April 6, 2016 with his sentencing to the maximum term. The conspiracy and effect of the deterrence, intimidation and threats on Plaintiff continued until that day. The named Defendants conspired to deter Plaintiff from participating in every stage of that court proceeding, including at sentencing. However, Plaintiff did provide evidence/testimony for that sentencing that was considered by Judge Berger on April 6, 2016. Exhibit A.

6. This Court's finding that the statutes of limitations ended at three and four years from February 11, 2011, is contrary to what Plaintiff alleged in his Complaint. He stated that the conspiracies continued through the present time. Moreover, he supported this allegation with his affidavit, which was *not countered* with any affidavits from Defendants. It is error for this Court to make a finding on statute of limitations grounds that is contrary to what is alleged in the Complaint. See *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) (SOL defense viewed in light most favorable to the plaintiff in 1983 action).

7. In the instant Complaint, Plaintiff requested a jury trial on disputed issues. And one of those disputed issues is the statute of limitations. Therefore, a jury at trial rather than a court in dispositive motions must decide that SOL issue. See *In re*

*Swine Flu Immunization Prods. Liab. Litig.,* 880 F.2d 1439, 1443 (D.C. Cir. 1989); *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 498 (3d Cir. 1985); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir. 1985) ("a court should not grant summary judgment for the defendant if there is a viable issue of fact as to when the limitations period began). 10A Wright, Miller & Kane, Federal Practice and Procedure Sec. 2734, at 421 (2d ed. 1983). *See also Riley v. Presnell,* 409 Mass. 239 (1991) ("where, as here, the plaintiff has claimed a trial by jury, any disputed issues relative to the statute of limitations ought to be decided by the jury").

8.  Under the "discovery of injury rule" for statute of limitations determinations, the operative inquiry is when did the plaintiff realize that he suffered injury from the actions of the defendants.  For example, a person could know, as in *Maughan, supra,* that he lived near a uranium mine but not know that the mine was responsible for his cancer until years later.  A person could know that he had stomach surgery but not know until a decade later that a pair of scissors left inside him caused his abdominal pain.

In Plaintiff's case, of course he knew on or about February 11, 2011 that the named Defendants had engaged in despicable conduct befitting of the Soviet KGB. However, as alleged in his Complaint, he did not realize that such conduct *caused him injury* until May of 2012, when a bevy of gangsters and criminals implemented the playbook created and published by Team Themis.  Therefore, the statute of limitations, per the discovery of injury rule, began running in May 2012 rather than February 2011. As the Supreme Court held in *Bailey v. Glover*, 88 U.S. 342 (1875), "where the party injured by the fraud remains in ignorance of it without any fault or

want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered," id. at 348. Also, in *Rotella v. Wood*, 528 U.S. 549 (2000), the Court reaffirmed that RICO's four-year SOL begins when the *injury is discovered*.

9.  Clearly, this Court should find that a jury should decide the disputed statute of limitations issue, and that Plaintiff discovered his injury in May of 2012.

## The RICO Claim Without Discovery

This Court rejected the RICO claim based on Plaintiff's failure to be specific on the various elements of RICO.  At the same time, this Court denied Plaintiff's repeated requests for discovery as moot.  This is contrary to the admonition in *Rotella v. Wood*, 428 U.S, 549, 560 (2000), that courts should be flexible in allowing RICO pleadings 'based on evidence reasonably anticipate after further investigation or discovery," citing *Corley v. Rosewood Care Center, Inc. of Pretoria*, 142 F.3d 1041, 1050-51 (7th Cir. 1998) (relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim).

10. How can Plaintiff provide the type of specificity the Court found lacking when the Defendants themselves possess that information and this Court refuses to allow Plaintiff discovery? In *Rotella*, the Court noted that civil RICO actions "encourag[e] civil litigation" by victims and "turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity."  Id. at 557.  Yet, how can Plaintiff take on the role of a "private prosecutor" when he cannot engage in discovery?

11. This Court should follow *Rotella* and allow discovery. If Plaintiff cannot provide the necessary specificity following that discovery, this Court can grant summary judgment on the RICO claim.

## The Civil RICO Claim

13. Plaintiff's Sixth Claim includes "Conspiracy to Commit Civil Rico" under 18 USC 1962(d). A RICO conspiracy under section (d) is a crime separate from a substantive RICO violation under section (c), and such a conspiracy "may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *United States v. Salinas*, 522 U.S. 52, 65 (1997).

14. The Fourth Circuit held in *United States v. Mouzone*, 687 F.3d 207, 218 (2012), that a charge of *conspiracy to violate RICO* does not require proof of any overt act or proof that a charged defendant committed or agreed to commit any predicate racketeering act himself. "Notably, ... a defendant can conspire to violate RICO and violate § 1962(d) without `himself committ[ing] or agree[ing] to commit the two or more' acts of racketeering activity."

15. In the instant case, this Court's opinion only addressed the substantive Section 1962(c) issue but did not address the *conspiracy* to commit RICO claim, which, as noted above, does not require the commission of predicate acts, harm or the actual pattern of racketeering. Instead, "to satisfy § 1962(d), the government must prove that an enterprise affecting interstate commerce existed; "that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and ... that each defendant knowingly and

willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *Mouzone*, at 218. The Court

16. Plaintiff has properly stated a claim under 1962(d). Because *Salinas* and *Mouzone* require that RICO claims under 1962(c) and 1962(d) be considered separately, this Court should allow Plaintiff to proceed in the conspiracy claim.

### The Court Is Required To Liberally Construe Plaintiff's Pro Se Complaint

17. This Court is required under Supreme Court and Fourth Circuit precedent to liberally construe Plaintiff's pro se complaint. Such pleadings by pro se litigants are not to be dismissed for failure to meticulously follow this or that rule. Pro se complaints are held to a less stringent standard than those drafted by attorneys, and courts are charged with liberally construing pleadings filed by a pro se litigant. *Haines v. Kerner*, 404 U.S. 519 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Erickson v. Pardus*, 551 U.S. 89 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

This Court did not liberally construe Plaintiff's complaint, and even denied him discovery that could have addressed the issues found lacking by the Court. This prejudiced Plaintiff. In *Baltimore Transit Co. v. Mezzanotti* 227 Md. 8, 13-14 (1961), the Maryland Court of Appeals noted that fact-based issues should not be decided without allowing discovery:

> If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice. In order to accomplish the above purposes, the discovery rules are to be liberally construed.

As noted above, the Fourth Circuit in *Dotson v. Mountain Mission School*, 590 F.

Supp. 583 (D. Va. 1984), reversed and remanded a 1985(2) case brought by a pro se

litigant case with the following directions to the district court:

> Given that pro se pleadings must be read liberally, we think that the plaintiffs
> must be afforded the opportunity to develop a claim under both halves of §
> 1985(2) and under § 1985(3) on remand in the district court if the other
> prerequisites for a suit under these provisions are present.

A liberal construction of Plaintiff's complaint requires a finding that he has

pleaded sufficiently to survive a motion to dismiss, and should be allowed

to proceed with discovery.

## Conclusion

This Court should grant Plaintiff relief from judgment for all the reasons stated

above.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Rd
Bethesda, MD 20817
justicejtmp@comcast.net
(301) 320 5921

## Certificate of Service

I certify that I served a copy of this on Defendant Hoge this 19th day of April,
2016.

Brett Kimberlin